1   JEFFREY B. MARGULIES (BAR NO. 126002)
    STEPHANIE A. STROUP (BAR NO. 235071)
2   JULIA B. GLAZER (BAR NO. 277316)
    **FULBRIGHT & JAWORSKI LLP**
3   555 South Flower Street
    Forty-First Floor
4   Los Angeles, California  90071
    Telephone:     (213) 892-9200
5   Facsimile:     (213) 892-9494
    jeff.margulies@nortonrosefulbright.com
6   stephanie.stroup@nortonrosefulbright.com
    julie.glazer@nortonrosefulbright.com
7
    Attorneys for Defendant
8   DEOLEO USA, INC., formerly known as MED
    FOODS, INC.
9

10                IN THE UNITED STATES DISTRICT COURT

11             FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  SCOTT KOLLER, an individual, on behalf of      Civil Action No.  3:14-CV-02400-RS
    himself, the general public and those similarly
14  situated,                                       **DEOLEO'S MOTION TO DISMISS**

15                    Plaintiffs,                    Date:   September 11, 2014
                                                     Time:  1:30 p.m.
16            v.                                     Courtroom:     3

17  DEOLEO USA, INC.; and MED FOODS,
    INC.,
18
                      Defendants.
19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

40753171.8

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ............................................................................................................. 1

I.    SUMMARY OF ALLEGATIONS ........................................................................ 2

    A.    The Parties.................................................................................................. 2

    B.    Plaintiffs' Claims ....................................................................................... 2

ARGUMENT ................................................................................................................... 3

II.    EACH OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ............... 4

    A.    Plaintiff Lacks Standing To Pursue His Claims.......................................... 4

        1.    Plaintiff Lacks Standing Because He Has Suffered No Cognizable Injury ............................................................................ 5

            a.    Plaintiff Has Not Alleged That He Purchased A Product That Was Not Extra Virgin Olive Oil ............................................ 6

            b.    Plaintiff Does Not Allege That He Purchased A Product That Was Not Made From Italian Olives ....................................... 9

            c.    Plaintiff Was Not Misled By The Phrase "Imported From Italy" Because He Reviewed Clarifying Statements Identifying The Source Of The Olives................................... 9

        2.    Plaintiff Lacks Standing To Pursue Claims For Products He Did Not Purchase .................................................................... 11

    B.    Carapelli EVOO Claims Must Fail .......................................................... 11

    C.    Plaintiff Has Failed To Plead Facts Sufficient To Demonstrate Violations Of the CLRA, FAL and UCL................................................................... 12

        1.    Plaintiff Has Not Demonstrated That Deoleo Made False Representations ........................................................................... 12

        2.    Plaintiff Has No Support For His UCL Unlawful Claim......................... 13

            a.    Plaintiff Cannot Use the Tariff Act to Establish Unlawful Conduct ...................................................................... 14

            b.    To The Extent Plaintiff Attempts to Enforce Any Requirements Under State Law Contrary to the FDA's Standards of Identity for Olive Oil, Plaintiff's Claims Are Expressly Preempted............................................................ 16

        3.    Plaintiff Has Not Adequately Pled that Deoleo's Representations Regarding the Products Are "Unfair" ...................................... 17

    D.    Plaintiff Has Not Identified A Contract Or Breach Necessary To Support Counts III And IV.................................................................................... 18

    E.    Plaintiff Has Not Adequately Pled Fraud Claims .................................... 21

III.    PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DISMISSED............................................................................................... 23

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ....................................................................................4, 8, 24, 25

*Astra v. Santa Clara County,*
    131 S. Ct. 1342 (2011) ...............................................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................ *passim*

*Birdsong v. Apple, Inc.,*
    590 F.3d 955 (9th Cir. 2009).........................................................................................5

*Buckland v. Threshold Enters., Ltd.,*
    155 Cal. App. 4th 798 ................................................................................................13

*Buckman Co. v. Plaintiffs Legal Committee,*
    531 U.S. 341 (2001).....................................................................................................16

*Caro v. Procter & Gamble Co.,*
    18 Cal. App. 4th 644 (1993) .......................................................................................13

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
    2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ..............................................................10

*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    20 Cal. 4th 163 ...........................................................................................................15

*Chacanaca v. Quaker Oats Co.,*
    752 F.Supp.2d 1111 (N.D. Cal. 2010) ..........................................................................5

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010)........................................................................................4

*College Hosp. v. Superior Court,*
    8 Cal. 4th 704 (1994) .................................................................................................24

*Computer Economics, Inc. v. Gartner Group, Inc.,*
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ...........................................................................24

*Cousins Inv. Co. v. Hastings Clothing Co.,*
    45 Cal.App.2d 141 (1941)...........................................................................................20

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ......................................................................................................5

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824 (2006) ...............................................13

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) .............................................14

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938).............................................................24

*Farm Raised Salmon Cases*,
   42 Cal. 4th 1077, 1086 (2008). .............................................17

*In re Ferrero Litig.*,
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ...................................17

*Fireman's Fund Ins. Co. v. Maryland Casualty Co.*,
   21 Cal.App.4th 1586 (1994) ..................................................20

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995)...................................................10

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*,
   528 U.S. 167 (2000) ....................................................4, 5, 11

*Granfield v. NVIDIA Corp.*,
   No. C–11–05403–JW, 2012 WL 2847575 (N.D.Cal. July 11, 2010)...................11

*Grieves v. Superior Court*,
   157 Cal. App. 3d 159 (1984)..................................................25

*Hana Fin., Inc. v. Hana Bank*,
   500 F. Supp. 2d 1228 (C.D. Cal. 2007) .....................................3

*Kaplan v. Rose*,
   49 F. 3d 1363 (9th Cir. 1994)................................................21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)...............................................21

*Khoury v. Maly's of California, Inc.*,
   14 Cal. App. 4th 612 (1993) .................................................13

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011).........................................................5

DOCUMENT PREPARED
ON RECYCLED PAPER

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lackner v. North*,
135 Cal. App. 4th 1188 (2006) .................................................................................24

*Larsen v. Trader Joe's Co.*,
No. C–11–05188–SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ......................11

*Lewis v. Casey*,
518 U.S. 343 (1996) .................................................................................................11

*Lippman v. Sears, Roebuck & Co.*,
44 Cal.2d 136 (1955) ...............................................................................................20

*Love v. Fire Ins. Exchange*,
221 Cal.App.3d 1136 (1990)....................................................................................20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...............................................................................................4, 5

*Manufacturers Life Ins. Co. v. Superior Court*,
10 Cal. 4th 257 (1995) .............................................................................................15

*Martin v. Carapelli*
30-2010-00395464-CU-FR-CXC, Superior Court of California, ...............................8

*McKell v. Washington Mut., Inc.*,
142 Cal.App.4th 1457 (2006) .............................................................................18, 19

*Mock v. Mich. Millers Mut. Ins. Co.*,
4 Cal. App. 4th 306 (1992) ......................................................................................24

*In re Molina*,
228 B.R. 248 (B.A.P. 9th Cir. 1998)........................................................................25

*Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*,
563 F. Supp. 2d 659 (E.D. Tex. 2007) ....................................................................15

*Otworth v. Southern Pac. Transportation Co.*,
166 Cal.App.3d at 458-459 ......................................................................................18

*Paduano v. American Honda Motor Company*,
169 Cal. App. 4th 1453 (2009) ................................................................................10

*In re Pepsico Inc.*,
588 F. Supp. 2d 527 (S.D.N.Y. 2008)......................................................................17

DOCUMENT PREPARED
ON RECYCLED PAPER

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Potter v. Toei Animation, Inc.*,
  839 F. Supp. 2d 49 (D.D.C. 2012) ..........................................................................15

*Rose v. Bank of America, N.A.*,
  57 Cal. 4th 390 (2013) ............................................................................................15

*Scheenstra v. California Dairies, Inc.*,
  213 Cal.App.4th 370 (2013) ...................................................................................19

*Smedt v. Hain Celestial Group, Inc.*,
  2014 WL 2466881 (N.D. Cal.)...................................................................4, 5, 11

*Smith v. City and County of San Francisco*,
  225 Cal.App.3d 38 (1990)........................................................................................20

*Smith v. L.G. Electronics U.S.A., Inc.*,
  2014 WL 989742 (N.D. Cal. 2014)..........................................................................18

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997)..................................................................................10

*Stickrath v. Globalstar, Inc.*,
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ..............................................................4, 13

*Superior Gunite v. Mitzel*,
  117 Cal.App.4th 301 (2004) ...................................................................................19

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  2014 WL 211462 (C.D. Cal. 2014)....................................................................18, 19

*Tanner v. Title Ins. & Trust Co.*,
  20 Cal.2d 814 (1942) ..............................................................................................20

*Tethys Bioscience, Inc. v. Mintz*,
  2010 U.S. Dist. LEXIS 55010 (N.D. Cal. 6-4-2010)..........................................24, 25

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ............................................................................................13

*Waller v. Truck Ins. Exchange, Inc.*,
  11 Cal.4th 1 (1995) ..................................................................................................20

*Warth v. Seldin*,
  422 U.S. 490 (1975)....................................................................................................5

DOCUMENT PREPARED
ON RECYCLED PAPER

## TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*,
  2011 U.S. Dist. LEXIS 122320 (N.D. Cal. 10-21-2011) ........................................................25

*Williams v. Gerber Products Co.*,
  552 F.3d 934 (9th Cir. 2008) ...............................................................................................10

*Young v. Johnson & Johnson*,
  No. 11-4580 (JAP), 2012 WL 1372286 (D.N.J. Apr. 19, 2012) ..............................................17

**Rules and Statutes**

19 C.F.R. § 134.46 ...................................................................................................................15

21 C.F.R. § 100.1(c)(4) ...........................................................................................................17

21 U.S.C. § 337(a) ...................................................................................................................16

21 U.S.C. § 341 ........................................................................................................................16

21 U.S.C. § 343-1 .....................................................................................................................17

21 U.S.C. § 343(i)(1) ................................................................................................................17

21 U.S.C. § 343-1(a)(1) ............................................................................................................17

21 U.S.C. § 343-1(a)(3) ............................................................................................................17

Cal. Civ. Code § 1770(a) ..........................................................................................................12

Cal. Civ. Code § 3294(c)(2) ................................................................................................23, 24

Cal. Civ. Code § 3301 ..............................................................................................................19

Cal. Civil Code § 3294 .....................................................................................................23, 24, 25

California Consumer Legal Remedies Act, Civil Code § 1750 *et seq.*.................................. *passim*

California Health and Safety Act § 112875, *et seq.* .................................................................14

California's Olive Oil Act (Health & Safety Code § 11875 *et seq.*)...........................................16

False Advertising Law, Business and Professions Code § 17500, *et seq.* .............................. *passim*

Fed. R. Civ. P. 9(b) .....................................................................................................4, 13, 21, 24

Fed. R. Civ. P. 12(b)(1).................................................................................................................4

DOCUMENT PREPARED
ON RECYCLED PAPER

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Fed. R. Civ. P. 12(b)(6) .............................................................................3, 11

Federal Trade Commission Act ........................................................................18

Medicare Act §340B .........................................................................................15

Nutrition Labeling and Education Act .........................................................16, 17

Sherman Food, Drug and Cosmetic Act. ...........................................................14

Tariff Act of 1930 ...............................................................................1, 14, 15, 16

Unfair Competition Law, Business and Professions Code § 17200 *et seq*. ........................... *passim*

**Other Authorities**

75 Fed. Reg. 22363 (April 10, 2010) ................................................................17

*Statement Issued by the Chemistry Expert Group of the International Olive Counsel on the Report Produced by the UC Davis Olive Centre (2010)*...................................7

Article III of the U.S. Constitution .................................................................4, 5

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Defendant Deoleo USA, Inc. (f/k/a Med Foods, Inc.), submits its Memorandum of Points

2  and Authorities in Support of its Motion to Dismiss the Complaint filed by Plaintiff Scott Koller.

3                                    **INTRODUCTION**

4    Plaintiff's attempt to impose liability on Defendant Deoleo USA, Inc. for allegedly

5  misrepresenting the quality of its extra virgin olive oil and the country of origin of various olive

6  oils fails to satisfy basic pleading requirements, and his complaint must be dismissed.

7    First, plaintiff, lacks standing to pursue his claims.  He has not alleged any injury from the

8  one Bertolli product that he purchased.  Also, he cannot allege any injury with regard to the

9  numerous other Bertolli and Carapelli products that he did not purchase, because he cannot show

10 any loss of money or property.

11    Second, plaintiff's claim that the Carapelli extra virgin olive oil products are bottled in

12 clear glass that allows the oil to degrade and no longer be "extra virgin" cannot survive because

13 these oils are bottled in green glass, the kind that plaintiff himself avers protects against such

14 degradation.

15    Third, plaintiff has failed to allege facts demonstrating that any representations were false,

16 unlawful or unfair in any other way in violation of the California Consumer Legal Remedies Act,

17 Civil Code § 1750 *et seq.* ("CLRA"), Unfair Competition Law, Business and Professions Code §

18 17200 *et seq.* ("UCL"), or the False Advertising Law, Business and Professions Code § 17500, *et*

19 *seq.* ("FAL").  There are no facts in the Complaint tending to establish that Deoleo has falsely

20 represented the quality or the origin of its products, in particular the product that plaintiff

21 purchased.  Moreover, plaintiff's UCL cause of action under the unlawful prong will not stand

22 because the predicate violations alleged do not support the claim.  For example, plaintiff's claim

23 that the representation, "Imported From Italy," misleads consumers or constitutes an unlawful act

24 must be dismissed in its entirety because it is an improper attempt to enforce the Tariff Act of

25 1930 and its implementing provisions, despite the fact that the Act bars private actions.

26 Furthermore, plaintiff's UCL cause of action under the unfair prong will not stand because

27 plaintiff simply has not pled the necessary elements to sustain the claim.

28    Fourth, plaintiff cannot prevail on his contractual claims (breach of contract and breach of

1    the covenant of good faith and fair dealing) because he has not established that any contract has
2    been established, nor has he established, even assuming a contract exists, that Deoleo has
3    breached its obligations pursuant to that contract or that essential terms should be implied into
4    such a contract.

5        Finally, plaintiff has failed to plead the elements of his fraud claim with the requisite
6    particularity, further justifying dismissal of his claim.

7    **I.     SUMMARY OF ALLEGATIONS**

8        **A.     The Parties**

9        Deoleo is an importer and distributor of Bertolli and Carapelli brand olive oils, including
10   the following products: Bertolli Extra Virgin Olive Oil ("Bertolli EVOO"); Bertolli Organic Extra
11   Virgin Olive Oil; Bertolli Classico Olive Oil; Bertolli Extra Light Tasting Olive Oil; Carapelli Il
12   Numerato Extra Virgin Olive Oil; Carapelli Organic Extra Virgin Olive Oil; and Carapelli Extra
13   Light in Taste Olive Oil.  Plaintiff alleges that Deoleo falsely claims that Bertolli and Carapelli
14   extra virgin olive oils ("EVOO") are extra virgin quality, and misleads consumers into believing
15   that a variety of Deoleo olive oils are made solely from Italian olives because the labels state that
16   the products are "Imported From Italy," when, in reality, the olives used to produce the oils
17   originate in several countries.  (Complaint, ¶¶ 19, 21-22, 52-53).

18       **B.     Plaintiffs' Claims**

19       Plaintiff claims to have purchased Bertolli EVOO from a Safeway supermarket in
20   Brentwood, California for approximately $12.00.  (Complaint, ¶ 52).  Plaintiff allegedly
21   purchased the Bertolli EVOO because (1) the olive oil was extra virgin, and (2) the phrase
22   "Imported From Italy"  meant that the oil was made from olives grown and pressed in Italy.  (*Id*.,
23   ¶ 51).  After his purchase, plaintiff claims he later "learned" that the Bertolli EVOO was not extra
24   virgin and that it was not made from olives grown and pressed in Italy.  (*Id*., ¶ 53).  Plaintiff bases
25   his conclusion that the Bertolli EVOO was not extra virgin quality on a University of California
26   at Davis report published in July of 2010, as well as a study conducted by plaintiff's counsel in
27   March 2014; however, he does not allege that the bottle of Bertolli EVOO that he purchased was
28   ever tested to determine its quality.  (*Id*., ¶¶ 33-34, 37-38).  Plaintiff states that the UC Davis

DOCUMENT PREPARED
ON RECYCLED PAPER

report concluded that "all three samples tested by UC Davis failed the chemical analysis and sensory assessment." (*Id.*, ¶ 38).  Plaintiff's own testing of the products allegedly revealed that "none of the bottles of olive oil tested contained oil that qualified as 'extra virgin' under the [International Olive Council], [United States Department of Agriculture], or State of California definitions." (*Id.*, ¶ 34).  Plaintiff never alleges that the Bertolli EVOO he purchased was tested.  Plaintiff bases his allegation that the Bertolli EVOO is not made from Italian olives on a statement that Deoleo's products are made from olives sourced from various countries, but does not identify the geographic origin of the olives used to make the Bertolli EVOO that he purchased.  (*Id.*, ¶ 25).

Plaintiff asserts six causes of action against Deoleo: (1) violation of the CLRA; (2) violation of the FAL; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) fraud, deceit and/or misrepresentation; and (6) violation of the UCL.  Plaintiff seeks to certify the following three classes: 1) All persons who, between May 23, 2010 and the present, purchased in California, any of Defendants' Products represented as Imported from Italy (the "California Italian Class"); 2) All persons who, between May 23, 2010 and the present, purchased in the United States, any of Defendants' EVOO Products (the "EVOO Class"); and 3) All members of the EVOO Class who made an EVOO Product purchase in California (the "California EVOO Subclass").

## ARGUMENT

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal for failure to state a claim upon which relief may be granted.  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1232 (C.D. Cal. 2007).  "…[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; the complaint must include "enough facts to state a claim to

DOCUMENT PREPARED
ON RECYCLED PAPER

1    relief that is plausible on its face." *Id.*, at 555, 570.  "Threadbare recitals of elements of a cause

2    of action, supported by mere conclusory statements, do not suffice…."  *Ashcroft v. Iqbal*, 129 S.

3    Ct. 1937, 1949 (2009).  Federal Rule of Civil Procedure 9(b) requires that "[i]n allegations of

4    fraud or mistake, a party must state with particularity the circumstances constituting fraud or

5    mistake." Fed. R. Civ. P. 9(b).  Plaintiff's claims under the consumer protection laws (UCL,

6    FAL, and CLRA) are also subject to Rule 9(b)'s heightened pleading requirements because the

7    claims are based on alleged misrepresentations and failures to disclose facts.  *See Stickrath v.*

8    *Globalstar, Inc.*, 527 F. Supp. 2d 992, 997-98 (N.D. Cal. 2007).

9         A party may also file a motion to dismiss with the Court for lack of subject matter

10   jurisdiction.   Fed. R. Civ. P. 12(b)(1).   Federal courts are courts of limited jurisdiction,

11   adjudicating only cases that the Constitution and Congress authorize.  *See Smedt v. Hain Celestial*

12   *Group, Inc.*, 2014 WL 2466881 *2 (N.D. Cal.).  An Article III federal court must ask whether a

13   plaintiff has suffered sufficient injury to satisfy the "case or controversy" requirement of Article

14   III of the U.S. Constitution.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  A suit

15   brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III

16   federal court lacks subject matter jurisdiction.  *Smedt*, 2014 WL 2466881, at *2.

17   **II.      EACH OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW**

18        **A.      Plaintiff Lacks Standing To Pursue His Claims**

19        To satisfy Article III standing, a plaintiff must allege that he has suffered an "injury in

20   fact," i.e., an invasion of a legally protected interest which is (a) concrete and particularized, and

21   (b) actual or imminent, not conjectural or hypothetical.  *See Friends of the Earth, Inc. v. Laidlaw*

22   *Envt'l Servs., Inc.*, 528 U.S. 167, 181, (2000).  Second, plaintiff must plead a causal connection

23   between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to

24   the challenged action of the defendant, and not ... th[e] result [of] the independent action of some

25   third party not before the court."  *See Lujan*, 504 U.S. at 560.  And, third it must be likely, as

26   opposed to merely speculative, that plaintiff's injury will be redressed by a favorable decision.

27   *See id.* at 561.  The party asserting the claim has the burden of establishing these elements.  *See*

28   *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  This threshold

DOCUMENT PREPARED
ON RECYCLED PAPER

requirement applies equally to named plaintiffs in a putative class action.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).

California's UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury.  *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 322–23 (2011).  A plaintiff suffers an injury-in-fact when he has "(1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."  *Chacanaca v. Quaker Oats Co.,* 752 F.Supp.2d 1111, 1125 (N.D. Cal. 2010).

A plaintiff must demonstrate standing "for each claim he seeks to press" and for "'each form of relief sought.'"  *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352, (2006) (quoting *Friends of the Earth,* 528 U.S. at 185); *see Lujan*, 504 U.S. at 561.  Consistent with this requirement, in a class action, the named plaintiff must have suffered an injury-in-fact with respect to every claim.  *See Smedt*, 2014 WL 2466881, at *2, 5-7.  "The plaintiff still must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  In class actions with a single named plaintiff, the plaintiff must allege and show that he personally has been injured, not that injury has been suffered by unidentified members of the class.  *See id.*

### 1.    Plaintiff Lacks Standing Because He Has Suffered No Cognizable Injury

Plaintiff states in Exhibit A to the Complaint that "in or around October of 2013, [he] purchased a bottle of Bertolli extra virgin olive oil", and he "later learned that the bottle of Bertolli olive oil that [he] purchased was not extra virgin", and "also later learned that the olive oil was not made from olives grown or pressed in Italy."  (Complaint, Exhibit A, ¶¶ 3-4; Complaint, ¶ 53).  He does not actually state how he "later learned" that the Bertoli EVOO "was not extra virgin" and the allegations in the Complaint reveal that plaintiff has pled absolutely no facts demonstrating that the Bertolli EVOO he purchased was anything but extra virgin olive oil.

a.       *Plaintiff Has Not Alleged That He Purchased A Product That Was Not Extra Virgin Olive Oil*

Plaintiff makes no allegation that any testing was conducted on the particular bottle that he purchased, nor does he state that the olive oil tasted bad or off, or otherwise gave any indication that it was not extra virgin olive oil.  Instead, plaintiff relies on irrelevant testing of different batches of oils, as well as mischaracterizations of a study conducted more than three years prior to his purchase.  None of these allegations establish that plaintiff himself has been injured.

Plaintiff first alleges that his counsel had "several" bottles of Deoleo's EVOO Products tested, and that "none of the bottles of olive oil tested contained oil that qualified as 'extra virgin' under the IOC, USDA, or State of California definitions."  (*Id.*, ¶¶ 33-34).  However, this testing was conducted more than ***five months*** after plaintiff purchased the Bertolli EVOO.  In addition to testing conducted by his counsel, plaintiff relies on a report published by the University of California at Davis' Olive Oil Center in July 2010 (the "UC Davis Report") to support his claim that not a single bottle of Deoleo EVOO actually contains extra virgin oil.  (*Id.*, ¶ 37).  A true and accurate copy of the UC Davis Report and Appendix is attached as Exhibit A to the Declaration of Julia Glazer In Support of Request For Judicial Notice ("Glazer Decl.").[1]  Plaintiff alleges that the report concluded that all three samples of Bertolli EVOO tested "failed the chemical analysis and sensory assessment," and implies that Deoleo is violating standards that it helped develop.  (Complaint, ¶¶ 35, 37-38).   However, the actual report itself reveals that plaintiff's characterization of the results is misleading.  The Report states that it used "testing methods" adopted by the IOC and the USDA for determining whether a product is extra virgin.  Glazer Decl. Ex. A., Report, p. 5.  Those testing methods consist of chemical criteria and sensory testing methods.  Only the IOC's chemical criteria[2] is an objective standard.  The Report also employed other, non-IOC or USDA-sanctioned techniques used in Germany and Australia.  *See id.*  Those other methods "have not been adopted by the IOC and USDA."  *Id.* at pp. 5-6.

[1] As discussed in the concurrently filed Request for Judicial Notice, Deoleo hereby requests that the Court deem this document incorporated by reference.

[2] The IOC chemical criteria are: Peroxide Value (PV); UV Absorption (K232, K268, and ΔK); Free Fatty Acids (FFA); Stigmastadiene (Stigma).  *See* Glazer Decl. Ex. A, Report, at p. 5, Table 1.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Contrary to plaintiff's allegation, all three of the Bertolli EVOO bottles tested met the

2    only applicable objective standards applied in the Report—the IOC's chemical criteria for "extra

3    virgin." *Id.* at p. 8, Appendix at pp. 22-30.  While the samples were deemed not to taste "good

4    enough" to be considered "extra virgin," a sensory test is a subjective measurement based on the

5    sensory perception of "taste" testers.  This is unverifiable and driven by the personal tastes of the

6    taster.  The IOC recognizes this and, therefore, requires that if the grade stated on a label does not

7    match the grade assigned by a sensory analysis, a second analysis must be performed by a

8    different taste panel authorized by the IOC.  *See Statement Issued by the Chemistry Expert Group*

9    *of the International Olive Counsel on the Report Produced by the UC Davis Olive Centre (2010)*,

10   available   at   http://www.internationaloliveoil.org/documents/viewfile/4483-chemistexpertgroup-

11   pdf.    A  true  and  accurate  copy  of  the  Statement  is  attached  as  Exhibit  B  to  the  Glazer

12   Declaration.[3]  The  UC  Davis  Report,  however,  did  not  include  the  requisite  second,  verifying

13   taste panel for samples that were found not to meet the sensory test.  Accordingly, the UC Davis

14   Report does not establish that the three samples of Bertolli EVOO did not meet IOC standards.

15   Furthermore, plaintiff provides no support for extrapolating from the results of plaintiff's

16   counsel's testing and the UC Davis Report, to every single bottle of Deoleo's EVOO Products

17   sold in the United States, or even in California.  The testing done by plaintiff's counsel and the

18   UC Davis Report form the entire basis for plaintiff's claims, and plaintiff has alleged no evidence

19   that the olive oil tested in the UC Davis Report or by plaintiff's counsel, was the same as the olive

20   oil purchased by plaintiff.  Plaintiff does not allege that the bottle that he purchased was tested

21   and failed to qualify as extra virgin olive oil, made anyone sick, tasted bad, or was not good

22   enough to be labeled as "extra virgin."  Plaintiff pleads no facts tying the olive oils tested to the

23   olive oil at issue in the instant suit other than the brand name, which is insufficient.  Plaintiff does

24   not allege that the bottle he bought came from the same lot as, or was identical in physical and

25   chemical characteristics to, ***any*** of the oils tested.  Nor does plaintiff allege that the test results

26   that he relies on are a statistically significant basis from which to conclude that any other bottle of

27

28   [3] As discussed in the concurrently filed Request for Judicial Notice, Deoleo hereby requests that
     the Court take judicial notice of this statement.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Deoleo's EVOO products is deficient.   Plaintiff's claims are not plausible.

2          Additionally, Deoleo asks this Court to take judicial notice of prior testing performed on

3   behalf of the same EVOO class that plaintiff seeks to represent, as discussed in the Declaration of

4   Michael J. Sachs Requesting Dismissal of Class Action filed by putative class counsel in *Martin*

5   *v. Carapelli* 30-2010-00395464-CU-FR-CXC, Superior Court of California, County of Orange.

6   A true and accurate copy of the Sachs Declaration is attached as Exhibit C to the Glazer Decl.

7   *Martin v. Carapelli* was a class action filed in August 2010 against a number of olive oil

8   manufacturers, distributors, and retailers, Carapelli, Safeway, and American Rice, Incorporated

9   (the predecessor to Deoleo USA, Inc.) among them.   The plaintiffs alleged that the defendants

10  had been misleading California consumers by selling extra virgin olive oil that did not qualify as

11  extra virgin, based entirely on the UC Davis Report.   Plaintiffs did not immediately serve the

12  complaint, and, when faced with an order to serve it, plaintiffs filed a request for dismissal.

13  Accompanying the request was a declaration in which class counsel stated that his firm had

14          conducted exhaustive testing and analysis of the olive oil products of the
            Defendants in the instant action to confirm that they support the allegations made
15          in the Complaint.  Unfortunately, the results of the testing have been inconclusive
            and additional testing and analysis is necessary in order to determine whether this
16          action should be maintained against the currently named Defendants."

17  Glazer Decl. Ex. C, Sachs Declaration, ¶¶ 2-3.  The court dismissed the action and plaintiffs have

18  not re-filed.

19         Thus, even if all of plaintiff's allegations are accepted as true, it is impossible to conclude

20  on the basis of plaintiff's allegations and judicially noticeable information, that ***every*** bottle of

21  Bertolli and Carapelli EVOO sold in the United States fails to qualify as extra virgin olive oil.

22  While plaintiff's ***factual*** allegations must be taken as true when evaluating a motion to dismiss,

23  the court need not accept as true unreasonable inferences or conclusory legal allegations.  *See*

24  *Twombly*, 550 U.S. at 545.  Thus, a complaint must "contain sufficient factual matter, accepted as

25  true, to 'state a claim to relief that is plausible on its face.' ... A claim has facial plausibility when

26  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550

28  U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).  When all such inferences are properly disregarded, there are no factual allegations left to support the claims in plaintiff's Complaint, and it therefore must be dismissed.

      **b.**      ***Plaintiff Does Not Allege That He Purchased A Product That Was Not Made From Italian Olives***

Plaintiff claims that the phrase "Imported From Italy" is misleading to consumers because the reasonable consumer concludes that this means the products are made from olives grown and pressed in Italy.  Even assuming this allegation is true, plaintiff has still not pled a cognizable injury.  The Complaint does not include a single allegation stating that the olive oil plaintiff purchased was not made from Italian olives.  By plaintiff's own admission, the labels state, "'Product contains select high quality [olive oils] from the countries indicated by the letters below. I=Italy, GR=Greece, E=Spain, TU=Tunisia, MA=Morocco, CL=Chile, AG=Argentina, AU=Australia' along with a dot matrix print of one or more country codes." (Complaint ¶ 25.) Therefore, some products do contain oil from Italian olives.  In fact, plaintiff fails to mention that each of the three Bertolli EVOO bottles tested in the UC Davis Report contained oil pressed from Italian olives.  *See* Glazer Decl., Ex. A, Report, Appendix at pp. 22, 25, 28.  Plaintiff provides no information about what the bottle that he purchased actually said about the country of origin of the olives.  Without this information, plaintiff cannot claim injury as a result of Deoleo's false country of origin designation, because it is entirely possible that the bottle plaintiff purchased was made from Italian olives.

      **c.**      ***Plaintiff Was Not Misled By The Phrase "Imported From Italy" Because He Reviewed Clarifying Statements Identifying The Source Of The Olives***

Even if plaintiff purchased a product that was not made from Italian olives (which has not been sufficiently alleged), plaintiff could not have been misled by the phrase "Imported From Italy" on the front of the bottle because plaintiff himself admits that he reviewed the back label that identified the origin of the olives for the Bertolli EVOO.  Throughout the Complaint, plaintiff alleges that he reviewed the "Best Used By" date on the back of the Bertolli EVOO.  (*See* Complaint, ¶ 52).  This date is central to his EVOO claims, as plaintiff alleges that he relied on

DOCUMENT PREPARED
ON RECYCLED PAPER

1   this date as a promise that the Bertolli EVOO would remain "extra virgin" up and until March 31,

2   2015, a promise he alleges was broken based on the light degradation of the product.  (*See id*., ¶

3   40; *see also* ¶¶ 94, 95 (alleging that the "best used by" date was "essential to the analysis

4   undertaken by Plaintiff as to whether to purchase Defendants' olive oil")).  Indeed, plaintiff

5   claims that the "Best Used By" date was a core term of the "label" contract he alleges he entered

6   into by purchasing the Bertolli EVOO.  (*Id*., ¶ 86).  However, the Best if Used By date is directly

7   adjacent to the country of origin statement that explains exactly where the olives used to make the

8   olive oil come from.  A true and accurate copy of the Bertolli EVOO label is attached as Exhibit

9   D to the Glazer Decl.[4]  Based on his own allegations, plaintiff could not have been misled by the

10  phrase "Imported From Italy" when he also viewed the statement clarifying the country of origin

11  of the olives in the product.

12      "When evaluating whether an advertising claim is literally false, the claim must always be

13  analyzed in its full context."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th

14  Cir. 1997).  Plaintiff attempts to get around the country of origin statement on the back label of

15  the product by citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) for the

16  proposition that "reasonable consumers…should [not] be expected to look beyond misleading

17  representations on the front of the box to discover the truth from the…small print on the side of

18  the box."  (Complaint, ¶ 28).  However, the allegations in the Complaint prove that plaintiff

19  cannot rely on *Gerber's* reasoning, because his allegations establish that he did read and rely on

20  statements on the back of the bottle, directly adjacent to the country of origin statements.  Case

21  law is clear that it is unreasonable to ignore such language.  *See, e.g., Freeman v. Time, Inc.*, 68

22  F.3d 285, 289-90 (9th Cir. 1995) (holding that sweepstakes language qualified by smaller type

23  font was not misleading under the UCL or FAL because "[n]one of the qualifying language is

24  hidden or unreadably small.   The qualifying language appears immediately next to the

25  representations it qualifies and no reasonable reader could ignore it."); *Paduano v. American*

26  *Honda Motor Company*, 169 Cal. App. 4th 1453, 1469-70 (2009); *Carrea v. Dreyer's Grand Ice*

27

28  _____
[4] As discussed in the concurrently filed Request for Judicial Notice, Deoleo hereby requests that
the Court deem this document incorporated by reference.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    *Cream, Inc.*, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) (reasonable consumers are not misled if

2    "statements on the . . . packaging [are] taken as a whole").   Therefore, because plaintiff admits

3    that other statements on the back panel of the Bertolli EVOO were "essential" to his decision to

4    purchase the product, it must be presumed that he read and considered adjacent statements,

5    including the country of origin statement.   As a result he cannot allege that he was misled to

6    believe that the olives came exclusively from Italy.

### 2.    Plaintiff Lacks Standing To Pursue Claims For Products He Did Not Purchase

7    
8    Plaintiff purports to assert claims based on seven different products, only one of which he
9    purchased.  (Complaint, ¶¶ 19, 52).  Plaintiff lacks standing to assert claims for products he did
10   not purchase because he has not suffered any injury-in-fact.  *See Friends of the Earth,* 528 U.S. at
11   181 (a plaintiff must identify a particularized injury affecting him personally to bring a claim).
12   Courts in this district have repeatedly "found that claims regarding unpurchased products similar
13   to plaintiff's do not survive a motion to dismiss."  *Smedt*, 2014 WL 2466881 *6; *Larsen v. Trader*
14   *Joe's Co.*, No. C–11–05188–SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012); *Granfield v.*
15   *NVIDIA Corp.*, No. C–11–05403–JW, 2012 WL 2847575, at *6 (N.D.Cal. July 11, 2010).

16   As discussed above, the fact that the suit is a class action "adds nothing to the question of
17   standing, for even named plaintiffs who represent a class must allege and show that they
18   personally have been injured, not that injury has been suffered by other, unidentified members of
19   the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S.
20   343, 357 (1996).  Plaintiff must personally state a claim that can survive a Rule 12(b)(6) motion,
21   irrespective of the future class.  *See Larsen*, 2012 WL 5458396 at *5.

22   
### B.    Carapelli EVOO Claims Must Fail

23   
24   Plaintiff claims that all of Deoleo's EVOO products, including Carapelli Il Numerato
25   Extra Virgin Olive Oil and Carapelli Organic Extra Virgin Olive Oil ("Carapelli EVOO"), are
26   falsely represented as being EVOO products because Deoleo "pack[s] their olive oil in clear
27   bottles and do[es] not take steps to adequately protect the [] EVOO Products from light
28   degradation once they reach stores."  (Complaint, ¶ 40).  However, despite this allegation, the

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Carapelli EVOO products are bottled in green glass.  True and accurate photographs of the

2   Carapelli EVOO products are attached as Exhibit E to the Glazer Decl.[5]  This green glass is the

3   same type of bottle that plaintiff claims is necessary "to better maintain the quality of the oil

4   inside the bottles."  (Complaint, ¶ 49.)  Therefore, because the EVOO allegations are based on the

5   alleged use of "defective and low-quality" clear bottles that cause the oil to degrade and no longer

6   be extra virgin olive oil, the following claims based solely on this theory (and not the country of

7   origin argument) must be dismissed as to the Carapelli EVOO products because they are not

8   packaged in these bottles: Count III for Breach of Contract (on behalf of plaintiff, the EVOO

9   Class, and the California EVOO subclass); Count IV for Breach of the Covenant of Good Faith

10   and Fair Dealing (on behalf of plaintiff and the California EVOO subclass); and Count V for

11   Fraud, Deceit and/or Misrepresentation (on behalf of plaintiff, the EVOO Class, and the

12   California EVOO subclass) (*Id*., ¶¶ 87, 91, and 94).

13   **C.** **Plaintiff Has Failed To Plead Facts Sufficient To Demonstrate Violations Of**

14   **the CLRA, FAL and UCL**

15   **1.** **Plaintiff Has Not Demonstrated That Deoleo Made False**

    **Representations**

16   Plaintiff alleges that Deoleo has violated the CLRA by (1) making "improper

17   representations regarding the source, sponsorship, approval, or certification of the goods" sold,

18   "namely that their 'source' is 'Italy'" and that they meet the 'certification' as 'extra virgin'" (Cal.

19   Civ. Code § 1770(a)(2)); (2) making "improper representations or designations of geographic

20   origin in connection with goods or services, namely that the origin is Italy" (§ 1770(a)(4)); (3)

21   making "improper representations that the goods [Deoleo] sell[s] have sponsorship, approval,

22   characteristics, ingredients, uses, benefits, or quantities, which they do not have, namely that they

23   contain Italian and/or extra virgin olive oil" (§ 1770(a)(5)); (4) making "improper representations

24   that the goods [Deoleo] sell[s] are of a particular standard, quality, or grade, namely 'extra virgin'

25   and 'Italian' when they are of another" (§ 1770(a)(7)); and (5) advertising "goods or services with

26   intent not to sell them as advertised" (§ 1770(a)(9)). (Complaint, ¶ 69.  All of these claims are

27

28   _____

    [5] As discussed in the concurrently filed Request for Judicial Notice, Deoleo hereby requests that
    the Court deem this document incorporated by reference.

based on alleged misrepresentations that the products are extra virgin olive oil and that consumers are led to believe the oils are made from olives grown and pressed in Italy when they are not. (*Id.*)  As to his FAL claim, plaintiff alleges that Deoleo "led reasonable customers to believe that they were purchasing olive oil that: (1) originated in Italy and (2) was 'extra virgin' grade or quality at the time of sale up until the 'best before' date on the bottle." (*Id.*, ¶ 75).  And, as to his UCL claim, in addition to the unlawful and unfair prongs discussed further below, plaintiff has similarly alleged the products are not extra virgin olive oil and are not made from olives grown and pressed in Italy.  (*Id.*, ¶ 105).  All of these claims essentially devolve to the same basic argument that Deoleo's labelling is false and misleading.  A plaintiff alleging violations of the FAL and UCL must state with reasonable particularity the facts supporting the statutory elements for the violation.  *See, e.g., Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Moreover, plaintiff's UCL, FAL, and CLRA claims are subject to Rule 9(b)'s heightened pleading requirements because the claims are based on alleged misrepresentations and failures to disclose facts. *See, e.g., Stickrath*, 527 F. Supp. 2d at 997-98.  Here, as discussed above, plaintiff has failed to plead facts demonstrating that Deoleo made any false representations about the quality or origin of its olive oil products.  Moreover, also as discussed above, the "Imported From Italy" claim can also not support a CLRA, FAL or UCL claim because plaintiff is not able to establish any reliance[6] on the alleged misleading representation.

### 2.    Plaintiff Has No Support For His UCL Unlawful Claim

To establish that a business practice is "unlawful," the UCL requires as a predicate a violation of another statute.  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837 (2006).  In his Complaint, plaintiff appears to have alleged violations of the following laws that, ostensibly, establish violation of the UCL's unlawful prong: CLRA, FAL, California Health

---

[6] A misrepresentation is material to a plaintiff only if there is reliance – in other words, "without the misrepresentation, the plaintiff would not have acted as he did." *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).  Therefore, plaintiffs asserting CLRA claims sounding in fraud must establish that they actually relied on the relevant representations or omissions. *Buckland v. Threshold Enters, Ltd.*, 155 Cal. App. 4th 798, 810 (holding that plaintiff's CLRA claim failed based on lack of reliance).  Similarly, to establish standing under the FAL and UCL's fraud prong, a plaintiff must have relied upon the allegedly fraudulent misrepresentation. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

DOCUMENT PREPARED
ON RECYCLED PAPER

1    and Safety Act §§ 112875, *et seq*., and various sections of the Sherman Food, Drug and Cosmetic

2    Act.   (Complaint, ¶ 105h-k).   However, on closer examination, each of these statutes cannot

3    properly serve as the basis for a UCL unlawful claim.

4         As a threshold matter, plaintiff attempts to base his UCL unlawful claim on violations of

5    the CLRA and FAL.   However, these claims simply restate the same standard as the "fraudulent"

6    prong of the UCL and, therefore, cannot be independent "unlawful" violations supporting a UCL

7    claim.   (*See* Complaint, ¶ 69).   Moreover, as discussed above, these claims have not been pled

8    with the requisite specificity and, accordingly cannot form the basis of plaintiff's UCL

9    "unlawful" cause of action.   It should also be noted that, as with the fraudulent prong, the actual

10   reliance requirement also applies to unlawful claims where "the predicate unlawful conduct is

11   based on misrepresentations."   *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).

12   The "Imported From Italy" claims, therefore, must fail because they were not relied on by

13   plaintiff.

14        Plaintiff also attempts to base his claims on violations of the Sherman Law and California

15   Health and Safety Code §§ 112875, *et seq*.   As discussed above, plaintiff has not pled facts

16   sufficient to establish that Deoleo has misbranded its products in violation of the Sherman law, as

17   plaintiff has not introduced facts sufficient to establish that Deoleo engaged in any acts of false

18   advertising.   Indeed, it is unclear how, specifically, plaintiff intends the Sherman Law provisions

19   were violated, which also fails to sufficiently plead the underlying cause of action.   Similarly,

20   plaintiff has not adequately pled or identified how Deoleo has violated Health and Safety Code §§

21   112875 *et seq.*, other than to summarily state that the standard has been violated, based on

22   unknown and unidentified testing.   This is not a sufficient showing to establish a violation of the

23   underlying predicate statute.   Moreover, as discussed below, plaintiff's attempt to impose

24   California standards for extra virgin olive oil when they conflict with federal standards is

25   expressly preempted.

26        a.    ***Plaintiff Cannot Use the Tariff Act to Establish Unlawful
              Conduct***

27

28   Plaintiff's attempt to use the Tariff Act of 1930 does not give rise to a UCL unlawful

1   claim, as the UCL cannot borrow violations of other laws when there is a specific bar to the

2   action.  Though plaintiff is careful to not plead Tariff Act violations in his UCL cause of action, it

3   is clear he is using a violation of the act as the basis for his UCL unlawful claim, arguing that the

4   phrase "Imported From Italy" is misleading based on his allegation that the representation fails to

5   comply with 19 C.F.R. § 134.46, a Tariff Act implementing regulation.  (*See* Complaint, ¶¶ 23-

6   25).  Such use of the Tariff Act is inappropriate, as plaintiff may not use it as the basis for his

7   UCL claim because the statute does not otherwise allow for a private right of action.  *See, e.g.,*

8   *Potter v. Toei Animation, Inc.*, 839 F. Supp. 2d 49, 53 (D.D.C. 2012); *see also Mugworld, Inc. v.*

9   *G.G. Marck & Assocs., Inc.*, 563 F. Supp. 2d 659, 666 (E.D. Tex. 2007); *Rose v. Bank of*

10  *America, N.A.*, 57 Cal. 4th 390, 398 (2013) (noting that a statute with a provision barring a private

11  action can forestall a UCL unlawful cause of action); *Cel-Tech Comm'ns, Inc. v. Los Angeles*

12  *Cellular Tel. Co.*, 20 Cal. 4th 163, 182-83 ("A plaintiff may thus not 'plead around' an 'absolute

13  bar to relief' simply 'by recasting the cause of action as one for unfair competition.'") (*citing*

14  *Manufacturers Life Ins. Co. v. Superior Court*, 10 Cal. 4th 257, 283 (1995)).

15      *Astra v. Santa Clara County*, 131 S. Ct. 1342 (2011) is analogous and instructive.  In

16  *Astra*, plaintiff Santa Clara County attempted to enforce price-ceilings established in §340B of

17  the Medicare act for drug rates charged by pharmaceutical companies.  *Id*. at 1347.  Although

18  conceding §340B did not authorize a private right of action, the plaintiff argued that it was not

19  bringing a cause of action under §340B, rather, it was enforcing contractual provisions of the

20  Pharmaceutical Pricing Agreement that the pharmaceutical companies entered into in order to

21  become part of the §340B program, which required that the companies comply with the price-

22  ceilings.  *Id*. at 1345.  Reversing the Ninth Circuit, the Supreme Court dismissed the case, holding

23  that a party could not use the guise of a contract to enforce a statute that has no private right of

24  action because "[a] third-party suit to enforce an HHS-drug manufacturer agreement, therefore, is

25  in essence a suit to enforce the statute itself."  *Id*. at 1348.

26      Plaintiff's "Imported From Italy" claim, is supported solely by plaintiff's allegation that

27  the Tariff Act and its implementing regulations have been violated, no matter what cause of

28  action it is brought under.  As in *Astra*, plaintiff is attempting to say that there has been an

1    unlawful act because the "Imported From Italy" claim is not in compliance with the Tariff Act.

2    Because the gravamen of plaintiff's UCL unlawful claim is that Deoleo has violated the Tariff

3    Act – a statute that does not allow for a private right of action – it must be dismissed and cannot

4    serve as the basis to argue that "Imported From Italy" claims are false or misleading.

5         In a similar fashion, plaintiff briefly identifies an FDCA regulation requiring a "truthful

6    representation of geographical origin," ostensibly using this as the basis of his UCL unlawful

7    claim as well.  (*See* Complaint, ¶ 26).  However, as with the Tariff Act, the FDCA also contains a

8    bar to a private right of action.  *See* 21 U.S.C. § 337(a) ("all such proceedings for the enforcement

9    or to restrain violations of this [Act] shall be by and in the name of the United States.").  Indeed,

10   the Supreme Court has expressly recognized that "[t]he FDCA leaves no doubt that it is the

11   Federal Government rather than private litigants who are authorized to file suit for

12   noncompliance."  *Buckman Co. v. Plaintiffs Legal Committee*, 531 U.S. 341, 349 n. 4 (2001).

13   Although plaintiff attempts to get around this fact by pleading allegations of the Sherman Law,

14   plaintiff has not identified any particular provision under this law that gives rise to a claim based

15   on a false representation of origin.

16                    **b.**      ***To The Extent Plaintiff Attempts to Enforce Any Requirements***
                          ***Under State Law Contrary to the FDA's Standards of Identity for***
17                        ***Olive Oil, Plaintiff's Claims Are Expressly Preempted***

18        Plaintiff's attempts to argue unspecified violations of California's Olive Oil Act (Health &

19   Safety Code § 11875 *et seq.*) are further improper because this Act is not identical to federal law

20   and is, therefore, preempted by the federal Nutrition Labeling and Education Act ("NLEA").  The

21   FDA is authorized to create federal "definitions" or 'standards of identity" for foods to promote

22   honesty and fair dealing in the interest of customers.[7]  Under the NLEA, Pub. L. 101-535:

23        …no State or political subdivision of a State may directly or indirectly establish
          under any authority or continue in effect as to any food in interstate commerce –
24        (1) any requirement for a food which is the subject of a standard of identity
          established under section 341 of this title that is not identical to such standard of
25        identity. . . .

26   _____
     [7] The FDA is authorized to create federal "definitions" or "standards of identity" for foods
27   "[w]henever in the judgment of the Secretary such action will promote honesty and fair dealing in
     the interest of consumers, he shall promulgate regulations fixing and establishing for any food,
28   under its common or usual name so far as practicable, a reasonable definition and standard of
     identity . . . . " 21 U.S.C. § 341.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    21 U.S.C. § 343-1(a)(1).[8]

2          Under the NLEA, a food must be labeled according to its "common or usual name" where

3    no standard of identity has been promulgated.  *See* 21 U.S.C. § 343(i)(1) (stating that a food is

4    mislabeled unless it is labeled according to its "common or usual name," where the federal

5    government has not adopted a standard of identity for that food).  The NLEA's preemption

6    provision applies not only to foods subject to a standard of identity, but to "any requirement for

7    the labeling of food of the type required by [21 U.S.C. § 343(i)(1)] . . . [,]" (e.g., the requirement

8    that a food be labeled according to its common or usual name where no standard of identity has

9    been promulgated).  21 U.S.C. § 343-1(a)(3).  The express preemption clause of the NLEA, 21

10   U.S.C. § 343-1, has been the basis of several court orders for dismissal at the pleading stage.  *See,*

11   *e.g.*, *Young v. Johnson & Johnson*, No. 11-4580 (JAP), 2012 WL 1372286, at *5 (D.N.J. Apr. 19,

12   2012) (dismissing claims preempted by § 343-1); *In re Pepsico Inc.*, 588 F. Supp. 2d 527, 532-39

13   (S.D.N.Y. 2008) (same).  This broad preemption provision is consistent with Congress's purpose

14   in adopting the NLEA, "to create uniform national standards regarding the labeling of food and to

15   prevent states from adopting inconsistent requirements with respect to the labeling of nutrients."

16   *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086 (2008).

17         The FDA has not promulgated standards of identity for the identification of extra virgin

18   olive oil and instead allows it to be labeled according to its "common or usual name."[9]

19   Accordingly, plaintiff's claim that Deoleo has violated California's standards governing the

20   quality of EVOO is preempted and must be dismissed.

21         **3.**    **Plaintiff Has Not Adequately Pled that Deoleo's Representations Regarding the Products Are "Unfair"**

22

23         To allege a UCL claim based on "unfair" practices, there is a split of authority in

24

25   [8] "'Not identical' . . . means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food

26   container, that: (i) Are not imposed by or contained in the applicable provision [or regulation]; or (ii) Differ from those specifically imposed by or contained in the applicable provision [or

27   regulation]." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1114 (S.D. Cal. 2011) (quoting 21 C.F.R. § 100.1(c)(4)).

28   [9] While the USDA has adopted standards for the quality of olive oil, these standards are voluntary, not mandatory.  *See* 75 Fed. Reg. 22363 (April 10, 2010).

Document Prepared on Recycled Paper

- 17 -

California courts regarding the necessary tests that must be met, as described in *Smith v. L.G. Electronics U.S.A., Inc.*:

> One test limits unfair conduct to that which "offends an established public policy" and is "tethered to specific constitutional, statutory, or regulatory provisions."…Another test evaluates whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and "requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."…The third test, which borrows the definition of "unfair" from the Federal Trade Commission Act, requires that "the consumer injury…be substantial;" that "the injury…not be outweighed by any countervailing benefits to consumers or competition;" and that the injury by one "that consumers themselves could not reasonably have avoided."

2014 WL 989742 (N.D. Cal. 2014) (internal citations omitted).  Although it is unclear which standard must be used by the Court in assessing plaintiff's pleading, as described above, plaintiff has not alleged sufficient facts to satisfy *any* of these standards.

**D.**    **Plaintiff Has Not Identified A Contract Or Breach Necessary To Support Counts III And IV**

Plaintiff's alleges that Deoleo breached a contract and the covenant of good faith and fair dealing (Counts III and IV) because he "entered into a contract with Defendants for the purchase of Defendants' Bertolli Extra Virgin Olive Oil," the terms of which included a representation that Deoleo's olive oil was 'extra virgin' and … would remain so for approximately eighteen months."  (Complaint, ¶¶ 85-86).  These terms "were contained on the labels of the olive oil." (*Id.*, ¶¶ 85-87).  Both claims fail as a matter of law.

To allege a cause of action for breach of contract, a plaintiff must plead: (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.  *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,* 2014 WL 211462 *14 (C.D. Cal. 2014).  "If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference."  *Otworth v. Southern Pac. Transportation Co.*, 166 Cal.App.3d at 458-459.  Alternatively, a plaintiff can plead a breach of contract claim by alleging the substance of its relevant terms, requiring a "careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *McKell v.*

DOCUMENT PREPARED
ON RECYCLED PAPER

1  *Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1489 (2006).

2  Plaintiff's purchase of the Bertolli EVOO from Safeway did not establish a contract

3  between him and Deoleo; plaintiff's failure to purchase the Bertolli EVOO directly from Deoleo

4  makes creation of a contract impossible. *See Tae Hee Lee,* 2014 WL 211462 ("because Plaintiffs

5  did not purchase their vehicles from [Defendant], it would be impossible for them to allege such a

6  purchase contract"). Privity of contract is required in order to maintain a suit on a contract. *See*

7  *Superior Gunite v. Mitzel*, 117 Cal.App.4th 301, 312-17 (2004). Even assuming plaintiff could

8  somehow overcome the lack of privity, besides stating that "the olive oil was 'extra virgin' and

9  that it would remain so for approximately eighteen months," plaintiff does not allege any other

10  terms of the contract or obligations of the parties. (Complaint, ¶¶ 85-86). Plaintiff did not attach

11  a copy of the label to his Complaint, nor are the terms of the contract set out verbatim. Plaintiff

12  also does not allege facts showing his performance of the contract, nor has he pled any facts

13  tending to show that there was a breach by Deoleo. Plaintiff has not affirmatively alleged that the

14  Bertolli EVOO that he purchased was not extra virgin olive oil. He has not alleged that the olive

15  oil that he purchased was tested, and failed to qualify as extra virgin, nor has he alleged that the

16  olive oil tasted bad or off, or that it was unusable.

17  He also does not specify what damage he has suffered. (*See id.*, ¶¶ 85-88). Plaintiff

18  claims that he, "and those similarly situated, have suffered, and continue to suffer, damages in an

19  amount which will be *proven* at trial," but he does not say what his damage actually is. (*See id.*, ¶

20  88). "No damages can be recovered for breach of contract which are not clearly ascertainable in

21  both their nature and origin." *Scheenstra v. California Dairies, Inc.*, 213 Cal.App.4th 370, 405

22  (2013) (citing Cal. Civ. Code, § 3301). Plaintiff must allege what his damages are, he cannot just

23  say that they will be proven at trial. Furthermore, Civ. Code, § 3301 states that, "[e]xcept as

24  expressly provided by statute, no person can recover a greater amount in damages for the breach

25  of an obligation, than he could have gained by the full performance thereof on both sides." Civ.

26  Code, § 3301. Therefore, at most, plaintiff has been damaged in the amount of the difference

27  between the cost of the Bertolli EVOO that he purchased and the cost of non-extra virgin olive

28  oil, and plaintiff has not alleged what that difference was.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Putting aside all of the problems discussed above, plaintiff cannot claim that he entered

2    into a contract for any of the Deoleo products that he did not purchase, as his failure to purchase

3    the products means that there was no consideration on his part and, therefore, no contract.

4    Without an underlying contract, plaintiff has no basis for a claim for breach of the implied

5    covenant of good faith and fair dealing. *See Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 36

6    (1995); *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 21 Cal.App.4th 1586, 1599 (1994).

7    "The prerequisite for any action for breach of the implied covenant of good faith and fair dealing

8    is the existence of a contractual relationship between the parties, since the covenant is an implied

9    term in the contract." *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49 (1990).

10   Without a contract, there is no independent claim for breach of the implied covenant. *See Love v.*

11   *Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1153 (1990); *Waller*, 11 Cal.4th at 36. As plaintiff has

12   failed to allege the existence of a contract, he cannot proceed on a claim for breach of the implied

13   covenant of good faith and fair dealing. *See Smith*, 225 Cal.App.3d at 49.

14   Even if plaintiff had sufficiently alleged that a contract existed, he still could not prevail

15   on his claim for breach of the implied covenant of good faith and fair dealing because there are no

16   allegations establishing that Deoleo has not provided the quality of product represented on the

17   bottle. In California, the following rules govern implied covenants of good faith and fair dealing:

18   "(1) the implication must arise from the language used or it must be indispensable to effectuate

19   the intention of the parties; (2) it must appear from the language used that it was so clearly within

20   the contemplation of the parties that they deemed it unnecessary to express it; (3) implied

21   covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied

22   only where it can be rightfully assumed that it would have been made if attention had been called

23   to it; (5) there can be no implied covenant where the subject is completely covered by the

24   contract." *Lippman v. Sears, Roebuck & Co.*, 44 Cal.2d 136, 142 (1955) (quoting *Cousins Inv.*

25   *Co. v. Hastings Clothing Co.*, 45 Cal.App.2d 141, 149 (1941)). Implied covenants are justified

26   only when "in the absence of such implied terms, the contract could not be effectively

27   performed." *Tanner v. Title Ins. & Trust Co.*, 20 Cal.2d 814, 824 (1942). The purpose of the

28   implied covenant of good faith and fair dealing, therefore, is to assure compliance with the terms

DOCUMENT PREPARED
ON RECYCLED PAPER

1    of the parties' contracts.  There is no need to imply a contractual term under the covenant of good

2    faith and fair dealing for a term that plaintiff, in the preceding cause of action, alleges is actually

3    an express term.   Furthermore, the law already provides for an implied warranty of

4    merchantability, there is no need for such a term to arise under a covenant of good faith and fair

5    dealing.

6           **E.      Plaintiff Has Not Adequately Pled Fraud Claims**

7           Plaintiff's fraud claim must fail because he has not pled it with the requisite particularity

8    necessary to sustain the allegation.  As identified above, Federal Rule of Civil Procedure 9(b)

9    requires that "[i]n allegations of fraud or mistake, a party must state with particularity the

10   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To determine whether the

11   elements of fraud have been pled to state a cause of action, federal courts will look to state law.

12   *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  Under California law, the

13   elements of a cause of action for fraud are "(a) misrepresentation (false representation,

14   concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, *i.e.,*

15   to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Id.* (internal citations

16   omitted).  A plaintiff must specifically identify the allegedly fraudulent statements or acts of

17   fraud, and plead evidentiary facts including the dates, times, places, and person associated with

18   each misrepresentation or act of fraud.  *See Kaplan v. Rose*, 49 F. 3d 1363, 1370 (9th Cir. 1994).

19          Plaintiff alleges that Deoleo has engaged in fraud by misrepresenting that its products are

20   extra virgin olive oil when, in reality, Deoleo packages the products in allegedly "defective and

21   low-quality bottles" that cause the olive oil to degrade and lose its "extra virgin" quality and

22   flavor prior to the best buy date on the bottle.  (Complaint, ¶ 94).  While Deoleo takes issue with

23   the support for all of the actions plaintiff claims amount to fraudulent conduct, for pleading

24   purposes, the specific elements of knowledge of falsity, justifiable reliance, and resulting damage

25   have been pled in a conclusory fashion that is not sufficient to meet Rule 9(b) standards.

26          Regarding knowledge of falsity, other than summarily concluding that Deoleo "knows"

27   that its products are not extra virgin based on the conclusions of one study conducted on three

28   bottles of Bertolli EVOO conducted three years prior to plaintiff's purchase of the Bertolli

1   EVOO, plaintiff has not alleged the "who, what, where, when" explaining why Deoleo has

2   knowledge or should have knowledge that the Bertolli EVOO plaintiff purchased was not truly

3   extra virgin.  Indeed, the entire reason why plaintiff alleges that the products are not extra virgin

4   is based on his own conclusion that use of light-colored bottles to package the product causes the

5   oil to degrade in the light and no longer be of extra virgin quality.  However, there are not any

6   allegations demonstrating why, presuming this is even true, that all, or even a material percentage

7   of Deoleo's EVOO products degrade due to exposure to light from clear bottles.[10]  None of the

8   studies identified by plaintiff draw this conclusion or indicate that a product was not extra virgin

9   based on the use of light-colored bottles, nor do they demonstrate that all bottles labeled as extra

10  virgin do not, in fact, contain extra virgin olive oil.  Without these allegations, there is no basis to

11  conclude that Deoleo knew that its EVOO Products were not extra virgin.

12          Plaintiff also summarily concludes that he has been damaged by Deoleo's alleged

13  misrepresentations that its products are extra virgin however, there are no specific facts actually

14  demonstrating this.  In the Complaint, plaintiff states that, after purchasing the Bertolli EVOO

15  based on his belief that he was purchasing "olive oil that was both extra virgin and made from

16  olives that were grown and pressed in Italy," (Complaint, ¶ 51), he was damaged because he

17  "later learned that the product he purchased was not extra virgin…." (*Id*., ¶ 53).  Aside from

18  summarily concluding that he "learned" the Bertolli EVOO he purchased was not extra virgin,

19  plaintiff has not alleged any facts identifying how he determined he was damaged.  For example,

20  plaintiff has not alleged that he performed any testing on the bottle of Bertolli EVOO he

21  purchased, nor has he ever stated that the taste was not consistent with extra virgin olive oil, or

22  that the quality had in some way degraded.  At best, plaintiff seems to draw conclusions that he

23  was damaged based on the testing of ***other*** bottles (not the Bertolli EVOO he purchased), some of

24  which was conducted more than three years prior to his purchase and, as described above, did not

25  fail objective criterion used to measure extra virgin olive oil.  There is no indication that any

26  

27  [10] Furthermore, the label of the Bertolli EVOO states, "store tightly capped in a cool, dark place."
    *See* Glazer Decl. Ex. D.  Just as one would not expect milk to stay good until its best if used by

28  date if not stored in the refrigerator, one cannot expect extra virgin olive oil to stay good until its
    best if used by date if it is not stored as directed.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   perceived problems with the quality of other batches of extra virgin olive oil have any bearing on

2   plaintiff's purchase, or tend to establish that he has been damaged by purchasing a product that

3   was not extra virgin.  To that end, plaintiff has not pled with any specificity facts demonstrating

4   that he was in any way damaged and, on that basis, his fraud claim should be dismissed.

5   **III.     PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE DISMISSED**

6           Plaintiff has failed to adequately plead facts sufficient to support his claim for punitive

7   damages and, as such, the prayer for relief must be dismissed.  Plaintiff seeks punitive damages

8   pursuant to his fraud cause of action, as well as ostensibly reserving them on his CLRA cause of

9   action.  However, punitive damages have not been sufficiently pled under either cause of action.

10          The Complaint seeks punitive damages based only on conclusory allegations that Deoleo

11  "should have known" that its EVOO Products allegedly do not meet IOC standards for extra

12  virgin olive oil, based on a single report from UC Davis (a study that did not review any of the

13  products at issue in this case and employed standards from a different country) which included

14  three bottles of Bertolli EVOO, and was conducted more than three years prior to plaintiff's

15  purchase of the Bertolli EVOO.  On this basis, plaintiff alleges that Deoleo "knows" that all of the

16  EVOO it sells is not extra virgin. Plaintiff also claims that Deoleo "unfairly and unlawfully"

17  attempts to capitalize on consumers' desire for Italian olive oil and have engaged in a variety of

18  "long-term marketing and advertising campaigns and strategies to deceive consumers into

19  believing that that [sic] the [] Italian Products are Italian and the [] EVOO Products are high

20  quality extra virgin olive oil."  (Complaint, ¶ 44).  Aside from making conclusory statements that

21  Deoleo knew and intended to deceive consumers which, as discussed above, are based on dubious

22  test results that are not as plaintiff has alleged, plaintiff's allegations that Deoleo engaged in

23  fraudulent conduct or false and misleading advertising of its products fall woefully short of the

24  type of factual allegations required to plead "oppression, fraud, or malice" under Civil Code §

25  3294 and controlling case law.

26          In order for plaintiffs to receive punitive damages under the CLRA and/or a fraud theory,

27  they must allege "that the defendant has been guilty of oppression, fraud, or malice."  Civ. Code §

28  3294.  Section 3294(c), specifically defines "malice," "oppression," and "fraud":

1

2

3

4

5

6

    (1) Malice means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

"(2) Oppression means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

"(3) Fraud means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

7

8

9

10

11

"Despicable conduct" has been defined by California courts as "conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people." *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 331 (1992); *see also College Hosp. v. Superior Court*, 8 Cal. 4th 704, 725 (1994); *Lackner v. North*, 135 Cal. App. 4th 1188, 1210 (2006).

12

13

14

15

16

17

18

19

20

21

22

    While California law supplies the substantive standard, the Federal Rules of Civil Procedure govern the adequacy of pleading. *See Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 986 (S.D. Cal. 1999) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under *Iqbal* and *Twombly*, plaintiffs are required to plead facts sufficient to raise a right to relief above the speculative level. *Iqbal*, 129 S. Ct. at 1949. Facts must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Additionally, Rule 9(b) particularity requirements apply to a pleading seeking punitive damages under a "fraud" theory. *See Tethys Bioscience, Inc. v. Mintz*, 2010 U.S. Dist. LEXIS 55010, at *23-24 (N.D. Cal. 6-4-2010) (applying Rule 9(b) to plaintiff's punitive damage claim under the "fraud" prong of Civil Code § 3294). Plaintiff's punitive damages claim should be dismissed because plaintiff has failed to plead sufficient facts demonstrating malice, oppression, or fraud.

23

24

25

26

27

28

    The Complaint does not plead malice. Plaintiff does not allege any facts indicating that Deoleo either intended to cause injury to the plaintiff, or that its actions constitute despicable conduct carried on with a willful and conscious disregard of the rights or safety of others. The Complaint does not allege oppression. Plaintiff has not alleged any facts demonstrating that Deoleo engaged in any "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *See* Civ. Code § 3294(c)(2). Finally, plaintiff has

1    not sufficiently pled entitlement to punitive damages under a fraud theory because he has not

2    alleged that Deoleo made any intentional misrepresentation with the intent to deprive plaintiff of

3    property or legal rights or otherwise cause injury.   Instead, plaintiff relies on conclusory

4    allegations that Deoleo "fraudulently and deceptively induced Plaintiff and those similarly

5    situated to, without limitation, to [sic] purchase their [] EVOO Products."   (Complaint, ¶ 100);

6    *see also Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*, 2011 U.S. Dist. LEXIS 122320, at

7    *42 (N.D. Cal. 10-21-2011) ("the mere allegation that an intentional tort was committed is not

8    sufficient to warrant an award of punitive damages.   Not only must there be circumstances of

9    oppression, fraud or malice, but facts must be alleged in the pleading to support such a claim.")

10   (*quoting Grieves v. Superior Court*, 157 Cal. App. 3d 159, 166 (1984)); *Tethys Bioscience, Inc.*,

11   2010 U.S. Dist. LEXIS 55010, at *17-18.   In addition to failing to plead that Deoleo engaged in

12   fraud, plaintiff does not allege any facts to show that Deoleo intended to injure plaintiff or the

13   class.   *See In re Molina*, 228 B.R. 248, 251 (B.A.P. 9th Cir. 1998) (noting that under section

14   3294, intent to injure is a prerequisite to an award of punitive damages for fraud).

15          The Complaint is completely devoid of any allegations sufficient to support a claim for

16   punitive damages under either the CLRA or a fraud theory.   Plaintiff's bare allegations, failing to

17   set forth any facts of fraudulent conduct, let alone with any particularity, do not state a claim for

18   punitive damages that is plausible on its face.   *Twombly*, 550 U.S. at 570.   The formulaic

19   recitation of the elements of the fraud and CLRA causes of action, supported by conclusory

20   statements, does not sustain a claim for punitive damages.   *See Iqbal*, 129 S. Ct. at 1949.

21   Plaintiff's failure to plead malice or oppression, and the failure to plead fraud with sufficient

22   particularity, fails to state a claim upon which relief may be granted and as such, the prayer for

23   punitive damages must be dismissed.

24                                    **CONCLUSION**

25          For the foregoing reasons, Deoleo respectfully requests that the Court grant this Motion

26   and dismiss the Complaint without leave to amend.

27

28

Dated: July 17, 2014

JEFFREY B. MARGULIES
STEPHANIE A. STROUP
JULIA B. GLAZER
**FULBRIGHT & JAWORSKI LLP**


By_____/s/ Stephanie A. Stroup_____
STEPHANIE A. STROUP
Attorneys for Defendant
DEOLEO USA, INC., formerly known as
MED FOODS, INC.

DOCUMENT PREPARED
ON RECYCLED PAPER