**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
MARIE MCCRARY (State Bar No. 262670)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiff SCOTT KOLLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SCOTT KOLLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>   Plaintiff,<br><br>        v.<br><br>MED FOODS, INC., AND DEOLEO USA, INC.<br><br>   Defendants. | CASE NO. 3:14-CV-2400-RS<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br>Date: September 11, 2014<br>Time: 1:30 p.m.<br>Ctrm. 3, 17th Floor<br><br>Hon. Judge Richard Seeborg |

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................1

II.  STATEMENT OF FACTS .................................................................................2

III.  ARGUMENT .....................................................................................................5

    A.  Legal Standard .........................................................................................5

    B.  Plaintiff Has Adequately Alleged Violations Of Common Law Fraud, The
        UCL, FAL, And CLRA. ............................................................................6

        1.  Plaintiff Was Injured By Defendants' False And Deceptive
            Representations. ...............................................................................7

            a.  Plaintiff Properly Pleads Injury-In-Fact. .............................7

            b.  The Allegations In The Complaint About The "Extra Virgin"
                Mislabeling Are Not Defeated By Defendants' Improper
                Use Of Extrinsic Evidence. ..................................................8

            c.  Plaintiff Properly Pleads That He Was Misled By Defendants'
                False Representation That the Products Were "Imported
                from Italy." ...........................................................................9

        2.  Plaintiff Has Adequately Pled Fraud With Particularity. ..............12

        3.  Plaintiff Properly States A UCL Claim Based On Violations Of Other
            Statutes. ..........................................................................................13

            a.  A UCL Claim Can Be Predicated on Violations of the CLRA
                and FAL. ..............................................................................13

            b.  Plaintiff Has Adequately Pled Violations Of The Sherman Law
                And Olive Oil Act To Support His UCL Claim. ....................14

            c.  Plaintiff's UCL Claim Is Not Barred By The Tariff Act Or
                FDCA. ..................................................................................15

            d.  Plaintiff's UCL Claim Is Not Preempted By The NLEA. ...................17

        4.  Plaintiff Has Properly Pled A Claim Under The UCL For Defendants'
            Unfair Acts. .....................................................................................18

    C.  Plaintiff Has Adequately Pled Claims for Breach of Contract. ...................19

    D.  Plaintiff Has Adequately Pled Claims For Breach Of The Covenant Of Good
        Faith And Fair Dealing. ..........................................................................20

    E.  Plaintiff Has Stated A Claim For Punitive Damages. .................................21

    F.  Plaintiff Has Standing To Represent Purchasers Of All Products. ..............23

    G.  If Defendants' Motion Is Granted, The Court Should Grant Leave To Amend. ........24

i

1

IV.   CONCLUSION...............................................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Opposition to Defendants' Motion to Dismiss

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aguilar v. Boulder Brands, Inc.*, 2013 WL 2481549 (S.D. Cal. June 10, 2013) .......................... 24

*American Burtonizing Co. v. United States,* 1926 WL 27875 (Cust. App. 1926) ....................... 15

*American Meat Institute v. United States Department of Agriculture*, Case No. 13-5281, -- F.3d – , 2014 WL 3732697 (D.C. Cir. July 29, 2014) .................................................... 18

*Anderson v. Jamba Juice Co.*, 888 F.Supp. 2d 1000, 1012 (N.D. Cal. 2012) ............................. 24

*Angie M. v. Superior Court*, 37 Cal. App. 4th 1217, 1228-29 (1995) ....................................... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6

*Astra v. Santa Clara County* 131 S. Ct. 1342 (2011)............................................................ 16

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 5

*Blegen v. Superior Court*, 125 Cal. App. 3d 959 (1981) ..................................................... 22

*Brazil v. Dole Food Co., Inc.,* 935 F. Supp. 2d 947 (N.D. Cal. 2013)......................................... 19

*Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013)......................................... 16

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011).................................... 23

*Bruton v. Gerber Products Co.*, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014).............................. 12

*Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682 (1954) ....................................................... 20

*Callaghan v. BMW of N. Am., LLC*, 2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) ...................... 23

*Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984 (E.D. Cal. 2012)................................................. 24

*CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226 (2008) ............................................ 19

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999) ................... 6

*Clancy v. The Bromley Tea Co.*, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ........................... 23

*Colgan v. Leatherman Tool Grp., Inc.* 135 Cal. App. 4th 663 (2006).......................................... 6

*Collins v. eMachines, Inc.* 202 Cal. App. 4th 249 (2011)....................................................... 14

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal. 3d 197 (1983)................... 14

*Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581(2009) ........................................ 18, 19

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)................................................. 25

*Donohue v. Apple*, 871 F.Supp.2d 913 (N.D. Cal. 2012) .................................................... 24

iii

1  *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) .............................................. 23

2  *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ...................................................................... 11

3  *Garrison v. Whole Foods Mkt. Grp., Inc.,* 2014 WL 2451290 (N.D. Cal. June 2, 2014)............. 19

4  *Gitson v. Trader Joe's Co.*, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ................................... 24

5  *In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077 (2008) .................................................... 16, 17

6  *In re Pepsico Inc.,* 588 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................. 18

7  *In re Tobacco II Cases,*  46 Cal. 4th 298 (2009)............................................................................. 6

8  *In re Toyota Motor Corp.,* 790 F. Supp. 2d 1152, 1165 (C.D. Cal. 2011) ..................................... 8

9  *Johns v. Bayer Corp.*, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ............................................... 24

10  *Jones v. ConAgra Foods, Inc.,* 912 F. Supp. 2d 889 (N.D. Cal. 2012)...................................... 19, 21

11  *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)........................................................... 12

12  *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) .............................. 24

13  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011) ..................................................... 8

14  *Lilly v. Jamba Juice Co.*, 2013 WL 6070503 (N.D. Cal. Nov. 18, 2013)...................................... 23

15  *MacDonald v. Ford Motor Co.*, 2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) .......................... 13

16  *Massachusetts Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282 (2002).................... 10

17  *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012) .............................. 12

18  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531 (9th Cir.1989)............................................. 13

19  *Morales v. Unilever U.S., Inc.*, 2014 WL 1389613, *6 (E.D. Cal. Apr. 9, 2014)......................... 11

20  *Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014)  ................. 23

21  *Mugworld, Inc. v. G.G. Mark & Assocs., Inc.,* 563 F. Supp. 2d 659 (E.D. Tex. 2007)................ 15

22  *Paduano v. American Honda Motor Company,* 169 Cal. App. 4th 1453 (2009) .......................... 11

23  *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508(2002) .................... 13

24  *Postlewaite v. Wells Fargo Bank N.A.*, 2013 WL 2443257 (N.D. Cal. June 4, 2013) ................. 11

25  *Potter v. Toei Animation, Inc.,* 839 F. Supp. 2d 49 (D.D.C. 2012) .............................................. 15

26  *Rose v. Bank of America, N.A.,* 57 Cal. 4th 390 (2013)........................................................... 15, 16

27  *Scheenstra v. California Dairies, Inc.,* 213 Cal. App. 4th 370 (2013) ......................................... 20

28  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .................... 25

iv

*Superior Gunite v. Mitzel*, 117 Cal.App.4th 301 (2004) ........................................................ 20

*Swearingen v. Yucatan Foods, L.P.*, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014) ........................ 23

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012)............................ 6

*Thompson v. 10,000 RV Sales, Inc.,* 130 Cal. App. 4th 950 (2005).......................................... 23

*Trazo v. Nestle USA, Inc.*, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013) .................................... 23

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987)........................................................ 6

*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.* (D. Mass. 2006) 2006 WL 839486.............................................................................................................................. 17

*Waller v. Truck Ins. Exch.,* 11 Cal. 4th 1, 36, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (1995)........... 20

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir.1973) ........................................................... 6

*Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011).......................................... 24

*Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547 (7th Cir. 2012) ......................................... 15, 16

*Williams v. Gerber Products Co.,* 552 F.3d 934 (9th Cir. 2008)........................................... 10, 11

*Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. 2012)............................................... 18

**Statutes**

Bus. & Prof. Code, § 17200 .......................................................................................................... 6

Bus. & Prof. Code § 17203 .......................................................................................................... 6

Bus. & Prof. Code §  17204 ......................................................................................................... 6

Bus. & Prof. Code § 17535 .......................................................................................................... 6

Cal. Code of Civ. Proc. §§ 3292  ........................................................................................... 21, 22

Civ. Code § 1780(a). .................................................................................................................... 6

**Regulations**

21 C.F.R. § 101.18 ..................................................................................................................... 14

Cal. Health & Saf. Code §§ 110505 ........................................................................................... 14

Cal. Health & Saf. Code §§ 110100 ........................................................................................... 14

Cal. Health & Saf. Code §§  110380 .......................................................................................... 14

Cal. Health & Saf. Code §§ 112877 ........................................................................................... 14

## I.     INTRODUCTION

This case seeks to end the misrepresentations by Defendants Deoleo USA, Inc. and Med Foods, Inc.[1] to consumers that their Bertolli and Carapelli branded olive oil is "EXTRA VIRGIN" and/or "IMPORTED FROM ITALY." Because the olive oil is packaged in clear, non-ultraviolet protective bottles and exposed to sunlight and heat during shipping, it degrades, such that it is not extra virgin at the time of purchase and consumption. In addition, because Defendants' olive oil is sourced from countries all over the world, shipped to Italy, blended and then bottled, it cannot legally be labeled as being "IMPORTED FROM ITALY."

Defendants' misrepresentations are important because consumers place a premium on Italian and extra virgin olive oil ("EVOO"), so Defendants induce sales that would not otherwise occur and charge prices that they could not otherwise command. Consumers seek out Italian and extra virgin olive oil because Defendants have advertised, and the media has reported, extensively on the health benefits of extra virgin olive oil, and consumers associate high quality olive oil with olives grown and pressed in the country of Italy.

Plaintiff Scott Koller filed suit to enjoin Defendants' unlawful and unfair business practice and restore to Plaintiff, and those similarly situated, the money spent as a result of Defendants' false and deceptive marketing. Defendants move to dismiss all of Plaintiff's causes of actions. But their motion contorts the allegations of the Complaint, relies on inadmissible evidence, and ignores well-established law.

For example, Defendants contend that Plaintiff was not misled by their "IMPORTED FROM ITALY" misrepresentation, but this argument is predicated on allegations that appear nowhere in the Complaint. Defendants similarly argue that Plaintiff lacks "standing" to represent purchasers on his claims unless those purchasers also bought the extra virgin grade olive oil, but this argument fails because (1) the misrepresentation about country of origin is identical on all grades of Defendants' olive oils, and in such circumstances courts are unanimous that the claim can proceed, and (2) the question is not one of "standing," but rather of typicality that should be

---

[1] Deoleo briefly notes that it is "f/k/a Med Foods, Inc." but Plaintiff alleges that they are two separate entities.  The parties have discussed this issue and will attempt to resolve it, without this Court's involvement.

deferred until Plaintiff's motion for class certification.

Defendants then spill much ink regarding a single allegation in the Complaint—*i.e.*, that a 2010 UC Davis Report concluded that Defendants' oil was not extra virgin. Defendants seek judicial notice of a statement challenging the UC Davis Report's methodology from the Chemistry Expert Group of the International Olive Counsel ("Chemistry Group"). Not only do Defendants fail to tell the Court about the UC Davis group's reply to the Chemistry Group criticism, but the argument is misguided in several other respects: first, the merits of Plaintiff's case are not to be decided on a motion to dismiss; second, judicial notice cannot properly be taken of the Chemistry Group's statement; and third, even if the UC Davis Report is flawed, Plaintiff has provided many other bases for his allegation that the olive oil was not extra virgin and that Defendants knew as much, including reports from researchers in Greece and the results of tests performed by expert consultants immediately prior to the filing of this lawsuit.  (*See* Cmplt. ¶¶ 22, 35-40.)

Defendants' other challenges to Plaintiff's UCL and breach of contract claims are equally unavailing. In addition to his UCL "fraud" claim, Plaintiff has properly pled a UCL "unlawfulness" claim based on Defendants' predicate violations of other federal and state laws and regulations, including violations of California's Consumer Legal Remedies Act, False Advertising Law, Health and Safety Act, and Sherman Food, Drug and Cosmetic Act. And the facts alleged by Plaintiff easily support a claim for breach of contract, because contrary to Defendants' understanding, privity is not required, and a label can form the basis of a written contract under California law.  Finally, there is no basis to dismiss Plaintiff's claims for punitive damages as Plaintiff has satisfied his burden under Rule 9(b) and the California Civil Code.

For these reasons, Defendants' motion to dismiss should be denied.

## II.     STATEMENT OF FACTS

Defendants import, market, and sell several different types of olive oil under the brand names "Bertolli" and "Carapelli," including "Bertolli Extra Virgin Olive Oil," "Bertolli Organic Extra Virgin Olive Oil," "Bertolli Classico Olive Oil," "Bertolli Extra Light Tasting Olive Oil," "Carapelli Il Numerato Extra Virgin Olive Oil," "Carapelli Organic Extra Virgin Olive Oil,"

"Carapelli Extra Light in Taste Olive Oil" and "Carapelli Extra Virgin Olive Oil," (the "Products"). On the front label panel of each Product, Defendants place the words "IMPORTED FROM ITALY," even though Italy is not the predominate country of origin where the olives are grown or even pressed. Rather, all of the Products are comprised predominately of oils pressed in countries such as Chile, Turkey, Tunisia, Morocco and Greece, and shipped to Italy where they are blended and bottled. (Cmplt. ¶ 25.)

While state and federal regulations require that Defendants disclose the true country of origin of their olive oils, Defendants have done so in a way that is highly misleading to reasonable consumers. Instead of clearly disclosing this important information on the front of the package in connection with the statement "IMPORTED FROM ITALY," Defendants instead place a cryptic notation on the bottom of the back of the Product packages. The notation provides a series of codes in small font, printed on a dot-matrix printer such as "E, AG, CL."[2] (Id. ¶ 25.) There is no asterisk on the front of the package, after the phrase "IMPORTED FROM ITALY," alerting consumers that other relevant information about origin may appear on the back. Plaintiff never read the cryptic print on the back of the package, but instead relied on the bold statement on the front.

On several Product labels, the country of origin deception is compounded by another false representation: the label states "EXTRA VIRGIN," which is the highest grade and quality of olive oil. (Id. ¶ 29.) The term "extra virgin" is defined by the International Olive Counsel ("IOC"), the United States Department of Agriculture ("USDA"), and the State of California, which have each established similar chemical and sensory standards for "extra virgin" olive oil to ensure they are free of defects and have a certain level of fruitiness. (Id. ¶¶ 30-32.) But three of Defendants' purported "extra virgin" products--"Bertolli Extra Virgin Olive Oil," "Bertolli Organic Extra Virgin Olive Oil," and  "Carapelli Extra Virgin Olive Oil." (collectively "EVOO Products")[3] fail

---

[2] Defendants also state that the "Product contains select high quality [olive oils] from the countries indicated by the letters below.  I=Italy, GR=Greece, E=Spain, TU=Tunisia, MA=Morocco, CL=Chile, AG=Argentina, AU=Australia." (Cmplt. ¶ 25.)

[3] The first two products were listed in the complaint as subparagraphs 19(a) and (b), but due to an unfortunate error, the product "Carapelli Extra Virgin Olive Oil" was not included; it should have been listed as subparagraph 19(h).  Paragraph 20 of the complaint defined the "Mock EVOO Products" to include the first two products but not the third; it should have given the definition as

3

each of these organization's standards by the time the bottles are sold to consumers and/or prior to the "Best if Used By" date printed on the bottle. (Cmplt. ¶¶ 36, 40.)

Most recently, in March 2014, an independent, IOC-accredited laboratory tested Defendants' EVOO Products. (Cmplt. ¶¶ 33-34.) Samples were purchased in the same region where Plaintiff made his purchases, and tested well prior to the "Best if Used By" date indicated by Defendants on the bottles. The samples did not qualify as "extra virgin" under the standards set by the IOC, USDA, or State of California. (Id. ¶ 34.)

Defendants have known for years that their EVOO Products are not "extra virgin" when sold to consumers. (Id. ¶¶ 35-40.) In June 2010, the Olive Oil Center at the University of California at Davis released a report entitled "Tests indicate that imported 'extra virgin' olive oil often fails international and USDA standards." (Id. ¶ 37.) The Davis Report evaluated various brands of olive oil, concluding that samples of Defendants' EVOO Products failed their assessments. (Id. ¶ 38.)

The EVOO Products are not "extra virgin" because they are packed in clear, non-ultraviolet protective bottles, and exposed to sunlight and heat during shipping, so they degrade prior to purchase and use. (Cmplt. ¶¶ 39-40.) It is well-known in the industry that olive oil must be stored in a cool and dark environment to preserve the "extra virgin" quality. Heat and light cause chemical reactions inside the oil, causing it to degenerate. (Id. ¶ 39) In 2007, a study conducted by researchers in Greece concluded that after just two months of exposure to light, olive oils could no longer be considered "extra virgin." (Id.) Defendants know this fact, because they did use green tinted bottles on some products.  Yet Defendants continued to use clear, non-ultraviolet protective bottles on the EVOO Products, took no action to protect the oil from heat and light during shipping, heat and light degradation in stores, and also did not remove EVOO

the products "listed in subparagraphs (a), (b), and (h)" of paragraph 19.  Paragraph 20 should not have defined the Mock EVOO Products to include the products listed in subparagraphs (e) and (f) of paragraph 19, namely the Carapelli Il Numerato Extra Virgin Olive Oil" and "Carapelli Organic Extra Virgin Olive Oil;" Plaintiff agrees to strike the references to those products from paragraph 20, without prejudice to seeking leave to replead the allegation, should additional evidence be discovered. *See* Errata to Complaint (Dkt. # 21); Declaration of Kristen Simplicio in Support of Plaintiff's Opposition to Defendants' Request for Judicial Notice (Exhs. A-C) (Dkt. # 22)).

Plaintiff's Opposition to Defendants' Motion to Dismiss

Products from store shelves after they are degraded. (Id. ¶ 40.) While Defendants provide a "Best if Used By" date on the EVOO Products, the date is eighteen months to two years after the oil is bottled, long after the oil will have degraded so that it is no longer "extra virgin." (Id.)

Because of the false and misleading claims on the Products, Defendants are able to charge a higher price for the Products than consumers would be willing to pay if the Products were labeled in a truthful, non-deceptive manner.  (Id. ¶ 47.)

In October 2013, Plaintiff purchased a bottle of Defendants' extra virgin olive oil that is among the EVOO Products. Prior to purchasing the Product, he reviewed the packaging to satisfy himself that he was purchasing extra virgin olive oil from Italy. (Id. ¶ 51.) Plaintiff relied on Defendants' affirmative representations to conclude that he was purchasing olive oil that was both extra virgin and made from olives that were grown and pressed in Italy. (Id.) Plaintiff further relied on Defendants' failure to adequately disclose that by describing the product as "Imported from Italy," they meant that (at best) it was "packed" or "bottled" in Italy and that it was neither pressed in or made predominantly from olives that had been grown in Italy. (Id.) Plaintiff purchased the "extra virgin" olive oil from a Safeway supermarket in Brentwood, California for approximately $12.00. (Id. ¶ 52.) Plaintiff later learned the product was not extra virgin, nor was it made from olives grown and pressed in Italy. (Id. ¶ 53.)  Had Defendants accurately represented the true nature of the olive oil, Plaintiff would not have purchased it or, at a very minimum, he would have paid less. (Id.)

Plaintiff filed suit to stop Defendants' deceptive practices. He alleges six causes of action, all under California law, for violations of the Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), Unfair Competition Law ("UCL") and for breach of contract, breach of the duty of good faith and fair dealing, and fraud, deceit and/or misrepresentation.

## III.    ARGUMENT

### A.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir.1973).

## B.   Plaintiff Has Adequately Alleged Violations Of Common Law Fraud, The UCL, FAL, And CLRA.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code, § 17200.  The "unlawfulness" prong "borrows" other statutes and regulations, meaning that conduct that violates any other statute or regulation (with narrow exceptions) also violates the UCL. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999) . The "unfairness" prong precludes conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Davis*, 179 Cal. App. 4th at 594-95. The "fraud" prong bars any conduct where it is shown that "members of the public are likely to be deceived." *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009)  (internal citations omitted). The CLRA and FAL also bar conduct that is likely to deceive reasonable consumers. *See, e.g., Colgan v. Leatherman Tool Grp., Inc.,* 135 Cal. App. 4th 663 (2006) , 680, 682. To make a claim under the UCL or FAL, Plaintiff must show that he suffered "injury in fact and lost money or property as a result of" the challenged practice. Bus. & Prof. Code § 17203, 17204, 17535. Similarly, under the CLRA, Plaintiff must show that he suffered "damage as a result of" the challenged practice.  Civ. Code § 1780(a).

Defendants challenge the allegations under these laws on several grounds. First, they challenge Plaintiff's allegations of injury-in-fact. They then segue into an argument that their labeling was not actually false under the UCL "fraudulent" prong or the similar provisions of the FAL and CLRA, although they do not address allegations that the labeling was misleading. Next,

they argue that Plaintiff cannot assert a UCL "unlawfulness" violation based on the other federal and state labeling laws and regulations that Plaintiff has cited. Then they argue that there is insufficient basis for a UCL "unfairness" allegation.  Finally, they argue that Plaintiff has not met his obligation under Rule 9(b) to adequately allege fraud and claims for punitive damages under the above laws. Each of these arguments is mistaken and should be rejected.

### 1.     Plaintiff Was Injured By Defendants' False And Deceptive Representations.

#### a.     Plaintiff Properly Pleads Injury-In-Fact.

Defendants first take aim at Plaintiff's allegations of injury-in-fact by contending that he failed to allege that the specific bottle he purchased was something other than extra virgin olive oil.  In fact, the Complaint does allege exactly that: the bottle he purchased was not extra virgin because the oil is adulterated and/or degrades before purchase and certainly before the "Best if Used By" date. (Cmplt. ¶¶ 29, 37-40, 51-53.) In support, he cites studies showing that "extra virgin" olive oil is degraded and no longer extra virgin after just two months of exposure to light and that Defendants package and sell the EVOO Products in clear, non protective bottles, where such degradation is certain. (Cmplt. ¶¶ 37-40.) Further, the oil degrades during shipping.  (Id. ¶ 1.) And Defendants do not remove bottles from store shelves after the oils have become degraded by light, heat and other conditions. (Id.)  In addition, he cites the UC Davis Report, which tested samples of Defendants' EVOO Products and concluded that they were not truly extra virgin.  (Id. ¶¶ 37-38.)  And he pleads that before filing suit, his counsel purchased, in the Bay Area, other bottles of the same brands and grades of olive oil, and had them tested by an IOC-approved laboratory and tasting panel, and they did not qualify as extra virgin.  (Cmplt. ¶ 33.)

To the extent that Defendants are arguing that Plaintiff needs to have tested the exact bottle he purchased in order to make a claim, they provide no authority for such a purported requirement.  Further, the argument must be rejected because it would create a Catch-22 that would insulate Defendants from all liability. If Plaintiff had tested the exact bottle of oil he purchased, Defendants would argue either that (1) the test results were invalid because the bottle had already been opened by Plaintiff and exposed to air prior to testing, or (2) if the bottle was not yet opened, Plaintiff must have bought it for purposes of testing rather than consumption, so

he did not rely on the misrepresentation and suffer loss as a result.

Plaintiff's allegations are also sufficient to show standing. As explained by the California Supreme Court, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or he would not have bought the product but for the misrepresentation." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011). Indeed, if the oil was "likely" to degrade before the "Best if Used By" date, then it is not even necessary that it had degraded before purchase, because an alleged defect need not manifest in the product actually sold to a plaintiff, if there are sufficient objective allegations to support an inference that the product was worth less than the price paid because of a latent defect that could later manifest. *In re Toyota Motor Corp.,* 790 F. Supp. 2d 1152, 1165 (C.D. Cal. 2011) (despite lack of allegation that car defect had become manifest, plaintiffs had standing where they had alleged both economic harm and "an additional, objective basis to substantiate their allegations of overpayment" for a defective product). *Id.* at 1166. Here, several facts in the Complaint set forth an objective basis from which the Court can infer that the bottle of olive oil purchased by Plaintiff was not in fact extra virgin through the "Best if Used By" date and was sold at an artificial premium based on misrepresentation.

> **b.** **The Allegations In The Complaint About The "Extra Virgin" Mislabeling Are Not Defeated By Defendants' Improper Use Of Extrinsic Evidence.**

Defendants next challenge the allegation of "injury-in-fact" by attempting to convert this Rule 12(b)(6) motion into a motion for summary judgment, seeking judicial notice of several pieces of evidence to "disprove" Plaintiff's allegation that the oil was mislabeled. The attempt fails because the Court cannot resolve the truth of asserted facts on a motion to dismiss, and even if it could, Defendants do not even challenge the truth of some of the allegations that form the basis of his mislabeling claim.

For example, Defendants argue that the UC Davis Report was flawed and seek "judicial notice" of a criticism leveled against it by the Chemistry Group, which faulted Davis researchers for failing to employ a second testing panel to conduct a second sensory analysis of the olive oil.

Not only is judicial notice not permitted of the Chemistry Group's opinion as explained in Plaintiff's separately filed Opposition to the Request for Judicial Notice, but Defendants fail to provide the Court with the Davis' researchers' reply that "the IOC does **not** require a sensory panel to get a second opinion when a panel finds that an oil sample has failed an initial test."[4] Even if these documents could be judicially noticed, the dispute between the Davis researchers and the Chemistry Group cannot be resolved at the pleading stage. And even if the UC Davis Report were discredited, there are other allegations to support Plaintiff's case, including the 2007 study from Greece and the 2014 study commissioned by Plaintiff's counsel before filing suit, which Defendants' EVOO Products failed. (Cmplt. ¶¶ 33-34, 39.)

Defendants next urge this Court to find that Plaintiff lacks standing because four years ago, another law firm dismissed a similar class action brought by a different plaintiff against Defendants. The argument finds no support in logic or law. Defendants cannot dispose of this case by resting on a four-year-old statement from an attorney in a different case who says he decided that more testing was needed to be certain of his client's claims. Nor does it matter that the prior lawsuit was never re-filed, as there are numerous inferences that could be drawn as to those parties' motivations that have nothing to do with the merits of their case, let alone this case. And in any event the other case did not even make the allegation in this one—i.e., clear, non-protective bottles and bad shipping and handling cause the olive oil to degrade.[5]

### c. Plaintiff Properly Pleads That He Was Misled By Defendants' False Representation That the Products Were "Imported from Italy."

Defendants finally argue that Plaintiff could not have been misled by the phrase "Imported from Italy," because the oil does pass through Italy on the way to the United States and they falsely claim that Plaintiff knew the true source of the oil because he reviewed the small print

---

[4] *See* http://www.oliveoiltimes.com/olive-oil-business/north-america/davis-olive-center-responds-ioc-criticism/12855, last accessed August 1, 2014 (emphasis added).

[5] Despite asking this Court to draw negative inferences from that old lawsuit, Defendants disingenuously neglect to disclose that it has spent the last three years defending another lawsuit in Washington, D.C. for falsely advertising their oils as Italian and extra virgin. There, the court most recently denied a motion for summary judgment and the parties are preparing for trial. *See generally Mostofi v. Safeway, et. al,* Case No. 2011 CA 367 B (Sup. Ct., D.C.).

1    codes on the back of the bottle. The Complaint does not support any part of Defendants'

2    argument.

3         First, Defendants are not absolved by the fact that their "Imported from Italy"

4    representation might be literally true, in that the oil passes through Italy on the way to the United

5    States, because "a perfectly true statement couched in such a manner that it is likely to mislead or

6    deceive the consumer, such as by failure to disclose other relevant information, is actionable."

7    *Massachusetts Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282 (2002) , 1289-90.  The

8    U.S. Customs and Border Protection ("CBP"), Department of Homeland Security, has already

9    determined that the labeling used by Defendants is misleading.  It examined whether it was

10   proper to label olive oil as "Imported From Italy" when some or all of the olives were grown in

11   other countries and the oil was blended and packed in Italy.  It ruled that because blending or

12   refining of oil does not constitute a "substantial transformation" of the product originating from

13   other countries, those countries must be disclosed as the true country of origin.  Thus, the

14   appropriate label in such circumstances would be "'Produced in Spain, Packed in Italy'"; or

15   "'Olive Oil Produced in Italy and Spain, Packed in Italy.'"  (Cmplt. ¶ 27; Customs Ruling HQ

16   560944, dated April 27, 1998.)

17        Second, as the Ninth Circuit has held, a misleading representation on the front of a

18   package is actionable even if "cured" on the back.  It explained:  "We disagree with the district

19   court that reasonable consumers should be expected to look beyond misleading representations on

20   the front of the box to discover the truth from the ingredient list in small print on the side of the

21   box." *Williams v. Gerber Products Co.* 552 F.3d 934, 939-40 (9th Cir. 2008).

22        Third, the Complaint clearly alleges that Plaintiff was misled by the front of the bottle,

23   and did not even read the back. It states:

24        Prior to purchasing Defendants' Bertolli brand extra virgin olive, Plaintiff
          reviewed the packaging to satisfy himself that he was purchasing extra virgin
25        olive oil from Italy. Plaintiff specifically reviewed Defendants' statements on the
          package that the product was "extra virgin" and "Imported from Italy." Plaintiff
26        relied on Defendants' affirmative disclosures to believe he was purchasing olive
          oil that was both extra virgin and made from olives that were grown and pressed
27        in Italy. Plaintiff also relied on Defendants' failure to adequately disclose that by
          "Imported from Italy" it meant that it was "packed" or "bottled" in Italy and that
28        it was not either pressed in or made (exclusively) from olives that had been grown
          in Italy.

10

1  (Cmplt. ¶ 51.) Plaintiff nowhere alleges that he reviewed or relied on any part of the back of the

2  Bertolli label. By inferring otherwise, Defendants ignore paragraph 51 of the Complaint and

3  instead engage in a creative cut and paste job to recast his allegations into a chain of events that

4  fit their argument. "Taking as true all allegations of fact and drawing all reasonable inferences in

5  favor of the Plaintiff[] (as a court must on a motion to dismiss)," *Postlewaite v. Wells Fargo Bank*

6  *N.A.*, 2013 WL 2443257, at *3 (N.D. Cal. June 4, 2013), it cannot be inferred that Plaintiff read

7  the statement regarding the true origins of Defendants' product and, even if he had, it would still

8  be deceptive because the purported disclosure is itself inadequate; there is no notation on the front

9  of the package to indicate that "Imported from Italy" is qualified on the back; and the back merely

10  gives a series of cryptic codes that have to be cross-referenced to a glossary.

11      "As a general rule, whether a business practice is likely to deceive a reasonable consumer

12  is a 'question of fact' that cannot be resolved on a motion to dismiss." *Morales v. Unilever U.S.,*

13  *Inc.*, 2014 WL 1389613, *6 (E.D. Cal. Apr. 9, 2014); *see also Williams,* 552 F.3d at 938-39

14  (same). As plaintiff has properly pled an injury-in-fact, and as the question of whether the

15  representation is deceptive cannot be determined as a matter of law, there is no basis to grant

16  Defendants' motion to dismiss.

17      Defendants attempt to draw comparisons between the facts here, and cases such as

18  *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995)  and *Paduano v. American Honda Motor*

19  *Company* (2009) 169 Cal. App. 4th 1453, in which courts found at the pleading stage that the

20  advertisements were not deceptive as a matter of law. But in both, the clarity and visibility of the

21  disclaimer was not in dispute. Here, not only is there a dispute over whether Plaintiff read the

22  disclaimer, but there is a factual dispute over whether the wording is likely to deceive a

23  reasonable consumer. In other words, this case is not "the rare situation in which granting a

24  motion to dismiss is appropriate." *Williams v. Gerber Products Co.* (9th Cir. 2008) 552 F.3d 934,

25  939. To the extent that Defendants read *Freeman* to dictate an inference that a consumer who saw

26  a portion of an advertisement must have read the entire thing, that holding was narrowed in

27  *Williams*. As the Ninth Circuit explained:

28          We do not think that the FDA requires an ingredient list so that manufacturers can
          mislead consumers and then rely on the ingredient list to correct those

11

1
2

> misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

3   *Williams*, 552 F.3d at 939-40. In other words, a court cannot draw the inference that the entire

4   package was viewed when determining if the challenged representations are misleading. *See also*

5   *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 874 (N.D. Cal. 2012) (where plaintiff

6   has read the front and part of the back of the package, denying motion to dismiss even though

7   some portions of the back of the package contained truthful representations that may have

8   dispelled confusion). Accordingly, Plaintiff has standing and has stated a claim.

9   **2.      Plaintiff Has Adequately Pled Fraud With Particularity.**

10          Defendants next argue that Plaintiff has not satisfied his obligations under Rule 9(b). In

11   fact, Plaintiff has pled, as required, "'the who, what, when, where, and how' of the misconduct

12   charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiff specifically

13   pleads that he viewed the package for Defendant's Bertolli Extra Virgin Olive Oil, where he read

14   the words "EXTRA VIRGIN" and "IMPORTED FROM ITALY" and relied on these words in

15   making the decision to purchase the Product. (Compl. ¶ 51.) He further pleads that he purchased

16   the olive oil at a Safeway in Brentwood, CA, in or around October 2013, for approximately $12.

17   (Id. ¶¶ 50-52.) Courts repeatedly have found allegations such as these to be sufficient. *See, e.g.*

18   *Bruton v. Gerber Products Co.*, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) (precise dates not

19   required; allegations that plaintiff purchased product throughout the class period sufficient under

20   Rule 9(b)); *Ben & Jerry's*, 2011 WL 2111796 (finding 9(b) satisfied where plaintiff alleged that

21   defendants' packaging was misleading).[6]

22   [6] Applying *Kearns*, the court in *Ben & Jerry's* found in a case in which the plaintiff alleged the
23   representation on defendants' ice cream was misleading, that Rule 9(b) was met because:

24   > The 'who' is Ben & Jerry's, Breyers, and Unilever. The "what" is the statement that ice cream containing alkalized cocoa is "all natural." The "when" is alleged as "since at least 2006," and "throughout the class period." The "where" is on the ice cream package labels. The "how the statements were misleading" is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a "synthetic."

25
26

27   *Id.* at *6. That same framework can be applied here easily, as the who is Defendants, the
28   "what" is the statement that the oil is "extra virgin" and "Imported from Italy," the
     "when" is "throughout the class period," around October of 2013, and "within four (4)
     years," the "where" is on the bottle, and the "how the statements were misleading" is the

12

Defendants do not identify which part of *Kearns* Plaintiff has not satisfied.  Rather, they just assert that Plaintiff has relied on conclusory statements about Defendants' knowledge of the falsehood of the misrepresentations. Defendants overstate what is required at this juncture; "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b).  *See also MacDonald v. Ford Motor Co.*, 2014 WL 1340339 (N.D. Cal. Mar. 31, 2014) (in consumer fraud case, "the pleading standard may be relaxed as to matters that are exclusively within the opposing party's knowledge.") (citing *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir.1989)). Plaintiff has satisfied this standard.[7]

### 3. Plaintiff Properly States A UCL Claim Based On Violations Of Other Statutes.

Defendants next challenge the UCL "unlawfulness" claim that is based on violations of other statutes. They contend that (1) the CLRA and FAL cannot be used as a predicate UCL violation, (2) Plaintiff has not sufficiently explained how Defendants violated the Sherman Act and California Olive Oil Act, (3) federal law preempts the California Olive Oil Act, and (4) the lack of a private right of action under the Tariff Act and the Food Drug and Cosmetic Act ("FDCA") precludes the UCL claims based on violations of those acts. Each contention is inconsistent with well-settled law.

#### a. A UCL Claim Can Be Predicated on Violations of the CLRA and FAL.

Without legal support, Defendants first assert that violations of the CLRA and FAL cannot support the violations of the "unlawfulness" prong of the UCL. This assertion is incorrect. As California courts have often repeated, "virtually any state, federal or local law can serve as the predicate for an action under section 17200." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.* 104 Cal. App. 4th 508, 515 (2002). Defendants' violations of the CLRA and FAL are thus

---

allegation that the oil has degraded to lower quality oil and that oil is derived from olives grown and pressed in countries other than Italy.

[7] Defendants also argue that Plaintiff has not been damaged, rehashing the arguments addressed in Section B.1, *supra*. Plaintiff was damaged because he paid for something he did not want and would not have purchased had he known the truth, and he paid a price premium because of the misrepresentations.

13

1  appropriately considered "unlawful" business practices under the UCL. *See e.g.*, *id.*, *Collins v.*

2  *eMachines, Inc.,* 202 Cal. App. 4th 249, 258 (2011), *reh'g denied* (Dec. 15, 2011), *as modified*

3  (Dec. 28, 2011), *review denied* (Feb. 15, 2012) ("Our conclusion that the complaint states a

4  CLRA violation means the complaints states a UCL violation as well, under the UCL's

5  'unlawful' prong."); *Comm. On Children's Television, Inc. v. Gen. Foods Corp.,* 35 Cal. 3d 197,

6  210 (1983) ("Any violation of the false advertising law, moreover, necessarily violates the unfair

7  competition law.").

8          **b.      Plaintiff Has Adequately Pled Violations Of The Sherman Law
              And Olive Oil Act To Support His UCL Claim.**

9

10         Defendants do not dispute that violations of the Sherman Law and California's Olive Oil

11  Act are a sufficient independent basis for a UCL "unlawful" claim, but argue that Plaintiff has not

12  adequately pled how Defendants violated these laws. Again, Defendants are wrong. Plaintiff's

13  Complaint is replete with allegations that Defendants have deceptively advertised and thus

14  misbranded their olive oil as "extra virgin" and "from Italy" in violation of these laws. (See, e.g.,

15  Complaint ¶¶ 22, 25, 28, 33-40, 44-47.)

16         Defendants' false and misleading advertising in these respects is prohibited by, *inter alia*,

17  Sections 110390 and 110395 of the Sherman Law. Likewise, Defendants' misbranding of their

18  olive oil is prohibited by, *inter alia*, Sections 110398, 110760, 110765, and 110770 of the

19  Sherman Law. Similarly, Defendants' conduct violates the portions of the Sherman Law that

20  incorporate the regulations promulgated by the FDA under the Food Drug and Cosmetic Act,

21  including the regulation requiring "truthful representation[s] of geographical origin." 21 C.F.R. §

22  101.18; *see also* Cal. Health & Saf. Code §§ 110100, 110380, 110505. *Id*. Finally, Defendants'

23  conduct violates the California Olive Oil Act. *See, e.g.*, Cal. Health & Saf. Code §§ 112877,

24  112891. All of these provisions are identified in Plaintiff's Complaint. (See, e.g., Complaint ¶¶

25  26, 32, 105.)

26

27

28

---

14

> **c.** **Plaintiff's UCL Claim Is Not Barred By The Tariff Act Or FDCA.**

Defendants next assert that UCL claims cannot be based on the Tariff Act or on the FDA regulations that are incorporated by reference into the Sherman Act, because neither the Tariff Act nor the FDA regulations allow for private rights of action. But the California Supreme Court has repeatedly rejected Defendants' argument, just last year again holding that the UCL provides a right to sue even if the "borrowed" law that makes the conduct unlawful under the UCL would not independently provide a right to sue:

> It is settled that a UCL action is not precluded merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the UCL, another provision must actually bar the action or clearly permit the conduct.

*Rose v. Bank of America, N.A.,* 57 Cal. 4th 390, 398 (2013) (internal notations omitted). *Rose* is consistent with constitutional jurisprudence regarding federal supremacy and preemption, because while state law cannot provide a private *federal* cause of action where none exists, a state can (unless expressly preempted) create a private cause of action to impose *state law liability* based on violations of federal law. *See, e.g.*, *id.*; *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 581-585 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law.").[8]

Defendants cite nothing in the Tariff Act that expressly bars the instant action and none of the cases cited by Defendants are on point. For example, *Potter v. Toei Animation, Inc.,* 839 F. Supp. 2d 49 (D.D.C. 2012) is inapplicable because it involved a plaintiff attempting to bring a claim directly under the Tariff Act rather than under a state law that merely borrowed the Tariff Act as a predicate "unlawfulness" violation. Likewise *Mugworld, Inc. v. G.G. Mark & Assocs., Inc.,* 563 F. Supp. 2d 659 (E.D. Tex. 2007), is focused on whether violations of the Tariff Act can

---

[8] Defendants suggest that Plaintiff's UCL unlawful claim is preempted by the Tariff Act. The Tariff Act has never been held to preempt state laws, such as the CLRA, which, like the Tariff Act include express provisions aimed at preventing deceptive geographic origin claims. Indeed, the Tariff Act's country of origin marking requirements are designed to ensure that consumers are able to easily find the country of origin for a product and are not deceived by label references to other countries. *See, e.g., American Burtonizing Co. v. United States* 1926 WL 27875 (Cust. App. 1926).

give rise to a direct private federal right of action and, in any event, is a nonbinding Texas decision. Here, like the plaintiffs in *Rose v. Bank of America*, Plaintiff has not brought his claims under the Tariff Act and thus is not seeking to "enforce" the statute. 57 Cal. 4th at 396 ("[A] UCL action does not 'enforce' the law on which a claim of unlawful business practice is based. 'By proscribing 'any unlawful' business practice, [Business and Professions Code] 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the [UCL] makes independently actionable.").[9]

Nor is Plaintiff's UCL claim barred by the FDA regulations or the Food Drug and Cosmetics Act, under which those regulations are promulgated. Plaintiff has not sued directly under the FDA regulations or FDCA but only under the state Sherman Act, which independently adopts the FDA regulations as provisions of state law. The California Supreme Court has made clear that the FDCA does not bar private claims predicated on the Sherman Law, because the Sherman Law merely replicates, and does not exceed, the requirements that would be imposed by federal law. *See In re Farm Raised Salmon Cases,* 42 Cal. 4th 1077, 1087-1099 (2008); *see also Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 957 (N.D. Cal. 2013) (agreeing with In re Farm Raised Salmon; holding "Congress did not intend to preclude private enforcement actions of state laws that mirror the FDCA").

As in *In re Farm Raised Salmon Cases*, Plaintiff "do[es] not seek to enforce the FDCA; rather, [Plaintiff's] deceptive marketing claims are predicated on violations of obligations imposed by the Sherman Law, something that state law undisputedly allows. That the Sherman Law imposes obligations identical to those imposed by the FDCA . . . does not substantively transform [Plaintiff's] action into one seeking to enforce federal law." *Id*. at 1095.[10]

---

[9] As the Seventh Circuit recently recognized, the holding in *Astra v. Santa Clara County,* 131 S. Ct. 1342 (2011)  is inapplicable because it is limited to the third-party beneficiary context. *See Wigod*, 673 F.3d at 581. In *Astra*, the Supreme Court held that the absence of a private right of action in a federal law was important because it demonstrated that the plaintiffs were not intended third-party beneficiaries and thus could not sustain contract causes of action on this basis. 131 S. Ct. at 1348.

[10] The term "identical" in this context does not mean "exactly the same," but rather that a "State or local requirement is consistent with the Federal requirement." *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1086 n. 8.

**d.     Plaintiff's UCL Claim Is Not Preempted By The NLEA.**

Defendants' final preemption argument, regarding California's Olive Oil Act, also should be rejected. Defendants cite a portion of the Nutritional Labeling and Education Act's ("NLEA") express preemption clause that no "State may directly or indirectly establish . . . as to any food in interstate commerce . . . any requirement for a food which is the subject of a standard of identity . . . that is not identical to such standard of identity." (Def. Br. (Dkt. #14) at 16.) Yet Defendants admit there is no "standard of identity" for "extra virgin" olive oil. (Id. at 18.) Accordingly, the NLEA's express preemption provision, by its plain terms, does not apply. Plaintiff's claims are similar to those held not preempted in *Vermont Pure Holdings, Ltd. v. Nestle Waters North America,* Inc*.,* 2006 WL 839486 (D. Mass. 2006) , the reasoning of which was cited approvingly by the California Supreme Court.  *See In re Farm Raised Salmon*, 42 Cal. 4th at 1096 n. 18. *Vermont Pure* involved allegations under multiple states' unfair competition laws that certain bottled water was falsely marketed as "pure" despite testing that revealed the water was contaminated. 2006 WL 839486, *9-11. The court there held that because the FDA had not defined the term "pure" and thus "[n]o federal standards of identity for bottled water purity exist[ed]," there was "no Federal requirement to be given preemptive effect" and preemption therefore "does not occur." *Id.*

Defendants nevertheless argue that NLEA's express preemption provision applies based on "the requirement that a food be labeled according to its common or usual name where no standard of identity has been promulgated." (Def. Br. at 18.) But Defendants do not explain or establish what California Olive Oil Act "requirement" might be inconsistent with the FDCA requirement that a food be labeled with its "common or usual name." Plaintiff's complaint alleges that what Defendants put in their "extra virgin" bottles of olive oil is *not* the substance commonly known as "extra virgin olive oil," but some other substance. The "common name" requirement does not provide Defendants with a free pass to put anything they want into a bottle labeled "extra virgin olive oil." The California Olive Oil Act merely provides an objective standard for determining whether the substance Defendants call "extra virgin olive oil" is really the substance commonly known as extra virgin olive oil.

The cases Defendants cite from other jurisdictions in support of dismissal do not suggest otherwise. *In re Pepsico Inc.,* 588 F. Supp. 2d 527 (S.D.N.Y. 2008), for example, found preemption because federal law was *not* silent on the labeling standards for the municipal source of bottled water (unlike olive oil), and the label at issue *complied* with these standards. *Id*. at 537. The court in *Pepsico* expressly distinguished its holding from the holding in *Vermont Pure*, reasoning that *Vermont Pure* recognized that "state law claims based on issues addressed by federal regulation were permitted only to the extent they were based on or parallel to federal regulations, but *if federal law did not address the issue at all, the claims were permitted to go forward*." 588 F. Supp. 2d at 534 (emphasis added). Likewise, the unpublished decision *Young v. Johnson & Johnson*, Civ. Act., 2012 WL 1372286 (D.N.J. 2012) is not on point as it involved representations that were expressly required and thus also in compliance with the FDCA.

### 4.   Plaintiff Has Properly Pled A Claim Under The UCL For Defendants' Unfair Acts.

Defendants next argue that Plaintiff cannot show "unfairness" under the UCL, as he has not satisfied any of the various standards used by California courts to evaluate whether conduct is unfair. Defendants are mistaken.

Plaintiff has pled sufficient facts to satisfy all of the unfairness tests. First, Plaintiff's allegations are directly "tethered to specific constitutional, statutory, or regulatory provisions." *Davis v. Ford Motor Credit Co.,* 179 Cal. App. 4th 581, 595 (2009). Both misleading statements – "Imported from Italy" and "Extra Virgin Olive Oil" – involve regulatory and legal standards.[11] Second, Plaintiff can show unfairness because the injury is "not outweighed by any countervailing benefits" and the injury is one "that consumers themselves could not reasonably have avoided." *Id.* at 597. Defendants' country-of-origin disclaimer was hidden, in violation of federal regulations, and Plaintiff could not have known Defendants' oil was sub-par before purchasing. Finally, unfairness can be shown where a business practice is "immoral, unethical,

---

[11] Sitting *en banc*, the D.C. Circuit explained just last month that the government has a "substantial" interest in ensuring consumers have the information required by its country of origin regulations, and further found that "value of this particular product information to consumers a matter of common sense." *American Meat Institute v. United States Department of Agriculture*, Case No. 13-5281, -- F.3d – , 2014 WL 3732697, *4-5 (D.C. Cir. July 29, 2014). The D.C. Circuit further found the information to be of utmost, material importance to consumers.

18

oppressive, unscrupulous or substantially injurious to consumers." *Davis*, 179 Cal. App. 4th at 594-95. As the Complaint sets forth, Defendants knew their olive oil was not extra virgin or Italian, but labeled the Products that way to prey on consumer demand, to increase profits and to induce consumers to purchase. Consumers are thus routinely overcharged as a result of Defendants' deceptive labeling. (Cmplt. ¶ 47.)

### C.     Plaintiff Has Adequately Pled Claims for Breach of Contract.

Defendants make a number of arguments against Plaintiff's breach of contract claim: that a product label is not a contract, that Plaintiff has not adequately alleged the terms of the contract, that there is no privity, and that Plaintiff has not sufficiently alleged the damages he suffered as a result of the breach. Each of these arguments is incorrect.

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado* (2008) 158 Cal. App. 4th 1226, 1239. Plaintiff alleges all these elements: (a) the label promised that in exchange for purchase, Plaintiff would receive "extra virgin" olive oil, (b) Plaintiff performed by paying money, (c) Defendants failed to provide extra virgin oil, and (d) Plaintiff was damaged as a result in that he lost the money he spent.

Defendants argue that Plaintiff does not adequately allege the terms of the contract, or any facts to show there has been a breach. But Plaintiff describes the label, and pleads that he was promised "extra virgin" olive oil that was "Imported from Italy," and received neither. These allegations are sufficient to state a claim for breach of contract.  *See*, *e.g.*, *Jones v. ConAgra Foods*, *Inc.*, 912 F. Supp. 2d 889, 904  (N.D. Cal. 2012) (holding that claims on labels of "100 percent natural" and "organic" constitute valid claims sounding in "quasi-contract"); *Garrison v. Whole Foods Mkt. Grp., Inc.* 2014 WL 2451290 at *6 (N.D. Cal. June 2, 2014) (declining to dismiss breach of contract claim based on label).[12] Notably, Defendants point to no authority

---

[12] *But see Brazil v. Dole Food Co., Inc.,* 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013) (holding product descriptions on labels are not "promises of defect-free products" and therefore cannot constitute basis for breach of warranty claim).

1   suggesting that the representations on the label are not promises sufficient to establish the basis

2   for a breach of contract claim. And Defendants cite only *Superior Gunite v. Mitzel*, 117

3   Cal.App.4th 301 (2004) for the boilerplate proposition that privity of contract is required to

4   maintain a suit.  But privity is not required "where [like here] the purchaser of a product relied on

5   representations made by the manufacturer in labels on advertising material." *Burr v. Sherwin*

6   *Williams Co.*, 42 Cal. 2d 682, 696 (1954).

7        Finally, citing *Scheenstra v. California Dairies, Inc.,* 213 Cal. App. 4th 370, 405 (2013),

8   *review denied* (Apr. 17, 2013)—a case about a business dispute over "lost profits"—Defendants

9   argue that Plaintiff is required to quantify his damages at the pleading stage. That is not the law,

10   and that is not the holding of *Scheenstra*, which merely re-states the general contract law

11   proposition that damages must be "ascertainable." The amount or nature of Plaintiff's damages is

12   not a question before the Court on a motion to dismiss. In any event, Plaintiff pleads that he lost

13   the entire value of his purchase price, as he received a product he did not want, and in any event

14   he lost the difference in value between what he was promised (extra virgin olive oil) and what he

15   received (olive oil).

16        **D.    Plaintiff Has Adequately Pled Claims For Breach Of The Covenant Of Good**
          **Faith And Fair Dealing.**

17        Defendants next argue that Plaintiff has no basis for a claim under the implied covenant of

18   good faith and fair dealing, in that there was no contract and there were no "implied" promises

19   that were breached. Again, Defendants are incorrect. On the first point, because the label is a

20   valid express contract, the covenant of good faith and fair dealing "is implied as a supplement to

21   the express contractual covenants, to prevent a contracting party from engaging in conduct that

22   frustrates the other party's rights to the benefits of the agreement" even if it does not technically

23   violate the express terms of the agreement. *See Waller v. Truck Ins. Exch.,* 11 Cal. 4th 1, 36

24   (1995) .

25        On the second point, Plaintiff does allege that Defendants violated several implied

26   promises in addition to the express promise that the bottles contained extra virgin olive oil. He

27   states, for example, that there was an implied promise that the olive oil would be packaged and

28   handled in a way that ensured that the extra virgin quality of the oil would be maintained. (Cmplt.

20

¶ 91.) Plaintiff alleges that Defendants breached that implied promise by packaging the oil in clear, non-protective glass bottles and failing to handle the oil in a manner sufficient to ensure that the oil was actually extra virgin when it reached store shelves and, in any event, through the "Best if Used By" date.[13]

### E.    Plaintiff Has Stated A Claim For Punitive Damages.

Defendants also argue that Plaintiff's claim for punitive damages should be dismissed because the "conclusory statements" do not satisfy Rule 9(b) or Civ. Code § 3294.  Defendants cite no cases to suggest that a party who complies with Rule 9(b) must meet an even higher standard to show an entitlement to punitive damages for fraud. Nevertheless, Plaintiff's allegations, taken as a whole and accepted as true, sufficiently plead his entitlement to punitive damages.

A plaintiff may recover punitive damages for claims of breach of an obligation not arising from a contract[14] if the trier of fact finds by clear and convincing evidence that the defendant was "guilty of oppression, fraud, or malice."  Cal. Code of Civ. Proc. §§ 3292(a).  "Oppression" means "despicable conduct[15] that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.,* subd. (c)(2).  "Fraud" means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." *Id.,* subd. (c)(3).  "Malice" means "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.,* subd. (c)(1).[16]  A plaintiff can recover punitive damages by establishing *one or more* of these statutory

---

[13] In the event that the Court finds that Plaintiff did not adequately plead a breach of contract or breach of the implied covenant of good faith and fair dealing, Plaintiff requests leave to amend to assert a claim of unjust enrichment. *See Jones*, 912 F. Supp. 2d at 904.

[14] Plaintiff seeks punitive damages based on his  fraudulent misrepresentation and CLRA causes of action. (Compl. ¶ 71; Prayer for Relief, ¶ E(2)).

[15] "Despicable conduct" is conduct that is so "vile, base, or contemptible" that it would be "looked down upon and despised by ordinary decent people." *Angie M. v. Superior Court,*  (1995) 37 Cal. App. 4th 1217, 1228-29 (1995).

prongs. *Id.,* subd. (a) (identifying prongs in the alternative).

For example, Plaintiff alleges that Defendants knowingly and intentionally make misrepresentations about their olive oil by marketing, labeling, and selling their oil as "Extra Virgin" and "Imported From Italy." (*See, e.g.,* Compl. ¶¶ 1, 22.)  In particular, Plaintiff alleges that Defendants represent to consumers that their olive oil is "extra virgin" even though they have been aware that their olive oils do not maintain their "extra virgin" quality at least since 2010 when the University of California at Davis issued its report.  (*Id.* ¶¶ 37-40.) Additionally, Plaintiff alleges that unlike their competitors, Defendants failed (and have continued to fail) to take any steps to prevent the degradation of the quality of their olive oil. (*Id.* ¶ 48.)  Further, Plaintiff alleges that Defendants pack their olive oil in inferior bottles despite their knowledge that doing so causes the oil to degrade quicker and lose its "extra virgin" quality before the "Best if Used By" date printed on the bottle.  (*Id.* ¶¶ 39-40, 49.) Further, Plaintiff alleges that even though Defendants know that they do not use olives grown and pressed in Italy to manufacture their olive oil, they represent to consumers that their oil is "Imported from Italy."  (*Id.* ¶¶ 23-28.) Additionally, Plaintiff alleges that Defendants intentionally engage in these fraudulent practices to capitalize on consumer desire for the health and taste benefits of Italian "extra virgin" olive oil (*id.* ¶¶ 41-47) and to increase their profits. (*Id.* ¶¶ 78, 108.)  Finally, Plaintiff alleges that Defendants' fraudulent misrepresentations caused him and others similarly situated to purchase (and pay more for) Defendants' olive oil. (*Id.* ¶¶ 47-48, 53.)

These allegations adequately plead Plaintiff's entitlement to punitive damages under each of the three statutory prongs.  Plaintiff sufficiently pled entitlement to punitive damages under the oppression prong[17] by alleging that Defendants engaged in despicable conduct[17] by misrepresenting

---

[16] In order to support punitive damages on this basis of "malice," the plaintiff must "establish that the defendant was aware of the probable dangerous consequences of his conduct, and he willfully and deliberately failed to avoid those consequences." *Blegen v. Superior Court,* (1981) 125 Cal. App. 3d 959, 962-63 (1981).

[17] Although Plaintiff did not use the term "despicable" or "oppressive" in his Complaint, that is not fatal to a claim for punitive damages. *See Blegen v. Superior Court* (1981) 125 Cal. App. 3d 959, 963 ("Where, as here, the complaint pleads sufficient facts to apprise the defendant of the basis upon which relief is sought, and to permit the drawing of appropriate legal conclusions at trial, absence of the labels 'willful,' 'fraudulent,' 'malicious' and 'oppressive' from the complaint, does not defeat the claim for punitive damages.").

to consumers (who desired the Italian extra virgin olive oil) that their olive oil was in fact Italian and "extra virgin" so that they would purchase Defendants' oil. (Compl. ¶¶ 22, 25, 28, 33-40, 44-47.)  Further, Plaintiff sufficiently pled entitlement to punitive damages under the fraud prong by alleging that Defendants intentionally (i.e., with knowledge of the falsity) misrepresented their olive oil as "Italian" and "extra virgin" so that consumers would purchase it. (*Id.*) *See Thompson v. 10,000 RV Sales, Inc.*, 130 Cal. App. 4th 950, 963 (2005)  (holding that, by engaging in the undisclosed practice of including trade-in-over allowances in the cash price of vehicles it sold, defendant committed intentional fraud sufficient to support punitive damages). Finally, Plaintiff sufficiently pled entitlement to punitive damages under the malice prong by alleging that Defendants knew that they were misrepresenting their olive oil as "Italian" and "extra virgin," but did so (and failed to take steps to preserve their olive oil) with a willful and conscious disregard of the injuries their misrepresentation caused Plaintiff and those similarly situated. (Compl. ¶¶ 22, 25, 28, 33-40, 44-47.)  *See Thompson*, 130 Cal. App. 4th at 963 (holding that, by engaging in the undisclosed practice of including trade-in-over allowances in the cash price of vehicles it sold, defendant acted in conscious disregard to the rights of consumers sufficient to support punitive damages). These allegations are more than sufficient to adequately plead a claim for punitive damages and Plaintiff's request should not be stricken.

### F.    Plaintiff Has Standing To Represent Purchasers Of All Products.

Defendants insert a brief, canned argument that Plaintiff does not have "standing" to represent a class of purchasers of all Products whose labels contained the deceptive phrase "Imported from Italy," because Plaintiff only purchased one of the Products and was therefore not injured.  Defendants' argument improperly conflates standing with the class certification typicality inquiry and has been soundly rejected by courts in this District.  *See, e.g., Clancy v. The Bromley Tea Co.*, 2013 WL 4081632, *4 (N.D. Cal. Aug. 9, 2013) (collecting cases).[18]

---

[18] This District routinely adopts this sound reasoning. *See, e.g, Swearingen v. Yucatan Foods, L.P.*, 2014 WL 553537, *3 (N.D. Cal. Feb. 7, 2014); *Morgan v. Wallaby Yogurt Co., Inc.*, 2014 WL 1017879, *8 (N.D. Cal. Mar. 13, 2014) ; *Lilly v. Jamba Juice Co.*, 2013 WL 6070503, *1 (N.D. Cal. Nov. 18, 2013); *Callaghan v. BMW of N. Am., LLC*, 2014 WL 1340085, *4 (N.D. Cal. Apr. 2, 2014); *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, *4 (N.D. Cal. Aug. 9, 2013). And countless district courts reached the same conclusion before *Clancy. See, e.g., Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011); *Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1162 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F.Supp.2d 984, 992 (E.D.

23

1    Plaintiff has demonstrated "standing" because he was injured by Defendants' false

2  representation that the product was "Imported from Italy" and "extra virgin." Further, his injury is

3  identical to the class members' injuries resulting from Defendants falsely labeling their other

4  Products as "Imported From Italy." Under countless cases, those allegations are enough to

5  establish injury, reliance, and standing at this stage. *See, e.g., Gitson v. Trader Joe's Co.,* 2014

6  WL 1048640 (N.D. Cal. Mar. 14, 2014) ("[T]he similarity of the alleged misrepresentations holds

7  significant weight."); *Anderson v. Jamba Juice Co.*, 888 F.Supp. 2d 1000, 1012 (N.D. Cal. 2012)

8  (holding that plaintiff has standing under Article III, the UCL, FAL and CLRA, because "[i]f

9  there is a sufficient similarity between the products, any concerns regarding material differences

10  in the products can be addressed at the class certification stage.").

11    Defendants do not address these cases, but instead cite only boilerplate language about

12  standing, relying on inapplicable cases.[19] *See, e.g., Smedt v. Hain Celestial Grp., Inc.*, 2014 WL

13  2466881 (N.D. Cal. May 30, 2014) (dismissing claims for unpurchased products where no

14  allegations in the complaint suggested the claims would be similar). Nor do Defendants even

15  attempt to identify any material differences between the various labels or the factual or legal

16  inquiries that would be raised.  As such, this matter should be addressed at class certification.

17    **G.    If Defendants' Motion Is Granted, The Court Should Grant Leave To Amend.**

18    If a complaint is dismissed, "leave to amend should be granted unless the court determines

19  that the allegation of other facts consistent with the challenged pleading could not possibly cure

---

20  Cal. 2012);.*Donohue v. Apple*, 871 F.Supp.2d 913, 922 (N.D. Cal. 2012); *Koh v. S.C. Johnson &
21  Son, Inc.*, 2010 WL 94265, *3 (N.D. Cal. Jan. 6, 2010); *Wang v. OCZ Tech. Group, Inc.*, 276
   F.R.D. 618, 632-33 (N.D. Cal. 2011).

22  [19] Defendants' other cases employ flawed reasoning. *Granfield v. NVIDIA Corp.*, 2012 WL
23  2847575 (N.D.Cal. July 11, 2010), takes its holding from an out of context quote from *Johns v.
   Bayer Corp.*, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010). The holding in *Johns* is much more
24  nuanced than *Granfield* suggests.  There, the plaintiff had relied on a misrepresentation that did
   not appear on the similar product, a fact the court considered to be dispositive in determining
25  whether the plaintiff had standing to sue on behalf of purchasers of the second, similar product.
   *See id.* at *5; *see also Aguilar v. Boulder Brands, Inc.*, 2013 WL 2481549, *2 (S.D. Cal. June 10,
26  2013) (distinguishing *Johns* on this basis). And *Larsen v. Trader Joe's Co.*, 2012 WL 5458396
   (N.D. Cal. June 14, 2012) provides few facts to provide guidance, and is an outlier.  *See* footnote
27  18, *supra*.

28

24

the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of the allegations insufficient to state a claim, Plaintiff requests leave to amend.

**IV.    CONCLUSION**

For the foregoing reasons, this Court should deny Defendants' motion to dismiss.

Dated: August 14, 2014                                  **GUTRIDE SAFIER LLP**

Adam J. Gutride, Esq.
Attorneys for Plaintiff