UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCOTT KOLLER,

    Plaintiff,

    v.

MED FOODS, INC., et al.,

    Defendants.

Case No. 14-cv-02400-RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

In this putative class action, named plaintiff Scott Koller seeks to establish that Bertolli and Carapelli brand olive oil products are misleadingly labeled. Specifically, Koller first alleges that several products marketed as "extra virgin" olive oil do not warrant that designation because they do not meet the applicable quality standards when bottled and/or degrade too quickly as the result of defendants' packaging, handling, and storage practices. Koller further contends that both "extra virgin" and non-extra virgin olive oil products are deceptively marketed as "imported from Italy," when in fact the olives used to make the oil come from any of a number of other countries.

Defendant Deoleo USA, Inc.[1] moves to dismiss, primarily contending Koller has failed to establish standing. Deoleo contends Koller has not alleged sufficient facts to show that the

---

[1] Deoleo identifies "Med Foods, Inc." as its own prior name. Koller has alleged Med Foods is a separate entity. Koller indicates, however, he expects this issue to be resolved by the parties without Court involvement.

particular bottle of olive oil he purchased necessarily failed to meet "extra virgin" standards. As to the origin of the olives, Deoleo insists that the allegations made in Koller's original complaint demonstrate that he read a label on the back of the bottle, which includes a disclosure that the olives may come from several different countries. Thus, Deoleo contends, Koller could not have been misled. Deoleo's arguments would require a level of proof at the pleading stage that simply is not required, even under the *Iqbal/Twombly* regime and/or the standard for alleging fraud under Rule 9 of the Federal Rules of Civil Procedure. Additionally, any questions as to whether Koller may advance class claims relating to specific products he did not purchase are more properly analyzed at the class certification stage. Accordingly, the motion to dismiss will be denied.

## II. BACKGROUND

Deoleo is an importer and distributor of Bertolli and Carapelli brand olive oils, including the following products, as to which the complaint asserts claims: Bertolli Extra Virgin Olive Oil, Bertolli Organic Extra Virgin Olive Oil, Bertolli Classico Olive Oil, Bertolli Extra Light Tasting Olive Oil, Carapelli Il Numerato Extra Virgin Olive Oil, Carapelli Organic Extra Virgin Olive Oil, Carapelli Extra Light in Taste Olive Oil, and Carapelli Extra Virgin Olive Oil. Plaintiff alleges that Deoleo falsely claims that Bertolli and Carapelli extra virgin olive oils ("EVOO") are in fact extra virgin quality, and misleads consumers into believing that all the olive oils in dispute are made solely from Italian olives because the labels state that the products are "Imported From Italy," when, in reality, the olives used to produce the oils originate in several countries.

Koller alleges he purchased a bottle of Bertolli EVOO from a Safeway supermarket in Brentwood, California for approximately $12.00. Koller allegedly selected the product because (1) the olive oil was extra virgin, and (2) the phrase "Imported From Italy" meant that the oil was made exclusively from olives grown and pressed in Italy. In actuality, Koller contends, the oil was not extra virgin (or at least it did not maintain that level of quality through the "Best If Used By" date) and it was not made from olives grown and pressed in Italy.

Koller asserts four claims for relief: (1) violation of California's Consumer Legal

Remedies Act, Civil Code § 1750 *et seq.* ("CLRA'); (2) violation of California's False Advertising Law, Business and Professions Code § 17500, *et seq.*; (3) fraud, deceit and/or misrepresentation; and (4) violation California's Unfair Competition Law, Business and Professions Code § 17200 et seq. ("UCL").  He seeks to certify three classes:

> 1) All persons who, between May 23, 2010 and the present, purchased in California, any of Defendants' Products represented as Imported from Italy (the "California Italian Class");
>
> 2) All persons who, between May 23, 2010 and the present, purchased in the United States, any of Defendants' EVOO Products (the "EVOO Class"); and,
>
> 3) All members of the EVOO Class who made an EVOO Product purchase in California (the "California EVOO Subclass").

When Deoleo moved to dismiss the original complaint in this action, Koller filed an "errata" to the complaint together with his opposition.  Because of the uncertainty created thereby, the parties were directed to meet and confer, which ultimately resulted in the filing of a First Amended Complaint, and this renewed motion to dismiss.

### III.  LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id*. The determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id*. at 1950.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting

1   fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and
2   how" of the charged misconduct. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir.
3   2003). In other words, "the circumstances constituting the alleged fraud must be specific enough
4   to give defendants notice of the particular misconduct so that they can defend against the charge
5   and not just deny that they have done anything wrong." *Id*.

6       A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil
7   Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of*
8   *Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may
9   be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts
10  alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
11  (9th Cir. 1990).

12      Deoleo also invokes Rule 12(b)(1), arguing that Koller's purported lack of standing
13  deprives the Court of subject matter jurisdiction. A motion to dismiss for lack of subject matter
14  jurisdiction may be made on the grounds that the lack of jurisdiction appears from the "face of the
15  complaint," or may be based on extrinsic evidence apart from the pleadings. *Warren v. Fox*
16  *Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *McMorgan & Co. v. First Cal.*
17  *Mortgage Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995). Where the jurisdictional issue is whether
18  the plaintiff has standing, dismissal is also appropriate under Rule 12(b)(6) absent sufficient
19  factual allegations in the complaint, which, if proven, would confer standing. *Sacks v. Office of*
20  *Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006).

21
22                        IV. DISCUSSION
23      A.  Claims arising from labeling as "extra virgin"
24      The First Amended Complaint alleges that Deoleo's labeling of some of its products as
25  "extra virgin" olive oil is misleading because (1) the oil is mixed with refined oil and does not
26  warrant the description from the outset, and/or (2) it is bottled in "clear, non-ultraviolet protective
27  bottles" that do not protect it from degradation by sunlight and heat. Thus, Koller contends,
28

Deoleo "know[s] that the oil will not qualify (and cannot be defined) as 'extra virgin' at the time it is sold to consumers." Deoleo contends the allegations of the complaint are insufficient to show with the requisite plausibility that Koller suffered cognizable injury.[2]

Deoleo's attack on the allegations employs two prongs. First, Deoleo requests judicial notice of certain studies referenced in the complaint, which Koller alleges show that "imported 'extra virgin' olive oil often fails international and USDA standards" and that packaging olive oil in clear bottles can lead to rapid degradation of its quality. While judicial notice of the contents of these documents is technically proper given that Koller has cited them in the complaint, adjudicating what those studies do or do not *prove* is beyond the appropriate scope of inquiry at the pleading stage. Indeed, while a plaintiff must plead sufficient *facts* to support a reasonable inference of liability, there is still no requirement that a plaintiff include *evidence* in a complaint, much less prove the case at that stage. The allegations of fact that Deoleo's oils do not meet the established standards for "extra virgin" either when bottled and/or through degradation resulting from the packaging and handling practices, are sufficiently detailed and plausible without reference to the studies in the first instance. The studies may, if admissible, constitute *evidence* in support of the claims, and like the testing conducted by counsel also referenced in the complaint, may bear on the reasonableness of counsel's pre-suit investigation, but they are not controlling as to whether the complaint states a claim. Koller has alleged as a factual matter without equivocation that the oil in question does not meet the applicable standards, and there is nothing implausible about that assertion. Whether he can *prove* it remains to be seen, but dismissal at the pleading stage is not warranted.

The second prong of Deoleo's challenge is closely related, but focuses on the particular bottle of oil Koller purchased. Deoleo argues that regardless of what studies or counsel's testing might have shown with respect to *other* bottles of olive oil, Koller cannot establish that *his* bottle

---

[2] Deoleo presents its arguments first as an attack on Koller's *standing*, arguing that without injury, he has no standing to challenge the labeling. Deoleo then argues that the same basic points also support a conclusion that Koller has not established the elements of his claims.

did not contain oil meeting the definition of "extra virgin" when he purchased it. It is true that Koller does not allege he tested that particular bottle, and that under his degradation theory, it is theoretically possible that some percentage of Deoleo's products reach the consumer in a condition that still meets the applicable standards. The theory, however, is that Deoleo is able to command a price premium by representing the olive oil in question as "extra virgin." In the event Koller is able to prove his allegations that the oil generally does not warrant that label because of its quality when first bottled and/or because of Deoleo's packaging and handling practices, it would hardly be a defense that some bottles may nevertheless meet the minimum standards when purchased.

Koller, and each consumer who purchases "extra virgin" olive oil, is entitled to receive oil that meets that definition by design, not by happenstance. If Koller succeeds in proving that the oil typically does *not* qualify as "extra virgin," then consumers likely would not pay a price premium for it, even if they knew some bottles might still qualify. Thus, even if the bottle Koller bought happened to meet the minimum standards, he still suffered a cognizable injury in paying that price premium.

### B. Claims arising from labeling as "imported from Italy"

The products in dispute are labeled on the front as "imported from Italy." Koller also points to various marketing materials reinforcing the idea that the product is Italian in origin. Deoleo seeks dismissal on grounds that Koller could not have been misled because, Deoleo contends, the allegations of the original complaint reveal that he read the label on the *back* of the bottle. The labels on the backs of the products contain disclosures that the "[p]roduct contains select high quality [olive oils] from the countries indicated by the letters below. I=Italy, GR=Greece, E=Spain, TU=Tunisia, MA=Morocco, CL=Chile, AG=Argentina, AU=Australia" along with a dot matrix print of one or more those country codes.

Koller's original complaint did not expressly allege he had ever read the back label. It did, however, assert that the "best if used by" date shown on the back label was part of a contract

between him and Deoleo. While the breach of contract claim and other references to the back label have been omitted from the First Amended Complaint, Deoleo argues Koller cannot use the amendment to escape the import of his prior allegations that he did read and rely on the back label. Had he expressly alleged as much in the original complaint, Koller would now indeed be bound, notwithstanding the amendment. Merely claiming the back label supplied contract terms, however, is not tantamount to admission that he had read the label.

Moreover, even assuming that, contrary to the allegations of the First Amended Complaint, Koller did see the back label insofar as he noticed and relied on the "best if used by" date, it does not follow that he necessarily must have, or even should have, seen the information about the origin of the olives. Deoleo will remain free to defend, of course, by contending that the phrase "imported from Italy" is not misleading for any number of reasons, including asserting that back label disclosures are adequate. At this juncture, however, its contention that Koller is precluded from claiming he was misled is unavailing.

C. Rule 9(b)

Deoleo separately contends that the complaint fails to meet the heightened standard under Rule 9(b) for pleading fraud. Deoleo does not, and could not, seriously contend the complaint lacks specifics as to the "who, what, when, and where" of the alleged misrepresentations. Koller has quite clearly alleged what he contends is misleading about the labels and marketing of the products and why.

Deoleo instead suggests that the pleading lacks facts showing it had *knowledge* of falsity, Rule 9(b), however, expressly provides that while the *circumstances* of fraud must be alleged with particularity, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Deoleo further complains that it is unsure what better storage and handling practices Koller believes are necessary to prevent degradation. Such matters, though, are not elements of the claim. Koller has adequately stated that the olive oil does not meet the "extra virgin" standard at least in part because it degrades in bottles that are not adequately protected from light and heat.

How that problem should be fixed, if it is in fact even a problem, is not a pleading sufficiency issue.

Finally, Deoleo argues Koller has not pleaded his damages adequately. The arguments, however, are mere repeats of those offered in the context of standing and the elements of the claim. Characterizing them additionally as a Rule 9(b) issue adds nothing of substance.

### D. Business and Professions Code §17200

Deoleo contends Koller may not rely on certain alleged statutory violations to support a claim under the "unlawful" prong of the UCL. Specifically, Deoleo argues the Tariff Act does not permit private enforcement actions, and that California's Olive Oil Act, Health & Safety Code § 11875 *et seq*.) is preempted by the federal Nutrition Labeling and Education Act. Even assuming Deoleo is correct on both those points, however, its argument that Koller has not adequately alleged false advertising under the FAL depends on its other arguments that have been rejected above. Thus, the UCL claim is viable under the "unlawful," "fraudulent," and "unfair" prongs even without reference to either the Tariff Act or the Olive Oil Act.

### E. Claims arising from products not purchased by Koller

For the reasons set out above, Deoleo's arguments that Koller lacks standing to complain about the product he purchased are not persuasive. Whether a named plaintiff has standing to bring putative class claims regarding products he or she did not purchase, however, is not a fully settled legal question. Compare, e.g., *Larsen v. Trader Joe's Co*., No. C 11-05188 SI, 2012 WL 5458396, at *5 (N.D. Cal. June 14, 2012) ("The Court finds plaintiffs do not have standing to bring this claim because they did not purchase the Crescent Rolls and therefore, as a matter of law, could not have suffered a particularized injury as required by Article III.") with *Clancy v. Bromley Tea Co*., 2013 WL 4081632, *7 (N.D.Cal. Aug. 9, 2013) ("The named plaintiff has standing to assert claims relative to the products he purchased. He does not claim to have standing to assert claims related to other products. What he does claim is that he may be a potential representative of

a class of people who have such standing. He may or may not be able to certify such a class, and he may or may not be an adequate representative. But applying the concept of standing to dismiss proposed class action allegations is a category mistake.")

Some courts have found that a named plaintiff may defeat a motion to dismiss and advance claims arising from unpurchased products so long as there is sufficient similarity among the various products in dispute and the nature of the alleged misrepresentations. *See*, *e.g.*, *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012) ("If there is a sufficient similarity between the products, any concerns regarding material differences in the products can be addressed at the class certification stage.") As *Clancy* persuasively explains, however, regardless of the degree of "similarity" or lack thereof, the issue is simply not one of standing.

> Whether products are "sufficiently similar" is an appropriate inquiry, but it does not relate to standing: a plaintiff has no more standing to assert claims relating to a "similar" product he did not buy than he does to assert claims relating to a "dissimilar" product he did not buy. Seen this way, analyzing the "sufficient similarity" of the products is not a standing inquiry, but rather an early analysis of the typicality, adequacy, and commonality requirements of Rule 23.

2013 WL 4081632, at *5.

Without deciding that dismissal at the pleading stage on standing or other grounds would never be appropriate regardless of apparent dissimilarities in the products or misrepresentations challenged, deferral of any such issues to the class certification stage is appropriate at least in this instance. *See Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010)("[T]here is no brightline rule that different product lines cannot be covered by a single class . . . . Thus, the court will defer ruling on the issue until the class certification stage and denies defendant's motion to dismiss in its entirety.").

F. Punitive damages

The complaint alleges facts that, if proven, would show Deoleo engaged in intentionally misleading labeling and advertising practices. Although the allegations may be thin in showing strong malice or reprehensibility, there is no basis simply to dismiss the claim for punitive

damages at this stage.

## V. CONCLUSION

The motion to dismiss is denied.

**IT IS SO ORDERED**.

Dated:  January 6, 2015

_____
RICHARD SEEBORG
United States District Judge