ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
KRISTEN G. SIMPLICIO (State Bar No. 263291)
kristen@gutridesafier.com
**GUTRIDE SAFIER LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.271.6469
Facsimile: 415.449.6469

HASSAN A. ZAVAREEI (State Bar No. 181547)
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff Scott Koller

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT KOLLER, on behalf of himself, the general public and those similarly situated,<br><br> Plaintiff,<br><br> v.<br><br>MED FOODS, INC., AND DEOLEO USA, INC.<br><br> Defendants. | CASE NO. 14-cv-2400 (RS)<br><br>**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: May 10, 2018<br>Time: 1:30 p.m.<br>Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND FACTS AND DETAILS OF SETTLEMENT ........................2

      A.    Litigation History ...................................................................................2

      B.    Motion to Dismiss ..................................................................................3

      C.    Stay Pending Ninth Circuit Decisions ...................................................3

      D.    Class Certification ..................................................................................3

      E.    New Class Representatives and Settlement Negotiations ......................4

      F.    The Proposed Settlement ........................................................................4

            1.    Monetary Relief ...........................................................................5

            2.    Changed Practices ........................................................................5

            3.    Administrative Expenses, Attorneys' Fees and Costs, Incentive
                  Awards .........................................................................................7

            4.    Notice ...........................................................................................7

      G.    Plaintiff's Analysis of Settlement ..........................................................8

III.  ARGUMENT ....................................................................................................9

      A.    PRELIMINARY APPROVAL IS WARRANTED ................................9

            1.    The Settlement is Presumed Fair ................................................10

            2.    Other Factors Also Demonstrate the Fairness of the Settlement ................10
                  a.    The Strength of Plaintiff's Case and the Risks of Further
                        Litigation ..........................................................................10
                  b.    The Amount Offered in Settlement....................................11
                  c.    The Cy Pres Awards ..........................................................12

            3.    Attorneys' Fees, Costs and Incentives ........................................13

      B.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY
            CONDITIONALLY CERTIFIED ........................................................13

            1.    The Nationwide Settlement Classes Should Be Conditionally
                  Certified. ...................................................................................13
                  a.    Nationwide Class Members Are Victims of the Same
                        Misconduct as the California Class Members................14
                  b.    A Fifty-State Consumer Protection Class Can Be Certified. ..........14

     c. The Plaintiffs' Unjust Enrichment Claims Can Be Pursued on a Nationwide Basis............................................................19

   2. Nationwide Settlement Classes Are Still Permitted After *Hyundai*. ..........21

  C. THE PROPOSED NOTICE IS ADEQUATE ........................................................23

IV. DATES FOR THE FINAL APPROVAL PROCESS ........................................................25

V. CONCLUSION ............................................................................................................25

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)................................................................12

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997) .......................................22

*Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) .........................15

*Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) .........................20

*Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010)................15

*Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564 (N.D. Cal. June 6, 2013)...........................12

*Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121 (9th Cir.)..........................................9

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). .......................10

*Class Plaintiff v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .................................9

*Dennis v. Kellogg Co.,* 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013)....................................12

*Dennis v. Kellogg Co.,* 2013 WL 6055326 (S.D.Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014) ..............................................................................13

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974)................................................23

*Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) ...............................15

*Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017).........................17

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014)................21

*In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2007 WL 1689899 (N.D. Cal. June 11, 2007) ...............................................................................19

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) .........................20

*In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015).......................................................................15

*In re Checking Account Overdraft Litig.,* 307 F.R.D. 630 (S.D. Fla. 2015)............................19

*In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ..............................................................................24

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013) ...............................................21

*In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) ..............................................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679 (9th Cir. 2018) .................13, 21, 22, 23

*In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) ........................... 19

*In re Netflix Privacy Litig.*, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ................................ 24

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) .................................................................................................................... 10

*In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) .................................................................................................................... 15

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................... 24

*In re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009) ................................................................... 17

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ......................................................... 17

*Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011) ................................................................. 20

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ............................................................. 12

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ................................... 11

*Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) ......................... 15

*Luskin's, Inc. v. Consumer Prot. Div.*, 726 A.2d 702 (1999) .................................................. 17

*Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir.2007) ................................ 12

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .............................................. 23

*Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756 (Del. Ch. Feb. 27, 2009) .................................................................................................................... 21

*Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) .............. 7, 12

*Mounce v. CHSPSC, LLC,* 2017 WL 4392048 (W.D. Ark. Sept. 29, 2017) ........................... 15

*Nachshin v. AOL, LLC,* 663 F.3d 1034 (9th Cir. 2011) ........................................................... 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...2, 9, 10, 11

*Nigh v. Humphreys Pharmacol, Inc.,* 2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) ................ 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............................... 11

*One Step Up, Ltd. v. Webster Bus. Credit Corp.,* 87 A.D.3d 1 (N.Y. App. Div. 2011) .................................................................................................................... 20

*Patterson v. BP Am. Prod. Co.*, 240 P.3d 456 (Colo. App. 2010) ........................................... 17

*Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616 (Tex.App.2000) .............................................. 17

*Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710 F.Supp.2d 458 (D. Del. 2010) .................................................................................................................... 19

*Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583 (2008) ..................................................... 20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................................................23

*Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651 (D. Nev. 2009) ...............................................17

*Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 14 (2001) ..............................................................17

*Powers v. Lycoming Engines,* 245 F.R.D. 226 (E.D. Pa. 2007) .................................................19

*Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) ...............................15

*Rosenburg v. I.B.M.*, 2007 WL 128232 (N.D. Cal. 2007) ...........................................................23

*Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 (N.D. Cal. July 30, 2009) ....................2, 9

*Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605 (D.S.D. 2004) ...................................19

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).....................15

*Simpao v. Gov't of Guam*, 369 Fed. Appx. 837 (9th Cir. 2010) .................................................24

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......................................................7

*Weinberg v. Sun Co.*, 565 Pa. 612 (2001) ..................................................................................17

*Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) ...........................................15

## STATUTES

19 C.F.R. section 134.46 ...............................................................................................................3

19 U.S.C. 1304 ..............................................................................................................................2

21 C.F.R. section 101.18 ...............................................................................................................3

21 U.S.C. section 301 ....................................................................................................................3

Ark. Bus. & Com. Code § 4-88-107 ...........................................................................................16

Cal. Civ. Code 1770 ...............................................................................................................15, 16

Colo. Rev. Stat. § 6-1-105 ..........................................................................................................15

MS Code § 75-24-5 .....................................................................................................................16

OR Rev. Stat. § 646.608 ..............................................................................................................16

Tenn. Com. Code § 47-18-104 ....................................................................................................16

Tex. Bus & Com. Code § 17.46 ..................................................................................................16

## OTHER AUTHORITIES

75 Fed. Reg. 22363 (Apr. 28, 2010) .............................................................................................3

**RULES**

Fed. R. Civ. Proc., Rule 23(c)(2)(B) ........................................................................... 23

**TREATISES**

Conte & Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ........................... 9, 10

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008) ........................... 23

1

## <u>NOTICE OF MOTION AND MOTION</u>

2

 **PLEASE TAKE NOTICE** that on Thursday, May 10, 2018, at 1:30 p.m. or as soon

3

thereafter as the matter may be heard, in Courtroom 3, 17th Floor, before the Honorable Richard

4

Seeborg, Plaintiff shall and hereby does move the Court for an order of:

5

 (1) Preliminarily approving the settlement of this class action as set forth in the class

6

action settlement agreement dated March 27, 2018, attached as Exhibit 1 to the Declaration of

7

Adam Gutride ("Gutride Declaration" or "Gutride Decl.") filed herewith;

8

 (2) Preliminarily approving, for settlement purposes only, settlement classes defined as

9

"all persons who, between: (i) May 23, 2010 and the date of Preliminary Approval, purchased, in

10

the United States, any of the Extra Virgin Olive Oil Products except for resale and/or (ii) between

11

May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive

12

Oil Products." "Extra Virgin Olive Oil Product" means bottles of Bertolli Extra Virgin olive oil,

13

except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." "Other Olive Oil

14

Product" means the liquid Bertolli Extra Light or Classico olive oil products. "Excluded Persons"

15

from the Settlement Classes are: (1) the Honorable Richard Seeborg; the Honorable Joseph C.

16

Spero; the Honorable Edward Infante (ret.); (2) any member of their immediate families; (3) any

17

government entity, (4) Defendant; (5) any entity in which Defendant has a controlling interest; (6)

18

any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal

19

representatives, heirs, successors, or assigns; (7) counsel for the Parties; and (8) any persons who

20

timely opt-out of the Settlement Class.

21

 (3) Directing the dissemination of notice in the form and manner set forth in the

22

settlement agreement; and

23

 (4) Setting a date for a final approval hearing.

24

 A copy of the [Proposed] Order for Preliminary Approval is attached to the settlement

25

agreement as Exhibit C.

26

 This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the

27

supporting Memorandum of Points and Authorities, the Gutride Declaration, the Declaration of

28

Hassan Zavareei ("Zavareei Declaration" or "Zavareei Decl."), the Declaration of Steve Weisbrot

("Weisbrot Decl."), the pleadings and papers on file in this action, and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The parties have reached a nationwide settlement of the putative class action filed by Plaintiff Scott Koller against Defendant Deoleo USA, Inc. As the Court will recall, Deoleo markets and sells olive oil products under the Bertolli brand, including Bertolli Extra Virgin Olive Oil ("Bertolli EVOO"), Bertolli Classico Olive Oil, and Bertolli Extra Light Tasting Olive Oil. In May of 2014, Plaintiff filed a complaint in this Court alleging that Deoleo had (1) marketed and sold those Bertolli Olive Oil Products with the representation "Imported from Italy," although most of the oil was extracted in countries other than Italy from olives grown outside Italy; and (2) mislabeled the Bertolli EVOO because its procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. In the Second Amended Complaint, the seven plaintiffs from six states (California, Florida, New York, New Jersey, Arkansas, and North Carolina) allege claims for violations of deceptive practices statutes in all states and for unjust enrichment. The Court previously certified classes of California consumers, when Koller was the only named plaintiff. It is appropriate to certify a nationwide class, because Deoleo's misrepresentations and challenged practices are uniform for all purchasers, and the elements of the legal claims are nearly identical in all states. The minor differences among state laws are immaterial to certification, particularly because the laws of all 50 states state are substantively identical to those in at least one of the seven states represented by a named Plaintiff, i.e., California, Florida, New York, New Jersey, Arkansas or North Carolina.

Due to this litigation, Deoleo has already removed the phrase "Imported from Italy" from its products and has agreed to refrain from using similar phrases, such as "Made in Italy," unless the oil is entirely from olives grown and pressed in Italy. Deoleo also began to bottle its EVOO in dark green bottles to protect it from light degradation and has agreed to continue to use such bottles. It has agreed to stricter testing protocols at the time of bottling and to shorten the "best by" period and disclose the date of harvest on every bottle of Bertolli EVOO, to better ensure that the oil remains "extra virgin" at time of sale and use.

Deoleo also will pay $7 million into a common fund. Each class member who makes a claim may obtain a cash refund of up to $7.25 per bottle purchased. A class member may submit claims for an unlimited number of purchases. Up to five claims, for a total of $25, will be paid without Proof of Purchase. Plaintiffs may apply for reasonable incentive awards from the common fund, and their counsel may apply for an award from the common fund to reimburse their costs, and to pay their attorneys' fees not exceeding 30 percent of the fund.

Notice is to be provided to the class via several methods, including (1) print publication, (3) online advertising, (4) a press release, and (5) sponsored blog posts. A well-known third-party claim administrator had designed the notice plan and has attested that notice will reach a substantial majority of likely class members.

A copy of the settlement agreement is attached as Exhibit 1 to the Declaration of Adam Gutride filed herewith. The proposed class notices can be found at Exhibits B1-B3.

The settlement falls within the standard for preliminary approval because it is "within the range of reasonableness." *See Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 at *9 (N.D. Cal. July 30, 2009). There is a presumption of fairness because the settlement was reached after substantial discovery and arms-length negotiations. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Numerous other factors also strongly favor the settlement, including the risks of further litigation and the informed opinion of experienced counsel on all sides who have negotiated and approved it based upon their views of the strengths and weaknesses of the claims and defenses. *See id.* (finding that experienced counsel's views regarding settlement are entitled to great weight).

Accordingly, Plaintiffs request that the Court preliminarily approve the settlement, order that the proposed notice be disseminated, and schedule a final approval hearing.

## II.	BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.	Litigation History

On May 23, 2014, Plaintiff Scott Koller filed his complaint. He alleged that the labeling and marketing of the Bertolli Olive Oil Products as "Imported from Italy" and "Extra Virgin" violated the Tariff Act of 1930, as amended, 19 U.S.C. 1304, and its implementing regulations, 19

C.F.R. section 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. sections 301 *et seq.,* and its implementing regulations, 21 C.F.R. sections 101.18 *et seq.*; the U.S. Department of Agriculture regulations regarding Olive Oil and Olive-Pomace Oil, 75 Fed. Reg. 22363 (Apr. 28, 2010); and various California consumer laws; breach of contract; breach of the covenant of good faith and fair dealing; and fraud, deceit and/or misrepresentation. Plaintiff Koller sought to pursue these claims on behalf of himself and all purchasers of the Bertolli Olive Oil Products in California between May 23, 2010 and the present. Plaintiff Koller alleged that the false labeling caused people to purchase the Olive Oil Products who would not otherwise have done so, and that the Olive Oil Products were sold at a higher retail price than they would have been sold without the misstatements. He sought to recover, on behalf of the class, the dollar amount of the "premium" price that she contended was attributable to the alleged misrepresentations.

### B.     Motion to Dismiss

On September 25, 2014, after Plaintiff Koller filed an amended complaint narrowing his causes of action, Deoleo moved to dismiss the amended complaint. Deoleo argued, *inter alia*, that Plaintiff Koller lacked standing to sue and that he had failed to plead a claim for relief. Plaintiff Koller opposed the motions. On January 6, 2015, the Court issued an order denying Deoleo's motion, allowing Plaintiff Koller's CLRA, FAL, common law fraud, and UCL claims to proceed.

### C.     Stay Pending Ninth Circuit Decisions

On November 12, 2015, while Plaintiff Koller's class certification motion was pending, Deoleo filed a motion to stay this litigation pending the Ninth Circuit's review of certain class certification decisions. The Court granted Deoleo's request on December 12, 2014. Plaintiff Koller filed a motion seeking to lift the stay on September 23, 2016, which the Court denied on November 3, 2016. Following rulings by the Ninth Circuit, the stay was ultimately lifted on January 19, 2017, at which time briefing on Plaintiff Koller's class certification motion resumed.

### D.     Class Certification

On October 30, 2015, after substantial discovery, Plaintiff Koller moved for class certification. Defendant opposed the motion. On August 24, 2017, the Court certified two classes: an "Imported from Italy" class ("IFI Class") and an "Extra Virgin Olive Oil" class ("EVOO

Class"), defined as follows:

> **IFI Class**: All purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."
>
> **EVOO Class**: All purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

The parties resumed settlement discussions following class certification and agreed to proceed to mediation.

**E.   New Class Representatives and Settlement Negotiations**

During the litigation, Koller's counsel was contacted by numerous other consumers from around the country who had purchased Deoleo's Bertolli brand olive oil believing it to be "Imported from Italy" and "extra virgin." Six of these consumers retained Koller's counsel, but complaints were not immediately filed. Deoleo was made aware of these individuals in September 2017, and a tolling agreement was signed pending settlement negotiations. (Gutride Decl. ¶ 6.)

The proposed settlement was reached following significant, hard fought litigation and several rounds of arms-length settlement discussions between capable counsel, most recently before Judge Edward A. Infante (retired) of JAMS ADR, Inc. ("JAMS") in San Francisco, California, on November 6, 2017. (*Id.*)

**F.   The Proposed Settlement**

The settlement class is to be comprised of all persons, other than Excluded Persons, who (i) during the Extra Virgin Class Period, purchased, in the United States, any of the Extra Virgin Olive Oil Products, except for purpose of resale and/or (ii) during the Imported from Italy Class Period, purchased, in the United States, any of the Other Olive Oil Products, except for purpose of resale. (Id. Ex. 1, ¶ 2.40.) The Extra Virgin Class Period runs from May 23, 2010, through the date of Preliminary Approval, and the Imported from Italy Class Period runs from May 23, 2010, through December 31, 2015, after which time the "Imported from Italy" language no longer appeared on the bottles. (Id. ¶¶ 2.17, 2.21) Excluded Persons are the Deoleo's affiliates, the Court, the mediator, government entities, and those who opt out of the class.

### 1. Monetary Relief

Class members can file a claim for cash refunds pertaining to their purchases of the Products during the Extra Virgin Class Period and the Imported from Italy Class Period. The refund amount is (i) $1.75 per Extra Virgin Olive Oil Product purchased between May 23, 2010 and December 31, 2015, (ii) $0.75 per Extra Virgin Olive Oil Product purchased between January 1, 2016 and the date of preliminary approval, and (iii) $1.50 for each Other Olive Oil Product purchased between May 23, 2010 and December 31, 2015. These amounts are subject to being increased pro rata, up to five times the initial amounts, depending on the number of claims made against the common fund. There is no cap on the total amount to be paid to any class member for claimed purchases that are corroborated by Proof of Purchase. However, claims not corroborated by Proof of Purchase are limited to five purchases, and a total of $25 refund, per Household. "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the purchase of a Product, the purchase price, and the date and place of the purchase. (Id. Ex. 1, ¶ 2.35.) "Household" means any number of persons occupying the same dwelling unit.

The claim form is a simple one-page form that can be completed in a few minutes. It can be completed online or submitted by mail. Proof of Purchase can also be submitted electronically or in hard copy.

### 2. Changed Practices

The Settlement Agreement also contemplates changed practices, some of which have already occurred, as well as injunctive relief. As a result of the Litigation, Deoleo removed the phrase "Imported from Italy" from all olive oil products imported into the United States. (Id. Ex. 1, ¶¶ 1.9, 3.12, 3.14.) It started using dark green bottles on some Bertolli EVOO to protect the oil from degradation by light. (Id. ¶¶ 3.13, 3.14.) Deoleo has also agreed that, for a period of three years after the Effective Date, it shall be enjoined by the Court as follows:

1. Not to use the phrases "Imported from Italy," "Made in Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle originates exclusively from olives grown in Italy on the labeling of any olive oil product sold in the United States, until at least three years after the Effective Date, unless the product so labeled is composed entirely of oil from olives grown and pressed in Italy.

2. If Defendant uses the phrase "Extra Virgin" or term "EVOO" on any Product, it must do all of the following:

o   Package the Product in a non-transparent (UV filtering) container, e.g., a green or brown glass container.

o   For extra virgin olive oil bottled on or after June 1, 2018, include a "best by" or "use by" date not later than sixteen months after the date of bottling and include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to the "best by" date.

o   Implement the following chemical parameter testing requirements at the time of bottling (which are stricter than the current limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | ≤ 0.8 | ≤ 0.5 |
| Peroxide value (mEq )2/kg) | ≤ 20 | ≤ 10 |
| K270 | ≤ 0.22 | ≤ 0.15 |
| K232 | ≤ 2.50 | ≤ 2.1 |
| Delta-K | ≤ 0.01 | ≤ 0.005 |

(Id. ¶¶ 3.12-13.)

Class Counsel believes that the provision of the above benefits adequately compensates Class Members for the harm they suffered, in light of the risks of litigation. (Gutride Decl., ¶¶ 9-20.) In particular, there may be substantial difficulties establishing that: (1) Deoleo's marketing of the Olive Oil Products was likely to deceive reasonable persons as to their true geographic origin; (2) the country of origin of the products was material to reasonable persons; (3) Deoleo failed to employ adequate procedures to ensure that the EVOO was extra virgin at the time of bottling and through its "Best By" date; (4) that Deoleo should be held liable for procedures employed by third-party suppliers from whom its European parent company purchased olive oil; or (5) the amount of damages or restitution that should be awarded, if any. (Id. ¶ 16.)

Even if Plaintiff's claims were successful, the "best case" recovery may not be better than the settlement remedy. Plaintiff's expert Colin Weir has performed a detailed regression analysis to calculate the price premiums attributable to the claims. Those price premiums are equal to between 3.76 and 17.34 percent of the purchase price of each bottle of olive oil, depending on the product type. (Supplemental Declaration of Colin Weir in Support of Plaintiff's Reply in Support of Motion for Class Certification ("Weir Decl") (dkt. # 112-13) at ¶ 107.) Deoleo sold approximately 150 million Products nationwide during the relevant periods, at an average retail price of $9 a bottle. (Gutride Decl. at ¶ 11.) Thus, even if successful at trial, class members would

1   be eligible to recover between 33 cents and $1.56 per average-priced bottle, upon submitting a

2   claim. The cash recovery in this settlement is thus close to if not greater, on a per-bottle basis, than

3   the amount class members could obtain after trial.

### 3.   Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

All costs of notice and administration of the settlement will be paid from the common fund.
In addition, Plaintiff's counsel will request payment from the common fund of incentive awards of
$5,000 for Plaintiff Koller, and $1,000 for the other named Plaintiffs. The incentive fee is designed
to compensate Plaintiffs for (1) the time and risk they took in prosecuting this action (including the
risk of liability for Defendant's costs) and (2) agreeing to a release broader than the one that will
bind settlement class members. (Id. Ex. 1, ¶¶ 6.2, 8.1)

Plaintiffs also will request payment from the common fund of their out of pocket expenses
(approximately $150,000) plus attorneys' fees equal to 30% of the fund ($2,100,000). This request
will be justified by a lodestar-multiplier analysis and is in line with standard awards under other
common fund settlements, under which fees are awarded as percentage of the fund. *See, e.g.,
Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (upholding award of 28% of the
common fund); *Miller v. Ghirardelli Chocolate Co.*, 2015 WL 758094, at *5 (N.D. Cal. Feb. 20,
2015) (awarding 30% of the common fund in fees in food labeling class action). The request for
fees, costs and incentive awards will be the subject of a separate motion to be filed, and posted on
the settlement website, at least 42 days before the final approval hearing, which is 14 days before
the deadline for class member objections.

### 4.   Notice

The claim administrator (Angeion Group) will establish a settlement website, which shall
contain the settlement notices, a contact information page that includes address and telephone
numbers for the claim administrator and the parties, the settlement agreement, the signed order of
preliminary approval, online and printable versions of the claim form and the opt out forms,
answers to frequently asked questions, a Product list, and (when it becomes available) Plaintiffs'
counsel's application for attorneys' fees, costs, expenses and incentive awards and motion for final
approval.

1   Notice will be published in several places, all of which will refer class members to the

2   settlement website. (Gutride Decl. Ex. B.) The Published Notice will appear in *People Magazine*

3   and the *San Francisco Chronicle;* be distributed as a press release through PR NewsWire.

4   Online Notice linking to the Settlement Website will be published for a total of 39 million

5   combined impressions on various websites targeted to individuals interested in such things as olive

6   oils, cooking oils, dressings, recipes, and Bertolli. There will also be a sponsored blog post on

7   www.topclassactions.com and www.classaction.org. (*Id.*) Finally, the claims administrator will

8   operate a toll-free information line to provide information about the case and settlement, and it will

9   provide printed copies of the Long Form Notice and Claim Form by first class mail to individuals

10  who request them. (*Id.*)

11      **G.      Plaintiff's Analysis of Settlement**

12          Based on their reasoned judgment, Plaintiff's counsel believes the proposed Settlement is

13  fair and reasonable. (Gutride Decl., ¶¶ 9-20.) Plaintiffs believe that the evidence obtained in

14  discovery showed that the Bertolli Olive Oil Products' labels were likely to (and did) deceive

15  unsuspecting consumers and that Defendant knew of the deceptive nature of the Bertolli

16  packaging. (Id. ¶ 15.) However, there were serious risks to continuing with the litigation. First,

17  Plaintiffs would have been required to prove that the Bertolli Olive Oil Products' "Imported from

18  Italy" labeling violated 19 C.F.R. section 134.46, and was therefore unlawful under the UCL,

19  and/or that the representation was likely to deceive or confuse reasonable persons. They would

20  have also had to prove that Deoleo did, in fact, fail to maintain adequate practices to ensure that

21  Bertolli EVOO remained extra virgin through the sale and "best by" dates. Defendant disputed that

22  consumers would understand "Imported from Italy" to mean what Plaintiffs allege, and the

23  adequacy of Deoleo's "extra virgin" practices was hotly contested and likely to come down to a

24  battle of experts. It could be difficult to obtain monetary relief, because Deoleo was likely to

25  present evidence that the challenged labeling had no or little effect on pricing or sales volume. It

26  was unclear how the arguments would be resolved at summary judgment or trial. (*Id.* at ¶ 16.)

27  Thus, there was a substantial risk that class members would recover only nominal damages, or

28  nothing at all. Finally, any judgment in Plaintiffs' favor would likely be appealed, so even in the

1  best case, it could take years to get relief. (*Id.*)

2        Plaintiffs and counsel believe that a refund to claimants of $0.75 to $1.75 per bottle (and

3  possibly more), with no cap on claims with proof of purchase, and a cap of five bottles and a

4  maximum of $25 for claims without proof of purchase, is a good result, as good or better than the

5  likely recovery at trial. (Id. ¶ 12.) Indeed, in a contested proceeding, class members who lacked

6  proof of purchase—which is likely the majority of class members—might get nothing at all. *See,*

7  *e.g., Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1132 (9th Cir.), *cert. denied sub*

8  *nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) (explaining that the post-trial claims

9  process by which each consumers' affidavits would "force a liability determination" as to that

10  consumer).The $0.75 to $1.75 per bottle is a favorable settlement amount in light of the per-bottle

11  price premiums of between 3.76 and 17.34 percent of the purchase price per bottle, as determined

12  by Plaintiff's expert. (Weir Decl. at ¶ 51.) Further, in addition to the monetary relief, the changed

13  practices will benefit class members and other consumers. (Gutride Decl. at ¶ 14.)

14        Defendant, while continuing to deny all allegations of wrongdoing, also believes the

15  settlement is in its interest to avoid further expense, inconvenience, and interference with its

16  ongoing business operations.

17  **III.    ARGUMENT**

18        **A.    PRELIMINARY APPROVAL IS WARRANTED**

19        Although Rule 23(e) requires court approval of a class settlement, there is a "strong

20  judicial policy that favors settlements, particularly where complex class action litigation is

21  concerned." *Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). "In most

22  situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to

23  lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, citing 4

24  Conte & Newberg, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At

25  the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether

26  the settlement is within the range of what might be considered "fair, reasonable, and adequate" to

27  allow notice to the proposed settlement class to be given and a hearing for final approval to be set.

28  *See Ross*, 2009 U.S. Dist. LEXIS 69633 at *9.

### 1.    The Settlement is Presumed Fair

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV*, 221 F.R.D. at 528; 4 Newberg at § 11.24. Before reaching the settlement, the parties engaged in extensive, highly adversarial factual investigation, which included numerous depositions, document production, and interrogatories, including third-party and expert discovery. (Gutride Decl., ¶ 4.) At time of settlement, there had been extensive briefing and argument on various significant legal issues, with two California classes having already been certified, and Plaintiff's motion for partial summary judgment pending as to the California IFI Class. The parties were fully informed as to the viability of the claims and the risks to both sides if the case did not settle. (*Id.*)

The parties negotiated the proposed settlement in good faith, including months of intense negotiations. (Id. ¶¶ 6-7.) Counsel for both sides are experienced class action attorneys and have fully evaluated the strengths, weaknesses, and equities of their positions. (Id. ¶ 3, Ex. 2; Declaration of Hassan Zavareei, Ex. A.) Class Counsel believes the settlement to be in the Class' best interests, taking into account the costs and risks of continued litigation. (Gutride Decl. ¶¶ 9-20.) The opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See, e.g.*, *DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are the most closely acquainted with the facts of the underling litigation.") (internal citation omitted); *see also In re NVIDIA Corp. Derivative Litig.*, (N.D. Cal. Dec. 22, 2008) 2008 WL 5382544 at *4 ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement").

### 2.    Other Factors Also Demonstrate the Fairness of the Settlement

Rule 23(e) does not require the Court to consider "fairness" criteria until final approval, but a preliminary review shows that these criteria will be satisfied. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### a.    The Strength of Plaintiff's Case and the Risks of Further Litigation

These factors survey the potential risks and rewards of proceeding with litigation. The settlement is appropriate under these factors for the reasons explained *supra*. See section II(F)(1)-

1   (2), (G).

2   **b.   The Amount Offered in Settlement**

3   This factor "assess[es] the consideration obtained by the class members in a class action

4   settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather

5   than the individual component parts, that must be examined for overall fairness." *Officers for*

6   *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well-settled

7   law that a proposed settlement may be acceptable even though it amounts to only a fraction of the

8   potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at

9   527 (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

10   Plaintiffs' best-case recovery would be the average "premium" demonstrated by a

11   regression analysis for (1) olive oil labeled "Imported from Italy" versus olive oil not containing

12   that label, and (2) olive oil labeled "extra virgin" versus olive oil not containing that label.

13   Plaintiffs believe that their likely "best case" recovery at trial would be approximately $151

14   million, based on applying Mr. Weir's regression analysis (dkt. # 112-13) to nationwide sales

15   figures. (Gutride Decl. at ¶¶ 10-12.) At final approval, Plaintiffs will provide further testimony

16   from Mr. Weir to support this damages estimate. However, Deoleo disputes that any such

17   premium exists, and expert testimony on the subject is likely to diverge wildly.

18   The settlement amount of $7 million, which does not include the value of the changed

19   practices, may appear to be a small portion of the total amount of damages at trial, but Plaintiffs

20   believe this recovery to be fair in light of the risks discussed above, as well as the risk of not being

21   able to collect such a large award. (Id. ¶¶ 18.) Further, the per-claim amount of $0.75 to $1.75 (or

22   more) per bottle of Bertolli Olive Oil Products, with no cap on claims with Proof of Purchase, and

23   a five-bottle/$25 cap on claims without Proof of Purchase, is good result compared to the possible

24   result in a contested proceeding, as discussed above. (Id. ¶ 12.) Indeed, these per-bottle amounts

25   approach could result in recoveries on a per-bottle basis in excess of the price premium damages

26   calculated to Plaintiff's expert to be available at trial. (*See supra*, section II(G).)

27   Deoleo's changed practices are also likely to benefit class members. At the time of final

28   approval, Plaintiff's economic expert, Colin Weir, will opine as to some amounts class members

will save due to the label changes. The value of injunctive relief—including the benefit to consumers in the form of an improved marketplace that is not skewed by false advertising—can properly be considered when evaluating a settlement's fairness. *See, e.g., Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)(explaining that in evaluating the fairness of a settlement, district courts should "make express findings about the value of the injunctive relief"); *Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012) (noting that a "judicially-enforceable agreement" to maintain changed practices may be considered in a fairness inquiry).

### c.      The Cy Pres Awards

In their motion for final approval, Plaintiffs will ask the Court to approve the charitable organizations Center for Food Safety and the Consumers Union to receive any balance remaining in the settlement fund, after payment of notice, administration, fees, costs, incentives and valid claims. (Gutride Decl, Ex. 1, ¶ 3.4.) *See Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (holding that courts "may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, *e.g.,* for the aggregate, indirect, prospective benefit of the class'") (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir.2007))*; see also Bolton v. U.S. Nursing Corp.*, 2013 WL 2456564, *2 (N.D. Cal. June 6, 2013) (in order granting preliminary approval, deferring approval of proposed *cy pres* recipients until final approval). Consumers Union is reasonably connected to this litigation, in that it works on advancing the rights of consumers and the information available to food consumers. It has been approved as a cy pres recipient in other food labeling class actions. *See, e.g., Nigh v. Humphreys Pharmacol, Inc.,* 2013 WL 5995382, *9 (S.D. Cal. Oct. 23, 2013) ("the Court finds that this *cy pres* distribution to Consumers Union reflects the objectives of the UCL and CLRA; reflects the interests of silent Class Members; and benefits the Plaintiff Class, who are consumers that purchased Products based on false and misleading representations"); *Miller*, 2015 WL 758094, at *8 (approving Consumers Union as a *cy pres* recipient in food-labeling class action); *Dennis v. Kellogg Co.,* 2013 WL 6055326, *1 (S.D. Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014) (same). The Center for Food Safety, which advocates for and educates consumer about more healthy and environmentally sustainable food production, also has a strong nexus to the class. Similar organizations connected to food

safety issues have been approved as cy pres recipients in other food labeling cases. *See, e.g., Miller*, 2015 WL 758094, at *8 (approving the University of California, Davis – Food Science & Technology Department); *Dennis v. Kellogg Co.,* 2013 WL 6055326, *2 (S.D.Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014) (approving the Food Safety Program of the University of Georgia as a cy pres recipient).

### 3.    Attorneys' Fees, Costs and Incentives

In a separate motion to be filed with the motion for final approval and posted on the settlement website, Plaintiffs will ask the Court to approve payment of no more than $2,100,000 from the common fund of their reasonable attorneys' fees, plus out-of-pocket costs and incentive awards. As of the filing of this motion, Plaintiff's counsel has spent in excess of 2500 hours working on this litigation. Its lodestar is greater than the amount it will seek in attorneys' fees. Counsel has additionally incurred approximately $150,000 in unreimbursed expenses. (Gutride Decl., ¶ 5; Zavareei Decl. ¶ 4.) The Court need not consider these issues at present; rather it is appropriate to defer them until the final approval hearing, after class members have had an opportunity to comment.

### B.    THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CONDITIONALLY CERTIFIED

This Court previously certified two California classes on August 24, 2017. (Dkt. # 116.) Plaintiffs now seek preliminary approval, for settlement purposes only, of two expanded Settlement Classes so that nationwide relief can be afforded. As set forth below, the same common questions of fact and predominate nationwide, and certification of nationwide classes is consistent with *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 689 (9th Cir. 2018) ("*Hyundai*").

### 1.    The Nationwide Settlement Classes Should Be Conditionally Certified.

Koller is a California resident who is now joined by six more proposed class representatives from five other states (New York, New Jersey, Florida, North Carolina, and Arkansas). The proposed Second Amended Complaint (dkt. # 145), in which all seven plaintiffs join, pleads violations of statutory consumer protection laws and unjust enrichment on behalf of the nationwide classes. Common questions of law and fact predominate on these claims. To the

extent there are variations in state laws, the variations are immaterial, and in any event, the six states from which the named Plaintiffs hail are representative of all variations among the states.

### a. Nationwide Class Members Are Victims of the Same Misconduct as the California Class Members.

Deoleo sold the same product nationwide with the same labelling, using the same manufacturing and distribution practices. Just as was the case for all Californians, the basis for the alleged misconduct is the violation of two federal regulations: the USDA definition of "extra virgin" and the CPB regulations under the Tariff Act for statements of origin. And just as was the case for all Californians, the claim of false advertising will present uniform issues of material fact for class members nationwide, including whether the labelling was likely to deceive, whether Deoleo's practices were sufficient to protect oil quality, and whether a price premium can be demonstrated using the hedonic regression model. (See dkt. # 118, at pp. 2-10, 118-37.)

### b. A Fifty-State Consumer Protection Class Can Be Certified.

In light of the uniform alleged misconduct, the elements that need to be proven under the consumer protection laws of the fifty states and the District of Columbia (collectively, "states") are substantively identical. To the extent differences exist, they are immaterial. At a minimum, subclasses can be created to resolve whether Plaintiffs have proved elements of their causes of action required by certain states, as the Plaintiffs hail from six states that represent all the permutations extent in the 50 states. Were this case to proceed to trial, the jury could be asked to provide special verdicts as to whether Plaintiffs had proved various facts—for example, that the alleged conduct was likely to deceive reasonable consumers, or that defendants had misrepresented the geographic origin of the products.  It would then be a relatively simple matter to compare the proven elements to the required elements in each state, to determine whether the case had been successful. To put it another way, the seven Plaintiffs collectively have the incentive, in proving the violations of their own state laws, to prove all the elements of all the state laws. Filed herewith as Appendix A and B are, respectively, (1) a summary chart of the elements of the relevant state laws and (2) a more detailed discussion of the same, including statutory and case citations in support thereof.  These charts demonstrate predominance of common issues.  To

wit:

    **Right of Action.** All states have established a private right of action to challenge false advertising.[1] In addition, class treatment is available for violations of all the state laws.[2]

    **Prohibition of Deceptive Conduct.** All the states prohibit the alleged misconduct in one of two ways. Forty-five states have statutes similar to the California UCL in that they have broad and general prohibitions against any kind of deceptive conduct.[3] Consumers in these states will have their interests represented by all Plaintiffs. The remaining five states—Colorado, Mississippi, Oregon, Tennessee, and Texas—have narrower statutes that, like the CLRA, prohibit specific deceptive acts, including misrepresentations as to "the source . . . or certification" of the goods, "using deceptive representations or designations of geographic origin in connection with goods or services" and "representing that goods are of a particular grade when they are not." *See, e.g.* Cal. Civ. Code 1770(a)(2), (4), (7); Colo. Rev. Stat. § 6-1-105 (1)(b), (d), (g); MS Code § 75-24-5(b),

---

[1] Alabama, California, Florida, Illinois Indiana, Louisiana, Maine, Maryland, Minnesota, and Tennessee require pre-suit notice.  Before suing under the laws of any of the states other than California, all plaintiffs provided notice.

[2] While seven states' statutes (Arkansas, Alabama, Georgia, Louisiana, Tennessee, Montana, and South Carolina) prohibit class actions, numerous district courts have found that that these prohibitions are not enforceable in federal court and that classes may still be certified under Rule 23 in light of *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See, e.g., Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing Alabama class actions); *Mounce v. CHSPSC, LLC*, 2017 WL 4392048, at *7 (W.D. Ark. Sept. 29, 2017) (allowing Arkansas class actions); *In re Hydroxycut Marketing & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014) (allowing Georgia, Louisiana, Montana, South Carolina, and Tennessee class actions) *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 2015 WL 5166014 (E.D. Tenn. June 24, 2015) (allowing South Carolina and Montana class actions); *Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. June 1, 2016) (allowing Montana class actions); *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (allowing South Carolina class actions); *Reed v. Dynamic Pet Prods.*, 2016 WL 3996715 (S.D. Cal. July 21, 2016) (allowing Louisiana class actions); *Andren v. Alere, Inc.*, 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) (allowing Georgia class action). *But see Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) (disallowing Tennessee class actions); *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723 (D.S.C. 2015) (disallowing South Carolina class actions). To the extent this Court has concerns about any states' inclusion in the class with respect to consumer protection statutory claims, they can be included in the nationwide class solely with respect to unjust enrichment claims.

[3] These states are Alabama, Alaska, Arizona, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

(d), (g); OR Rev. Stat. § 646.608(b), (d) , (g); Tenn. Com. Code § 47-18-104(b)(2), (4), (7); Tex. Bus & Com. Code § 17.46(2), (4), (7).[4] All Plaintiffs will prove the elements of these claims as they are at the heart of the allegations about the "source" and "origin" of the oil and as to whether it was properly certified or graded as EVOO. At a minimum, California plaintiff Koller will do so to prove his CLRA claim.

**Knowledge and Intent.** Thirty-three states, including California, Florida, New York, and North Carolina do not require a showing of either knowledge or intent, and thus, Plaintiffs from those states can represent the interests of the class members from 28 other states that also impose no such requirement.[5] New Jersey requires a showing of knowledge and intent in cases involving a concealment of a material fact; Plaintiff Freiman can represent class members in two other states—Arizona and Delaware—which have a similar standard. Plaintiff Gibbs of Arkansas will need to prove Deoleo knowingly and intended to deceived consumers[6] and can represent class members in the other fifteen states that also require proof knowledge and/or intent for some or all of the violations at issue.[7]

**Reliance**. Differing state rules on reliance also pose no bar to certification. The statutes in New York and New Jersey, like 29 other states, do not require a showing of "reliance" but instead

---

[4] Arkansas' statute also specifically prohibits most of these same activities, but goes on to note that the practices made unlawful under the act are "not limited to" the specific activities identified in the statute. Ark. Bus. & Com. Code § 4-88-107(a).

[5] These additional states are Alabama, Alaska, Connecticut, District of Columbia, Georgia, Hawaii, Idaho, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Vermont, Virginia, Washington, West Virginia, and Wisconsin. Similarly, neither the UCL nor the CLRA require proof that a violation was knowing. The UCL also does not require a showing of intent, while the CLRA requires it for some of its prohibited activities, but not all.

[6] Arkansas's consumer protection statute forbids "knowingly making a false representation…." Ark. Code § 4-88- 107(a)(1).  Like California, it also forbids "advertising goods or services with intent not to sell them as advertised." *Id.*, subd. (a)(3); Cal. Civ. Code  § 1770(a)(7).

[7] Colorado, Indiana, Kansas, Maryland, Nevada, New Hampshire, New Mexico, South Carolina, Utah, and Wyoming have statutes similar to the CLRA and like Arkansas, requiring a showing of knowledge and/or intent for some or all of the key provisions at issue in this case. Arizona, Illinois, Iowa, Minnesota, and North Dakota require a showing that the defendant intended for the plaintiff to rely on the misrepresentation, which is a lesser level of intent and thus would be necessarily proven if there is violation of the Arkansas law.

only proximate causation (which some states refer to as "ascertainable loss").  Here, Plaintiffs'

theory of loss causation is the same for each class member, namely that Defendants' misconduct

led to a price premium. Plaintiffs from New York and New Jersey (Plaintiffs Castoro and Freiman)

can thus represent class members on this question in the other similar 29 states.[8]

The laws of California, North Carolina and Arkansas (where three Plaintiffs live) all

require reliance by the named plaintiffs, as do eleven other states.[9] Two of those eleven—Colorado

and Maryland—have expressly held, as have California and North Carolina, that there need not be

any showing of reliance by absent class members.[10] The other nine, like Arkansas, either have held

that proof of reliance by absent class members *is* requried[11] or have not answered the question.[12]

The Arkansas plaintiff will ask the Court to certify a class despite the possible need for individual

proof of reliance, and will be able to do so under this Court's ruling in *Gold v. Lumber*

*Liquidators, Inc.*, 323 F.R.D. 280 (N.D. Cal. 2017).  There, this Court certified a class under

Pennsylvania law depite the need to prove reliance for each class member, holding that this "'does

not outweigh the predominantly common issues,' including whether [the] conduct constitutes an

unfair or deceptive practice and whether that conduct harmed class members." *Id.* at 292 (quoting

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1121–22 (9th Cir. 2017)).[13]

---

[8] Alaska, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Kentucky, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Washington, and Wisconsin.

[9] These states are Colorado, Georgia, Indiana, Maryland, Nevada, Pennsylvania, Texas, Virginia, West Virgina, and Wyoming. In addition, Michigan requires a showing of reliance for some kinds of violations.

[10] *In re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009); *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 469 (Colo. App. 2010). *aff'd,* 263 P.3d 103 (Colo. 2011); *Luskin's, Inc. v. Consumer Prot. Div.,* 353 Md. 335, 358–59, 726 A.2d 702 (1999); *Pitts v. Am. Sec. Ins. Co.*, 144 N.C. App. 1, 14 (2001), *aff'd,* 356 N.C. 292 (2002).

[11] *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657–59 (D. Nev. 2009); *Weinberg v. Sun Co.*, 565 Pa. 612, 617–18 (2001); *Peltier Enters., Inc. v. Hilton,* 51 S.W.3d 616, 624 (Tex.App.2000).

[12] These states are Georgia, Indiana, Virginia, West Virginia, and Wyoming.

[13] Alternatively, consumers in these states can be excluded from the consumer protection class, and permitted to pursue only their unjust enrichment claims.

1    Finally, six states are undecided on the issue of whether reliance is required for named

2    plaintiffs, absent class members, or both,[14] but even assuming the most strenuous requirements (as

3    in Pennsylvania), common issues will still predominate and a class can be certified, as the

4    Arkansas plaintiff will argue under *Gold*.

5    **Remedies.** Differences among the states' remedial schemes also do not bar certification.

6    Once the jury answers the special verdict questions, the Court can easily determine whether a

7    violation has been proven under each state's laws, and if so, it can order the Defendant to provide

8    the residents of that state the remedy authorized by the state law. For example, all states provide

9    for compensatory damages, the amount of which here will be the price premium determined by the

10   jury, i.e., the percentage by which the price was inflated due to the misconduct. Some states also

11   provide for minimum damages, double or triple damages, or punitive or special statutory damages,

12   but at least one Plaintiff hails from a state in each group of such states.[15]  All but twelve state

13   statutes (including those in all states from which the Plaintiffs hail other than Arkansas) also

14   provide for injunctive relief; thus, if the elements found by the jury equate to a violation of these

15   states' laws, and Plaintiffs additionally show the likelihood of future harm to consumers, the Court

16   [14] These states are Alabama, Louisiana, Maine, Massachusetts, Oregon, and South Dakota.

17   [15] Some states allow consumers to obtain a specific monetary amount per violation, often where
18   the amount specified is greater than actual damages. New York is one such state, thus the Plaintiff
     there (Plaintiff Castoro) may represent consumers in Alaska, District of Columbia, Indiana
     Massachusetts, Oregon, Pennsylvania, Rhode Island, and Virginia. Likewise, the Plaintiffs from
19   New Jersey and North Carolina (Plaintiffs Freiman and Williams) can represent class members in
     the states permitting double or treble actual damages upon a showing of a violation of the statute,
20   i.e., Hawaii, Kansas, and Wisconsin. The Plaintiffs from California, Arkansas and Florida
     (Plaintiffs Koller, Bissonette, Glidewell, and Gibbs) can represent class members in the remaining
21   states. For purposes of this analysis, Plaintiff looked only states with statutory damages for which
     all consumers were eligible, and did not consider special provisions providing additional statutory
22   damages to special groups of citizens, such as senior citizens and the disabled.

23   Some states also permit awards of either punitive damages or per-violation amounts upon showing
     the actions were willful, knowing, or reckless, in most cases per the court's discretion. New York
24   is one such state, as are Alabama, Arizona, Connecticut, Delaware, Georgia, Idaho, Indiana, Iowa,
     Louisiana, Massachusetts, Missouri, Montana, Nevada, North Dakota, Oregon, Pennsylvania,
25   Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, and Washington. Other states
     do not specify preconditions for the award of punitive damages. These include California's CLRA
26   and the statutes of Vermont, Wisconsin, and the District of Columbia.  Finally there are states
     where where additional damages have not been authorized; these include Arkansas, Florida, and
27   New Jersey, as well as Alaska, Colorado, Hawaii, Kansas, Maine, Maryland, Michigan,
     Minnesota, Mississippi, Nebraska, New Mexico, Ohio, Oklahoma, South Dakota, Utah, West
28   Virginia, and Wyoming.

1   can fashion an injunction to prohibit the challenged conduct in these 38 states.[16]

2                          **c.      The Plaintiffs' Unjust Enrichment Claims Can Be
                                     Pursued on a Nationwide Basis.**

3           Most courts agree that the laws of the fifty states regarding unjust enrichment do not differ

4   materially, so a nationwide class may be certified. *See, e.g., In re Abbott Labs. Norvir Anti-Tr.*

5   *Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007) (certifying nationwide class; holding

6   that the "variations among some States' unjust enrichment laws do not significantly alter the

7   central issue or the manner of proof"); *In re Checking Account Overdraft Litig.,* 307 F.R.D. 630,

8   647 (S.D. Fla. 2015) ("There is general agreement among courts that the "minor variations in the

9   elements of unjust enrichment under the laws of the various states . . . are not material and do not

10  create an actual conflict.") (quoting *Pennsylvania Emp., Benefit Trust Fund v. Zeneca, Inc.,* 710

11  F.Supp.2d 458, 477 (D. Del. 2010)); *In re Mercedes–Benz Tele Aid Contract Litig.,* 257 F.R.D. 46

12  (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the

13  laws of the various states, those differences are not material and do not create an actual conflict.");

14  *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) ("In looking at claims

15  for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus

16  on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout

17  all common law causes of action for unjust enrichment.").

18          In distilling the various states' laws down to two common elements, one court explained:

19
20          At the core of each state's law are two fundamental elements—***the defendant
            received a benefit from the plaintiff and it would be inequitable for the defendant
            to retain that benefit without compensating the plaintiff.*** The focus of the inquiry
21          is the same in each state. Application of another variation of the cause of action
            than that subscribed to by a state will not frustrate or infringe upon that state's
22          interests. In other words, regardless of which state's unjust enrichment elements are
            applied, the result is the same. Thus, there is no real conflict surrounding the
23          elements of the cause of action.

24  *Powers v. Lycoming Engines,* 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis added), *rev'd on*

25  *other grounds,* 2009 WL 826842, 328 Fed. Appx. 121 (3d Cir. 2009). These two elements are the

26

27  ───────────────
    [16] The state statutes that do not provide for injunctive relief in a consumer action are Alabama,
    Arkansas, Colorado, Louisiana, Maryland, Mississippi, Montana, North Dakota, Oregon, South
    Carolina, Virginia, and Wyoming. The other 38 states' statutes specifically authorize consumers to
28  obtain injunctions.

same for all class members, regardless of their state of residence, as all paid a price premium to Deoleo to purchase its olive oil products—thus, all conferred a benefit on Deoleo—and none received olive oil that was "Imported from Italy" or guaranteed to be extra virgin, therefore rendering it inequitable for Deoleo to retain the benefit. Thus, the same legal questions predominate for all class members' unjust enrichment claims.

There are no material differences among state laws regarding unjust enrichment. Plaintiff is aware of one case that found a material difference in that half the states "do not allow claims for unjust enrichment where the plaintiff has received the benefit of the bargain." *Andren v. Alere, Inc.*, 2017 WL 6509550, at *17 (S.D. Cal. Dec. 20, 2017). But that court did not explain the basis for its holding, and it was mistaken, because the "benefit of the bargain" test is no different from the determination in every state of whether it would be "inequitable for the defendant to retain [the amount received from plaintiff] without compensating the plaintiff."[17] *See, e.g., Peterson v. Cellco P'ship,* 164 Cal. App. 4th 1583, 1591 (2008) ("Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price."); *One Step Up, Ltd. v. Webster Bus. Credit Corp.,* 87 A.D.3d 1, 14 (N.Y. App. Div. 2011) ("Moreover, defendant was in no way unjustly enriched. It merely received what it was entitled to under the express contracts at issue, while plaintiff received the benefit of its bargain."). The lack of any difference is especially evident here, as the essence of the claim by all Plaintiffs is that no purchaser got the bargained-for product at the bargained-for price, because of the price premium. *Cf. In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (explaining that "benefit of the bargain" losses are the difference between the price you paid and the value of what you received) (citing *Kwikset v. Superior Court*, 51 Cal. 4th 310, 321-22 (2011)).[18]

There may be one difference among the laws in that seven states, including Florida, have limited the remedy of unjust enrichment to situations where the victim has no other remedy, but

---

[17] Instead, the Court merely relied upon a lengthy chart prepared by the Defendant, that also did not contain any discussion. *See* Case No. 16-cv-1255, Dkt. 100-2, pp. 95-122.

[18] Alternatively, if this Court chose to include "did not receive benefit of the bargain" as an independent element of the unjust enrichment claim, the Plaintiffs from Arkansas, California, Florida, New York, and North Carolina would prove that element on behalf of class members in all states with such a requirement.

1    again, this difference does not matter. Courts in those states have barred enrichment claims only

2    where there is a contract between the parties that would give rise to claims for breach of contract.[19]

3    Here, there is no contract. *Cf. Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D.

4    Cal. 2014) (explaining that the absense of privity prevents a plaintiff from alleging breach of

5    contract in a food labeling lawsuit). Moreover, all Plaintiffs who fail to prove the elements of their

6    consumer law claim will have "no other remedy" and thus will be left with their unjust enrichment

7    claims. Likewise, if the Court concludes, based on the jury's special verdict answers, that the

8    elements for the consumer claim in a particular state have not been proven, then there is "no other

9    remedy" for the class members in that state.

10           **2.     Nationwide Settlement Classes Are Still Permitted After**
                       ***Hyundai.***

11           This Court may be concerned that 50-state settlement classes are no longer available under

12   the Ninth Circuit's recent ruling in *Hyundai*. It need not have that concern. *Hyundai* did not bar

13   nationwide settlement classes; and it reversed certification of the class there only because of

14   myriad and profound factual and legal differences among class members that do not exist here.

15           In *Hyundai*, the plaintiffs challenged allegedly fraudulent representations made by

16   hundreds of independent new and used car dealers across the country, in connection with 76

17   different models of cars. 881 F.3d at 704. The evidence showed wide variations among the

18   statements made by the dealers and among the true features of the car models. Prior to settlement,

19   the plaintiff had moved to certify a California class, and the district court denied certification due

20   to these differences. *Id.* at 695. Around the same time, numerous other class actions were filed

21   _____

     [19] *See, e.g., In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.
22   Supp. 2d 1311, 1338 (S.D. Fla. 2013) (holding that Florida plaintiffs may pursue claims for unjust
     enrichment and false advertising because there was not "an express contract between the parties
23   that precludes recovery"); *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, 2009 WL 513756, at *6
     (Del. Ch. Feb. 27, 2009), *aff'd sub nom. Metcap Sec. LLC v. Pearl Sr. Care, Inc.*, 977 A.2d 899
24   (Del. 2009) (holding that in Delaware, "[b]ecause there is no contract. . .[plaintiff] does not have
     an adequate remedy at law"). *See also Trustmark Ins. Co. v. Bank One, Arizona, NA*, 202 Ariz.
25   535, 542 (Ct. App. 2002), *as corrected* (June 19, 2002) (holding that the doctrine of unjust
     enrichment does not apply in Arizona where there is "a specific contract"). *Accord Porter v. Hu*,
26   116 Haw. 42, 54 (Ct. App. 2007); *Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d
     1182, 1193 (Utah 1996); *Daugherty v. Sony Elecs., Inc.*, 2006 WL 197090, at *6 (Tenn. Ct. App.
27   Jan. 26, 2006); *Schroeder v. Buchholz*, 622 N.W.2d 202, 207–08 (N.D. 2001).

28

around the country alleging similar misconduct under their own states' laws. *Id* at 697. In response, plaintiffs' counsel in the California action, where certification had been denied, conspired with the Defendant to settle out from under the plaintiffs and counsel from other states, by agreeing to a nationwide settlement class, under California law. *Id.* at 697-700. Although the plaintiffs and counsel from the other states objected, the district court certified the nationwide settlement class, without making any new findings about commonality or predominance, let alone why California law should apply to class members in all states when it had previously held that it could not even apply uniformly to class members in California. *Id.* at 700. The objector plaintiffs from the other states appealed, and the Ninth Circuit reversed.

Notably, *Hyundai* does not hold that a nationwide class can never be certified. Rather, as the Ninth Circuit explained, the district court must consider "whether the consumer-protection laws of the affected States vary in ***material*** ways." *Id.* at 702 (internal citations omitted) (emphasis added). While the district court must undertake a choice of law analysis and look to whether "common questions outweigh individual questions," *id.*, the Ninth Circuit reconfirmed that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 693 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

This case presents none of the problems that led the Ninth Circuit to reject the approval of a nationwide settlement class in *Hyundai*. Here, unlike *Hyundai*, the Court *did* certify a California class. *Cf. id.* at 696. The Court here found that there *was* uniform conduct by Defendant (including uniform labels, bottling and distribution practices). *Cf. id.* The Ninth Circuit *denied* Deoleo's 23(f) petition, before the settlement was reached. There *was* a substantial risk of nationwide litigation in this case, because plaintiffs from five other states had subsequently retained the same counsel to challenge the same conduct. *Cf. id.* at 703 (noting that "there was little risk that they would face a nationwide litigation class action if they did not reach a settlement agreement"). As there were not competing lawsuits filed against Deoleo over this issue, there was no pressure or incentive to settle this case at a low price. *Cf. id.* at 697 (noting that the settlement was reached one week after

1  the Judicial Panel on Multidistrict Litigation issued its order transferring 56 other actions to the

2  settling plaintiff's district). And Plaintiffs are not seeking to apply California law to class members

3  in all states, but to apply the law of each state to the residents of that state; which is possible

4  because the laws are substantively identical, and to the extent there are differences, the seven

5  named plaintiffs from six different states represent all permutations. *Cf. id.* at 692.[20]

6  ## C.  THE PROPOSED NOTICE IS ADEQUATE

7  The proposed notice plan and claim form comport with the procedural and substantive

8  requirements of Rule 23. Under Rule 23, due process requires that class members receive notice of

9  the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ.

10  Proc., Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle*

11  *and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class

12  members who are identifiable through reasonable effort"). The mechanics of the notice process are

13  left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by

14  due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*;*

15  *see also Rosenburg v. I.B.M.*, 2007 WL 128232 at \*5 (N.D. Cal. 2007) (notice should inform class

16  members of essential terms of settlement including claims procedure and their rights to accept,

17  object or opt-out of settlement).

18  Notice of the settlement is to be provided to the class as follows: (1) weekly publication in

19  the San Francisco Chronicle for four weeks; (2) publication in the national edition of *People*

20  *Magazine*; (3) over a 30-day period, 39 million combined impressions of online ads containing

21  links to the settlement website, on websites targeting individuals interested in such things as olive

22  oils, cooking oils, dressings, recipes, and Bertolli; (4) a press release through a national wire

23  service; and (5) sponsored blog posts on class action websites. (Gutride Decl., Ex. B.) In addition,

24  the claim administrator will establish the Settlement Website, which shall contain the Long Form

---

25  [20] Nor is certification here inconsistent from the Ninth Circuit's earlier decision in *Mazza v. Am.*
*Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). That was another case involving myriad car

26  dealers and individualized representataions. The defendant opposed certification and
demonstrated material differences of fact and law, particularly regarding scienter, reliance, and the

27  remedial structure. *Id.* at 591. For the reasons above, those differences do not exist here. And even
if a defendant *could* assert differing defenses to claims in various states—for example, asserting

28  different limitations periods—Deoleo decided not to assert such defenses but instead to settle.

Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel and Defendant's Counsel; the Agreement; the signed order of Preliminary Approval and the publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the publicly filed motion for final approval and Plaintiff's application for Attorneys' Fees, Costs and an Incentive Award, with supporting declarations. (Id. Ex. 1, ¶ 4.1.)

As explained in the declaration from the claim administrator, this multi-communication method is the best notice practicable and is reasonably designed to reach the settlement class members. (Weisbrot Decl. ¶¶ 26-28.) *See, e.g.*, *Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members and supplemented by published notice); *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also*; *In re Netflix Privacy Litig.*, 2012 WL 2598819, *5 (N.D. Cal. July 5, 2012) (approving notice procedure that included emailing customers at last known email address, publication in People Magazine, and advertising on Facebook.com).

The proposed notices inform class members about the proposed settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and incentives; and the fact that they will be bound by the judgment if they do not opt out. The notices refer class members to the settlement website where they can obtain the long-form notice, which provides more details about the case and the settlement, the procedures for opting out or objecting, and methods to obtain additional information. The settlement website will also contain a copy of the full settlement agreement and will contain the fee application when filed. (Gutride Decl. Ex. 1, ¶ 4.1.)

Settlement class members who seek benefits under the Settlement need to fill out a simple

1  Claim Form online. They also have the option to print copies and mail the Claim Form to the

2  Claim Administrator. The claim form requires them to certify under the penalty of perjury (1) their

3  name and address and (2) basic information about the Products purchased, including types,

4  quantity, price paid, time and place of purchase and that the purchases were not made for purposes

5  of resale. (Id. ¶¶ 3.6-3.7.) The claim form can be completed in a few minutes.

6  **IV.    DATES FOR THE FINAL APPROVAL PROCESS**

7          Plaintiffs request that in connection with preliminary approval, this Court set a date for a

8  final approval hearing to consider the fairness of the Settlement and to hear any comments from

9  the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines

10  for objections and opting out of the settlement class. Plaintiffs propose the following schedule:

| Item | Proposed Due Date |
|---|---|
| Initiate Notice | As set forth in Notice Plan |
| Motion for final approval; Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award | 42 days before final approval hearing |
| Objections, Requests to Appear, opt-outs | 28 days before final approval hearing |
| Replies in support of final approval and motion for attorneys' fees, costs and incentive awards; response to objections | 14 days before final approval hearing |
| Final approval Hearing | August 9, 2018 |
| End of Claim Period | 30 days after final approval |

**V.    CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court grant preliminary approval to the proposed class action settlement.

Dated: April 3, 2018                    Respectfully submitted,
                                        **GUTRIDE SAFIER LLP**

                                        By: /s/ Adam Gutride
                                        Adam J. Gutride

                                        **TYCKO & ZAVAREEI LLP**
                                        Hassan A. Zavareei

                                        *Counsel for Plaintiff*