# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement is entered into this 26th day of March, 2018, between Plaintiffs and Defendant, as defined herein.

## I.    RECITALS

1.1.    This Litigation commenced on May 23, 2014 when Scott Koller filed a complaint against Defendant Deoleo USA, Inc. (fka Med Foods, Inc.) in the United States District Court, Northern District of California, Case No. 3:14-cv-02400-RS. In his complaint, Koller alleged that Defendant had marketed and sold its Bertolli brand of olive oil with the representation "Imported from Italy," although most of the oil was extracted in countries other than Italy, from olives grown in those countries. Koller also alleged that Defendant had marketed and sold a subset of the Bertolli brand olive oil with the representation "Extra Virgin," although Defendant's procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. Koller alleged that Defendant's labeling and marketing of the oil violated the Tariff Act of 1930, as amended, 19 U.S.C. 1304, and its implementing regulations, 19 C.F.R. section 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. sections 301, *et seq.*, and its implementing regulations, 21 C.F.R. sections 101.18, *et seq.*; the U.S. Department of Agriculture regulations regarding Olive Oil and Olive-Pomace Oil, 75 Fed. Red. 22363 (Apr. 28, 2010); the Sherman Food, Drug and Cosmetic Law, California Health and Safety Code ("Cal. Health & Saf. Code") sections 109875, *et. seq.*; and California law regarding grades of olive oil, Cal. Health & Saf.

Code § 112877. He made claims for violations of the California Consumer Legal Remedies Act, Civil Code sections 1780 et seq. ("CLRA"), false advertising under California Business and Professions Code sections 17500, *et seq.*; unfair business practices under California Business and Professions Code sections 17200, *et seq.*; and fraud, deceit and/or misrepresentation.

  1.2. On July 17, 2014, Defendant moved to dismiss. Koller filed a first amended complaint, and Defendant again moved to dismiss. On January 6, 2015, the Court denied Defendant's second motion to dismiss in its entirety.

  1.3. On March 24, 2015, Defendant answered Koller's first amended complaint, denying Koller's allegations and asserting several affirmative defenses.

  1.4. On December 14, 2015, the Court stayed the case pending decisions in two cases pending before the Ninth Circuit. On January 19, 2017, the Court lifted the stay.

  1.5. Koller moved for class cetification. Defendant opposed the motion. On August 24, 2017, the Court certified two California classes: an "Imported from Italy Class" and an "Extra Virgin Olive Oil Class," which were defined as follows: (i) Imported From Italy Class: All purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante; " and (ii) Extra Virgin Olive Oil Class: All purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

  1.6. Notice of the pendency of the action has not yet been provided to the class members.

  1.7. In September 2017, Plaintiffs' Counsel provided notice to Defendant that they had been retained by additional purchasers of the Products outside of California, who

intended to bring actions similar to that by Koller under the laws of the various states and to represent similarly situated persons in those states and nationwide.

1.8.    On November 6, 2017, the Parties participated in an all-day mediation conducted by Honorable Justice Edward Infante (retired) at JAMS in San Francisco, California. That mediation, and the discussions that followed, resulted in the settlement memorialized in this Agreement.

1.9.    In December 2013, Defendant began to modify the labels for certain of the Products to no longer state "Imported from Italy;" these modifications were completed by the end of 2015.  As a result of this litigation, Defendant has agreed to maintain these changes to its labeling, and to make additional changes to the labeling and packaging of the products as discussed in more detail below in Sections 3.12 and 3.13, for at least three years following the Effective Date.

1.10.    Defendant denies all of Plaintiffs' allegations and charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. Defendant also denies that Plaintiffs, the Settlement Class, or any member of the Settlement Class have suffered damage or harm by reason of any alleged conduct, statement, act or omission of Defendant. Defendant further denies that the Litigation meets the requisites for certification as a class action under Rule 23 of the Federal Rules of Civil Procedure, except for purposes of settlement, or that the evidence is sufficient to support a finding of liability on any of Plaintiff's claims in the Litigation.

1.11.    Before and during this Litigation, Plaintiffs' Counsel conducted a thorough examination and investigation of the facts and law relating to the matters in the Litigation, including, but not limited to, engaging in intensive fact discovery, both formal and

3

informal, including: examining more than 200,000 pages of Defendant's documents; deposing five of Defendant's "persons most knowledgeable" pursuant to Federal Rule of Civil Procedure 30(b)(6); requesting and receiving written discovery responses from Defendant and more than 20 third parties; and engaging in expert discovery including depositions of technical and economic experts.

   1.12. Plaintiffs' Counsel has analyzed and evaluated the merits of all the Parties' contentions and this Settlement as it impacts all the Parties and the Settlement Class Members. Among the risks of continued litigation for Plaintiff are the risks of failing to prove liability or restitution and damages on a class-wide or individual basis. In particular, there may be difficulties establishing: (1) that Defendant's statements on the product labels (and other advertising and marketing materials), as challenged by Plaintiffs, were likely to deceive reasonable persons; (2) that the alleged misrepresentations and omissions were material to reasonable persons; and (3) that damages or restitution should be awarded or, if so, that the amount of the award would be more than nominal. Furthermore, with respect to members of the Settlement Class outside of California, no lawsuit is currently pending, nor has any class been certified. Plaintiffs and Plaintiffs' Counsel, after taking into account the foregoing along with other risks and the costs of further litigation, are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate and equitable, and that a settlement of the Litigation and the prompt provision of effective relief to the Settlement Class are in the best interest of the Settlement Class Members.

   1.13. Defendant agrees that the settlement is fair and reasonable in light of the merits and risks of the case. While continuing to deny all allegations of wrongdoing and disclaiming any liability with respect to any and all claims, Defendant considers it desirable to

resolve the Litigation on the terms stated herein, in order to avoid further burden, expense, inconvenience, and interference with its ongoing business operations. Therefore, Defendant has determined that settlement of this Litigation on the terms set forth herein is in its best interests.

1.14.    This Agreement reflects a compromise between the Parties, and shall in no event be construed as or be deemed an admission or concession by any Party of the truth of any allegation or the validity of any purported claim or defense asserted in any of the pleadings in the Litigation, or of any fault on the part of Defendant, and all such allegations are expressly denied. Nothing in this Agreement shall constitute an admission of liability or be used as evidence of liability, by or against any Party hereto.

1.15.    The undersigned Parties agree, subject to approval by the Court, that the Litigation between Plaintiffs, on the one hand, and Defendant, on the other hand, shall be fully and finally compromised, settled and released on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, and of the releases and dismissals of claims described below, the Parties agree to this settlement, subject to Court approval, under the following terms and conditions:

## II.    DEFINITIONS

Capitalized terms in this Agreement shall be defined as follows:

2.1.     "Agreement" means this Class Action Settlement Agreement, including all exhibits thereto.

2.2.     "Allegations" means the allegations described in Section 1.1 above and claims that could be pursued under the laws of the United States or any state on the basis of one or more of those allegations.

2.3.     "California Litigation Extra Virgin Olive Oil Class" means all purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

2.4.     "California Litigation Imported From Italy Class" means all purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

2.5.     "Claim Administrator" means, subject to Court approval, Angeion Group.

2.6.     "Claim Filing Deadline" means 30 days after Final Approval.

2.7.     "Claim Period" means the period beginning on the Notice Date and continuing until the Claim Filing Deadline.

2.8.      "Claim Form" means a claim form in substantially the same form as Exhibit A.

2.9.     "Class Representatives" means Plaintiffs.

2.10.    "Common Fund" or "Settlement Fund" means the Seven Million Dollars ($7,000,000.00) that is discussed further in Sections 3.1 and 3.2 below.

2.11.     "Defendant" means Deoleo USA, Inc.

2.12.    "Defendant's Counsel" means the law firm of Norton Rose Fulbright US LLP.

2.13.     "Effective Date" means the later of: (i) the expiration date of the time for filing a notice of appeal from the Final Approval or (ii) if a notice of appeal is filed, but the Final Approval is affirmed or the appeal is dismissed, the date upon which the mandate of the Court of Appeals is issued.

2.14.    "Email Notice" means a notice by email in substantially the same form as Exhibit B2.

2.15.    "Excluded Persons" means (1) Honorable Richard Seeborg, Joseph C. Spero, and Edward Infante (ret.), and any member of their immediate families; (2) any government entity, (3) Defendant; (4) any entity in which Defendant has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opt-out of the Settlement Class.

2.16.    "Exclusion Deadline" means twenty-eight (28) days prior to the initially scheduled hearing date on Final Approval.

2.17.    "Extra Virgin Class Period" means May 23, 2010 through the date of Preliminary Approval, inclusive.

2.18.    "Extra Virgin Olive Oil Product" means bottles of Bertolli Extra Virgin olive oil, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

2.19.    "Final Approval" means entry of a judgment, substantially in the form of Exhibit D, granting final approval of this Agreement as binding upon the Parties, which shall constitute a judgment respecting the Litigation.

2.20.    "Household" means any number of persons occupying the same dwelling unit.

2.21.    "Imported from Italy Class Period" means May 23, 2010 through December 31, 2015,  inclusive.

2.22.    "Incentive Award" means any award sought by application to and approval by the Court that is payable to any Plaintiff to compensate him or her for efforts in bringing this Litigation and/or achieving the benefits of this settlement on behalf of the Settlement Class, as further discussed in section 6.2.

2.23.    "Litigation" means *Koller v. Deoleo USA, Inc.*, United States District Court for the Northern District of California, Case No. 3:14-cv-02400-RS.

2.24.    "Long Form Notice" means a notice in substantially the same form as Exhibit B1.

2.25.    "Notice Date" means the day on which the Claim Administrator initiates the Online Notice, the Summary Published Notice, or the Press Release, whichever comes first.

2.26.    "Notice Plan" means the procedure for providing notice to the Settlement Class, as set forth in Exhibit B.

2.27.    "Objection Deadline" means twenty-eight (28) days prior to the initially scheduled hearing date on Final Approval.

2.28.    "Online Notice" means notice to Settlement Class Members in substantially the same form as Exhibit B3.

2.29.    "Other Olive Oil Product" means the liquid Bertolli Extra Light or Classico olive oil products.

2.30.    "Parties" means Plaintiff and Defendant, collectively.

2.31.    "Party" means either Plaintiff or Defendant.

2.32.    "Plaintiffs" means Scott Koller, Carolyn Bissonnette, Cece Castoro, Diane Gibbs, Darlene Williams, Robert Glidewell, and Stephen Freiman, collectively.

2.33.    "Plaintiffs' Counsel," "Class Counsel" or "Settlement Class Counsel" mean the law firms of Gutride Safier LLP and Tycko & Zavareei LLP, collectively.

2.34.    "Preliminary Approval" means issuance of an order, substantially in the form of Exhibit C, granting preliminary approval of the settlement described in this Agreement.

2.35.    "Proof of Purchase" means an itemized retail sales receipt showing, at a minimum, the date and place of purchase, name of products(s) purchased, and amount paid.

2.36.    "Published Notice" means a notice substantially in the form of Exhibit B3.

2.37.    "Released Claims" means the claims released as set forth in Part VIII of this Agreement.

2.38.    "Released Parties" means Defendant and its present and former subsidiaries, parents, affiliates, divisions, officers, directors, members, managers, shareholders, insurers, suppliers, manufacturers, re-sellers, distributors, brokers, service providers, employees, agents, legal representatives, heirs, predecessors, successors, or assigns.

2.39.    "Settlement" means the terms of this Agreement.

2.40.    "Settlement Class" or "Settlement Class Members" means all persons, other than Excluded Persons, who, (i) during the Extra Virgin Class Period, purchased, in the United States, any of the Extra Virgin Olive Oil Products, except for purpose of resale and/or (ii) during the Imported from Italy Class Period, purchased, in the United States, any of the Other Olive Oil Products, except for purpose of resale.

2.41.    "Settlement Website" means an internet website created and maintained by the Claim Administrator. The URL of the Settlement Website shall be provided in the Notice Plan.

2.42.   "Undertaking" means an undertaking, substantially in the form of Exhibit E.

2.43.   "Valid Claim" means a claim submitted in compliance with Part III of this Agreement, and as further described in that Part.

## III.   SETTLEMENT BENEFITS, CLAIMS ADMINISTRATION AND CHANGED PRACTICES

3.1.   The Settlement Fund shall be maintained as a qualified settlement fund pursuant to 26 CFR 1.468B-1 *et seq.,* in an interest-bearing account at a financial institution approved by Plaintiffs' Counsel and subject to the oversight of the Claim Administrator (the "Settlement Fund Account").

3.2.   Defendant shall pay the amount of the Settlement Fund into the Settlement Fund Account, by wire transfer, according to the following schedule: (a) the costs of notice and administration through the date of final approval, as estimated by the Claim Administrator, within seven (7) days of an Order granting Preliminary Approval; (b) the balance of the Settlement Fund within seven (7) days of Final Approval. The Settlement Fund is the Defendant's sole and exclusive monetary obligation under the Settlement.

3.3.   The Settlement Fund shall be applied to pay, in the following order: (i) all costs and payments associated with the Notice Plan and administration of the Settlement, including all payments to the Claim Administrator; (ii) any necessary taxes and tax expenses on the Settlement Fund; (iii) any award of attorneys' fees and costs made by the Court to Plaintiffs' Counsel under this Agreement, (iv) any Incentive Awards made by the Court; and (v) Valid Claims.

3.4.    If after payment of items (i) through (iv) in Section 3.3, the total amount of Valid Claims exceeds the balance remaining in the Settlement Fund, then each Valid Claim in item (v) shall be reduced pro-rata. If after payment of items (i) through (iv) in Section 3.3, money remains in the Settlement Fund, then the amount paid for each Valid Claim it item (v) shall be increased pro-rata, up to a maximum of five times the amounts set forth in section 3.8. If after such pro-rata increase in the payment of Valid Claims, there still remains money in the Settlement Fund, then upon approval by the Court, pursuant to the cy pres doctrine, the remaining amount shall be paid in equal shares to:

    (a)    Consumers Union, Yonkers, NY;

    (b)    Center for Food Safety, Washington, DC.

Cy pres payments shall be used for purposes consistent with the aims of the Litigation, and shall not be used by the recipients to fund any litigation activities against Defendant or other parties.

3.5.    Every Settlement Class Member shall have the right to submit a claim for settlement benefits. A Claim shall be a Valid Claim only if submitted on the Claim Form pursuant to, and in compliance with, the procedures set forth herein.

3.6.    At the election of the Settlement Class Member, Claim Forms may be submitted in paper via first class mail or online at the Settlement Website. Claim Forms must be be received by the Claim Administrator (not just postmarked) or submitted online no later than the Claim Filing Deadline, and Claim Forms submitted after that date will not be Valid Claims. For Claim Forms that are submitted online, the Class Member shall have the opportunity to upload Proof of Purchase image files (e.g. jpg, tif, pdf); to review, prior to submitting the claim, a page that redisplays all information entered in the Claim Form and the names of image files uploaded; and to print, immediately after the Claim Form has been submitted, a page showing

the information entered, the names of image files uploaded, and the date and time the Claim

Form was received.  In addition, for Claim Forms that are submitted online, the Class Member

shall be sent an email confirmation of the submitted claim that shows the information entered,

the names of image files uploaded, and the date and time the Claim Form was submitted.

3.7.   On the Claim Form and Settlement Website, the Settlement Class Member

must certify the truth and accuracy of the following under the penalty of perjury:

(a)   The Settlement Class Member's name and mailing address;

(b)   The Settlement Class Member's email address, if the Settlement

Class Member elects to provide the information;

(c)   For each Product purchase on which a claim is submitted, that the

Settlement Class member purchased the products as shown in Proofs of Purchase submitted with

the Claim Form, or in the alternative:

- The type or name of the Products purchased;

- The quantity purchased;

- The place of purchase; and

- The approximate month and year of purchase

- That the claimed purchases were not made for purposes of
  resale.

A Claim not complying with all of the elements listed in this Section 3.7 is not a Valid Claim.

Only Valid Claims will be paid.

3.8.   Valid Claims shall be paid as follows: For each Extra Virgin Olive Oil

Product purchased during the portion of the Extra Virgin Class Period that overlaps with the

Imported from Italy Class Period, the Class Member shall receive one dollar seventy-five cents

12

($1.75).  For each Extra Virgin Olive Oil Product purchased during the portion of the Extra Virgin Class Period that does not overlap with the Imported from Italy Class Period, the Class Member shall receive seventy-five cents ($0.75).  For each Other Olive Oil Product purchased during the the Imported from Italy Class Period,  the Class Member shall receive one dollar fifty cents ($1.50).  All the amounts set forth in this paragraph shall be subject to being increased pro rata, pursuant to the terms of Section 3.4.

3.9.     A Settlement Class Member may submit claims for an unlimited number of purchases. There shall be no cap on the total amount paid for claimed purchases that are corroborated by Proof of Purchase. However, for purchases not corroborated by Proof of Purchase, (a) payments shall be made for a maximum of five Products per Household, and (b) the combined total amount paid for all such purchases shall not exceed $25 per Household.

3.10.    The Claim Administrator shall be responsible for processing Claim Forms and administering the Settlement Website, opt-out process, and Settlement Benefit claims process described herein. The Claim Administrator will follow its ordinary course of practice regarding approval of claims, subject to all Parties' right to audit claims and challenge the Claim Administrator's decision. If the Parties and the Claim Administrator cannot collectively agree how to resolve disputed claims, then such disputes shall be resolved by the Court. Within thirty (30) days after the Effective Date, the Claim Administrator shall email all Class Members whose claims are denied to state the reasons for denial, at the email address (if any) provided by the Class Member on the Claim Form. If no email address is provided by the Class Member on the Claim Form, the Administrator shall not have an obligation to provide the class member any notification of the reasons for denial of the claim. The Claim Administrator's determination of whether a claim is a Valid Claim, if not disputed by the Parties, shall be final and not subject to

13

further review. No person shall have any claim against Plaintiffs, Defendant, Plaintiffs' Counsel, Defendant's Counsel, or the Claim Administrator based on any determination of a Valid Claim, distributions, or awards made in accordance with this Agreement and the Exhibits hereto.

3.11.   Claims shall be paid by check mailed to the Settlement Class Member, or at the election of the Settlement Class Member on the Claim Form, by direct deposit into the Class Member's bank account.  The Claim Administrator also is authorized to offer the Settlement Class Member the option to obtain payment through another form of electronic transfer (such as Paypal, Venmo, Google Wallet, or Square Cash). All Valid Claims shall be paid by the Claim Administrator within sixty (60) days after the Effective Date.

3.12.   Defendant agrees not to use the phrases "Imported from Italy," "Made in Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle originates exclusively from olives grown in Italy on the labeling of any olive oil product sold in the United States, until at least three years after the Effective Date, unless the product so labeled is composed entirely of oil from olives grown and pressed in Italy.

3.13.   For a period of at least three years after the Effective Date, Defendant agrees that if it uses the phrase "Extra Virgin" or term "EVOO" on the product label of any olive oil, it must do all of the following:

(a)     Package the olive oil in a non-transparent (UV filtering) container, e.g., a green or brown glass container;

(b)     For extra virgin olive oil bottled on or after June 1, 2018, Include a "best by" or "use by" date not later than sixteen months after the date of bottling;

(c)    Include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to the "best by" date; and.

(d)    Implement the following chemical parameter testing requirements set forth under "Target Limit" at the time of bottling (which are stricter than the current limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | ≤ 0.8 | ≤ 0.5 |
| Peroxide value (mEq )2/kg) | ≤ 20 | ≤ 10 |
| K270 | ≤ 0.22 | ≤ 0.15 |
| K232 | ≤ 2.50 | ≤ 2.1 |
| Delta-K | ≤ 0.01 | ≤ 0.005 |

3.14.   To the extent Defendant has already implemented the requirements in sections 3.12 or 3.13 for any of its olive oils, it will agree to represent that it made these changes during the pendency of this litigation.

3.15.   The injunctions set forth in Section 3.12 and 3.13 shall be subject to modification based on changes in law.

## IV.    NOTICE

4.1.    Prior to the Notice Date, the Claim Administrator shall establish a toll-free number to call to obtain additional information and to request a mailed version of the Long Form Notice Claim Form.  Prior to the Notice Date, the Claim Administrator also shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiffs' Counsel and Defendant's Counsel; the

Agreement; the signed order of Preliminary Approval and the publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the publicly filed motion for final approval and Plaintiff's application(s) for Attorneys' Fees, Costs and an Incentive Award, with supporting declarations.

4.2.     The Settlement Website shall remain accessible until one hundred eighty (180) days after all settlement benefits are distributed.

4.3.     Notice shall be provided as provided in the Notice Plan.

4.4.     The Parties shall supervise the Claim Administrator in the performance of the notice functions set forth in this Section IV.

4.5.     CAFA Notice.  The Claim Administrator shall provide notice in compliance with 28 U.S.C. § 1715.

4.6.     At least fourteen (14) days prior to the final approval hearing referenced in Section VII of this Agreement, the Claim Administrator shall certify to the Court that it has complied with the notice requirements set forth herein.

4.7.     All costs of notice as set forth in this Section IV and all costs of the Claim Administrator in processing objections and exclusion requests as set forth in Sections 7.4 through 7.10 shall be paid from the Settlement Fund and Defendant shall have no responsibility for paying such costs other than as required in Section 3.2.

# V.     CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND FILING OF SECOND AMENDED COMPLAINT

5.1.     Solely for the purpose of effectuating the Settlement set forth in this Agreement and subject to Court approval, the Parties stipulate that a Settlement Class shall be certified in accordance with the definition set forth in this Agreement, that the Class Representatives shall represent the Settlement Class for settlement purposes, and that Plaintiffs' Counsel shall be appointed as the attorneys for the Settlement Class.

5.2.     In the event that the Court declines to enter the Preliminary Approval order or to grant Final Approval (or enters any order that increases the cost or burden of the settlement to Defendant beyond what is set forth in this Agreement), the Parties may, but are not required to, modify this Agreement. Such a modification shall be binding only if it is in writing and executed by Plaintiffs' Counsel and Defendant's Counsel.

5.3.     In the event that this Agreement (including the settlement provided for herein) is not finally approved, or is terminated or cancelled or fails to become effective for any reason whatsoever, the conditional class certification and leave to file a second amended complaint, to which the Parties have stipulated solely for the purpose of the settlement of the Litigation, shall be null and void, and the Litigation shall revert to its status as it existed prior to the date of this Agreement, and the Claim Administrator shall return to Defendant such portion of the amounts deposited pursuant to Section 3.2 that are not required to pay for notice and administration then-completed. In such event, neither this Agreement nor any document filed or created in connection with this Settlement may be used as an admission or as evidence for any purpose.

## VI.    ATTORNEYS' FEES, COSTS, AND EXPENSES, AND INCENTIVE AWARDS

6.1.    Plaintiffs' Counsel may apply to the Court for payment from the Settlement Fund of their out-of-pocket expenses. Plaintiffs' Counsel may additionally apply to the Court for payment from the Settlement Fund of an amount equal to 30% of the Settlement Fund, as their attorneys' fees. Any motion for attorneys' fees and costs and expenses must be filed at least fourteen (14) days before the deadline for objecting to the Settlement. Any award of attorneys' fees, costs, or expenses, shall come solely from the Settlement Fund, and Defendant shall have no obligation to pay any portion of Plaintiffs' or Plaintiffs' Counsel's fees, costs, or expenses.

6.2.    Each Plaintiff may additionally apply to the Court for an Incentive Award as compensation for the time and effort undertaken in and risks of pursuing this Litigation, including the risk of liability for the Parties' costs of suit, and for agreeing to the general release set forth in Section 8.1.  The Incentive Award to Koller shall not exceed $5000, and the Incentive Award to each other Plaintiffs shall not exceed $1000. Such Incentive Awards shall come solely from the Settlement Fund. Defendant shall have no obligation to pay any portion of the Incentive Awards.

6.3.    Defendant agrees not to oppose or to submit any evidence or argument challenging or undermining Plaintiff's application for Attorneys' Fees and Costs or Incentive Awards, provided such application is consistent with Sections 6.1 and 6.2. Plaintiffs' Counsel and Plaintiffs agree that the denial of, reduction or downward modification of, or failure to grant any application for attorneys' fees, costs, and expenses or incentive awards shall not constitute grounds for modification or termination of this Agreement, including the settlement and releases provided for herein.

6.4.    Upon an award of attorneys' fees, costs and incentives by the Court, Plaintiffs' Counsel shall provide the Claim Administrator a statement signed by authorized representatives of Gutride Safier LLP and Tycko & Zavareei LLP that indicates how the award is to be apportioned between each of those two law firms. The Claim Adminstrator shall pay the apportioned amount of the awarded attorneys' fees, costs and expenses from the Settlement Fund to each respective law firm within seven (7) days thereafter, provided that the firm to which the distribution is being made and its principals have executed the Undertaking and such further documentation as Defendant may request in accordance with the Undertaking in order to enforce Defendant's security interests pursuant to the Undertaking, including identification of assets deemed sufficient to secure any repayment obligations due to reversal or downward modification of the award on appeal. If Final Approval or the award of attorneys' fees, costs or expenses is later reversed on appeal then, within seven (7) days of such order, all such distributions shall be repaid to the Claim Administrator, along with interest as stated in the Undertaking. If the law firm that receives such a distribution fails to make such repayment in full, the Claim Administrator may recover the amount owed plus interest as set forth in the Undertaking. The Parties agree that Plaintiffs' Counsel shall be responsible for any and all reasonable fees, costs, and expenses incurred by the Claim Administrator or Defendant in connection with (i) the perfection of any security interest in the assets granted in the Undertaking and (ii) the  exercise of remedies in respect of the security interests granted pursuant to the Undertaking.

6.5.    Within seven (7) days after the Effective Date, the Claim Administrator shall pay the Court-approved Incentive Awards from the Settlement Fund to the respective Plaintiffs.

6.6.    Except as set forth in this Agreement, each Party shall bear his, her or its own fees, costs and expenses.

## VII.    CLASS SETTLEMENT PROCEDURES

7.1.    <u>Amendment of Complaint.</u> Within fourteen (14) days of the execution of this Agreement, the Parties shall sign, and Plaintiff shall file in the Court, a stipulation that, upon Preliminary Approval, Plaintiff should be granted leave to file a second amended complaint, to amend the class definition to correspond with the definition of the Settlement Class and to assert claims on behalf of that class of the same type as previously asserted, under the laws of the United States and all states and territories thereof. The stipulation shall provide that Defendant's deadlines and any other obligations to respond to the second amended complaint shall be held in abeyance and, if Preliminary Approval is denied, Final Approval is denied, or a mandate is issued reversing an award of Final Approval, the second amended complaint shall be immediately and automatically deemed withdrawn, and the Litigation shall continue on the first amended complaint as if the second amended complaint were never filed and the Settlement Class never certified, and no reference to the second amended complaint or Settlement Class or any documents related thereto shall be made or used against Defendant for any purpose in this Litigation or any other action, lawsuit, or proceeding of any kind whatsoever.

7.2.    <u>Settlement Approval.</u> As soon as practicable after the signing of this Agreement, Plaintiff shall move, with the support of Defendant, for a Preliminary Approval order, substantially in the form of Exhibit C, conditionally certifying the Settlement Class; preliminarily approving this Agreement and this Settlement as fair, just, reasonable and adequate; approving Class Notice to the Settlement Class Members as described in Part IV

above; and setting a hearing to consider Final Approval of the Settlement and any objections thereto.

      7.3.   <u>Final Approval Order and Judgment</u>. At or before the hearing on Final Approval, Plaintiffs, with the support of Defendant, shall move for entry of an order of Final Approval, substantially in the form of Exhibit D, granting final approval of this Settlement and adjudging this Agreement to be final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not excluded themselves from the Settlement Class as provided below; ordering that the settlement relief be provided as set forth in this Agreement and giving effect to the releases as set forth in Part VIII, below; and entering judgment in the Litigation. The parties shall request a hearing on final approval to occur in late summer or early fall of 2018.

      7.4.   <u>Exclusions and Objections</u>. The Long Form Notice and the Print Publication Notice shall advise prospective Settlement Class Members of their rights to forego the benefits of this settlement and pursue an individual claim; to object to this settlement individually or through counsel; and to appear at the final approval hearing.

      7.5.   If any Settlement Class Member wishes to object to the Settlement and/or to be heard at the Final Approval hearing, the Settlement Class Member may submit a written objection, in compliance with the requirements set forth in the Long Form Notice and the Preliminary Approval Order.

      7.6.   If any Settlement Class Member wishes to be excluded from this Settlement and the Settlement Class, the Settlement Class Member may do so by completing and submitting the online form at the Settlement Website or by mailing a valid request to opt out, as described in the Long Form Notice, to the Claim Administrator. Requests to exclude must be submitted online by the Exclusion Deadline, or if mailed must be *received by* the Claim

Administrator (not just postmarked) by the Exclusion Deadline, or they shall not be valid. For exclusion requests that are submitted online, the Class Member shall have the opportunity to print a page immediately after submission showing the information entered and the date and time the request for exclusion was received.  A Settlement Class Member who elects to opt out of this Settlement and the Settlement Class shall not be permitted to object to this Settlement or receive any of the benefits of the Settlement. Settlement Class Members shall be encouraged, but not required, to provide their email addresses in their requests for exclusion.

      7.7.    At least fourteen (14) days prior to the hearing on Final Approval, the Claim Administrator shall prepare a list of the names of the persons who have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiffs' Counsel shall file that list with the Court, with service on Defendant's Counsel.

      7.8.    <u>Right To Terminate Settlement Agreement</u>. If more than 1000 persons submit a timely and valid request to opt out of the Settlement Class, Defendant shall have the unilateral right to terminate this Agreement (and any obligations thereunder) within three (3) business days of the filing with the Court of the opt-out list described in Section 7.7 of this Agreement.  Furthermore, except for changes to the time periods set forth in Parts IV and VII, and except as set forth in Section 6.3 of this Agreement, all other terms and limitations set forth in this Agreement and in the documents referred to or incorporated herein (including but not limited to the Long Form Notice, the Print Publication Notice, the Online Notice and the Claim Form) shall be deemed material to the Parties' agreement, and in the event any such other term is altered or amended by the Court (including if the Court refuses to certify the Settlement Class and/or modifies the definition of the class), or any other court, or if any federal or state authority objects to or requires modifications to the Agreement, any Party whose rights or obligations are

affected by the alteration or amendment may terminate this Agreement upon written notice to the other Party.

      7.9.   <u>Effect if Settlement Not Approved or Agreement is Terminated</u>. This Agreement was entered into only for purposes of settlement. In the event that Preliminary or Final Approval of this Agreement does not occur for any reason, including without limitation termination of this Agreement pursuant to Section 7.8, or if Final Approval is reversed on appeal, then no term or condition of this Agreement, or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the Litigation, or in any other proceeding; the Litigation may continue as if the settlement had not occurred; and any orders granting leave to file the second amended complaint and conditionally certifying or approving certification of the Settlement Class shall be vacated, and the second amended complaint shall be stricken from the Court file. The Parties agree that all drafts, discussions, negotiations, documentation or other information prepared in relation to this Agreement, and the Parties' settlement discussions, shall be treated as strictly confidential and may not, absent a court order, be disclosed to any person other than the Parties' counsel, and only for purposes of the Litigation. In such event, the Claim Administrator shall return to Defendant such portion of the amounts deposited pursuant to Section 3.2 that are not required to pay for notice and administration then-completed, plus accrued interest.

      7.10.   The Long Form Notice and the Print Publication Notice shall advise members of the California Litigation Class that, if the settlement is not approved, or if the Effective Date does not occur for any other reason, then the Litigation will continue on behalf of the California Litigation Class only.  Members of the California Litigation Class who do not

wish to be bound by a judgment in favor of or against the California Litigation Class must exclude themselves from the Litigation.  The Parties shall request that, in the order of Preliminary Approval, the Court order that the process and time limits for members of the California Litigation Class to exclude themselves from the Litigation are identical to those set forth in the prior paragraph with regard to the Settlement Class, except as follows. If the settlement is not approved or the Effective Date does not occur, members of the California Litigation Class who submitted timely objections to the settlement or timely claims under the settlement (whether or not such claims are deemed Valid Claims) shall have an additional forty-five (45) days from the date they are provided notice of the termination to exclude themselves from the California Litigation Class, and members of the California Litigation Class who submitted timely requests to exclude themselves from the settlement shall have an additional forty-five (45) days from the date they are provided notice of the termination to revoke their requests for exclusion and to rejoin the California Litigation Class. To effectuate this right, in the event of termination, notice shall be provided by email to all members of the California Litigation Class who submitted timely objections to the Settlement or timely claims under the Settlement (whether or not such claims are deemed Valid Claims) and who provided an email address in connection with their objections or claims, informing such persons of an additional period to exclude themselves from the Litigation and linking to an exclusion form on the Settlement Website.  In addition, in the event that termination occurs, notice shall be provided by email to all members of the California Litigation Class who submitted timely request to exclude themselves from the Settlement and Litigation and who provided an email address in connection with their request for exclusion, informing such persons of an additional period to revoke their request for exclusion and to rejoin the California Litigation Class for purposes of the continued

Litigation.  Within ten (10) days of any event causing termination, the Parties shall meet and confer in good faith regarding the content of such notice and to obtain Court approval for distribution of the notice, and shall agree to an appropriate schedule to afford members of the California Litigation Class forty-five days to respond to it; provided, however, that in the event of termination, Defendant does not agree to bear any expenses relating to the costs of providing the post-termination notice to, and administration of post-termination exclusion requests (and revocation of exclusion requests) for, the California Litigation Class, as described in this Section 7.10.  Members of the California Litigation Class who did not file an objection by the Objection Deadline or a claim by the Claim Filing Deadline shall have no further right after the Exclusion Date to exclude themselves from the Litigation, even if the Settlement is not approved or the Effective Date does not occur.

7.11.    The proposed Preliminary Approval order and Long Form Notice will provide that any Settlement Class Members wishing to object or exclude themselves who fail to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

7.12.    If any objection is received by the Claim Administrator, the Claim Administrator shall forward the objection and all supporting documentation to counsel for the Parties. At least fourteen (14) days prior to the hearing on Final Approval, Plaintiff's Counsel shall file all such objections and supporting documentation with the Court.  The failure of the Settlement Class Member to comply with the filing requirements of Section 7.5 shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Claim Administrator.

7.13.    If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form shall take precedence and be considered valid and binding, and the exclusion request shall be deemed to have been sent by mistake and rejected.

7.14.    A Settlement Class Member who objects to the settlement may also submit a Claim Form on or before the Claim Filing Deadline, which shall be processed in the same way as all other Claim Forms. A Settlement Class Member shall not be entitled to an extension to the Claim Filing Deadline merely because the Settlement Class Member has also submitted an objection.

## VIII.   RELEASES

8.1.    <u>Releases Regarding Named Plaintiffs (Class Representatives) and Released Parties</u>. Upon Final Approval, Plaintiffs on the one hand, and Defendant on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or contentions that Plaintiffs, on the one hand, and Defendant, on the other hand, have had in the past, or now have, related in any manner to the Defendant's products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown,

that Plaintiffs, on the one hand, and Defendant, on the other hand, have had in the past or now

have, related in any manner to any and all Released Parties' products, services or business

affairs, or otherwise.

       8.2.   <u>Releases Regarding Settlement Class Members and Released Parties</u>.

Upon Final Approval, Settlement Class Members shall have unconditionally, completely, and

irrevocably released and discharged the Released Parties from any and all claims, liens,

demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature

whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under

any international, federal, state or local statute, ordinance, common law, regulation, principle of

equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise

out of or relate to the Allegations, or to any similar allegations or claims that the Products were

marketed or labeled as "Imported From Italy" and/or "Extra Virgin" or in any other way

misrepresented as to the country of origin of the olive oils used to produce Bertolli olive oils

during the Class Period (the Released Claims"), except that there shall be no release of claims for

personal injury allegedly arising out of use of the Products. Upon Final Approval, Settlement

Class Members shall be forever barred from initiating, maintiaing, or prosecuting any Released

Claims against Released Parties.

       8.3.   <u>Waiver of Provisions of California Civil Code § 1542.</u> Plaintiffs and

Defendant shall, by operation of Final Approval, be deemed to have waived the provisions,

rights and benefits of California Civil Code § 1542, and any similar law of any state or territory

of the United States or principle of common law.  In addition, Settlement Class Members shall,

by operation of Final Approval, be deemed to have waived the provisions, rights and benefits of

California Civil Code § 1542, and any similar law of any state or territory of the United States or

principle of common law, but only with respect to the matters released as set forth section 8.2.

Section 1542 provides:

**A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

        8.4.    <u>Effectuation of Settlement</u>. None of the above releases includes releases of claims to enforce the terms of the Settlement provided for in this Agreement.

        8.5.    <u>No Admission of Liability.</u> This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. Defendant expressly denies the allegations of the complaints in the Litigation. Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by the Released Parties, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the Released Parties in any proceeding, except that this Agreement may be offered or received in evidence in such proceedings as may be necessary to consummate, interpret, or enforce this Agreement.

## IX.    ADDITIONAL PROVISIONS

        9.1.    <u>Best Efforts</u>. The Parties' counsel shall use their best efforts to cause the Court to grant Preliminary Approval of this Agreement and settlement as promptly as

practicable, to take all steps contemplated by this Agreement to effectuate the settlement on the stated terms and conditions, and to obtain Final Approval of this Agreement.

9.2.     <u>Change of Time Periods</u>. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by the written agreement of Plaintiffs' Counsel and Defendant's Counsel, without notice to Settlement Class Members.

9.3.     <u>Time for Compliance</u>. If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

9.4.     <u>Governing Law</u>. This Agreement is intended to and shall be governed by the laws of the State of California, without regard to conflicts of law principles.

9.5.     <u>Representations Regarding Changed Practices.</u> Plaintiffs' Counsel represent that the labeling and quality changes required in sections 3.12 and 3.13 satisfy their concerns regarding the country of origin and quality claims as alleged in the complaints.

9.6.     <u>Entire Agreement</u>. The terms and conditions set forth in this Agreement constitute the complete and exclusive statement of the agreement between the Parties hereto relating to the subject matter of this Agreement, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further intend that this Agreement constitute the complete and exclusive statement of its terms as between the Parties, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving the interpretation of this

Agreement. Any amendment or modification of the Agreement must be in writing signed by Plaintiffs' Counsel and Defendant's Counsel.

      9.7.   <u>Advice of Counsel</u>. The determination of the terms of, and the drafting of, this Agreement have been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. The presumption found in California Civil Code section 1654 that uncertainties in a contract are interpreted against the party causing an uncertainty to exist is hereby waived by all Parties.

      9.8.   <u>Binding Agreement</u>. This Agreement shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Parties.

      9.9.   <u>No Waiver</u>. The waiver by any Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

      9.10.   <u>Requirement of Execution</u>. This Agreement shall be valid and binding as to Plaintiffs, Plaintiffs' Counsel, the Settlement Class and Defendant upon (1) signature by Plaintiffs, (2) signature by an authorized representative of Defendant, and (3) signature as to form by an authorized representative of each of the law firms defined as Plaintiffs' Counsel and Defendant's Counsel.

      9.11.   <u>Execution in Counterparts</u>. This Agreement shall become effective upon its execution by all of the undersigned. The Parties may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all Parties had signed the same instrument.

      9.12.   <u>Extensions of Time</u>. The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

9.13. <u>Enforcement of this Agreement</u>. The Court shall retain jurisdiction to enforce, interpret, and implement this Agreement.

9.14. <u>Notices</u>. All notices to the Parties or counsel required by this Agreement, shall be made in writing and communicated by mail and fax or email to the following addresses:

If to Plaintiffs or Plaintiffs' Counsel:

Adam Gutride, Esq.
Seth Safier, Esq.
Gutride Safier LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Fax: (415) 449-6469
Email: adam@gutridesafier.com
and seth@gutridesafier.com


and

Hassan A. Zavareei, Esq.
Anna C. Haac, Esq.
Tycko & Zavareei LLP
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Fax: (202) 973-0950
Email: hzavareei@tzlegal.com and ahaac@tzlegal.com,

If to Defendant or Defendant's Counsel:

Jeffrey Margulies, Esq.
Norton Rose Fulbright US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Telephone: (213) 892-9286
Fax: (213) 892-9494
Email : jeff.margulies@nortonrosefulbright.com

9.15.   <u>Confidentiality</u>. The Parties, Plaintiffs' Counsel, and Defendant's Counsel agree to keep this Agreement confidential until the filing of the motion for Preliminary Approval.

9.16.   <u>Exhibits.</u> The Exhibits to the Agreement are an integral part of the Settlement and are hereby incorporated and made part of the Agreement.

9.17.   <u>Complete Resolution.</u> The Parties intend for this Agreement to be a complete and final resolution of all disputes between them with respect to the Litigation.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the first date it has been executed by all of the undersigned.

**APPROVED AS TO FORM:**

DATED: March ___, 2018          GUTRIDE SAFIER LLP

                                        _____
                                        Adam Gutride, Esq.
                                        Seth Safier, Esq.
                                        Attorneys for Plaintiffs

DATED: March __, 2018          TYCKO AND ZAVAREEI LLP

                                        _____
                                        Hassan A. Zavareei, Esq.
                                        Anna C. Haac, Esq.
                                        Attorneys for Plaintiff

DATED: March \_\_\_, 2018  NORTON ROSE FULBRIGHT US LLP

        _____

        Jeffrey Margulies, Esq.

**APPROVED AND AGREED:**

DATED: March \_\_\_, 2018  SCOTT KOLLER

        _____

        Scott Koller

DATED: March \_\_\_, 2018  CAROLYN BISSONNETTE

        _____

        Carolyn Bissonnette

DATED: March \_\_\_, 2018  CECE CASTORO

        _____

        Cece Castoro

DATED: March \_\_\_, 2018  DIANE GIBBS

        _____

        Diane Gibbs

DATED: March \_\_\_, 2018  DARLENE WILLIAMS

        _____

        Darlene Williams

DATED: March ___, 2018        ROBERT GLIDEWELL


_____

Robert Glidewell


DATED: March ___, 2018        STEPHEN FRIEMAN


_____

Stephen Freiman

DATED: March ___, 2018        DEOLEO USA, INC.


By:_____

Name:_____

Its: _____

# Exhibit A

***Koller v. Deoleo USA, Inc.*** **Class Action Settlement**
**Online {additions for Paper version in brackets} Claim Form**

To make a claim under the Settlement, you must complete this form {and mail it to the address at the bottom of this form.  (Alternatively, you can complete and submit a claim form online at www._____/claimform.)}.  The claim form is due by [30 days after Final Approval] {which means it must be ***received*** by the Claim Administrator (not just postmarked) by that date}. The information will not be disclosed to anyone other than the Court, the Claim Administrator, and the Parties in this case, and will be used only for purposes of administering this Settlement (such as to audit and review a claim for completeness, truth, and accuracy).

To submit a claim, your purchase cannot have been for purpose of resale.  You must have purchased your product in the United States on or after May 23, 2010.  Your purchase must have occurred prior to [date of preliminary approval] if you purchased a Bertolli Extra Virgin Olive Oil Product, and prior to December 31, 2015, if you purchased a Bertolli Classico or Extra Light Olive Oil Product.  The amount you will receive depends on which products you purchased at what time, as well as on the number of other claims filed in the settlement.

You can make claim for up to five Products purchased, unless you submit Proof of Purchase. There is no limit on the number of Products that can be claimed for which you provide Proof of Purchase. Proof of Purchase means an itemized retail sales receipt showing, at a minimum, the purchase of an eligible Product, and the date, place and amount of purchase. All claims from the same household shall be treated as a single claim.

Payments will be issued only if the Court approves the Settlement and the Effective Date of the Settlement occurs. {Please save a copy of this completed form and your Proof of Purchase for your records.} **For further information, visit [URL].]**

First Name: _____ Last Name:_____

Email Address:{optional*}_____

Mailing Address: _____

City_____ State _____ Zip Code_____

I wish to receive my payment by:
[ ] Check made out to me as an individual at the address above.
[ ] Direct deposit to Bank Name:_____ ABA Routing No. _____ Account No._____
[ ] (other payment methods enabled by Claim Administrator, if any; e.g. PayPal, Venmo, Google Wallet, Square Cash)

I made the following purchases. These purchases were not for purpose of resale.

| Bertolli Product | Approximate Month & Year of Purchase | Place of Purchase | Number of Bottles Purchased |
|---|---|---|---|
| [drop-down of Classico, Light, Extra Virgin] | [drop-down] | [text field] | [drop-down 1-10] |
| | | | |
| | | | |
| | | TOTAL | |

{(Attach additional sheets if necessary)}

EXHIBIT A

I certify the foregoing under penalty of perjury under the laws of the United States

Signed: _____     Date: _____

{*Please note that email is the only way to receive written notice if the settlement is terminated, or if your claim is denied with the reason(s) for the denial.  It is also the only way to receive further notice of your rights to opt out of the litigation if you made your purchase in California and the settlement does not become effective. Providing your email address also will help the Claim Administrator contact you, including if your settlement payment is mailed and returned as undeliverable.

**{Mail your completed Claim Form, <u>WITH YOUR PROOF OF PURCHASE, IF ANY</u>, to: Koller v. Deoleo Settlement Claim Administrator, [address]**

**{Claim Forms must be RECEIVED BY THE CLAIM ADMINISTRATOR (not just postmarked) by [30 days after Final Approval].}**

EXHIBIT A

# Exhibit B

EXHIBIT B - NOTICE PLAN

## SETTLEMENT WEBSITE

Prior to the Notice Date, the Claim Administrator shall establish the Settlement Website, in compliance with the Settlement Agreement

## NOTICE PROGRAM

The notice described herein shall be designed to reach at least 75 percent of the Settlement Class Members, on average notice two times each. Such reach and frequency shall be measured using reasonably relied upon media research data, validation and reach and frequency tools such as GfK Mediamark Research and Intelligence LLC, comScore, r or their equivalents.

All notices shall point to (and in the case of online notices shall hyperlink to) the Settlement Website.

## PRINT ADVERTISEMENTS

As soon as reasonably practicable, but not later than twenty-one (21) days following Preliminary Approval, the Claim Administrator will cause the Published Notice, in the form attached hereto as Exhibit B2, to be published once each week for four successive weeks as 1/6 page each in the Legal Notices section of the San Francisco Chronicle.

As soon as reasonably practicable, but not later than forty-two (42) days following Preliminary Approval, the Claim Administrator will cause the Published Notice, in the form attached hereto as Exhibit B2, to be published once, as ½ page black and white advertisement, in the national edition of *People Magazine* (circulation of 3,510,533 with approximately 7,346,000 readers).

## INTERNET ADVERTISEMENT

As soon as reasonably practicable, but beginning not later than twenty-one (21) days following Preliminary Approval, and continuing for at least twenty-eight (28) days

EXHIBIT B - NOTICE PLAN

thereafter, the Claim Administrator shall cause the Online Notice, in the form attached hereto as Exhibit B3, to be published on internet sites through an appropriate programmatic network, for a total of at least 55 million combined impressions (including both desktop and mobile impression, utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50, 300x50).

The online notice program shall include the following:

--Initial A/B testing of versions of the advertisements to determine versions that generate highest click-though rate and conversion rate (i.e., completion of a claim form or request for exclusion), using the higher performing versions for subsequent impressions.

--Tracking which webpages and times of day are generating the highest click-though rate and conversion rate, and to the extent practicable, redirecting future impressions to those higher-peforming locations instead of lower-performing locations.

--Multiple targeting layers will be implemented to help ensure delivery to the most appropriate users, inclusive of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting.

--Search terms will be relevant to olive oils, cooking oils, dressings, and Bertolli. Targeting users who are currently browsing or have recently browsed content in categories such as cooking, recipes, and olive oils will also help qualify impressions to ensure messaging is served to the most relevant audience. Where available, purchase data will be utilized to further qualify the audience.

--Using cookies or similar technology to identify persons who have visited the Settlement Website but not completed the Claim Form or Exclusion Form, and targeting additional impressions or other communications to such persons to encourage them to return to the Settlement Website to complete a Claim Form.

## PRESS RELEASE

The Published Notice will be issued as a press release through PR News Wire's network.

## SPONSORED BLOG POST

Five Thousand Dollars ($5000) shall be allocated for a sponsored blog/newsletter post on www.topclassactions.com which shall link to the Settlement Website.

EXHIBIT B - NOTICE PLAN

The claims administrator will also cause the settlement to  be listed on www.classaction.org

## <u>TOLL FREE INFORMATION LINE</u>

A toll free telephone helpline will be established and maintained by the Claim Administrator. It will be available 24-hours a day where callers may obtain information about the class action.  Those who call the toll-free information line or who write to Claim Administrator may request a printed copy of the Long Form Notice and Claim Form, which the Claim Administrator shall provide by first class mail.

## <u>NOTICES</u>

Within ten (10) days after this settlement is filed in court, the Claim Administrator shall provide the notices to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, et seq.

At least fourteen (14) days prior to the hearing on Final Approval, the Claim Administrator and Defendant shall certify to the Court that they have complied with the notice requirements set forth herein.

# Exhibit B1

**Attention purchasers of Bertolli Brand Olive Oil
Between May 23, 2010 and [Date of Preliminary Approval]**

**This notice may affect your rights. Please read it carefully.**

*A court authorized this notice. This is not a solicitation from a lawyer.*

- The notice concerns a case called *Koller v. Deoleo USA, Inc.,* Case No. 3:14-cv-02400-RS (United States District Court for the Northern District of California).

- This class action settlement will completely resolve the lawsuit against Deoleo USA, Inc. ("Deoleo" or "Defendant").

- The lawsuit contends that certain "Bertolli" brand olive oil products (the "Products") were inappropriately marketed as "Imported from Italy" and/or "Extra Virgin." It seeks a court order to preclude that marketing and to provide payments to purchasers.

- Deoleo denies any wrongdoing. It contends that the Products have always been truthfully marketed and labeled.

- To settle the case, Deoleo will pay $7,000,000.00 into a settlement fund.  Each member of the class who submits a valid claim form will receive a cash payment from the fund for each Product purchased during the applicable time period. Your total recovery will depend on the number of Products you purchased and the number of Products purchased by other class members who submit a claim.  You can make a claim for up to five products purchased by your household, unless you submit Proof of Purchase, in which case there is no limit. Any leftover funds after payment of attorneys' fees, payments to the class representatives, class notice and administration expenses, and payment of valid claims will go to charitable organizations.

- The lawyers who brought the lawsuit will ask the Court for reimbursement of their out-of-pocket expenses of approximately $150,000.00 and up to $2,100,000.00 fees for investigating the facts, litigating the case, and negotiating the settlement. They will additionally ask for up to $10,000.00 for the Plaintiffs who brought this lawsuit, as class representative awards.  If the Court approves, these amounts would be paid to Plaintiffs and the lawyers out of the settlement fund.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

- This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at _____. Alternatively, you can contact the claim administrator at _____ or class counsel at Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

EXHIBIT B1: LONG FORM NOTICE

| YOUR RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to receive payment under the Settlement for your purchases. | [30 days after Final Approval] |
| **EXCLUDE YOURSELF** | Get out of the lawsuit and the settlement. This is the only option that allows you to ever bring or join another lawsuit that raises the same legal claims released by this settlement. You will receive no payment. | [28 days before initially scheduled Final Approval Hearing] |
| **OBJECT** | Write to the Court about why you do not like the settlement, the amount of attorneys' fees and expenses, or the payment to the Plaintiffs. | [28 days before initially scheduled Final Approval Hearing] |
| **GO TO A HEARING** | Speak in Court about the settlement. (If you object to any aspect of the settlement, you **must** submit a written objection by the Objection Deadline.) | [Final Approval Hearing] |
| **DO NOTHING** | You will receive no payment and have no right to sue later for the claims released by the settlement. | |

- These rights and options—and the deadlines to exercise them—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement. If there are appeals, payment will not be sent until the appeals are resolved and the settlement becomes effective. Please be patient and continue to check the settlement website for updates.

**Final Approval Fairness Hearing**

On _____, at [ a.m.], the Court will hold hearings to determine (1) whether the proposed settlement is fair, reasonable and adequate and should receive final approval; (2) whether to grant the applications for attorneys' fees and/or expenses brought by the Plaintiffs' Counsel; and (3) whether to grant the application for a class representative payment to the Plaintiffs who brought the lawsuit. The hearing will be held in the San Francisco Courthouse, Courtroom 3 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. The hearing will be held in the courtroom of the Honorable Richard Seeborg. This hearing date may change without further notice to you. Consult the settlement website at www._____.com, for updated information on the hearing date and time.

EXHIBIT B1: LONG FORM NOTICE

## Table of Contents

How Do I Know If I Am Affected By The Settlement?                                    3
What Is The Lawsuit About?                                                          4
What Do Plaintiffs Seek To Recover In The Lawsuit?                                  5
Why Is This Case Being Settled?                                                    6
What Is The Settlement?                                                            6
What Can I Get In The Settlement?                                                   8
How Do I Make A Claim?                                                             9
What Do Plaintiffs And Their Lawyers Get?                                           9
What Claims Are Released By The Settlement?                                        10
How Do I Exclude Myself From The Settlement?                                       10
How Do I Object To The Settlement?                                                 11
When Will The Court Decide If The Settlement Is Approved?                          12
Special Notice for Members of the California Litigation Class                      12
How Do I Get More Information?                                                     13

## How Do I Know If I Am Affected By The Litigation and Settlement?

This case involves three types of Bertolli brand olive oil sold in the United States during specified time periods:

- o   Bertolli Extra Virgin Olive Oil: May 23, 2010 and [date of preliminary approval].

- o   Bertolli Extra Light Olive Oil: May 23, 2010 and December 31, 2015

- o   Bertolli Classico Olive Oil: May 23, 2010 and December 31, 2015

The Extra Virgin products shall be referred to as the "Extra Virgin Olive Oil Products."  The Extra Light and Classico Olive Oil Categories shall be referred to as the "Other Olive Oil Products."  The word "Products" by itself means both the Extra Virgin Olive Oil Products and the Other Olive Oil Products.

For purposes of settlement only, the Court has conditionally certified the following settlement class: All persons who, between: (i) May 23, 2010 and the date of Preliminary Approval, purchased, in the United States, any of the Extra Virgin Olive Oil Products except for resale and/or (ii) between May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive Oil Products.

The following are not members of the Settlement Class: (1) the Honorable Richard Seeborg; the Honorable Joseph C. Spero; the Honorable Edward Infante (ret.); (2) any member of their immediate families; (3) any government entity, (4) Defendant; (5) any entity in which

EXHIBIT B1: LONG FORM NOTICE

Defendant has a controlling interest; (6) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (7) counsel for the Parties; and (8) any persons who timely opt-out of the Settlement Class.

If the settlement does not become effective (for example, because it is not finally approved, or the approval is reversed on appeal), then this litigation will continue, but only on behalf of purchasers in California. California classes of the purchasers have already been certified by the Court. Those classes were defined as follows: the "(i) Imported From Italy Class: All purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante; " and the "(ii) Extra Virgin Olive Oil Class: All purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." In this notice, these groups will be referred to as the California Litigation Classes. Members of the California Litigation Classes have the same rights as all Settlement Class members as explained in this notice, except that they will remain part of the case even if the Settlement is rejected, as specified in the section "Special Notice for Members of the California Litigation Classes."

## What Is The Lawsuit About?

A lawsuit was brought against Deoleo USA Inc. The lawsuit alleges that that Deoleo marketed and sold its Bertolli brand of olive oil with the representation "Imported from Italy," although most of the oil was extracted in countries other than Italy, from olives grown in those countries. The lawsuit also alleged that, with respect to the olive oil labeled "Extra Virgin," Deoleo's procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. The lawsuit challenged the alleged misrepresentations on behalf of himself and consumers who bought the Products.

Deoleo denies that there is any factual or legal basis for the lawsuit. Deoleo contends that

EXHIBIT B1: LONG FORM NOTICE

its labeling is accurate, not misleading, and in compliance with all applicable rules and regulations. Deoleo further contends that at all times it identified all countries of origin of the olive oil on the label of the bottles. It also contends that its Extra Virgin Olive Oil met or exceeded extra virgin standards when bottled and sold. Deoleo therefore denies any liability. It further denies that the Plaintiffs or any other members of the Settlement Classes have suffered injury or are entitled to monetary or other relief. Deoleo also denies that this case can be certified as a class action, except for purposes of settlement.

The Court has not determined whether Plaintiffs or Defendant are correct.

**What Do Plaintiffs Seek To Recover In The Lawsuit?**

Plaintiffs allege that by marketing the Products as "Imported from Italy" and/or "extra virgin," Defendant caused people to purchase the Products who would not otherwise have done so. They also contend that the Products were sold at a higher price than they would have been sold without the representations "Imported from Italy" and/or "extra virgin." The complaint seeks to recover the dollar volume of extra sales, and the dollar amount of the "premium" price, that is attributable to the alleged misrepresentations. Plaintiffs contend that, based on their economics expert's regression analysis, the retail premium attributable to the "extra virgin" representation on the Extra Virgin Olive Oil Products averages 14.37% of the purchase price; the retail premium attributable to the "Imported from Italy" representation on the Extra Virgin Olive Oil Products averages an additional 3.76% of the purchase price; the retail premium attributable to the "Imported from Italy" representation on the Classico Olive Oil Products averages 17.34% of the purchase price; and the retail premium attributable to the "Imported from Italy" representation on the Extra Light Olive Oil Products averages 13.45% of the purchase price.

Defendant denies that it did anything wrong, denies that the its olive oil products were sold at a price premium or that consumers were economically harmed by purchasing the Products as claimed by Plaintiffs, and denies that anyone is entitled to any monetary or other relief.

EXHIBIT B1: LONG FORM NOTICE

## Why Is This Case Being Settled?

This case has been pending since May 23, 2014. Since then, Plaintiffs' Counsel has investigated the manufacturing, marketing, and labeling of the Products. Plaintiffs' Counsel has reviewed hundreds of thousands of pages of documents produced by Defendant. In addition, Plaintiffs' Counsel has taken five depositions of Defendant's employees and served subpoenas on third parties. The parties also have exchanged written responses, under oath, to questions posed by the other party. Plaintiffs' Counsel has also retained experts and deposed experts retained by Deoleo. On August 24, 2017, the Court certified the California Litigation Classes.

Based on its investigation, Plaintiff's Counsel has determined that there are significant risks of continuing the litigation. In particular, there may be difficulties establishing: (1) that Defendant's marketing and advertising of the Products were false or likely to deceive or confuse reasonable persons; (2) that the "Imported from Italy" and/or "extra virgin" representations were material to reasonable consumers; (3) that any premium can be attributed to the representations, and/or (4) that damages or restitution should be awarded or, if so, that any such award should be more than nominal. In particular, it may be difficult to establish that the volume of sales, or the pricing of Products, would have differed had the marketing and labeling been different.

On November 6, 2017, the Parties participated in an all-day mediation conducted by Honorable Justice Edward Infante (retired) at JAMS in San Francisco, California. After the mediation, the parties agreed to this settlement.

After taking into account the risks and costs of further litigation, Plaintiffs and their counsel believe that the terms and conditions of the settlement are fair, reasonable, adequate, and equitable, and that the settlement is in the best interest of the Settlement Class members.

## What Is The Settlement?

During the pendency and as a result of the lawsuit, Deoleo removed the phrase "Imported from Italy" from all Products imported into the United States, and it began bottling its extra virgin olive oil in dark glass bottles. Deoleo has agreed not to use the phrases "Imported from

EXHIBIT B1: LONG FORM NOTICE

Italy," "Made in Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle
originates exclusively from olives grown in Italy on the labeling of any olive oil product sold in
the United States, until at least three years after the Effective Date, unless the product so labeled
is composed entirely of oil from olives grown and pressed in Italy. Deoleo has also agreed, for
least three years after the Effective Date, that if it uses the phrase "Extra Virgin" or term
"EVOO" on the product label of any olive oil, it must do all of the following: (i) package the
olive oil in a non-transparent (UV filtering) container, e.g., a green or brown glass container;
(ii) include a "best by" or "use by" date not later than sixteen months after the date of bottling;
(iii) include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to
the "best by" date; and (iv) implement the following chemical parameter testing requirements set
forth under "Target Limit" at the time of bottling (which are stricter than the current limits set
forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | $\leq 0.8$ | $\leq 0.5$ |
| Peroxide value (mEq )2/kg) | $\leq 20$ | $\leq 10$ |
| K270 | $\leq 0.22$ | $\leq 0.15$ |
| K232 | $\leq 2.50$ | $\leq 2.1$ |
| Delta-K | $\leq 0.01$ | $\leq 0.005$ |

In addition, as part of the settlement, Deoleo will pay $7,000,000.00, which will be used
to pay claims of settlement class members and the costs of administering the settlement, plus
amounts awarded by the Court to Plaintiffs and their attorneys.  That amount paid by Deoleo will
be held in an account managed by the Claim Administrator.  The settlement fund will pay, in the
following order: (i) all costs and payments associated with sending notice to the settlement class
and administering the settlement, including payments to the claim administrator; (ii) any
necessary taxes and tax expenses on the escrow fund; (iii) any award of attorneys' fees and costs
made by the Court to the lawyers for Plaintiffs; (iv) any incentive awards made by the Court to
Plaintiffs for their service as class representatives; (v) the valid claims submitted by settlement
class members.

EXHIBIT B1: LONG FORM NOTICE

If after payment of items (i) through (iv), the total amount remaining in the settlement fund is insufficient to pay the valid claims under item (v), then each such valid claim shall be proportionately reduced. If after payment of items (i) through (v), there remains money in the settlement fund, then each such valid claim under (v) shall be proportionately increased as set forth in the next section.

If after the proportional increase, there is still money in the settlement fund, it shall be paid to charities approved by the Court, who are currently proposed to be the Consumers Union, Yonkers NY and the Center for Food Safety, Washington, DC

**What Can I Get In The Settlement?**

If you timely file a claim that complies with the instructions on the claim form and in this notice, you will receive a refund per Product purchased. The amounts that you can receive are set forth in the following table:

| Product | Purchase Date | Minimum Payment per Product Purchased (subject to pro-rata reduction if large number of claims are received) | Maximum Payment per Product Purchased (if small number of claims received) |
| --- | --- | --- | --- |
| Extra Virgin Olive Oil | May 23, 2010 through December 31, 2015 | $1.75 | $8.75 |
| Extra Virgin Olive Oil | January 1, 2016 through [date of preliminary approval] | $0.75 | $3.75 |
| Classico or Extra Light Olive Oil | May 23, 2010 through December 31, 2015 | $1.50 | $7.50 |

Your household can make a claim for only up to five Product purchases and will receive a maximum combined recovery of $25 for all claimed purchases, unless you submit proof of

EXHIBIT B1: LONG FORM NOTICE

purchase. There is no limit on the total recovery for items for which you submit proof of purchase. "Proof of purchase" means itemized retail sales receipts showing, at a minimum, the name of the product, and the date, place and amount of purchase. "Household" means one or more persons living at the same address.

Cash payments will be distributed only if the Court gives final approval to the proposed settlement and only after any appeals are resolved. If the Court does not approve the settlement, if the settlement is overturned on appeal, or if the settlement is terminated, no cash payments will be distributed.

## How Do I Make A Claim?

To make a claim, you must fill out the claim form available on this settlement website, www._____.com. You can submit the claim form online, or you can print it and mail it to the claim administrator at: [address]. If submitted online, claim forms must be submitted no later than [30 days after final approval]. If mailed, claim forms must be *received by the Claim Administrator* (not just postmarked), no later than [30 days after final approval].

## What Do Plaintiffs And Their Lawyers Get?

To date, Plaintiff's lawyers have not been compensated for any of their work on this case. Plaintiff's lawyers will present evidence to the Court that they have spent more than 2750 hours litigating this case. In addition, Plaintiff's lawyers will present evidence that they have paid out-of-pocket expenses (including deposition transcript fees, court reporter fees, filing fees, service costs, copying costs, and travel expenses) of more than $100,000.00. None of these expenses has yet been reimbursed. As part of the settlement, Plaintiff's lawyers may apply to the Court to award them up to $2,100,000.00 to pay their attorneys' fees and up to $150,000.00 in out-of-pocket expenses.

In addition, the named Plaintiffs in this case may apply to the Court for incentive awards of between $1,000 and $5,000 each, for a combined total of not more than $11,000.00. These

EXHIBIT B1: LONG FORM NOTICE

payments are designed to compensate the Plaintiffs for the time, effort, and risks they undertook in pursuing this litigation and for executing a broader release of claims than other Settlement Class members.

Plaintiffs and their lawyers will file a motion with the Court on or before [42 days before final approval hearing, i.e., 14 days before objection deadline] in support of their applications for attorneys' fees, costs, and expenses and payments to the Plaintiffs. A copy of that motion will be available on the settlement website. The Court will determine what amounts of fees, costs, expenses, and class representative payments to award.

The award of attorneys' fees, costs and expenses will be paid to Plaintiffs' lawyers within seven days after the Court grants final approval to the settlement.  If the order finally approving the settlement is later reversed on appeal, Plaintiffs' lawyers will be required to repay to the settlement fund the previously awarded fees, costs and expenses, plus interest.

**What Claims Are Released By The Settlement?**

The settlement releases all claims by members of the Settlement Classes against Deoleo and its affiliates that were or could have been asserted by Plaintiffs in this litigation, and that relate to the allegations that the Products were improperly labeled, marketed, or advertised as "Imported from Italy" and/or "extra virgin." This release includes claims that may not yet be known or suspected. This means that, in exchange for being eligible for the cash benefits as a Settlement Class member, you will not be able to sue, continue to sue, or be part of any other lawsuit against Deoleo and/or any of its affiliates that involves the settled claims. For further information, please see Section 8.2 of the Settlement Agreement.

**How Do I Exclude Myself From The Settlement And Litigation?**

You can exclude yourself from the settlement class if you wish to retain the right to sue Deoleo separately for the claims released by the settlement. If you exclude yourself, you cannot file a claim or object to the settlement. You need **not** exclude yourself if you merely want to

EXHIBIT B1: LONG FORM NOTICE

retain a right to sue for personal injury arising out of your use of the Products.

To exclude yourself, you must complete and submit the online form at the settlement website or mail a request to exclude yourself from the settlement to the claim administrator at [address]. If mailed, the exclusion request must contain your name, address, the words "I wish to be excluded from the Deoleo Olive Oil Class Action Settlement," and your signature.

If submitted online, exclusion requests must be submitted by [28 days before initially scheduled Final Approval Hearing]. If mailed, exclusion requests must be *received by the Claim Administrator* (not postmarked) by [28 days before initially scheduled Final Approval Hearing].

## How Do I Object To The Settlement?

You can ask the Court to deny approval of the settlement or of the award to the Plaintiffs and their attorneys by timely submitting an objection to the Claim Administrator. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement or reduce the amount awarded to the Plaintiffs and their attorneys. If the Court denies approval to the entire settlement, no cash payments will be sent out, and the lawsuit will continue.

You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. If you want to raise an objection to the settlement at the Final Approval hearing, you must first submit that objection in writing.

Any objection must include (1) the case name and number *Koller v. Deoleo*, Case No. 3:14-cv-02400-RS (N.D. Cal.); (2) your name, address, and telephone number; (3) documents or testimony sufficient to establish that you are a member of the Settlement Class; (4) a detailed statement of your objection(s), including the grounds for those objection(s); (5) a statement as to whether you are requesting the opportunity to appear and be heard at the final approval hearing; (6) the name(s) and address(es) of all lawyers (if any) who (a) are representing you in making the objection, (b) may be entitled to compensation in connection with your objection, and/or (c) will appear on your behalf at the final approval hearing; (7) the name(s) and address(es) of all persons

EXHIBIT B1: LONG FORM NOTICE

(if any) who will be called to testify in support of your objection; (8) copies of any papers, briefs, or other documents upon which your objection is based if not already in the court file; (9) a detailed list of any other objections you or your counsel have submitted to any class action in any state or federal court in the United States in the previous five years (or affirmatively stating that no such prior objection has been made); and (10) your signature as objector, in addition to the signature of your attorney, if an attorney is representing you with the objection.  Failure to include this information and documentation may be grounds for overruling and rejecting your objection.

All the information listed above must be electronically filed via the Court's ECF system, or delivered to the Clerk of the Court by mail, express mail, or personal delivery such that the objection is *received by* the Clerk of the Court (not just postmarked or sent) on or before [28 days before initially scheduled Final Approval Hearing].  By filing an objection, you consent to the jurisdiction of the Court, including to any order of the Court to produce documents or provide testimony prior to the Final Fairness Hearing.

If you object to the settlement but still want to submit a claim in the event the Court approves the settlement, you must still submit a timely claim according to the instructions described above.

## When Will The Court Decide If The Settlement Is Approved?

The Court will hold a hearing on [hearing date] to consider whether to approve the settlement. The hearing will be held in the in the courtroom of the Honorable Richard Seeborg, San Francisco Courthouse, Courtroom 3 - 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. The hearing is open to the public. This hearing date may change without further notice to you. Consult the Settlement Website at www._____ or PACER, at ecf.cacd.uscourts.gov, for updated information on the hearing date and time.

EXHIBIT B1: LONG FORM NOTICE

**Special Notice for Members of the California Litigation Classes**

As noted above, the California Litigation Classes are: (1) "All purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante; " and (2) "All purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." This section provides further information about the rights of the members of the California Litigation Classes.

All sections of this notice apply to you. You have the right to make a claim under this settlement, object to the settlement or exclude yourself, just like other members of the Settlement Class.

If the settlement is not approved, or if the Effective Date does not occur for any other reason, as further explained in the Settlement Agreement, and you have not excluded yourself from the litigation, the litigation will continue on your behalf as a member of the California Litigation Classes. The Court has appointed Plaintiff Scott Koller and Plaintiffs' Counsel to represent your interests.

If the litigation continues, and a judgment is obtained against the California Litigation Class in favor of Deoleo, that judgment will prevent you from bringing a separate lawsuit against Deoleo for the claims that were or could have been litigated in this case. If judgment is obtained against Deoleo in favor of the California Litigation Class, and you are entitled to any portion of that judgment, you will receive further notification about your rights.

**How Do I Get More Information?**

You can inspect many of the court documents connected with this case on the settlement website.  Other papers filed in this lawsuit are available through PACER, the online service for the United States District Courts, at ecf.cacd.uscourts.gov. Alternatively you may visit the office of the Clerk of the Court for the United States District Court for the Northern District of

EXHIBIT B1: LONG FORM NOTICE

California, 450 Golden Gate Ave, San Francisco, CA from 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You can contact the Claim Administrator by calling 1-8__-___-____ or writing to [address].

You can also obtain additional information by contacting Plaintiff's Counsel at Deoleo Settlement, Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111, www.gutridesafier.com.

Do not call or contact the Court concerning this notice, the settlement or the lawsuit.

EXHIBIT B1: LONG FORM NOTICE

# Exhibit B2

## To All Purchasers of Bertolli Olive Oil (the "Products"):
## A Class Action Settlement May Affect Your Rights

**WHO IS AFFECTED**

You are affected by this class action settlement if, between: (i) May 23, 2010 and [date of Preliminary Approval], you purchased, in the United States, a bottle of Bertolli Extra Virgin Olive Oil and/or (ii) May 23, 2010 and December 30, 2015, you purchased, in the United States, a bottle of Bertolli Classico or Extra Light Olive Oil. A complete list of covered products is included on the website _____ (the "Products").

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see www._____.com or contact the Claim Administrator at the telephone number or address below.

**WHAT DOES THE SETTLEMENT PROVIDE**

To settle the case, Defendant will create a settlement fund of $7,000,000.00. If you make a valid claim in the settlement, you will receive a cash payment for each bottle of olive oil that you purchased. The amounts paid for each purchase will vary depending on the Product type, date of purchase, and number of claims received.  The amounts to be paid are expected to be at least $0.75 to $1.75 per Product, and may be as much as $3.75 to $8.75 per Product.  You may make a claim without proof of purchase, but only for up to five products purchased by your household, for which you will receive a maximum combined recovery of $25.00. There is no limit on the number for items you can claim for which you submit proof of purchase. Proof of purchase means itemized retail sales receipts showing, at a minimum, the name of the product, and the date, place, and amount of purchase

**HOW TO GET THE REFUND**

To get your refund, visit the settlement website at www._____.com and download or complete a claim form. You can also obtain a claim form by contacting the Claim Administrator.

**HOW TO OPT OUT OF THE SETTLEMENT**

The settlement will release all claims related to Plaintiffs' contentions that Defendant's marketing, advertising, and sale of Bertolli brand olive oil with the representations "Imported from Italy" and "Extra Virgin" were false or misleading. If you wish to preserve your right to bring a separate lawsuit on these claims, you must exclude yourself from the class.

**OBJECTING TO THE SETTLEMENT**

You can also object to the settlement. For details on how to exclude yourself or object, please visit www._____.com or contact the Claim Administrator.

**COURT HEARING AND ATTORNEYS' FEES**

The Court will hold a hearing on [hearing date] to consider whether to approve the settlement. The attorneys for the class will ask the court to award them up to $2,100,000.00 in fees and approximately $150,000.00 in out of pocket expenses and up to $10,000.00 in incentives to the individuals who pursued the suit, out of the settlement fund. If any balance remains in the settlement fund after payment of claims, costs of settlement notice and administration, and court-awarded fees, costs and incentives, the attorneys will ask the Court to give the remaining balance to various charitable organizations as further described at www._____.com. Note that the hearing date may change without further notice to you. Consult the settlement website at www._____.com or PACER, at ecf.cacd.uscourts.gov, for updated information on the hearing date and time.

The case is *Koller v. Deoleo USA, Inc., et al.*, United States District Court for the Northern District of California, Case No. 3:14-cv-02400-RS.

**For further information, please visit the settlement website:** _____. You may contact the Claim Administrator by phone at _____ or by writing to _____.  You may also contact class counsel at Gutride Safier LLP, 100 Pine Street, Suite 1250, San Francisco, CA 94111, access the Court docket on PACER available at https://ecf.cand.uscourts.gov, or visit the office of the Clerk of the Court for the United States District

EXHIBIT B2 – SUMMARY PUBLISHED
NOTICE

Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, CA from 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

EXHIBIT B2 – SUMMARY PUBLISHED NOTICE

# Exhibit B3

**<u>Online Banner Ad</u>**

**Bertolli Olive Oil Purchasers:**
**A Class Action Settlement May Affect You**
**Click Here To Learn About Your Rights and**
**Get A Cash Refund**

**<u>Mobile Banner Ad</u>**

**Bertolli Olive Oil Purchasers: Class Action Settlement**
**Get Cash Refunds**

EXHIBIT B3 – ONLINE NOTICE

# Exhibit C

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SCOTT KOLLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br> Plaintiff,<br><br> v.<br><br>MED FOODS, INC., AND DEOLEO USA, INC.<br><br> Defendants. | CASE NO. 3:14-CV-2400-RS<br><br>[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND JUDGMENT<br><br>Hon. Judge Richard Seeborg |

Plaintiff Scott Koller and new plaintiffs Carolyn Bissonnette, Cece Castoro, Diane Gibbs, Darlene Williams, Robert Glidewell, and Stephen Freiman (collectively, "Plaintiffs" or "Class Representatives") have moved the Court for preliminary approval of a proposed class action settlement with Defendant Deoleo USA, Inc. ("Deoleo" or "Defendant"), the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on March __, 2018 ("Settlement Agreement").

This case concerns the marketing and labeling of Bertolli Extra Virgin Olive Oil, Bertolli Extra Light Olive Oil, and/or Bertolli Classico Olive Oil (the "Products").

Plaintiffs contend that the Products are mislabeled as "extra virgin" and/or as "Imported from Italy." In particular, Plaintiffs allege the representation "Imported from Italy" is misleading because most of the oil was extracted in countries other than Italy from olives grown in those countries. Plaintiffs also allege that the representation "Extra Virgin," is also misleading because Defendant's procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. Plaintiffs allege that the Extra Virgin Product has been mislabeled as "Extra Virgin" and/or as "Imported from Italy" since at least four years prior to the filing of the complaint (i.e, since March 23, 2010).

Plaintiff Koller alleged claims for violations of the California Consumer Legal Remedies Act ("CLRA"); false advertising under California Business and Professions Code sections 17500, *et seq.*; and unfair business practices under California Business and Professions Code sections 17200, *et seq.*; and misrepresentation. Koller sought to pursue these claims on behalf of himself and all purchasers of the Products in California. The other plaintiffs seek, in a second amended complaint, to prosecute similar claims under the laws of various states, on behalf of purchasers nationwide.

Plaintiffs contend that, by marketing the olive oil as "extra virgin" and/or as "imported from Italy," Defendant caused people to purchase the Products who would not otherwise have done so. They also contend that the Products were sold at a higher price than they would have been sold without the misstatements. Plaintiffs seek to recover, on behalf of a class of all

purchasers other than re-sellers, the dollar volume of extra sales, and the dollar amount of the "premium" price that is attributable to the alleged misrepresentations. Plaintiffs assert that approximately 150 million Products have been sold nationwide during the relevant periods at an average retail price of $9. Plaintiffs believe that, if they was successful at trial on all of their claims, they could win damages or restitution of up to approximately 14 to 18 percent of the purhase price (or on average, approximately $1.26 to $1.62 per bottle).

Defendant denies that there is any factual or legal basis for Plaintiffs' allegations. It contends that the labeling of the Products was truthful and non-misleading, and that purchasers did not pay a "premium" for the Products as the result of any misrepresentations. Defendant therefore denies any liability. It also denies that Plaintiffs or any other members of the settlement class have suffered injury or are entitled to monetary or other relief. Defendant finally denies that this case should have been certified as a class action, except for purposes of settlement.

The history of this litigation is summarized in Part I of the Settlement Agreement. In brief, this case was filed on May 23, 2014. Substantial discovery was taken by both parties. Plaintiffs' Counsel reviewed hundreds of thousands of pages of documents produced by Defendant and deposed five of Defendants' employees.  They also requested and received written discovery responses from Defendant and several third parties. Plaintiff Koller moved for and was granted certification of a California Class. The settlement was negotiated with the assistance of the Honorable Edward A. Infante (Ret.).

The terms of the settlement are summarized in the proposed Long Form Notice to Settlement Class Members, which is attached as Exhibit B1 to the Settlement Agreement. In brief, Deoleo has changed the packaging and labeling of the Products. These changes will be incorporated in a court injunction. In addition, all Settlement Class Members may submit a claim for a cash refund per Bertolli Extra Virgin Olive Oil purchased between May 23, 2010 and the date of preliminary approval, inclusive; and Bertolli Classico or Extra Light Olive Oil bottle purchased between May 23, 2010 and December 30, 2105, inclusive. Claims will be paid even without proof of purchase, but persons who do not present proof of purchase can recover only for up to five Product purchases, with a maximum combined recovery of $25 per household. There is

1    no limit on the number of claims for which proof of purchase is submitted.

2           As part of the settlement, Plaintiff's attorneys may apply to this Court to award them up to

3    $2,100,000.00 from the Settlement Fund to pay their attorneys' fees, plus their actual expenses of

4    approximately $150,000.00, plus up to $11,000.00 from the Settlement Fund as payments to the

5    Class Representative. Such amounts must be approved by the Court, and the Court will defer any

6    ruling on the appropriateness of such awards until the final approval hearing.

7           Notice is to be provided by on a Settlement Website. In addition, a black and white

8    version of the Print Publication Notice will be published once per week for four successive weeks

9    in the San Francisco Chronicle. Additional notice will be published in People Magazine.  A press

10   release will be issued on a nationwide service.  Additional online notice shall be provided on

11   websites accessible to desktop and mobile users, so that overall notice of the Settlement

12   (including the Online Notice and Print Publication Notice) is reasonably calculated to apprise the

13   Settlement Class Members of the settlement.  An appropriate online platform has been chosen

14   based on reliable demographic information about those media and about likely Settlement Class

15   Members, and advertisements will be retargeted to those websites that generate the highest

16   response, as well as to persons who visit the Settlement Website but do not complete a Claim

17   Form or Exclusion Form. There will be a toll-free number for people to obtain more information

18   and request a printed version of the claim form and notice.  No later than forty-two (42) days

19   prior to the hearing on Final Approval, the Claim Administrator shall submit a declaration to the

20   Court attesting to the number of impressions delivered and the number of click-throughs to the

21   Settlement Website.

22          All of the notices will link or point to the Settlement Website, which contains a detailed

23   class notice, including the procedures for class members to exclude themselves from the

24   settlement or object, as well as a copy of the Settlement Agreement and motion papers filed in

25   connection with the settlement.

26          The parties have proposed Angeion Group as Claim Administrator, a well-known and

27   experienced class action administrator, to send the notices and receive and process claim forms.

28          Having considered all matters submitted to it at the hearing on the motion and otherwise,

including the complete record of this action, and good cause appearing therefore, the Court grants

preliminary approval and hereby finds and concludes as follows:

1. The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreement except as otherwise expressly provided.

2. The Court preliminarily approves the Settlement Agreement as within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration. The parties' Agreement was reached as a result of arm's length negotiations between the parties and their counsel and involved a well-respected and experienced mediator. Additionally, before entering into the Agreement, Plaintiff's Counsel reviewed hundreds of thousands of pages of documents produced by Defendant, took depositions of Defendant's employees, requested and received written discovery responses from Defendant and several third parties, and conducted expert discovery.  Thus, Plaintiff and her counsel had sufficient information to evaluate the strengths and weaknesses of the case and to conduct informed settlement discussions.

3. For purposes of the settlement only, the Court provisionally certifies the Settlement Class, which consists of all persons who between May 23, 2010 and the date of Preliminary Approval, purchased, in the United States, any of the Extra Virgin Olive Oil Products and/or who between May 23, 2010 and December 30, 2015, purchased, in the United States, any of the Other Olive Oil Products.  "Extra Virgin Olive Oil Product" means bottles of Bertolli Extra Virgin olive oil, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." "Other Olive Oil Product" means the liquid Bertolli Extra Light or Classico olive oil products. "Excluded Persons" from the Settlement Classes are: (1) the Honorable Richard Seeborg; the Honorable Joseph C. Spero; the Honorable Edward Infante (ret.); (2) any member of their immediate families; (3) any government entity, (4) Defendant; (5) any entity in which Defendant has a controlling interest; (6) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; (7) counsel for the Parties; and (8) any persons who timely opt-out of the Settlement Class.

4. The Court preliminarily finds, solely for purposes of considering this settlement,

that the requirements of Rule 23 of the Federal Rules of Civil Procedure are conditionally satisfied, including requirements that the Settlement Class Members are too numerous to be joined in a single action; that common issues of law and fact exist and predominate; that the claims of the Class Representatives are typical of the claims of the Settlement Class Members; that the Class Representatives and Class Counsel can adequately protect the interests of the Settlement Class Members; and that a settlement class is superior to alternative means of resolving the claims and disputes at issue in this Litigation.

5.      The Court conditionally designates the law firm of Gutride Safier LLP and Tycko & Zavareei LLP as Settlement Class Counsel and Scott Koller, Carolyn Bissonnette, Cece Castoro, Diane Gibbs, Darlene Williams, Robert Glidewell, and Stephen Freiman as Class Representatives for purposes of this settlement. The Court preliminarily finds that the Class Representatives and Class Counsel fairly and adequately represent and protect the interests of the absent Settlement Class Members. The Court designates, and approves, Angeion Group to serve as Claim Administrator.

6.      Since the Settlement Agreement is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class pursuant to the Settlement Agreement as set forth in the Notice Plan. The Claim Administrator shall provide notice in compliance with 28 U.S.C. § 1715.   As set forth in the Notice Plan, the Claim Administrator shall do the following:

a.      The Claim Administrator shall establish the Settlement Website, which shall contain the Long Form Notice in both downloadable PDF format and HTML format with a clickable table of contents; answers to frequently asked questions; a Contact Information page that includes the address for the Claim Administrator and addresses and telephone numbers for Plaintiff's Counsel and Defendant's Counsel; the Settlement Agreement; the signed order of Preliminary Approval and publicly filed motion papers and declarations in support thereof; a downloadable and online version of the Claim Form; a downloadable and online version of the form by which Settlement Class Members may exclude themselves from the Settlement Class; and (when they become available) the publicly filed motion for final approval and Plaintiff's

1    application(s) for Attorneys' Fees, Costs and an Incentive Award and supporting declarations.

2           b.        The Claim Administrator shall initiate publication of the Published

3    Notice, to be published once per week for four successive weeks in the San Francisco Chronicle.

4    The Claim Administrator shall also cause the Published Notice, to be published in the

5    aforementioned magazine as soon as practicable after the Notice Date.

6           c.        The Claim Administrator shall initiate the process of providing the

7    Online Notice on websites as set forth in the Notice Plan, so that overall notice of the Settlement

8    (including the Online Notice and the Summary Publication Notice) is reasonably calculated to

9    apprise the Settlement Class Members of the Settlement.

10          d.        The Claim Administrator shall issue the Published Notice as a press

11   release, as further described in the Notice Plan.

12          e.        The Claim Administrator shall set up the toll-free number as further

13   described in the Notice Plan.

14          7.    A Final Approval Hearing shall be held before this Court at [   ] on [   ], 2018, at

15   the United States District Court for the Northern District of California, Courtroom 3 - 17th Floor,

16   450 Golden Gate Avenue, San Francisco, CA 94102, to address: (a) whether the proposed

17   settlement should be finally approved as fair, reasonable and adequate, and whether the Final

18   Approval Order should be entered, and (b) whether Class Counsel's application for attorneys'

19   fees, costs, and a payment to the Class Representative should be approved.

20          8.    The Court approves, as to form and content, the Claim Form and the Notices,

21   substantially similar to the forms attached as Exhibits A and B1 to B3 to the Settlement

22   Agreement. The claim form and all the notices are written in plain English and are easy to

23   comprehend. The Parties shall have discretion to jointly make non-material minor revisions to the

24   claim form and Notices before emailing and publishing. Responsibility regarding settlement

25   administration, including, but not limited to, notice and related procedures, shall be performed by

26   the Claim Administrator, subject to the oversight of the Parties and this Court as described in the

27   Settlement Agreement.

28          9.    The Court finds that the Parties' plan for providing notice to the Settlement

1   Class is reasonably calculated to provide notice to the Settlement Class of the pendency of the

2   Litigation, certification of the Settlement Class, the terms of the Settlement Agreement, and the

3   Final Approval hearing, and complies fully with the requirements of the California and United

4   States Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable

5   law. The Parties and the Claim Administrator shall comply with the notice plan as set forth in the

6   Settlement Agreement.

7         10.   Any member of the Settlement Class who desires to be excluded from the

8   Settlement Class, and therefore not be bound by the terms of the Settlement Agreement, must

9   submit a request for exclusion to the Claim Administrator, pursuant to the instructions set forth in

10  the Long Form Notice. The request must be submitted online by no later than [28 days prior to

11  Final Approval] or if mailed, it must be received by the Claim Administrator (not postmarked) by

12  no later than [28 days prior to Final Approval]. No one shall be permitted to exercise any

13  exclusion rights on behalf of any other Person, whether as an agent or representative of another or

14  otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other

15  legal authorization, and no one may exclude other Persons within the Settlement Class as a group,

16  class, or in the aggregate.

17        11.   No later than [14 days prior to Final Approval], the Claim Administrator shall

18  prepare a list of the names of the Persons who, pursuant to the Class Notice described herein,

19  have excluded themselves from the Settlement Class in a valid and timely manner, and Plaintiff's

20  Counsel shall file that list with the Court. The Court retains jurisdiction to resolve any disputed

21  exclusion requests.

22        12.   Any member of the Settlement Class who elects to be excluded shall not receive

23  any benefits of the settlement, shall not be bound by the terms of the Settlement Agreement, and

24  shall have no standing to object to the settlement or intervene in the Litigation. If the settlement is

25  granted final approval, all Settlement Class Members who do not timely submit a valid request

26  for exclusion will be bound by the order of final approval and final judgment, and enjoined from

27  bringing or prosecuting any action relating to the released claims.

28        13.   If the Settlement is not approved, or if the Effective Date does not occur for any

other reason, then the Litigation will continue on behalf of the California Litigation Class.

Members of the California Litigation Class who do not wish to be bound by a judgment in favor

of or against the California Litigation Class must exclude themselves from the Litigation. The

process and time limits for members of the California Litigation Class to exclude themselves

from the Litigation are identical to those set forth with respect to the members of the Settlement

Class in the Long Form Notice and in paragraphs 10-12 of this Order, except as follows. If the

Settlement is not approved or the Effective Date does not occur, members of the California

Litigation Class who submitted timely objections to the Settlement or timely claims under the

Settlement (whether or not such claims are deemed Valid Claims) shall have an additional forty-

five (45) days from notice of termination of the settlement to exclude themselves from the

California Litigation Class, and members of the California Litigation Class who submitted timely

requests to exclude themselves from the Settlement shall have an additional forty-five (45) days

from notice of termination of the settlement to revoke their requests for exclusion and to rejoin

the California Litigation Class. To effectuate this right, the all members of the California

Litigation Class who submitted timely objections to the Settlement or timely claims under the

Settlement (whether or not such claims are deemed Valid Claims) and who provided an email

address in connection with their objections or claims shall be provided a further notice by email,

informing such persons of an additional period to exclude themselves from the Litigation. In

addition, all members of the California Litigation Class who submitted timely request to exclude

themselves from the Settlement and Litigation and who provided an email address in connection

with their request for exclusion shall be provided a further notice by email, informing such

persons of an additional period to revoke their request for exclusion and to rejoin the California

Litigation Class for purposes of the continued Litigation. Within ten (10) days of the Termination

Date, the Parties shall meet and confer in good faith regarding the content of such notice and then

seek to obtain Court approval for the notice. All requests following the Termination Date for

exclusion from the Litigation or to revoke a prior request for exclusion must be *received by* the

Claim Administrator (not just postmarked) within forty-five days after notice of termination of

the settlement, or they shall not be valid. Members of the California Litigation Class who did not

file an objection by the Objection Deadline or a claim by the Claim Filing Deadline shall have no further right after the Exclusion Date to exclude themselves from the Litigation, even if the Settlement is not approved or the Effective Date does not occur.

14.   Any Settlement Class Member who does not submit a valid and timely request for exclusion may submit an objection to the Settlement Agreement ("Objection"). The written objection must satisfy the requirements in the Long Form Notice and be filed with the Clerk of the Court (not postmarked) no later than [28 days before Final Approval Hearing], or it will be rejected.

15.   Any Settlement Class Member shall have the right to appear and be heard at the Final Approval hearing, either personally or through an attorney retained at the Settlement Class Member's own expense. However, if the Settlement Class Member wishes to object to the Settlement at the Final Approval Hearing (either personally or through counsel), the Settlement Class Member must submit a written objection as set forth in the prior paragraph of this Order.

16.   Immediately upon receipt of any objection, the Claim Administrator shall forward to the objection and all supporting documentation to counsel for the Parties. No later than [14 days prior to Final Approval], Plaintiff's Counsel shall file all such objections and supporting documentation with the Court.

17.   Plaintiff shall file his motions for Final Approval and for any award of attorneys' fees, costs and a class representative payment no later than [42 days prior to Final Approval], and the reply in support of that motion and responses to any objections and requests to intervene no later than [14 days prior to Final Approval]. Those motions and all supporting documentation shall simultaneously be posted to the Settlement Website.

18.   No later than [14 days prior to Final Approval], the Claim Administrator shall provide a declaration to the Court regarding the number and dollar amount of claims received to date.

19.   In the event that the proposed settlement is not finally approved by the Court, or in the event that the Settlement Agreement becomes null and void or terminates pursuant to its terms, this Preliminary Approval Order and all orders entered in connection herewith (including

9

any order amending the complaint) shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this Litigation or in any other case or controversy, except as set forth in paragraph 13; in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

20.   This Order shall not be construed as an admission or concession by Defendant of the truth of any allegations made by the Plaintiff or of liability or fault of any kind.

21.   The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members. The Final Approval Hearing may, from time to time and without further notice to the Settlement Class Members, be continued by Order of the Court.

**IT IS SO ORDERED** this _____th day of _____, 2018.


_____
Honorable Richard Seeborg
United States District Court Judge

# Exhibit D

1

UNITED STATES DISTRICT COURT

2

NORTHERN DISTRICT OF CALIFORNIA

3

SAN FRANCISCO

4

5  SCOTT KOLLER, an individual, on behalf       CASE NO. 3:14-CV-2400-RS
   of himself, the general public and those
6  similarly situated,                           [PROPOSED] ORDER GRANTING FINAL
                                                  APPROVAL OF CLASS ACTION
7   Plaintiff,                                    SETTLEMENT AND JUDGMENT

8             v.                                  Hon. Judge Richard Seeborg

9  MED FOODS, INC., AND DEOLEO USA,
   INC.
10
11  Defendants.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In this case, Plaintiffs alleged that Defendant had marketed and sold its Bertolli brand of olive oil with the representation "Imported from Italy," although most of the oil was extracted in countries other than Italy, from olives grown in those countries. Plaintiffs also alleged that Defendant had marketed and sold a subset of the Bertolli brand olive oil with the representation "Extra Virgin," although Defendant's procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. Plaintiffs alleged that Defendant's labeling and marketing of the oil violated the Tariff Act of 1930, as amended, 19 U.S.C. 1304, and its implementing regulations, 19 C.F.R. section 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. sections 301 *et seq.,* and its implementing regulations, 21 C.F.R. sections 101.18 *et seq.*; the U.S. Department of Agriculture regulations regarding Olive Oil and Olive-Pomace Oil, 75 Fed. Red. 22363 (Apr. 28, 2010).  Plaintiffs, who are residents of Arkansas, California, Florida, New Jersey, New York, and North Carolina, alleged that these federal violations also violated laws of the various states including health and safety codes and consumer laws, and constituted false advertising, unfair business practices, breach of contract, breach of the covenant of good faith and fair dealing, and fraud, deceit and/or misrepresentation. The allegations in this paragraph are referred to as the "Allegations."

Defendant denies that there is any factual or legal basis for Plaintiffs' allegations. It contends that the labeling of the Products was truthful and non-misleading, and that purchasers did not pay a "premium" for the Products as the result of any misrepresentations. Defendant therefore denies any liability. It also denies that Plaintiffs or any other members of the settlement class have suffered injury or are entitled to monetary or other relief. Defendant finally denies that this case should have been certified as a nationwide class action, except for purposes of settlement.

On _____, this Court granted preliminary approval of a proposed class action settlement between the parties. In the Preliminary Approval Order, the Court provisionally certified a Settlement Class of all persons, other than Excluded Persons, who, (i) between May 23, 2010 and [date of Preliminary Approval], purchased, in the United States, any of the Extra

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

Virgin Olive Oil Products and/or (ii) between May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive Oil Products. The Court also approved the procedures for giving notice and the forms of notice. Additionally, in the Preliminary Approval Order, the Court concluded that the parties' proposed settlement, as set forth in the Stipulation of Settlement, was within range of possible final approval.

Now, pending before the Court is the parties' Motion for Final Approval of Class Action Settlement, and Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Incentive Awards. In accordance with the Preliminary Approval Order and the Settlement Agreement, on _____, the Court held a duly noticed Fairness Hearing for purposes of: (a) determining the fairness, adequacy, and reasonableness of the settlement; and (b) ruling upon an application by Class Counsel for a Fee and Expense Award and Plaintiffs' Incentive Awards.

The parties and the claim administrator have submitted evidence, which the Court accepts, showing the following. Approximately _____ advertisement impressions were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class. These ads were purchased through [   ]. Notice also was published once a week for four successive weeks in the San Francisco Chronicle and was published one times in People Magazine. These print publications have combined circulation of _____ and combined readership of _____. A press release was issued through the PR News Wire's network which is distributed to more than _____ media outlets, and articles about the settlement appeared in at least ___ publications.  All of the online notices linked to, and the printed notices referred to, the Settlement Website, which contains a detailed class notice, including the procedures for class members to exclude themselves or object to the settlement, as well as a copy of the Settlement Agreement and motion papers filed in connection with the settlement.

A total of ___ persons filed timely requests to opt out of the Settlement Class.

In addition, ___ persons filed objections to the settlement. [Discuss substance of objections.]

Having considered all matters submitted to it at the hearing on the motion and otherwise, including the complete record of this action, and good cause appearing therefore, the Court

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND JUDGMENT

hereby grants the Motion for Final Approval and Plaintiff's Motion for an Award of Attorney's Fees, Costs, and Incentive Awards, and finds and concludes as follows:

1.      The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.      The Court has jurisdiction over this case and over all claims raised therein and all Parties thereto.

3.      The Court finds that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter. The Court additionally finds, for the reasons set forth in the parties' motions for preliminary and final approval, that despite any differences among the laws of the various states, common issues of law and fact predominate, making certification of a nationwide class appropriate. In particular, the identical challenged marketing and labelling was provided to all class members; the various states require similar elements of proof with respect to the asserted claims in the Second Amended Complaint and common issues under those laws predominate; to the extent there are differences among the states, plaintiffs have demonstrated that similarly situated states can be combined into subclasses and there exist named plaintiffs in the Second Amended Complaint who can represent each such subclass.

4.      For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All persons who (i) between May 23, 2010

and [date of Preliminary Approval], purchased, in the United States, any of the Extra Virgin Olive Oil Products and/or (ii) between May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive Oil Products. Purchases for purposes of resale are excluded. "Extra Virgin Olive Oil Product" means bottles of Bertolli Extra Virgin olive oil, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." "Other Olive Oil Product" means the liquid Bertolli Extra Light or Classico olive oil products.

5.    Excluded from the class are (1) the Honorable Richard Seeborg; the Honorable Joseph C. Spero; the Honorable Edward Infante (ret.); (2) any member of their immediate families; (3) any government entity, (4) Defendant; (5) any entity in which Defendant has a controlling interest; (6) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (7) counsel for the Parties. The following persons timely submitted requests to exclude themselves and shall be excluded from the settlement class: [ ].

6.    For the purpose of this settlement, the Court hereby finally certifies Plaintiffs Scott Koller, Carolyn Bissonnette, Cece Castoro, Diane Gibbs, Darlene Williams, Robert Glidewell, and Stephen Freiman as Class Representatives, and Gutride Safier LLP and Tycko & Zavareei LLP as Settlement Class Counsel.

7.    The Parties complied in all material respects with the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class of the pendency of the Litigation; the existence and terms of the Settlement Agreement; their rights to make claims, exclude themselves, or object; and the matters to be decided at the Final Approval Hearing. Further, the Notice Plan satisfied the requirements of the United States and California Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law.

8.    The Court has determined that full opportunity has been given to the members of the Settlement Class to exclude themselves from the settlement, object to the terms of the settlement

or to Class Counsel's request for attorneys' fees and expenses and a Class Representative incentive payment, and otherwise participate in the Final Approval Hearing held on [         ], 2018. The Court has considered all submissions and arguments made at the final approval hearing provided by Class Members objecting to the settlement as well as the Parties' responses to those objections, and has determined, for all the reasons set forth in the Parties' responses, that none of the objections have any merit or warrant disapproval of the Settlement Agreement. In addition, [         ]. All such objections to the settlement are overruled.

9.     The Court finds that the settlement is in all respects fair, reasonable, and adequate. The Court therefore finally approves the settlement for all the reasons set forth in the Motion for Final Approval including, but not limited to, the fact that the Settlement Agreement was the product of informed, arms-length negotiations between competent, able counsel and conducted with the oversight and involvement of several independent, well respected, and experienced mediators; the record was sufficiently developed and complete through meaningful discovery and motion proceedings to have enabled counsel for the Parties to have adequately evaluated and considered the strengths and weaknesses of their respective positions; the Litigation involved disputed claims, and this dispute underscores the uncertainty and risks of the outcome in this matter; the settlement provides meaningful remedial and monetary benefits for the disputed claims; and the Parties were represented by highly qualified counsel who, throughout this case, vigorously and adequately represented their respective parties' interests.

10.     The Settlement is in the best interests of the Settlement Class in light of the degree of recovery obtained in relation to the risks faced by the Settlement Class in litigating the class claims. The relief provided to the Settlement Class Members under the Settlement Agreement is appropriate as to the individual members of the Settlement Class and to the Settlement Class as a whole. All requirements of statute, rule, and Constitution necessary to effectuate the settlement have been met and satisfied. The Parties shall continue to effectuate the Settlement Agreement in accordance with its terms.

11.     For a period beginning on the Effective Date and continuing for three years thereafter, Deoleo USA, Inc.is enjoined as follows:

a.   Not to use the phrases "Imported from Italy," "Made in Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle originates exclusively from olives grown in Italy on the labeling of any olive oil product sold in the United States, unless the product so labeled is composed entirely of oil from olives grown and pressed in Italy.

b.   If Defendant uses the phrase "Extra Virgin" or term "EVOO" on the product label of any olive oil, it must do all of the following: (i) package the olive oil in a non-transparent (UV filtering) container, e.g., a green or brown glass container; (ii) include a "best by" or "use by" date not later than sixteen months after the date of bottling; (iii) include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to the "best by" date; and (iv) implement the following chemical parameter testing requirements set forth under "Target Limit" at the time of bottling (which are stricter than the current limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | ≤ 0.8 | ≤ 0.5 |
| Peroxide value (mEq )2/kg) | ≤ 20 | ≤ 10 |
| K270 | ≤ 0.22 | ≤ 0.15 |
| K232 | ≤ 2.50 | ≤ 2.1 |
| Delta-K | ≤ 0.01 | ≤ 0.005 |

12.   By operation of this Final Approval Order and Judgment, Plaintiffs on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or contentions that Plaintiffs, on the one hand, and Defendant, on the other

hand, have had in the past, or now have, related in any manner to the Defendant's products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiffs, on the one hand, and Defendant, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

13.    By operation of this Final Approval Order and Judgment, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims, including any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations or claims that the Products were marketed or labeled as "Imported From Italy" and/or "Extra Virgin," except that there shall be no release of (1) claims for personal injury allegedly arising out of use of the Products or (2) any defense, cross-claim or counter-claim in any action initiated by any of the Released Parties against any Settlement Class Member.

14.    Plaintiffs and Defendant shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law. In addition, Settlement Class Members shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in paragraph 13 of this Order. Section 1542 provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

7

15.     Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

16.     No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Final Approval Order and Judgment shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

17.     The Claim Administrator has submitted an invoice for its expenses incurred to date and expected to be incurred through the completion of its work, in the amount of $_____. Included in this invoice is the amount for all taxes due from the Settlement Fund. The Court finds that such amounts are reasonable and authorizes payment of the invoices, in full, from the Settlement Fund.

18.     For the reasons stated in the separate Order on Class Counsel's Application for an award of attorneys' fees and costs and a class representative payment, the following amounts shall be paid by from the Settlement Fund:

        a.     Fees and expenses to Class Counsel: $_____

        b.     Class representative payments

             i.     to Plaintiff Scott Koller: $_____

1         ii.    to Plaintiff Carolyn Bissonnette: $_____

2         iii.   to Plaintiff Cece Castoro: $_____

3         iv.   to Plaintiff Diane Gibbs: $_____

4         v.    to Plaintiff Darlene Williams: $_____

5         vi.   to Plaintiff Robert Glidewell: $_____

6         vii.  to Plaintiff Stephen Freiman: $_____

7 Such amounts shall be paid according to the terms of the Settlement Agreement. Except as

8 provided in this Order, Plaintiffs shall take nothing against Defendant by their Complaint.

9       19.    If after payment of the amounts set forth in paragraphs 17 and 18, as well as the

10 payment of Valid Claims (including pro-rata increase of such payment) as set forth in Part III of

11 the Settlement Agreement, money remains in the Settlement Fund, that remainder shall be paid,

12 pursuant to the cy pres doctrine, in equal shares to Consumers Union, Yonkers, NY; and Center

13 for Food Safety, Washington, DC. The *cy pres* doctrine is appropriate for a case like this one,

14 where class members who did not make claims cannot be easily located or identified, in order to

15 "put the unclaimed fund to its next best compensation use, *e.g.,* for the aggregate, indirect,

16 prospective benefit of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)

17 (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir.2007)). A cy pres

18 remedy must "bear[] a substantial nexus to the interests of class members." *Lane v. Facebook*,

19 696 F.3d 811, 821 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 (U.S. 2013). In evaluating a cy pres

20 component of a class action settlement, courts look to factors set forth in *Six (6) Mexican Workers*

21 *v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Specifically, the cy pres remedy

22 "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes,

23 and the interests of the silent class members...." 663 F.3d at 1036 (citing *Six Mexican Workers,*

24 904 F.2d at 1307). The Court finds the cy pres recipients appropriate for the following reasons:

25         a.    Consumers Union is a non-profit organization with a mission "to work for

26 a fair, just and safe marketplace for all consumers and to empower consumers to protect

27 themselves." It publishes Consumer Reports magazine and website (www.consumerreports.org),

28 as well as The Consumerist Blog (www.consumerist.com), both of which provide information of

interest to consumers, such as product reviews and information about false advertising scams.

Consumers Union is also active in educating consumers about food labeling. It operates the

website Not In My Food (www.notinmyfood.org), which provides information to consumers

about the presence of genetically modified organisms (GMOs) and other controversial ingredients

in food, and it lobbies for better food labeling laws. In addition, in September 2012, Consumer

Union published an article in Consumers Report entitled "How to Find the Best Extra-Virgin

Olive Oil" (*See* https://www.consumerreports.org/cro/magazine/2012/09/how-to-find-the-best-

extra-virgin-olive-oil/index.htm, last accessed March 5, 2018.)  Consumers Union has also been

approved as a cy pres recipient in numerous false advertising lawsuits.  *See, e.g. Miller v*

*Ghirardelli Chocolate Co.,* 2015 WL 758094, at *8 (N. D. Cal. Feb. 20, 2015)*; Nigh v.*

*Humphreys Pharmacal, Inc.*, 2013 WL 5995382, at *9 (S.D. Cal. Oct. 23, 2013) ("the Court finds

that this *cy pres* distribution to Consumers Union reflects the objectives of the UCL and CLRA;

reflects the interests of silent Class Members; and benefits the Plaintiff Class, who are consumers

that purchased Products based on false and misleading representations"); *Dennis v. Kellogg Co.*,

2013 WL 6055326, at *1 (S.D. Cal. Nov. 14, 2013), *appeal dismissed* (May 15, 2014) (approving

Consumers Union as a cy pres recipient in a food labeling class action).

       b.    The Center for Food Safety is a non-profit organization that states that it

"is a national non-profit public interest and environmental advocacy organization working to

protect human health and the environment by curbing the use of harmful food production

technologies and by promoting organic and other forms of sustainable agriculture. CFS also

educates consumers concerning the definition of organic food and products. CFS uses legal

actions, groundbreaking scientific and policy reports, books and other educational materials,

market pressure and grass roots campaigns through our True Food Network. CFS's successful

legal cases collectively represent a landmark body of case law on food and agricultural issues."

(*See* https://www.centerforfoodsafety.org/about-us, last accessed March 19, 2018). It advocates

for better agricultural and food production practices through legislative advocacy, litigation, and

consumer education.

       20.    This order shall constitute a final judgment binding the parties with respect to this

1    Litigation.

2        21.    Without affecting the finality of the judgment hereby entered, the Court reserves

3    jurisdiction over the interpretation, implementation and enforcement of the Settlement

4    Agreement.  In the event the Effective Date does not occur in accordance with the terms of the

5    Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null

6    and void and shall be vacated, and in such event, all orders and judgments entered and releases

7    delivered in connection herewith shall be null and void and the Parties shall be returned to their

8    respective positions *ex ante*.

9        22.    Without further order of the Court, the parties may agree to reasonable extensions of

10   time to carry out any provisions of the Settlement Agreement.

11       There is no just reason for delay in the entry of this Judgment, and immediate entry by the

12   Clerk of the Court is expressly directed.

13       **IT IS SO ORDERED** this ____ day of _____, 2018.

14

15

16                                                  _____

17                                                  Honorable Richard Seeborg
                                                    United States District Court Judge

18

19

20

21

22

23

24

25

26

27

28

# Exhibit E

GUTRIDE SAFIER LLP
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
100 Pine Street, #1250
San Francisco, California 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

TYCKO & ZAVAREEI LLP
HASSAN A. ZAVAREEI (State Bar No. 181547)
JEFFREY D. KALIEL (State Bar No. 238293)
ANDREW J. SILVER (*pro hac vice*)
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiff SCOTT KOLLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SCOTT KOLLER, an individual, on behalf of himself, the general public and those similarly situated,<br><br>  Plaintiff,<br><br>          v.<br><br>MED FOODS, INC., AND DEOLEO USA, INC.<br><br>  Defendants. | CASE NO. 3:14-CV-2400-RS<br><br>UNDERTAKING RE ATTORNEYS' FEES AND COSTS<br><br>Hon. Judge Richard Seeborg |

**WHEREAS**, on _____, the Court awarded $_____ in attorneys' fees and expenses ("Fee Award") to Plaintiff's Counsel Gutride Safier LLP (the "Gutride Safier Firm") and Tycko & Zavareei LLP (the "Tycko Zavareei Firm"), collectively, to be distributed according to the terms of the Settlement Agreement; and

**WHEREAS**, the Gutride Safier Firm and the Tycko Zavareei Firm have agreed that the Fee Award shall be divided as follows: the amount of $_____ should be distributed to the Gutride Safier Firm ("Gutride Safier Distribution") and $_____ should be distributed to the Tycko Zavareei Firm ("Tycko Zavareei Distribution"); and

**WHEREAS**, as required by the Class Action Settlement Agreement (the "Settlement Agreement") in this matter, Plaintiff's Counsel Gutride Safier LLP (the "Gutride Safier Firm") and its principals Adam Gutride, Esq. ("Gutride") and Seth Safier, Esq. ("Safier") (collectively the "Gutride Safier Obligors"), and Plaintiff's Counsel Tycko & Zavareei LLP (the "Tycko Zavareei Firm") and its principals Jonathan Tycko ("Tycko") and Hassan Zavareei ("Zavareei") (collectively the "Tycko Zavareii Obligors") (each of the six foregoing defined persons and entities being an "Obligor" and collectively being "Obligors") desire to provide for the benefit of Defendant Deoleo USA, Inc. ("Defendant") an undertaking for repayment of any award of attorneys' fees, costs, and expenses ("Fee Award") that any of the Obligors may be paid as attorneys' fees, costs or expenses in connection with the Settlement Agreement (the "Undertaking"),

**NOW, THEREFORE**, each of the undersigned Obligors, on behalf of himself as an individual and as an agent for his respective law firm, hereby submits himself and the law firm on whose behalf he has executed this Undertaking to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking. Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement. The Gutride Safier Obligors are jointly and severally obligated with respect to all the terms of this Undertaking, but their collective obligations are limited to the amount of the Gutride Safier Distribution. The Tycko Zavareei Obligors are jointly and severally obligated with respect to all the terms of this

Undertaking, but their collective obligations are limited to the amount of the Tycko Zavareei Distribution.

In the event the Fee Award is vacated in full, then within seven (7) days after the order vacating the Fee Award becomes final, the Gutride Safier Obligors shall repay to the Settlement Fund Account the entire amount of the Gutride Safier Distribution, plus interest, and the Tycko Zavareei Obligors shall repay to the Settlement Fund Account the entire amount of the Tycko Zavareei Distribution, plus interest. In the event the Fee Award is reduced on appeal, then within seven (7) days after the order reducing the Fee Award becomes final, the Gutride Safier Obligors shall repay to the Settlement Fund Account a percentage of the Gutride Safier Distribution, equal to the percentage by which the Fee Award was reduced, plus interest, and the Tycko Zavareei Obligors shall repay to the Settlement Fund Account a percentage of the Tycko Zavareei Distribution, equal to the percentage by which the Fee Award was reduced, plus interest.

Interest shall be computed at the Prime Rate on the amount to be repaid to Defendant, from the date that amount was paid to Plaintiff's Counsel until the date of repayment by Obligors to the Settlement Fund.

In the event the Obligors fail to timely repay any amounts that are owed to the Settlement Fund Account pursuant to this Undertaking, the Court shall, upon application of Claim Administrator and notice to Plaintiffs' Counsel, summarily issue orders, including but not limited to judgments and attachment orders, against the Obligors, jointly and severally, as set forth above, and may make appropriate findings for sanctions for contempt of court. Any such judgments shall accrue interest at the applicable interest rate set forth in 28 U.S.C. § 1961.

The Obligors each hereby pledges and grants a continuing security interest to Defendant in all of his or its assets and the assets of his respective undersigned law firm (collectively, "Assets") to secure the obligations set forth in this Undertaking (including the interests accruing thereon), and hereby agrees to execute and deliver such further documentation and take such further action as Defendant may request in order to enforce its security interest. "Assets" means all properties and assets of any nature, including, without limitation, the full extent of each

Obligor's right, title and interest in and to the following property (whether now existing or hereafter arising or acquired, wherever located):

(1)   All intangible property, including without limitation, all present and future accounts, accounts receivable, agreements, contracts, leases, contract rights, rights to payment (including, without limitation, any award or other legally enforceable payment of attorneys' fees, costs, and expenses for services rendered), interest in litigation, commercial tort claims, choses in actions, instruments, documents, chattel paper, security agreements, guaranties, letters of credit, undertakings, surety bonds, insurance policies, notes and drafts, and all forms of obligations owing to each Obligor or in which each Obligor may have any interest, however created or arising and whether or not earned by performance;

(2)   All real property interests identified in Exhibit E1, including without limitation, all fee or leasehold interests in such real property and any improvements or fixtures thereon or rights related or appurtenant thereto, which the Gutride Safier Obligors represent have a combined market value, net of all liens and encumbrances, greater than the value of the Gutride Safier Distribution, and the Tycko Zavareei Obligors represent have a combined market value, net of all liens and encumbrances, greater than the value of the Tycko Zavareei Distribution;

(3)   All goods and equipment now owned or hereafter acquired, including, without limitation, all machinery, fixtures, vehicles, and any interest in any of the foregoing, and all attachments, accessories, accessions, replacements, substitutions, additions, and improvements to any of the foregoing, wherever located;

(4)   All other contract rights and general intangibles now owned or hereafter acquired, including, without limitation, goodwill, trademarks, service marks, trade styles, trade names, patents, patent applications, leases, license agreements, purchase orders, customer lists, route lists, infringements, claims, computer programs, computer discs, computer tapes, literature, reports, catalogs, design rights, income tax refunds, payments of insurance and rights to payment of any kind;

(5)   All deposit accounts, securities, securities entitlements, securities accounts, investment property, letters of credit and certificates of deposit now owned or hereafter

acquired and each Obligor's books relating to the foregoing, including the accounts identified in Exhibit E2; and

(6)     Each Obligor's books and records relating to the foregoing and any and all claims, rights and interests in any of the above and all substitutions for, additions and accessions to and proceeds thereof.

Each Obligor agrees, as applicable, that he or it will not change its state of organization or locations at which any of the Assets are located without giving Defendant at least thirty (30) days prior written notice thereof. In addition, the Gutride Safier Firm and Tycko & Zavareei Firm agree that they will not (i) change their names, federal employer identification numbers, entity structures or identities, (ii) create or operate under any new fictitious names, without giving Defendant at least thirty (30) days prior written notice thereof, or (iii) pledge or encumber any of the Assets to another person or entity without the prior written consent of Defendant. The Obligors further agree to maintain liquid funds in an account with a domestic bank that is an FDIC member or a domestic brokerage account held by an SPIC member that exceed the amount of the Fee Award until the termination of this Undertaking.

Each Obligor hereby authorizes Defendant to file UCC financing statements covering the Assets without Obligor's signature in all applicable jurisdictions. With respect to the Assets identified in Exhibit E1, each Obligor shall, upon request by Defendant, execute (and cause any spouse or domestic partner to execute, if applicable) one or more deeds of trust or mortgages to evidence the security interests granted herein in favor of Defendant by each Obligor to secure their obligations pursuant to this Undertaking, but only if Defendant agrees in writing to cancel and reconvey any such deeds of trusts and mortgages to the Obligors (and any spouses or domestic partners) who executed them, within three (3) days after the expiration of this Undertaking, and to indemnify Obligors for any losses incurred by Obligors as a result of Defendant's failure to do so.  With respect to the Assets identified in Exhibit E2, each Obligor shall, upon request by Defendant, execute (and cause any spouse or domestic partner to execute, if applicable) one or more account control agreements to evidence the security interests granted

herein in favor of Defendant by each Obligor to secure their obligations pursuant to this Undertaking.

In the event of a default by Obligors in their repayment obligations, the Obligors each shall cooperate with Defendant in identifying their respective Assets and shall take no steps to conceal any such Assets or otherwise render them unavailable to satisfy their joint and several obligations pursuant to this Undertaking.

The undersigned stipulate, warrant, and represent that they have both actual and apparent authority to enter into this stipulation, agreement and Undertaking on behalf of their undersigned law firms. This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile or email shall be as effective as original signatures. The undersigned declare under penalty of perjury under the laws of the State of California and the United States that they have read and understand the foregoing and that it is true and correct.

This Undertaking and all obligations set forth herein shall expire on the fourteenth (14) day after which the Final Approval and any Fee Award have been affirmed on appeal and are not subject to further judicial review, or if no such appeal is filed, upon the fourteenth (14) day after the expiration of the time in which to bring such an appeal.

ADAM GUTRIDE

DATED: _____, 2018          _____

Adam Gutride

SETH SAFIER

DATED: _____, 2018          _____

Seth Safier

DocuSign Envelope ID: 48D3C363-1DE2-407D-9FA6-5AD682C4805E

9.15.   <u>Confidentiality</u>. The Parties, Plaintiffs' Counsel, and Defendant's Counsel agree to keep this Agreement confidential until the filing of the motion for Preliminary Approval.

9.16.   <u>Exhibits.</u> The Exhibits to the Agreement are an integral part of the Settlement and are hereby incorporated and made part of the Agreement.

9.17.   <u>Complete Resolution.</u> The Parties intend for this Agreement to be a complete and final resolution of all disputes between them with respect to the Litigation.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the first date it has been executed by all of the undersigned.

**APPROVED AS TO FORM:**

DATED: March ___, 2018          GUTRIDE SAFIER LLP

_____
Adam Gutride, Esq.
Seth Safier, Esq.
Attorneys for Plaintiffs

DATED: March 27, 2018          TYCKO AND ZAVAREEI LLP

_____
Hassan A. Zavareei, Esq.
Anna C. Haac, Esq.
Attorneys for Plaintiff

32

DATED: March 28, 2018          NORTON ROSE FULBRIGHT US LLP


_____
Jeffrey Margulies, Esq.

**APPROVED AND AGREED:**

DATED: March ___, 2018          SCOTT KOLLER


_____
Scott Koller


DATED: March ___, 2018          CAROLYN BISSONNETTE


_____
Carolyn Bissonnette


DATED: March ___, 2018          CECE CASTORO


_____
Cece Castoro


DATED: March ___, 2018          DIANE GIBBS


_____
Diane Gibbs


DATED: March ___, 2018          DARLENE WILLIAMS


_____
Darlene Williams


33

DATED: March ___, 2018          NORTON ROSE FULBRIGHT US LLP


_____
Jeffrey Margulies, Esq.

**APPROVED AND AGREED:**

DATED: March 2̲1̲, 2018          SCOTT KOLLER


_____
Scott Koller

DATED: March ___, 2018          CAROLYN BISSONNETTE


_____
Carolyn Bissonnette

DATED: March ___, 2018          CECE CASTORO


_____
Cece Castoro

DATED: March ___, 2018          DIANE GIBBS


_____
Diane Gibbs

DATED: March ___, 2018          DARLENE WILLIAMS


_____
Darlene Williams

33

DATED: March ___, 2018                    NORTON ROSE FULBRIGHT US LLP

_____

Jeffrey Margulies, Esq.

**APPROVED AND AGREED:**

DATED: March ___, 2018                    SCOTT KOLLER

_____

Scott Koller

                    3/30/2018
DATED: March ___, 2018                    CAROLYN BISSONNETTE

Carolyn Bissonnette

                    3/27/2018
DATED: March ___, 2018                    CECE CASTORO

Cece Castoro

                    3/27/2018
DATED: March ___, 2018                    DIANE GIBBS

Diane Gibbs

                    3/28/2018
DATED: March ___, 2018                    DARLENE WILLIAMS

Darlene Williams

3/28/2018

DATED: March ___, 2018          ROBERT GLIDEWELL

Robert Glidewell

3/27/2018

DATED: March ___, 2018          STEPHEN FRIEMAN

Stephen Freiman

DATED: March ___, 2018          DEOLEO USA, INC.

By:_____

Name:_____

Its: _____

DATED: March ___, 2018          ROBERT GLIDEWELL

                                _____

                                Robert Glidewell

DATED: March ___, 2018          STEPHEN FRIEMAN

                                _____

                                Stephen Freiman

DATED: March _28_ 2018          DEOLEO USA, INC.

                                By: _Pigley Tsato_____

                                Name: _PIERWIGI  TOSATO___

                                Its: _PRESIDENT_____

34