ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
KRISTEN G. SIMPLICIO (State Bar No. 263291)
kristen@gutridesafier.com
**GUTRIDE SAFIER LLP**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.271.6469
Facsimile: 415.449.6469

HASSAN A. ZAVAREEI (State Bar No. 181547)
hzavareei@tzlegal.com
ANNA C. HAAC (pro hac vice)
ahaac@tzlegal.com
ANDREW J. SILVER (pro hac vice)
asilver@tzlegal.com
**TYCKO & ZAVAREEI LLP**
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT KOLLER, CAROLYN BISSONETTE, CECE CASTORO, STEPHEN FREIMAN, DIANE GIBBS, DARLENE WILLIAMS, and ROBERT GLIDEWELL, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>      v.<br><br>MED FOODS, INC., and DEOLEO USA, INC.<br><br>    Defendants. | CASE NO. 14-cv-2400 (RS)<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS**<br><br>Date: August 9, 2018<br>Time: 1:30 p.m.<br>Dept: Courtroom 3, 17th Floor<br>Judge: Hon. Richard Seeborg |

## <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.     INTRODUCTION ...................................................................................................................... 1

II.    BACKGROUND FACTS AND DETAILS OF SETTLEMENT ............................................... 2

    A.    The Complaint ................................................................................................................. 2

    B.    Motion to Dismiss ........................................................................................................... 2

    C.    Discovery ......................................................................................................................... 2

    D.    Stay Pending Ninth Circuit Decisions ............................................................................ 3

    E.    Class Certification ........................................................................................................... 3

    F.    New Class Representatives and Settlement Negotiations ................................................ 3

    G.    The Proposed Settlement ................................................................................................. 4

        1.    Monetary Relief .................................................................................................. 4

        2.    Changed Practices ............................................................................................... 5

        3.    Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards ........... 6

        4.    Notice .................................................................................................................. 7

III.   ARGUMENT ............................................................................................................................. 7

    A.    FINAL APPROVAL IS WARRANTED ......................................................................... 7

        1.    The Settlement Agreement Resulted from Arm's-Length Negotiations Between
            Experienced Counsel Who Favor the Settlement .............................................. 9

        2.    Substantial Benefits Are Provided To The Class. ............................................. 10

        3.    There are Serious Risks of Further Litigation .................................................. 11

        4.    The Reaction Of The Settlement Class Has Been Overwhelmingly Positive ... 12

    B.    The *Cy Pres* Award Should Be Approved. ..................................................................... 12

        1.    The Selected Organizations Will Benefit the Class and Advance the Interests of
            the Litigation .................................................................................................... 13

            a.    Consumers Union (Yonkers, NY) ......................................................... 13

            b.    Center for Food Safety (Washington, D.C.) .......................................... 13

        2.    *Cy Pres* Donations Will Benefit the Class. ...................................................... 14

    C.    Certification of the Settlement Classes Is Appropriate .................................................. 14

    D.    Plaintiffs' Counsel Should Be Awarded $2,100,000 In Attorneys' Fees And
       $146,720.60 In Expenses ............................................................................................... 14

        1.    Plaintiffs' Counsel's Requested Fee Is Reasonable. ......................................... 15

            a.    Plaintiffs' Counsel's Requested Fee Is A Reasonable
               Percentage of The Common Fund. ........................................................ 15

b.      Plaintiffs' Counsel's Requested Fee Is Also Reasonable When Measured Using the Lodestar Method....................................................17

2.   Plaintiffs' Counsel Should Be Awarded Costs...........................................................22

E.      The Incentive Award To The Representative Plaintiffs Is Reasonable. ......................22

IV.      CONCLUSION ....................................................................................................................23

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION
CASE NO. 14-CV-2400 (RS)

# TABLE OF AUTHORITIES

## CASES

*Bolton v. U.S. Nursing Corp.*,
No. C 12-4466 LB, 2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) .................................. 17

*Brinker v. Normandin's*,
No. 14CV03007EJDHRL, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) ...................................... 21

*Brown v. CVS Pharmacy, Inc.*,
No. CV15-7631 PSG (PJWx), 2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) ............................. 19

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................................................................... 7, 11

*Cobell v. Norton*,
231 F. Supp. 2d 295 (D.D.C. 2002) ................................................................. 21

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ....................................................................... 16

*Dennis v. Kellogg Co.*,
09-CV-1786-L (WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .................................. 12, 13

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ....................................................................... 22

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ....................................................................... 9

*Evans v. Linden Research, Inc.*,
No. C-11-01078 DMR, 2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ........................................ 15

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002) ....................................................................... 15

*Galvez v. Americlean Servs. Corp.*,
No. 1:11CV1351 JCC/TCB, 2012 WL 2522814 (E.D. Va. June 29, 2012) ................................. 21

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*,
2008 WL 618893 (C.D. Cal. Feb. 27, 2008) ....................................................................... 23

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA,
2015 WL 2438274 (N.D. Cal. May 21, 2015) ....................................................................... 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1101 (9th Cir. 1998) ....................................................................... 8, 15

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ....................................................................... 22

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) ....................................................................... 16

*In re Easysaver Rewards Litig.*,
No. 09-cv-02094-BAS-WVG, 2016 WL 4191048 (S.D. Cal. Aug. 9, 2016)................................. 16

*In re ECOtality, Inc. Secs. Litig.*,
No. 13-cv-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) ........................................ 15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ........................................ 9

*In re Google Referrer Header Privacy Litig.*,
   869 F.3d 737 (9th Cir. 2017) ........................................................................ 17

*In re Hyundai & Kia Fuel Econ. Litig.*,
   881 F.3d 679 (9th Cir. 2018) ........................................................................ 14

*In re Lloyd's Am. Tr. Fund Litig.*,
   No. 96 Civ. 1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................... 16

*In re Mego Financial Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................8, 11, 23

*In re Netflix Privacy Litig.*,
   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......................................................... 16

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. 2008) .................................................................... 9

*In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803
   (N.D. Cal. Dec. 19, 2016) ........................................................................... 20

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ......................................................................... 15

*In re Pacific Enterprises Securities Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................................... 7

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................ 21

*Johnson v. Gen. Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2013) ......................................................... 16

*Kirkorian v. Borelli*,
   695 F. Supp. 446 (N.D. Cal. 1988) ................................................................... 9

*Kumar v. Salov N. Am. Corp.*,
   No. 14-CV-2411-YGR, 2017 WL 2902898 (N.D. Cal. July 7, 2017) ...................................... 21

*Lane v. Facebook*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................ 13

*Lealao v. Beneficial California, Inc.*,
   82 Cal. App. 4th 19 (2000) .......................................................................... 18

*LeBlanc-Sternberg v. Fletcher*,
   143 F.3d 748 (2nd Cir. 1998) ........................................................................ 21

*Linney v. Cellular Alaska Partnership*,
   151 F.3d 1234 (9th Cir. 1998) .....................................................................10, 11

*Mancini v. Dan P. Plute, Inc.*,
   358 F. App'x 886 (9th Cir. 2009) .................................................................... 21

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ....................................................................... 12

*McLaughlin v. Wells Fargo Bank, N.A.*,
  No. C 15-02904 WHA, 2017 WL 994969 (N.D. Cal. Mar. 15, 2017)............................ 20

*Miller v. Ghirardelli Chocolate Co.*,
  No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015)....................11, 13, 23

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ........................................................................ 15

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) ...................................................................... 13, 14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 10

*Nigh v. Humphreys Pharmacal, Inc.*,
  2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) .................................................... 13

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015)...................................................................... 22

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ..................................................................passim

*Patel v. Trans Union, LLC*,
  No. 14-cv-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) .............................. 9

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ........................................................................ 16

*Pokorny v. Quixtar, Inc.*,
  2013 WL 3790896 (N.D. Cal. July 18, 2013) ...................................................... 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ................................................................13, 15, 16

*Smith v. CRST Van Expedited, Inc.*,
  2013 WL 163293 (S.D. Cal. Jan. 14, 2013)........................................................ 23

*State of Fla. v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) ........................................................................ 15

*Stathakos v. Columbia Sportswear Co.*,
  No. 15-cv-04543-YGR, 2018 WL 1710075 (N.D. Cal. Apr. 9, 2018).......................... 21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ........................................................................ 16

*Taylor v. Meadowbrook Meat Co., Inc.*,
  No. 3:15-CV-00132-LB, 2016 WL 4916955 (N.D. Cal. Sept. 15, 2016)...................... 15

*Texas v. U.S.*, No. CV 11-1303 (RMC),
  2017 WL 1194159 (D.D.C. Mar. 30, 2017)........................................................ 20

*Todd v. STARR Surgical Co.*,
  CV 14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)...................... 9

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ......................................................................8, 11

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
  896 F.2d 403 (9th Cir. 1990) ........................................................................ 20

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................ 16, 22

*Vincent v. Hughes Air West*,
  557 F.2d 759 (9th Cir. 1977) ........................................................................ 22

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................ 15, 22

*Williams v. Vukovich*,
  720 F.2d 909 (6th Cir. 1983) .......................................................................... 9

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016) ........................................................................ 17

*Young v. Polo Retail, LLC*,
  2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ............................. 15

## STATUTES

19 U.S.C. § 1304 ............................................................................................... 2

21 U.S.C. § 301 ................................................................................................. 2

## OTHER AUTHORITIES

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An*
  *Empirical Study*, 53 UCLA L. Rev. 1303 (2006) ......................................... 23

## RULES

Fed. R. Civ. P. 23 ...................................................................................... 3, 8, 14

## TREATISES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) ................. 7, 9

*Manual For Complex Litigation (Third)* ........................................................... 9

## REGULATIONS

19 C.F.R. § 134.46 ....................................................................................... 2, 11

21 C.F.R. §101.18 *et seq.* ................................................................................ 2

75 Fed. Reg. 22363 (Apr. 28, 2010) .................................................................. 2

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on August 9, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3, 17th Floor, before the Honorable Richard Seeborg, Plaintiffs shall and hereby do move the Court for an order of:

(1) Final approval of the settlement of this class action as set forth in the class action settlement agreement dated March 27, 2018 (Dkt. 144-4);

(2) Final certification of the proposed Settlement Class;

(3) Entry of final judgment;

(4) An award of $2,100,000 in attorneys' fees, plus out-of-pocket expenses; and

(5) An incentive award of $5,000 for Plaintiff Scott Koller, and $1,000 for the other named Plaintiffs.

This Motion is based on Federal Rule of Civil Procedure 23, this notice, the supporting Memorandum of Points and Authorities; the Declarations of Adam Gutride ("Gutride Decl."), Hassan Zavareei ("Zavareei Decl."), Steven Weisbrot ("Weisbrot Decl."), Colin Weir ("Weir Decl."), Elisa Odabashian ("Odabashian Decl."), and Rebecca Spector ("Spector Decl.") filed in support of this motion; the declarations and exhibits submitted in support of Plaintiffs' Motion for Preliminary Approval; and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

On April 16, 2018, this Court preliminarily approved this Settlement between Plaintiffs and Defendant Deoleo USA, Inc ("Deoleo"). (Dkt. 152.)[1] In a further order, the Court scheduled a final approval hearing for August 9, 2018 to determine (a) whether the proposed settlement should be finally approved as fair, reasonable and adequate, and whether the Final Approval Order should be entered, and (b) whether Class Counsel's application for attorneys' fees, costs, and payments to the Class Representatives should be approved. (Dkt. 155.)

Due to this hard-fought litigation, Deoleo has already removed the phrase "Imported from Italy" from its products and has agreed to refrain from using similar phrases, such as "Made in Italy," unless the oil is entirely from olives grown and pressed in Italy. Deoleo also began to bottle its extra virgin olive oil ("EVOO") in dark green bottles to protect it from light degradation and has agreed to continue to use such bottles. Deoleo has further agreed to stricter testing protocols at the time of bottling, to shorten the "best by" period, and to disclose the date of harvest on every bottle of Bertolli EVOO, all of which will better ensure that the oil remains "extra virgin" at time of sale and use.

Also under the Settlement, Deoleo will pay $7 million into a common fund—one of the largest common fund settlements ever in a food labeling case. Each class member who makes a claim may obtain a cash refund of up to $8.75 per bottle purchased. A class member may submit claims for an unlimited number of purchases. Up to five claims, for a total of $25, will be paid without Proof of Purchase. Pursuant to the Settlement, Plaintiffs may apply for reasonable incentive awards from the common fund, and Class Counsel may apply for an award from the common fund to reimburse their costs, and to pay their attorneys' fees not exceeding 30 percent of the fund.

Plaintiffs seek an award from the common fund of $2,100,000 in attorneys' fees and costs, a $5,000 incentive award to Plaintiff Koller, and $1,000 for the other named Plaintiffs. (Dkt. 144-4 ¶¶ 6.1-6.2.) Class Counsel has not yet received any compensation for their work on this case or for the out-of-pocket expenses they have incurred. Over the four years that this litigation has been ongoing,

---

[1] Unless noted otherwise, capitalized terms take on the same meaning as set forth in the Settlement.

they collectively expended over 2,900 hours to reach successful settlement of the case, for a lodestar of more than $2.2 million, and they incurred more than $145,000 in out-of-pocket expenses.

As the Settlement provides significant and meaningful relief, is the product of a non-collusive, adversarial negotiation, and Plaintiffs' Counsel's request for fees and costs is fair and reasonable, Plaintiffs respectfully request that this motion be granted.

## II.   BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.   The Complaint

On May 23, 2014, Plaintiff Scott Koller filed his complaint. He alleged that the labeling and marketing of the Bertolli Olive Oil Products as "Imported from Italy" and "Extra Virgin" violated the Tariff Act of 1930, as amended, 19 U.S.C. § 1304, and its implementing regulations, 19 C.F.R. § 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and its implementing regulations, 21 C.F.R. §101.18 *et seq.*; the U.S. Department of Agriculture regulations regarding Olive Oil, 75 Fed. Reg. 22363 (Apr. 28, 2010); California consumer laws; breach of contract; breach of the covenant of good faith and fair dealing; and fraud, deceit, and/or misrepresentation. Plaintiff Koller brought these claims on behalf of himself and all purchasers of the Bertolli Olive Oil Products in California. Plaintiff Koller alleged that the false labeling caused people to purchase Bertolli's Olive Oil Products who would not otherwise have done so, and that the Olive Oil Products were sold at a higher price than they would have been sold without the misstatements. He sought to recover, on behalf of the class, the amount of the "premium" price that he claimed was attributable to the alleged misrepresentations.

### B.   Motion to Dismiss

On September 25, 2014, after Plaintiff Koller filed an amended complaint narrowing his causes of action, Deoleo moved to dismiss the amended complaint. Deoleo argued, *inter alia*, that Plaintiff Koller lacked standing to sue and that he had failed to plead a claim for relief. Plaintiff Koller opposed the motions. On January 6, 2015, the Court issued an order denying Deoleo's motion, allowing Plaintiff Koller's Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), common law fraud, and Unfair Competition Law ("UCL") claims to proceed.

### C.   Discovery

Discovery in this case was hard-fought and extensive, and took place both before and after the

stay of proceedings discussed below. Class Counsel propounded multiple sets of written discovery and reviewed Defendant's responses thereto. Defendant produced over 215,000 pages of documents (or separately-numbered electronic files), which Class Counsel reviewed. The parties briefed multiple discovery disputes, including in April 2015 and January 2017. Class Counsel deposed five of Defendant's corporate representative witnesses and two expert witnesses. Class Counsel also defended the depositions of Plaintiff and Plaintiff's expert witness. Class Counsel also subpoenaed documents from third-party olive oil producers and companies in possession of sales data, and worked with counsel for those third-parties to obtain document production.

### D.    Stay Pending Ninth Circuit Decisions

On November 12, 2015, while Plaintiff Koller's class certification motion was pending, Deoleo filed a motion to stay this litigation pending the Ninth Circuit's review of certain class certification decisions. The Court granted Deoleo's request on December 12, 2014. Plaintiff Koller filed a motion seeking to lift the stay on September 23, 2016, which the Court denied on November 3, 2016. Following rulings by the Ninth Circuit, the stay was ultimately lifted on January 19, 2017, at which time briefing on Plaintiff Koller's class certification motion resumed.

### E.    Class Certification

On October 30, 2015, Plaintiff Koller moved for class certification. Deoleo opposed the motion. After the stay was lifted, on August 24, 2017, the Court certified two classes: an "Imported from Italy" ("IFI") class and an "Extra Virgin Olive Oil" ("EVOO") class, defined as follows:

> **IFI Class**: All purchasers in California of liquid Bertolli Extra Light, Classico, or Extra Virgin olive oil, between May 23, 2010 and May 30, 2014, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."
>
> **EVOO Class**: All purchasers in California of bottles of Bertolli Extra Virgin olive oil, between May 23, 2010 and August 15, 2015, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante."

The parties resumed settlement discussions following class certification and agreed to mediate. In the meantime, Deoleo sought the Ninth Circuit's permission to appeal the certification decision under Fed. R. Civ. P. 23(f), which the Ninth Circuit denied. (No. 17-80188, Dkt. 7, (9th Cir. Nov. 15, 2018).

### F.    New Class Representatives and Settlement Negotiations

During the litigation, Plaintiff Koller's counsel was contacted by numerous other consumers

from around the country who had purchased Deoleo's Bertolli brand olive oil believing it to be "Imported from Italy" and "extra virgin." Six of these consumers retained Koller's counsel, but complaints were not immediately filed. Deoleo was made aware of these individuals in September 2017, and tolling agreements were signed pending settlement negotiations. (Dkt. 144-3 ¶ 6.)

The Settlement was reached following significant, hard-fought litigation and several rounds of arm's-length settlement discussions between capable counsel, most recently before Judge Edward A. Infante (retired) of JAMS ADR, Inc. ("JAMS") in San Francisco, on November 6, 2017. (*Id.* ¶ 7.)

### G.   The Proposed Settlement

The settlement class is to be comprised of all persons, other than Excluded Persons, who, (i) during the Extra Virgin Class Period, purchased, in the United States, any of the Extra Virgin Olive Oil Products, except for purpose of resale and/or (ii) during the Imported from Italy Class Period, purchased, in the United States, any of the Other Olive Oil Products, except for purpose of resale. (Dkt. 144-4 ¶ 2.40.) The Extra Virgin Class Period runs from May 23, 2010 through the date of Preliminary Approval, and the Imported from Italy Class Period runs from May 23, 2010 through December 31, 2015, after which time the "Imported from Italy" language no longer appeared on the bottles. (*Id.* ¶¶ 2.17, 2.21.) Excluded Persons are Deoleo's affiliates, the Court, the mediator, government entities, and those who opt out of the class.

### 1.   Monetary Relief

Class members can file a claim for refunds relating to their purchases of the Products during the Extra Virgin Class Period and the Imported from Italy Class Period. The refund amount is (i) $1.75 per Extra Virgin Olive Oil Product purchased between May 23, 2010 and December 31, 2015, (ii) $0.75 per Extra Virgin Olive Oil Product purchased between January 1, 2016 and the date of preliminary approval, and (iii) $1.50 for each Other Olive Oil Product purchased between May 23, 2010 and December 31, 2015. These amounts are subject to being increased pro rata, up to five times the initial amounts, depending on the number of claims made against the common fund. There is no cap on the total amount to be paid to any class member for purchases that are corroborated by Proof of Purchase. Claims not corroborated by Proof of Purchase are limited to five purchases, with a total $25 refund per Household. "Proof of Purchase" means an itemized retail sales receipt showing, at a

minimum, the purchase of a Product, the purchase price, and the date and place of the purchase. (Dkt. 144-4 ¶ 2.35.)  "Household" means any number of persons occupying the same dwelling unit.

The claim form is a simple one-page form that can be completed in a few minutes and submitted online or by mail. Proof of Purchase can also be submitted electronically or in hard copy.

## 2. Changed Practices

The Settlement Agreement also requires changed practices, some of which have already occurred, as well as injunctive relief. As a result of the Litigation, Deoleo removed the phrase "Imported from Italy" from all olive oil products imported into the United States. (Dkt. 144-4 ¶¶ 1.9, 3.12, 3.14.)  In addition, Deoleo started using dark green bottles on some Bertolli EVOO to protect the oil from degradation by light. (*Id.* ¶¶ 3.13, 3.14.)  As part of the settlement, Deoleo has also agreed that, for a period of three years after the Effective Date, it shall be enjoined by the Court as follows:

1. Not to use the phrases "Imported from Italy," "Made in Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle originates exclusively from olives grown in Italy on the labeling of any olive oil product sold in the United States, until at least three years after the Effective Date, unless the product so labeled is composed entirely of oil from olives grown and pressed in Italy.

2. If Defendant uses the phrase "Extra Virgin" or term "EVOO" on any Product, it must do all of the following:

   o Package the Product in a non-transparent (UV filtering) container, e.g., a green or brown glass container.

   o For extra virgin olive oil bottled on or after June 1, 2018, include a "best by" or "use by" date not later than sixteen months after the date of bottling and include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to the "best by" date.

   o Implement the following chemical parameter testing requirements at the time of bottling (which are stricter than the current limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | ≤ 0.8 | ≤ 0.5 |
| Peroxide value (mEq )2/kg) | ≤ 20 | ≤ 10 |
| K270 | ≤ 0.22 | ≤ 0.15 |
| K232 | ≤ 2.50 | ≤ 2.1 |
| Delta-K | ≤ 0.01 | ≤ 0.005 |

(*Id.* ¶¶ 3.12-13.)

These practice changes are significant and meaningful. Combined with the monetary relief under the Settlement, Class Counsel believes that Class Members will be adequately compensated for the harm they suffered, in light of the risks of litigation. (Dkt. 144-3 ¶¶ 9-20.)  In particular, there may

be substantial difficulties establishing that: (1) Deoleo's marketing of the Olive Oil Products was likely to deceive reasonable consumers as to their true geographic origin; (2) Deoleo failed to employ adequate procedures to ensure that the EVOO was extra virgin at the time of bottling and through its "Best By" date; (3) Deoleo should be held liable for procedures employed by third-party suppliers from whom its European parent company purchased olive oil; or (4) the amount of damages or restitution that should be awarded, if any. (*Id.*)

Even if Plaintiff's claims were successful, the "best case" recovery may actually be worse than the benefits provided by the settlement. Plaintiff's expert Colin Weir has performed a detailed regression analysis to calculate the price premiums attributable to the claims. Those price premiums are equal to between 3.76 and 17.34 percent of the purchase price of each bottle of olive oil, depending on the product type. (Weir Decl. ¶ 10, Table 1.) The relevant products were sold at an average retail price of $9 per bottle. (Dkt. 144-3 ¶ 11.)  Thus, even if successful at trial, class members would be eligible to recover between $0.33 cents and $1.56 per average-priced bottle, and would still need to submit a claim to recover this amount. The cash recovery in this settlement is thus close to if not greater, on a per-bottle basis, than the amount class members could obtain after trial.

Further, the practice changes provide substantial value to the Class. Given the large sales volume of these products and the price premiums discussed above, the changes to packaging and marketing materials related to the "Imported from Italy" representation can be predicted to save class members at least $68.3 million dating from when the change was made, through the three years when the changes are required to remain in effect. (Weir Decl. ¶ 19, Table 3.)  And this is an underestimate, as Weir's analysis only accounts for the "Imported from Italy"-related changes. The change in value obtained by the Class in the form of getting a higher quality EVOO product (based on the bottling changes and stricter testing protocols) is equally significant, but difficult to quantify.

### 3.    Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

All costs of notice and administration will be paid from the common fund. Plaintiffs also request payment from the common fund of incentive awards of $5,000 for named Plaintiff Scott Koller and $1,000 for the other named Plaintiffs. The incentive awards are designed to compensate the named Plaintiffs for (1) the time and risk they took in prosecuting this action (including the risk of

liability for Defendant's costs) and (2) agreeing to a release broader than the one that will bind settlement class members. (Dkt. # 144-4 ¶¶ 6.2, 8.1.)   Class Counsel also requests payment from the common fund of their out of pocket expenses ($146,720.58) plus attorneys' fees of $2.1 million, for a total of $2,246,720.58. The reasonableness of this request is discussed in more detail in Section III.D.1, *infra.*

### 4.   Notice

The notice and claims administrator (Angeion Group) established a settlement website, which contains the settlement notices, a contact information page that includes address and telephone numbers for the claims administrator and the parties, the settlement agreement, the signed order of preliminary approval, online and printable versions of the claim form and opt-out forms, answers to frequently asked questions, and a Product list. In addition, this motion for final approval and application for attorneys' fees, costs, expenses and incentive awards will be placed on the website.

Notice was published in several places, all of which referred class members to the Settlement Website. (Weisbrot Decl. ¶¶ 4-12 & Exs. 1-6.) Published Notice appeared in *People Magazine* and the *San Francisco Chronicle;* and a press release was distributed via PR NewsWire. (*Id.* ¶¶ 7-8, 10.)   Online Notice linking to the Settlement Website was published for a total of over 58 million impressions. (*Id.* ¶¶ 5 ,11.)  There were also sponsored blog posts on www.topclassactions.com and www.classaction.org. (*Id.* ¶ 9.)  Finally, the claims administrator is operating a toll-free information line to provide information about the case and settlement, and it is providing printed copies of the Long Form Notice and Claim Form by first class mail to individuals who request them. (*Id.* ¶ 14.)

## III.   <u>ARGUMENT</u>

### A.   FINAL APPROVAL IS WARRANTED

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002) § 11:41 ("*Newberg*"); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). Under Fed. R. Civ. P. 23(e), a court should approve a settlement if it is fair, reasonable, and adequate. *See In re Mego Financial*

*Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof." *Mego,* 213 F. 3d at 458. The Court must consider whether the settlement as a whole is reasonable; it stands or falls in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"); *Class Plaintiffs*, 955 F.2d at 1276; *Officers for Justice*, 688 F.2d at 628. "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon*, 150 F.3d at 1027.

"The settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." *Officers for Justice*, 688 F.2d at 625. In other words, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Id.* (emphasis in original). Instead, the Court should explore and balance "all the relevant factors" bearing on approval of a class action settlement, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026. *Accord Mego*, 213 F.3d at 458; *Torrisi*, 8 F.3d at 1375; *Officers for Justice*, 688 F.2d at 625. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Due regard should be given to what is otherwise a private agreement between the parties. *Id*. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (citation omitted). Here, all relevant factors support approval.

**1.     The Settlement Agreement Resulted from Arm's-Length Negotiations Between Experienced Counsel Who Favor the Settlement.**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between experienced counsel. *See Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *see also* 4 Newberg § 11.41; *Manual For Complex Litigation (Third)* § 30.42. The non-collusive nature of the negotiations and the stature of counsel have often been recognized as important factors in the final approval of class action settlements. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"). And "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *E.g.*, *Todd v. STARR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (quoting *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)). As such, the Court should give a presumption of fairness to arm's-length settlements reached by experienced counsel. *See, e.g.*, *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *4 (N.D. Cal. Mar. 11, 2018) ("We put a good deal of stock in the product of an arm's-length, non-collusive negotiated resolution . . . .") (quoting *Rodriquez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)) (ellipsis in original).

This Settlement is the product of arm's-length negotiations over the course of many months between counsel for Plaintiffs and counsel for Defendant, including a full-day mediation before an experienced, well-respected mediator, Magistrate Judge Edward Infante (retired) at JAMS in San Francisco, California. (Dkt. 144-3 ¶ 7.)

"Significant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement." *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008). *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled

1  to considerable weight). Class Counsel, who are experienced class action litigators, support the

2  settlement as fair, reasonable, adequate, and in the best interests of the Class as a whole. (Dkt. 144-3 ¶

3  9.)  Defendant is represented by seasoned, class-action litigators at Norton Rose Fulbright LLP. It

4  likewise supports the settlement.

5  **2.       Substantial Benefits Are Provided To The Class.**

6  The Court should next "assess the consideration obtained by the class members in a class

7  action settlement." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal.

8  2004). "[I]t is the complete package taken as a whole, rather than the individual component parts, that

9  must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. "[I]t is well-settled law that a

10  proposed settlement may be acceptable even though it amounts to only a fraction of the potential

11  recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527, (citing

12  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

13  Here, the benefits to Settlement Class Members are clear, demonstrable, and immediate.

14  Deoleo has already made substantial changes to its packaging and marketing due to this litigation, and

15  it has agreed to stricter testing protocols at the time of bottling, as well as to shorten the "best by"

16  period and disclose the harvest date on every bottle of Bertolli EVOO. Deoleo has also agreed to pay

17  $7 million into a common fund to benefit class members. Class members who makes a claim may

18  obtain (i) $1.75 per Extra Virgin Olive Oil Product purchased between May 23, 2010 and December

19  31, 2015, (ii) $0.75 per Extra Virgin Olive Oil Product purchased between January 1, 2016 and the

20  date of preliminary approval, and (iii) $1.50 for each Other Olive Oil Product purchased between May

21  23, 2010 and December 31, 2015. These amounts may be increased pro rata, up to five times the

22  initial amounts, depending on the number of claims made. And the per-bottle recovery is close to if

23  not greater than the amount class members could obtain after trial. *See* Section II.G.2, *supra*.

24  A settlement class member may submit claims for an unlimited number of purchases. There

25  will be no cap on the total amount paid to him or her for claimed purchases that are corroborated by

26  Proof of Purchase. Claims not corroborated by Proof of Purchase are limited to five purchases, with a

27  total $25 refund per Household. Should funds remain in the common fund after paying all claims,

28  incentive awards, and attorneys' fees and costs, the parties have agreed to donate the money *cy pres*, in

equal amounts, to two charitable organizations, as discussed more fully in Section III.B, *infra*.

Moreover, the $7 million common fund amount does not include the value of Deoleo's changed practices (i.e. removing "Imported from Italy" and improvements to EVOO bottling and testing), which already started and will last for at least three years after the Effective Date. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *11 (N.D. Cal. Feb. 20, 2015) (deeming three years of label changes obtained in settlement to be "significant"). Plaintiff's expert, Colin Weir, has estimated the value of those practice changes related to the "Imported from Italy" representation to be $68.3 million. (Weir Decl., ¶ 19, Table 3.)  Mr. Weir performed this calculation using the same regression model accepted by the Court in granting Plaintiff's class certification motion to measure the price premium between labels reading "Imported from Italy" versus "Imported."

Moreover, Mr. Weir's analysis is an underestimate as it only accounts for Deoleo's practice changes relating to Plaintiffs' "Imported from Italy" claims. The value obtained by the Class in the form of getting a higher quality EVOO product (based on the bottling changes and stricter testing protocols to which Deoleo has agreed) is difficult to quantify, but no less significant. Plaintiffs thus believe the recovery provided by the Settlement Agreement is more than fair in light of the risks discussed in the following Section. (*See also* Dkt. 144-3 ¶¶ 9-20.)

### 3.    There are Serious Risks of Further Litigation

The Court must next assess the risks of continued litigation. Generally, the principal risks to be assessed are the difficulties and complexities of proving liability and damages. *See, e.g., Mego*, 213 F.3d at 458-59 (assessing risk of inability to prove fraudulent scheme in affirming settlement); *Linney*, 151 F.3d at 1240-1241 (assessing risks involving fraudulent concealment and ability to obtain damages in affirming settlement); *Torrisi*, 8 F.3d at 1376 (approving settlement based in part on "inherent risks of litigation"); *Class Plaintiffs*, 955 F.2d at 1292 (approving settlement based on uncertainty of claims and avoidance of summary judgment); *Officers for Justice*, 688 F.2d at 625 (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions).

Here, there were numerous risks in continuing with this Litigation. First, Plaintiffs would have been required to prove that the "Imported from Italy" labeling violated 19 C.F.R. § 134.46 and was

therefore unlawful under the UCL, and/or that the representation was likely to deceive or confuse reasonable persons. Plaintiffs would have also had to prove that Deoleo did, in fact, fail to maintain adequate practices to ensure that Bertolli EVOO remained extra virgin through the sale and "best by" dates. Deoleo disputed that consumers understood "Imported from Italy" to mean what Plaintiffs allege. In addition, the adequacy of Deoleo's "extra virgin" practices was likely to come down to a battle of experts. Even if Plaintiffs could overcome these hurdles, it could prove difficult to obtain monetary relief, because Deoleo was likely to present evidence that the challenged labeling had little effect on pricing or sales volume. Thus, there was a substantial risk that class members would have recovered only nominal damages, or nothing, had the case progressed to summary judgment or trial.

Finally, any judgment would likely be appealed, so even in the best case, it could take years to get relief. (Dkt. 144-3 ¶¶ 9-20.) There is a significant advantage to receiving a benefit now as opposed to later. *See Officers for Justice*, 688 F.2d at 625 (approving settlement based in part on the possibility that a judgment after a trial, when discounted, might not reward class members for their patience and the likely delay reflected in the "track record" for large class actions); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *see also, e.g.*, *Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013) (finding, in food labeling class action that settled at early stage that "it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results.").

### 4. The Reaction Of The Settlement Class Has Been Overwhelmingly Positive.

Although the opt-out and objection period is still open, the initial reaction to the Settlement has been positive. Notice was effectuated according to the proposed plan, and more than 58 million impressions of the settlement notice were delivered in a variety of methods (print, online, mobile.) (Weisbrot Decl. ¶¶ 4-12.)  As of June 25, 2018, Angeion received approximately 143,000 claim form submissions, and there were only 58 requests for exclusion. (Id. ¶¶ 15-16.)[2]

### B. The *Cy Pres* Award Should Be Approved.

Courts "may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best

---

[2] No later than July 26, 2018, updated declarations regarding dissemination of notice, claims, opt-outs, and objections will be provided to the Court.

compensation use, *e.g.,* for the aggregate, indirect, prospective benefit of the class.'" *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir. 2007)). If after payment of claims, fees, costs, and incentive awards, money remains in the Settlement Fund, upon approval by the Court, pursuant to the *cy pres* doctrine, the remaining amounts shall be paid to two charitable organizations set forth below, both of which were selected because they advocate on behalf of consumers and research and disseminate information on food and nutrition.

> **1.      The Selected Organizations Will Benefit the Class and Advance the Interests of the Litigation.**

The *cy pres* component of the Settlement comports with this Circuit's precedent. In particular, a *cy pres* remedy must "bear[] a substantial nexus to the interests of class members." *Lane v. Facebook*, 696 F.3d 811, 821 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 (U.S. 2013). In evaluating a *cy pres* component of a class action settlement, courts look to factors set forth in *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Specifically, the *cy pres* remedy "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members. . . ." 663 F.3d at 1036 (citing *Six Mexican Workers,* 904 F.2d at 1307).

The *cy pres* distribution plan is to distribute equal sums to the following organizations:

> **a.      Consumers Union (Yonkers, NY)**

Consumers Union is a non-profit organization with a mission to "empower consumers as they navigate their way through an increasingly complex marketplace." The organization publishes Consumer Reports magazine and website ([www.consumerreports.org](www.consumerreports.org)), and it engages in campaigns to promote a fairer, safer, and more transparent marketplace for consumers. Consumers Union is also active in educating consumers about food labeling and, over the years, has published a number of reports related to olive oil issues germane to this litigation. (*See* Odabashian Decl.)

Consumers Union has been approved as a *cy pres* recipient in numerous false advertising lawsuits. *See, e.g.*, *Miller*, 2015 WL 758094, at *8; *Nigh v. Humphreys Pharmacal, Inc.*, 2013 WL 5995382, at *9 (S.D. Cal. Oct. 23, 2013); *Kellogg*, 2013 WL 6055326, at *1, *appeal dismissed* (May 15, 2014); (*see also* Odabashian Decl.).

> **b.      Center for Food Safety (Washington, D.C.)**

The Center for Food Safety is a non-profit organization that states that it "is a national non-

profit public interest and environmental advocacy organization working to protect human health and the environment by curbing the use of harmful food production technologies and by promoting organic and other forms of sustainable agriculture. CFS also educates consumers concerning the definition of organic food and products. CFS uses legal actions, groundbreaking scientific and policy reports, books and other educational materials, market pressure and grass roots campaigns through our True Food Network. CFS's successful legal cases collectively represent a landmark body of case law on food and agricultural issues." (*See* https://www.centerforfoodsafety.org/about-us, last accessed June 26, 2018). (*See also* Spector Decl.)

 2. ***Cy Pres* Donations Will Benefit the Class.**

As required, there is a geographic nexus between the organizations receiving *cy pres* funds and the nationwide class. *See Nachshin*, 663 F.3d at 1039-40 (holding that in a nationwide class, a *cy pres* award must serve a "geographically diverse" area). Here, the chosen organizations both serve consumers nationally, which is appropriate here given the nationwide class.

**C.    Certification of the Settlement Classes Is Appropriate**

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs asked the Court to preliminarily certify the Settlement Classes so that notice of the proposed Settlement, the final approval hearing, and the rights of Class Members to request exclusion or object could be issued. In its Preliminary Approval Order, this Court preliminarily certified the Settlement Classes. (Dkt. 155.) The Court explicitly addressed the impact of *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 693 (9th Cir. 2018) and held that common issues predominated as to the nationwide Settlement Class. (*Id.* at 3.)  Nothing has changed to alter the propriety of the Court's certification, and, for all the reasons stated in Plaintiff's Memorandum in Support of Preliminary Approval of Class Action Settlement (Dkt. 144), incorporated herein by reference, Plaintiffs now request that the Court grant final certification of the Settlement Classes for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3), appoint Plaintiffs as Class Representatives, and appoint Tycko & Zavareei LLP and Gutride Safier LLP as Class Counsel.

**D.    Plaintiffs' Counsel Should Be Awarded $2,100,000 In Attorneys' Fees And $146,720.58 In Expenses.**

The Settlement Agreement provides for the payment of attorneys' fees and expenses from the

common fund. Having reached a common fund settlement, Plaintiffs' Counsel is entitled to seek an award of fees and expenses from the fund. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers*, 904 F.2d at 1301.  Plaintiffs thus request payment from the common fund of their out of pocket expenses of $146,720.58 plus attorneys' fees of $2,100,000, for a total of $2,246,720.58.

### 1.    Plaintiffs' Counsel's Requested Fee Is Reasonable.

Under Ninth Circuit standards, in a common fund case, a District Court is required to award attorneys' fees under either the "lodestar" method or the "percentage-of-the-fund" method. *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Plaintiffs' fee request is reasonable under both of these approaches.

### a.    Plaintiffs' Counsel's Requested Fee Is A Reasonable Percentage of The Common Fund.

Where a settlement involves a common fund, courts typically award attorneys' fees based on a percentage of the total settlement. *See State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery). Indeed, the percentage method is the preferred approach in common fund cases. *Vizcaino*, 290 F.3d at 1050 (noting "the primary basis of the fee award remains the percentage method").[3] Additionally, Ninth Circuit precedent requires courts to award attorneys' fees based on the total benefits made available to class members rather than the amount actually claimed. *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269, at *23 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (finding "district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available)).

---

[3] *See also, e.g., In re ECOtality, Inc. Secs. Litig.*, No. 13-cv-03791-SC, 2015 WL 5117618, at *3 (N.D. Cal. Aug. 28, 2015) (finding percentage approach to be the "typical method of calculating class fund fees"); *Evans v. Linden Research, Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *5 (N.D. Cal. Apr. 29, 2014) (same); *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-CV-00132-LB, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016) ("Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement."); Principles of the Law of Aggregate Litigation, § 3.13(b) (American Law Institute, 2010) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.").

In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value, including the monetary and non-monetary recovery. *See Six Mexican Workers*, 904 F.2d at 1311; *see also Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003) ("[W]here the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained . . . courts [may] include such relief as part of the value of a common fund for purposes of applying the percentage method . . . .").[4] The benchmark percentage "can then be adjusted upward or downward to account for any unusual circumstances involved in the case."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Many cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (collecting cases); *see also Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund in a food labeling class action).

When determining the value of the settlement, courts consider both the monetary and non-monetary benefits conferred under the settlement terms. *See, e.g.*, *Staton*, 327 F.3d at 972-74; *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x 716 (9th Cir. 2012); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013), *appeal dismissed* (Sept. 13, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief"), *appeal dismissed* (Dec. 19, 2013). Here, the requested fee is only 2.8% of the total settlement value when including the $68.3 million value of the quantifiable IFI

---

[4] *See also In re: Easysaver Rewards Litig.*, No. 09-cv-02094-BAS-WVG, 2016 WL 4191048, at *2, *4-5 (S.D. Cal. Aug. 9, 2016) (approving attorneys' fee award worth 22.7% of $38 million total settlement amount, which included both "a $12.5 million non-reversionary cash fund plus $20.00 merchandise credits automatically sent" to class members); *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 RWS, 2002 WL 31663577, at *8 (S.D.N.Y. Nov. 26, 2002) (approving attorneys' award of fees and expenses totaling "approximately 28% of the total settlement value," which included $8.5 million in cash and $11.5 million in debt reduction); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 46-47 (E.D. Pa. 2000) (approving attorneys' fee award of "one-third of the net settlement, plus one third of the interest accrued on the fund as of the date of disbursement," where total settlement value included both $5.97 million in cash and $1.3 million in loan forgiveness); *Jacobs v. Huntington Bancshares Inc.*, No. 11-CV-000090 (Oh. Com. Pl. June 2, 2017) (approving attorneys' fee award of 40% of the total settlement value, where settlement included a cash fund of $8,975,000 and a debt forgiveness fund of $7 million).

practice change,[5] as calculated by Plaintiffs' expert Colin Weir, which is far below the Ninth Circuit

benchmark. Although the fee equates to 30% of the monetary relief obtained, that percentage is also

well within the range of the cited similar cases. Indeed, the fee request here compares favorably to the

one in *Miller*, where class counsel sought and was awarded $1.575 million based on a food labeling

settlement involving a $5.25 million common fund, and label changes valued at as much as $13.46

million. 2015 WL 758094, at *4-5. Thus, the fee award there was likewise 30% of the monetary value

of the settlement, but only 8.9% of the total settlement value when accounting for the value of

injunctive relief. *See id.*[6] And should the Court decide for some reason to not include the value of

injunctive relief, a 5% upward deviation from the 25% benchmark is appropriate here given that (1) an

this is one of the largest common fund settlements obtained in a food labeling case; (2) the case was

incredibly hard fought; and (3) the Settlement provides for valuable injunctive relief.

> **b.**     **Plaintiffs' Counsel's Requested Fee Is Also Reasonable When Measured Using the Lodestar Method.**

If the Court elects to award a fee based on a percentage of the common fund, it is not

required to conduct a lodestar cross-check. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737 (9th

Cir. 2017) (noting that district court was not required to do a lodestar method cross-check); *Yamada v.

Nobel Biocare Holding AG*, 825 F.3d 536, 547 (9th Cir. 2016) ("[A] cross-check is entirely discretionary .

. . ."). Indeed, "[i]n a common fund case, a lodestar method does not necessarily achieve the stated

purposes of proportionality, predictability and protection of the class and can encouraged unjustified

work and protracting the litigation." *Bolton v. U.S. Nursing Corp.*, No. C 12-4466 LB, 2013 WL

5700403, at *5 (N.D. Cal. Oct. 18, 2013) (citing *In re Activision Securities Litigation*,723 F.Supp. 1373,

1378 (N.D. Cal. 1989)). However, should the Court elect to utilize a lodestar cross-check, Class

---

[5] As discussed in Sections II.F.2 and III.A.2, *supra*, the additional value related to quality improvements attributable to improved EVOO bottling and testing practices is difficult to quantify, so, if anything, the estimated value of the practice changes here is an underestimate.

[6] As the court in *Miller* recognized, the value of the injunctive relief obtained in this case is still significant even if it is only half as valuable, or even 10% as valuable, as that calculated by Mr. Weir. *Id.* at *5. Indeed, if the injunctive relief was valued at half of what Mr. Weir calculated ($34.15 million), the total settlement benefits would be approximately $41.15 million, and Class Counsel would only be seeking 5.1% of that amount as their attorneys' fees. And if the injunctive relief was valued at only 10% of what Mr. Weir calculated ($6.8 million), the total settlement benefits would be approximately $13.8 million, and Class Counsel would only be seeking 15.2% of that amount as their attorneys' fees.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION

Counsel's fee here is likewise eminently reasonable.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000). Plaintiffs' Counsel's lodestar through the date of this application is approximately $2,231,667.12. (Gutride Decl., ¶ 44; Zavareei Decl., ¶ 27; (tables showing hours worked by timekeeper).) Plaintiffs' Counsel's efforts to date included, without limitation:

- Pre-filing investigation;

- Drafting and filing a class action complaint and two amended complaints;

- Drafting and filing oppositions to Defendant's two motions to dismiss, and attending hearings on those motions;

- Drafting and filing numerous case management conference statements and case management stipulations, as well as attending related case management conferences;

- Meeting-and-conferring with Defendant's counsel regarding the scope of discovery, the sufficiency of discovery responses and production, the retention of electronic documents, the terms and scope of a stipulated protective order, and the timing of production;

- Briefing multiple discovery disputes on issues relating to Defendant's discovery responses and request for foreign discovery, and attending multiple discovery hearings before Magistrate Judge Spero;

- Reviewing in excess of 215,000 pages of documents (or separately-numbered electronic files) produced by Defendant, in addition to Defendant's written discovery responses;

- Subpoenaing and reviewing documents from third party witnesses;

- Taking depositions of five of Defendants' employees and Defendants' two expert witnesses;

- Defending the deposition of Plaintiff Koller;

- Working to provide Plaintiffs' damages and EVOO experts with sufficient data to compile their expert reports;

- Researching for, drafting, and filing a motion for class certification, and a reply in support thereof, and attending a hearing on that motion;

- Briefing Defendant's motion to stay and a motion to lift the stay;

- Amending and refiling Plaintiff's motion for class certification and the reply thereto after the stay in this matter was lifted;

- Drafting and filing an opposition to Defendant's motion to exclude expert testimony;

- Researching for, drafting, and filing a motion for partial summary judgment;

- Drafting and filing an opposition to Defendant's request that the Ninth Circuit grant it permission to appeal the Court's class certification order;

- Drafting a comprehensive mediation statement, and participating in an all-day mediation before Judge Infante;

- Negotiating and drafting the Settlement Agreement along with corresponding documents, including claim forms, summary notice, and long-form notice;

- Filing the motion for preliminary approval and supporting documents, including a proposed preliminary approval order and a proposed final judgment;

- Reviewing and responding to correspondence from Settlement Class Members;

- Supervising the work of the Claims Administrator; and

- Preparing this motion and supporting documentation.

(Gutride Decl., ¶¶ 4-32; Zavareei Decl., ¶¶ 4-20.)

In addition, before the final approval hearing, Class Counsel's efforts will also include, without limitation:

- Continued correspondence with Settlement Class Members and supervision of the work of the Claims Administrator; and

- Researching and drafting a reply memorandum and opposing objections, if any.

(Gutride Decl., ¶¶ 50; Zavareei Decl., ¶¶ 21, 32.).[7]

Of further note, Plaintiffs' lodestar does not include activities by Class Counsel in related olive oil litigation in California and Washington, D.C., which enabled Class Counsel to gain expertise and litigate this matter more efficiently. (Zavareei Decl., ¶ 4.) Specifically, Tycko & Zavareei incurred a lodestar of over $1.5 million in the Washington, D.C., litigation (Zavareei Decl., ¶ 4), and did not recoup anything close to that amount. Although this amount is not included in the lodestar calculation here, Class Counsel's hours spent on related litigation for which they will not be compensated may also properly be accounted for in their lodestar. *E.g.*, *Brown v. CVS Pharmacy, Inc.*, No. CV15-7631 PSG (PJWx), 2017 WL 3494297, at *3, 7 n.3, 8 (C.D. Cal. Apr. 24, 2017) (finding lodestar that included hours spent in unsuccessful litigation of different case with similar claims to be reasonable).

---

[7] Plaintiffs' Counsel anticipates that there will be another 50-75 hours before this settlement is entirely complete and an estimated 175-250 hours if this Court's judgment is appealed. (Gutride Decl., ¶ 50; Zavareei Decl., ¶ 32.)  Should the Court award less than the maximum amount of fees, Plaintiffs' Counsel reserves its right to seek additional attorneys' fees for later-performed work in connection with this Settlement.

Plaintiffs' Counsel calculated their lodestar using Plaintiffs' Counsel's regular billing rates, which for the attorneys involved range from $359 to $975 per hour. (Gutride Decl., ¶¶ 44-48; Zavareei Decl., ¶¶ 27-29.) "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For attorneys and staff at the Gutride Safier firm, these hourly rates are equal to market rates in San Francisco for attorneys of Class Counsel's background and experience. (Gutride Decl., ¶¶ 46-48); *see also In re Optical Disk Drive Prod. Antitrust Litig.,* No. 3:10-MD-2143 RS, 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950); *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2017 WL 994969, at *2 (N.D. Cal. Mar. 15, 2017) (approving an $850 hourly rate for partners); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015), *appeal dismissed* (Oct. 30, 2015) (approving hourly rates of $475 to $975). Class Counsel Adam Gutride and Seth Safier are, respectively, graduates from Yale Law School 1994 and Harvard Law School 1998, with 24 and 20 years of litigation experience. (Gutride Decl., ¶ 47.) Kristen Simplicio is a 2007 graduate of American University, Washington College of Law (11 years of experience). (*Id.*).[8]

For attorneys and staff from the Washington, D.C. office of Tycko & Zavareei LLP, the hourly rates are calculated using the Laffey Matrix.[9] "The *Laffey* Matrix is the most commonly used fee matrix in determining fees for complex federal litigation in the D.C. Circuit." *See, e.g., Texas v. U.S.,* No. CV 11-1303 (RMC), 2017 WL 1194159, at *4 (D.D.C. Mar. 30, 2017); *see also Galvez v. Americlean Servs. Corp.*, No. 1:11CV1351 JCC/TCB, 2012 WL 2522814, at *5 n.6 (E.D. Va. June 29, 2012) ("The

---

[8] Adam Gutride and Seth Safier were previously attorneys at the San Francisco office of the law firm of Orrick Herrington & Sutcliffe, where litigators who graduated in 1994 and 1998 respectively currently bill at hourly rates of in excess of $900. (Gutride Decl., ¶ 35.)  Furthermore, it is almost certain the rates paid by Defendant to its firms in this case far exceed the rates requested for Class Counsel. *See Managing Class Action Litigation: A Pocket Guide For Judges* § IV(F) (suggesting an examination of the defendant's attorney fee records as a measure of what might be reasonable.) Finally, the Gutride Safier firm's billing rates were recently approved by other judges in this District as well as those in the Central District of California, Northern District of Illinois, and San Francisco Superior Court. (Gutride Decl., ¶ 33.)

[9] *See* http://www.laffeymatrix.com/.

Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/ Baltimore area."); *Cobell v. Norton*, 231 F. Supp. 2d 295, 301-02 (D.D.C. 2002) (referring to Laffey Matrix as containing "standard hourly rate for attorneys in the Baltimore–Washington area"). The Ninth Circuit has accepted the Laffey Matrix as evidence of reasonable hourly rates charged by Washington, D.C. attorneys. *Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886 (9th Cir. 2009). And a court in this District recently awarded Bay Area attorneys Laffey Matrix fees adjusted *upwardly* by nine percent, so, if anything, the Laffey Matrix comes in *below* the market rate for attorneys in this District. *See Brinker v. Normandin's*, No. 14CV03007EJDHRL, 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) (citing *Theme Promotions, Inc. v. News America Marketing FSI, Inc.,* 731 F. Supp. 2d 937, (N.D. Cal. 2010)). Another Court in this District approved these rates for Tycko & Zavareei on two separate occasions. *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2018 WL 1710075, at *6 (N.D. Cal. Apr. 9, 2018); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *7 (N.D. Cal. July 7, 2017). Hassan Zavareei graduated from University of California, Berkeley School of Law and has 23 years of litigation experience. (Zavareei Decl., ¶ 29.) Anna Haac is a 2006 graduate of University of Michigan Law School (12 years of experience); and Andrew Silver is a 2012 graduate of Boston College Law School (six years of experience). (*Id.*)[10]

These rates are the current rates charged by Plaintiffs' Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment. . . .") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

Plaintiffs' Counsel's lodestar of $2,231,667.12 is more than the requested fee award of $2.1

---

[10] Hassan Zavareei was previously an attorney at the Washington, D.C. office of the law firm of Gibson Dunn & Crutcher, where litigators who graduated in 1995 bill at hourly rates in excess of $1,000. (Zavareei Decl., ¶ 30.) The Tycko & Zavareei firm's rates have been approved by courts throughout the country. (*Id.* ¶ 28.)

million. Although courts in this Circuit routinely award lodestar multipliers, Class Counsel's requested fee award of $2.1 million produces a *negative* multiplier of 0.94, further underscoring the reasonableness of the request. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051-52 (approving of 3.65 multiplier and citing multipliers as high as 19.6); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 610 (N.D. Cal. 2015) (listing multipliers as high as 5.2 among "the range of acceptable lodestar multipliers"); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) ("A 2.83 multiplier falls within the Ninth Circuit's presumptively acceptable range of 1.0–4.0."); *Van Vranken*, 901 F. Supp. at 298 ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation.").

### 2.    Plaintiffs' Counsel Should Be Awarded Costs.

Plaintiffs' Counsel additionally requests that the Court grant its application for reimbursement of $146,720.60 in expenses incurred in connection with the prosecution of this Litigation. These expenses are itemized in the Zavareei and Gutride Declarations. (Gutride Decl., ¶ 49; Zavareei Decl., ¶ 31.)  Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977).

### E.    The Incentive Award To The Representative Plaintiffs Is Reasonable.

This Court should also approve a $5,000 incentive award to Plaintiff Koller and $1,000 to the other named Plaintiffs, as it is just, fair, and reasonable. In deciding whether to approve an incentive award, a court should consider:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (of lack thereof) enjoyed by the class representative as a result of the litigation."

*Van Vranken*, 901 F. Supp. at 299. Further, as a matter of public policy, incentive awards are necessary to encourage consumers to challenge perceived false advertising and unfair business practices.

Plaintiff Koller took on substantial risk, most importantly the risk of bearing Defendant's costs. (Gutride Decl., ¶ 37; Zavareei Decl., ¶ 33.)  Koller also worked with counsel to provide information throughout the litigation, which has now progressed for over four years. (Gutride Decl., ¶ 37; Zavareei Decl., ¶ 33.)  Plaintiff Koller answered interrogatories and requests for production.

(Gutride Decl., ¶ 37; Zavareei Decl., ¶ 33.)  Plaintiff Koller conducted searches of his personal records, sat for a deposition, and participated in a mediation session. (Gutride Decl., ¶ 37; Zavareei Decl., ¶ 33.)  The other named Plaintiffs all provided Class Counsel with sufficient information regarding their experiences and claims to enable them to join this case and represent a nationwide class. (Gutride Decl., ¶ 38; Zavareei Decl., ¶ 33.)  And all Plaintiffs remained actively involved in the litigation after the Settlement was reached. (Gutride Decl., ¶ 38; Zavareei Decl., ¶ 33.)

Plaintiffs' Counsel thus respectfully requests that the Court approve the incentive awards, which are reasonable in light of Plaintiffs' efforts and the relief to the Settlement Class resulting from this Litigation. *See* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80). *See also, e.g.*, *Mego*, 213 F.3d at 463 (awarding named plaintiff $5,000 in case with class of 5,400 and $1.725 million total recovery); *Miller*, 2015 WL 758094 at *7 (awarding $5,000 to named plaintiffs); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding $15,000 incentive payments well within the range awarded in similar cases); *Embry v. Acer America Corp.*, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) (awarding $15,000 incentive award); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs request that the Court enter final judgment certifying the settlement class and approving the settlement, grant Plaintiffs' application for incentive awards, and award Class Counsel $2,100,000 in attorneys' fees and $146,720.58 in costs.

Dated: June 28, 2018

**Respectfully submitted,**

**TYCKO & ZAVAREEI LLP**

By: /s/ Hassan A. Zavareei
HASSAN A. ZAVAREEI (State Bar No. 181547)
hzavareei@tzlegal.com
ANNA C. HAAC (pro hac vice)
ahaac@tzlegal.com
ANDREW J. SILVER (pro hac vice)
asilver@tzlegal.com
1828 L Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
KRISTEN G. SIMPLICIO (State Bar No. 263291)
kristen@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415.271.6469
Facsimile: 415.449.6469

*Counsel for Plaintiffs*

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FEE APPLICATION