UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SCOTT KOLLER, an individual, on behalf of
himself, the general public and those similarly
situated,

                                  Plaintiff,     Case No. 3:14-cv-02400-RS

          v.

DEOLEO USA, INC. and MED FOODS,
INC.,

                                  Defendants.

Declaration

of

**COLIN B. WEIR**

June 28, 2018

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "CONFIDENTIAL

ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:


I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.


## I. QUALIFICATIONS, BACKGROUND, AND EXPERIENCE


1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, furniture, and computers.  Prior to joining ETI, I worked at Stop and Shop Supermarkets for a period of seven years, working as a cash department head, grocery/receiving clerk, and price-file maintenance head.

2.    I am the same Colin B. Weir who has previously submitted testimony in this litigation.  I reference the contents of my October 29, 2015 Declaration ("Weir Declaration") and April 3, 2017 Declaration ("Weir Reply Declaration") throughout this report.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony, is annexed to those Declarations. That Statement includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.



Declaration of Colin B. Weir
June 28, 2018
Page 2 of 12

## II. ENGAGEMENT

3.    I was previously advised by Counsel for Plaintiff that individuals purchased certain
Deoleo Products[1] which were labeled as being "Imported from Italy" and/or being "Extra Virgin"
("the Claims").  I was further advised that Plaintiff alleges that these Claims are false or
misleading to reasonable consumers.[2]  In the Weir Declaration and subsequent Weir Reply
Declaration, I proposed "Price Premium Damages" as a method to determine damages on a
Class-wide basis and provided a preliminary estimate of damages to a Class of California
consumers using hedonic regression.  As I outlined in my first report, hedonic regression is an
econometric model commonly used by economists to quantify the relationship between the price
of a product and its attributes, and the technique has a long history in use for determining
damages in class action litigation.[3]  This Court also recognized that Price Premium Damages can
be calculated on a Class-wide basis using hedonic regression (citing to my work in *Rohini
Kumar v. Salov North America Corp.*).[4]

4.    I have since been advised by Counsel for Plaintiff that Plaintiff and Defendants have
reached a Settlement Agreement[5] for a nationwide Class, which amongst other things, provides
for certain ongoing relief -- i.e., changed practices.

---

[1] "The Products."

[2] *See, generally,* First Amended Complaint, filed September 11, 2014 ("Complaint").

[3] *See,* Weir Declaration, at 17-22; *Hedonic Prices and Implicit Markets: Product Differentiation in Pure
Competition.* Rosen, Sherwin, The Journal of Political Economy, Vol. 82, No. 1. (Jan. - Feb., 1974); *The Use of
Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints*, Doane, Michael (Analysis
Group) and Hartman, Raymond, Journal of Law, Economics, & Organization, Vol. 3, No. 2 (Autumn, 1987), pp.
351-372.

[4] *Scott Koller v. Med Foods, Inc., et al.*, Case No. 3:14-cv-02400-RS, Dkt. #116, (N.D. Cal August 24, 2017); *Rohini
Kumar v. Salov North America Corp.,* Case No. 14-CV-2411-YGR, 2016 WL 3844334, (N.D. Cal July 15, 2016).

[5] Class Action Settlement Agreement between Plaintiff Scott Koller and Defendant Deoleo USA, Inc. ("Settlement
Agreement").



Declaration of Colin B. Weir
June 28, 2018
Page 3 of 12

5.    Following Final Approval, Defendants agree to the following with regard to the

packaging of the Products:

> 3.12. Defendant agrees not to use the phrases "Imported from Italy," "Made in
> Italy," "Product of Italy," or a phrase suggesting that olive oil in a bottle
> originates exclusively from olives grown in Italy on the labeling of any olive
> oil product sold in the United States, until at least three years after the
> Effective Date, unless the product so labeled is composed entirely of oil from
> olives grown and pressed in Italy.
>
> 3.13. For a period of at least three years after the Effective Date, Defendant
> agrees that if it uses the phrase "Extra Virgin" or term "EVOO" on the product
> label of any olive oil, it must do all of the following:
>
> (a) Package the olive oil in a non-transparent (UV filtering) container, e.g., a
> green or brown glass container;
>
> (b) For extra virgin olive oil bottled on or after June 1, 2018, Include a "best
> by" or "use by" date not later than sixteen months after the date of bottling;
>
> (c) Include the date(s) of harvest of the olives used to manufacture the olive oil
> in proximity to the "best by" date; and
>
> (d) Implement the following chemical parameter testing requirements set forth
> under "Target Limit" at the time of bottling (which are stricter than the current
> limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | $\leqslant 0.8$ | $\leqslant 0.5$ |
| Peroxide value (mEq )2/kg | $\leqslant 20$ | $\leqslant 10$ |
| K270 | $\leqslant 0.22$ | $\leqslant 0.15$ |
| K232 | $\leqslant 2.50$ | $\leqslant 2.1$ |
| Delta-K | $\leqslant 0.01$ | $\leqslant 0.005$ |

6.    I have been asked by Counsel for Plaintiff to analyze the changed practices provided

by the Settlement Agreement related to the "Imported from Italy" portion of the Settlement, and

to estimate the value of that ongoing relief to the Settlement Class (above and beyond the direct

monetary relief provided in the Settlement Benefits) using hedonic regression.



ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 4 of 12

7.    ETI is being compensated at the rate of $600 per hour for my ongoing work on this case.  The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

8.    The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report and in Exhibit 1, attached hereto.  In addition, I have relied upon my educational background and more than 14 years of experience.

## III.  THE "IMPORTED FROM ITALY" CLAIM

9.    My understanding of the Settlement Agreement is that certain Deoleo Products were sold with a label claiming to be "Imported from Italy" and that for a period of three years following Final Approval, the Products will not be sold with any claim suggesting that the Products originate from Italy.  Additionally, the Settlement Agreement provides for certain Deoleo Products that were sold with a label claiming to be "Extra Virgin," and for a period of three years following Final Approval, Defendants agree that their use of the phrase "Extra Virgin" or term "EVOO" on the Products is subject to the conditions stipulated in paragraph 3.13 of the Settlement Agreement.  Furthermore, I have been advised that Defendants have not included the "Imported from Italy" Claim on the Product labels since May 2014, therefore, Plaintiff's Counsel has advised that the relevant time frame for calculating the value of the changed practices prescribed by the Settlement is June 1, 2014 to September 30, 2021.

10.   In order to calculate the value of the Settlement to the nationwide Class of consumers it is necessary to establish the Price Premium differential between the "Imported from Italy" Claim and Defendant's current practice of using no claim of geographic origin.  As I have stated in previous testimony and as this Court and others have already recognized, hedonic regression can be used to calculate Price Premium Damages on a Class-wide basis: "[Plaintiff] has sufficiently established that it has a model for calculating the damages resulting from its



Declaration of Colin B. Weir
June 28, 2018
Page 5 of 12

theory of liability."[6]  In the Weir Declaration and Weir Reply Declaration, I established the existence and magnitude of an "Imported from Italy" Price Premium over oils which make no claim about geographical origin across the three common categories of olive oil ("Extra Virgin," "Extra Light," and "Olive Oil").[7]  I isolated this Price Premium across the three common categories of olive oil: "Extra Virgin," "Extra Light," and "Olive Oil" using interaction terms.[8]  The results of my hedonic regression analysis are presented in Table 1 below.  The complete results of the model are reproduced in Exhibit 2.

| Table 1. Hedonic Regression Results "Imported from Italy" vs. "No Claim" | | | | |
|---|---|---|---|---|
| **Premium Type** | **Claim Coefficient** | **Claim T-Statistic** | **Claim Price Premium** | **Claim Price Premium Factor[9]** |
| Extra Virgin/Italy (vs. Extra Virgin/No Claim) | 0.038310 | 1.50 | 3.91% | 3.76% |
| Extra Light/Italy (vs. Extra Light/No Claim) | 0.144411 | 3.98 | 15.54% | 13.45% |
| Olive Oil/Italy (vs. Olive Oil/No Claim) | 0.190467 | 5.48 | 20.98% | 17.34% |
| F-statistic = 440.07, Adjusted R-squared = 0.805 | | | | |

---

[6] *See generally,* Weir Declaration; *Scott Koller v. Med Foods, Inc., et al.*, Case No. 3:14-cv-02400-RS, Dkt. #116, (N.D. Cal August 24, 2017), *citing: Rohini Kumar v. Salov North America Corp.*, Case No. 14-CV-2411-YGR, 2016 WL 3844334, at *20 (N.D. Cal July 15, 2016).

[7] Weir Declaration, at 20; Weir Reply Declaration, at 51.

[8] *See,* Weir Declaration, at para 69 for discussion of interaction terms; *See also,* Stock, J. H. & W. W. Watson, *Introduction to Econometrics* (3rd ed.), Boston: Addison-Wesley, 2011 ("Stock & Watson"), at 274-278.

[9] To interpret a coefficient in this log-linear regression, it must first be exponentiated to undo the log transformation. This is done by taking the mathematical constant e (roughly 2.71828), and raising it to the exponent of the coefficient, and then subtracting 1 from the result. This result can then be interpreted as the percentage price premium or discount for that attribute, when all other attributes are held constant.  When interpreting the effects of more than one coefficient at a time, one must understand that the model coefficients in total are relative to a base price without any attributes at all.  The price premium calculated here is the extra amount consumers would have paid above a base amount had the claim not been made.  The actual available sales data in this case are sales dollars that occurred *with* the claim.  To determine damages, you need the corresponding price premium factor, which is calculated as, e.g. $[premium] \div [1 + premium] = 0.2098 \div 1.2098 = 0.1734$ or 17.34%.


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 6 of 12

11.  I believe that these results are sufficiently reliable and can suitably be applied to
nationwide sales figures for purposes of estimating the value of the Settlement relief in this
litigation.

## IV.  VALUE OF THE ONGOING SETTLEMENT
### RELIEF

12.  I have reviewed documents indicating total California sales of the Products at issue
in this case.[10]  The available IRI scanner data consists of weekly sales transactions of Deoleo
Products from January 2009 through May 2015 in California.  I have been asked to assume by
Counsel for Plaintiff that the changed practices prescribed by the Settlement Agreement span a
time period of approximately seven years from June 2014 - September 2021.  This period begins
after the "Imported from Italy" Claim was removed from the Products by Defendants and ends
three years after the expected Effective Date of the Settlement Agreement – October 1, 2018.  In
order to forecast likely sales of Deoleo Products for a nationwide settlement for this period using
California IRI data, I base my analysis on the following assumptions:

- Since the label change in May 2014, sales have essentially remained flat. Deoleo's
  expert noted "that the removal of the 'Imported from Italy' claim" apparently had "no
  effect" on the "sales volumes associated with Bertolli olive oil products."[11]

- Sales of Bertolli Products in California make up approximately 12.7% of
  Defendants' nationwide sales. (Based on the ratio of CA to US Personal
  Consumption Expenditures from 2014-2016[12])

---

[10] IRI_OliveOil_0001

[11] Declaration of Keith R. Ugone, Ph.D., filed March 1, 2017, at para 67.

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 7 of 12

- Of the three types of oil at issue in this case: "Extra Virgin," "Extra Light," and "Olive Oil," the mix of Product sales in California is approximately the same as the mix of Product sales nationwide.

13.   The assumptions above can be adjusted to account for new information or updated data from Defendants.  Using these assumptions, I estimated Defendants' nationwide sales for the relevant period.  First, using California IRI data, I estimated a flat trend for each individual Product for the period June 1, 2014 to September 30, 2021.  With this forecast, I calculated total sales of the Products in California for the same period.  Then, I divided this total by 12.7% to approximate nationwide sales of the Products from June 1, 2014 to September 30, 2021.

14.   Total nationwide retail sales figures for Settlement relief (June 2014 through September 2021) are presented below in Table 2.

| Table 2. Nationwide Estimated Retail Sales: (June 2014 - September 2021) | |
| --- | --- |
| **Deoleo Product** | **Nationwide Retail Sales** |
| BERTOLLI EXTRA VIRGIN | $453,261,125 |
| BERTOLLI EXTRA LIGHT | $309,126,270 |
| BERTOLLI OLIVE OIL | $56,048,454 |
| TOTAL | $818,435,849 |

15.   The sales figures presented in Table 2 correspond to 87.34 million unit sales of the Products.

---

[12] Personal Consumption Expenditures by State are estimated by the U.S. Bureau of Economic Analysis, https://www.bea.gov/newsreleases/regional/pce/pce_newsrelease.htm; Other metrics such as population could be used to estimate this ratio.



Declaration of Colin B. Weir
June 28, 2018
Page 8 of 12

16.   With the total nationwide sales figures in hand, calculating the value of the Settlement relief using Price Premium Damages is simple and straightforward.

17.   With the price difference due to the removal of the Claim determined on a percentage basis, the calculation of Class-wide damages for any Product will be:

$$\%Price\ Premium\ Factor: Claim \times \$Units\ Sold\ = Settlement\ Relief$$

18.   These calculations can be performed on a Class-wide basis, for any defined time period and/or geographic location, including the period and geography defined by the Settlement Agreement in this litigation.

19.   Total nationwide retail sales during the period June 2014 - September 2021 are present below in Table 3, along with a calculation of the estimated value of relief on a per oil basis, given the oil-specific Price Premium.

| Table 3.<br>Value of the Settlement Relief Nationwide:<br>(June 2014 - September 2021) | | | |
|---|---|---|---|
| **Deoleo Product** | **Nationwide Retail Sales** | **Price Premium Factor** | **Settlement Relief** |
| BERTOLLI EXTRA VIRGIN | $453,261,125 | 3.76% | $17,036,025 |
| BERTOLLI EXTRA LIGHT | $309,126,270 | 13.45% | $41,567,609 |
| BERTOLLI OLIVE OIL | $56,048,454 | 17.34% | $9,720,313 |
| TOTAL | $818,435,849 | | $68,323,948 |

20.   This means that, all else being equal, one would expect that after the labeling changes, the total amount that will be paid by consumers for the Products during the period of changed practices will be at least $68.32 million less than it would have been in the absence of the changes.


ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 9 of 12

## V.  BEFORE AND AFTER PRICING COMPARISONS

21.  As I have discussed in the past, a so-called "Before and After" comparison of shelf prices is inappropriate in this litigation and provides no information about the effect of removing the "Imported from Italy" Claim, holding all else constant.

22.  It is often suggested that a comparison of prices (such as for Bertolli Olive Oil) before and after a change to a product label (such as the removal of the "Imported from Italy Claim) is a sufficient method by which to determine the effect of the Claim on the price of the price of the Products.  However, just as Courts have generally rejected the concept of determining damages by comparing two products side-by-side without controlling for other factors, it would be inappropriate to compare a product side-by-side "before and after" a change without controlling for other elements of the product or circumstances that may have changed at the same time.  Defendants' expert Ugone noted "wide variations" in price across a number of Product dimensions such as Sales Channel and Promotional Activity.  Additional factors such as geography and advertising/marketing efforts should also be considered for a "before and after" price comparison.

23.  Other variables that may impact a "before and after" analysis in this litigation include the price of competitive olive oil products and the market share of other competitive olive oil products.  My hedonic regression controls for both the price and market share of competitors' olive oils.

24.  In this litigation, any direct comparison of shelf prices without effectuating such controls should be afforded little weight.


## VI.  RETAILERS CONTROL THE PRICE OF THE
## DEOLEO PRODUCTS

25.  Defendants have asserted that prices for the Products have remained unchanged since the removal of the "Imported from Italy" Claim.  Even if true, this dubious assertion is not


ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 10 of 12

material to a valuation of the ongoing benefits of the Settlement Agreement, because Defendants

only set the *wholesale price*, which is charged to distributors or retailers.  The price paid by

consumers for the Products is set by the retailers in response to competitive market conditions,

and these prices are anything but constant.

     26.   Retailers, and especially grocers, change their prices on a regular basis in response to

competitive conditions in the marketplace.  For example, Safeway, a grocer with a strong

presence in California, describes the competitive conditions it faces, and its typical responses, as

follows:

> ***Competitive Industry Conditions***:  We face strong competition from
> traditional grocery retailers, non-traditional competitors such as supercenters
> and club stores, as well as from specialty and niche supermarkets, drug stores,
> dollar stores, convenience stores and restaurants. Increased competition may
> have an adverse effect on profitability as the result of lower sales, lower gross
> profits and/or greater operating costs.
>
> Our ability to attract customers is dependent, in large part, upon a combination
> of location, quality, price, service, selection and condition of assets. In each of
> these areas, traditional and non-traditional competitors compete with us and
> may successfully attract our customers to their stores by aggressively matching
> or exceeding what we offer. In recent years, many of our competitors have
> increased their presence in our markets. ***Our responses to competitive***
> ***pressure, such as additional promotions and increased advertising***, could
> adversely affect our profitability. We cannot guarantee that our actions will
> succeed in gaining or maintaining market share. Additionally, we cannot
> predict how our customers will react to the entrance of certain non-traditional
> competitors into the grocery retailing business.
>
> Because we face intense competition, ***we need to anticipate and respond to***
> ***changing consumer demands more effectively than our competitors***. We
> strive to achieve and maintain favorable recognition of our unique private-label
> brands, effectively market our products to consumers, ***competitively price our***
> ***products*** and maintain and enhance a perception of value for consumers.[13]

---

[13] Safeway 2015 10-K Annual Report filed with the US Securities and Exchange Commission. [emphasis supplied]


ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
June 28, 2018
Page 11 of 12

27.   Another grocer, Whole Foods, states that it faces similar conditions:

> Increased competition may adversely affect our revenues and profitability.
> [...]As competition in certain areas intensifies, our operating results may be
> negatively impacted through a loss of sales, ***reduction in margin from
> competitive price changes***, and/or greater operating costs such as marketing.
> [...]Our operating results may be materially impacted by changes in overall
> economic conditions that impact consumer confidence and spending, including
> discretionary spending.[14]

28.   My hedonic regression model accounts for such competitive factors by analyzing
actual retail prices -- those set in the market as a result of all of the then extant competitive forces
-- paid by consumers, as opposed to the wholesale price set by Defendants that is not the actual
price being paid by consumers at retail.

## VII.  RESERVATION OF RIGHTS

My testimony is based upon the information and data presently available to me.
Additional, different and/or updated data including market research data may be obtained in
advance of trial.  I therefore reserve the right to amend or modify my testimony.

---

[14] Whole Foods 2016 10-K Annual Report filed with the US Securities and Exchange Commission. [emphasis
supplied]



Declaration of Colin B. Weir
June 28, 2018
Page 12 of 12

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief, and that this declaration was executed at Boston,

Massachusetts, this 28th day of June, 2018.

_____

Colin B. Weir

ECONOMICS AND
TECHNOLOGY, INC.

# Exhibit 1

# Documents Reviewed

- First Amended Complaint, filed September 11, 2014

- Declaration of Colin B. Weir, filed October 29, 2015

- Declaration of Colin B. Weir, filed April 3, 2017

- Declaration of Keith R. Ugone, Ph.D., filed March 1, 2017

- Deposition of Keith R. Ugone, Ph.D., March 17, 2017 (Volumes I & II)

- Deposition of Keith R. Ugone, Ph.D., April 19, 2016

- Deoleo USA, Inc.'s Opposition To Plaintiff's Motion For Class Certification

- Bates No. DEOLEO045357-045407

- Bates No. DEOLEO047427

- Bates No. IRI_OliveOil_0001

- Rogers_Exhibit 53.pdf

- Rogers_Exhibit 58.pdf

- Rogers_Exhibit 59.pdf

- "10 Tips When Buying Olive Oil,"

http://www.fooducate.com/app#!page=post&id=54D607F5069A2C1240D49583288848CF

- *Product Attribute Saliency and Region of Origin: Some Empirical Evidence from Portugal.*
Santos, Freitas J. and Ribeiro, Cadima J., Paper prepared for presentation at the 99th seminar of
the EAAE (European Association of Agricultural Economists), 'The Future of Rural Europe in
the Global Agri-Food System', Copenhagen, Denmark, August 24-27, 2005

- *Consumers' Preferences for Geographical Origin Labels: Evidence from the Canadian Olive
Oil Market.* Menapace, Luisa, *et al,* European Review of Agricultural Economics 38(2)
(2011):193–212

- *Hedonic Prices for a Nondurable Good: The Case of Breakfast Cereals.* Stanley, L. R. and
John T. Tschirhart, Review of Economics and Statistics 73.3 (1991):537-541

- Deposition of Gene Russell, July 23, 2015

- Deposition of Margarita Rogers, July 21, 2015

-"Reference Guide on Estimation of Economic Damages", Reference Manual on Scientific Evidence (3rd Ed.)

- Daniel Rubinfeld, Reference Guide on Multiple Regressions, Federal Judicial Center, Reference on Scientific Evidence

- Kennedy, Peter., *A Guide to Econometrics* (5th ed.), Cambridge: MIT Press, 2003

- Greene, William H., *Econometric Analysis* (7th ed.), Prentice Hall, 2012

- Carlton, D. W. & J. M. Perloff, Modern Industrial Organization (2nd ed.). New York: HarperCollins College Publishers, 1994

- Country-of-origin marketing: A list of typical strategies with examples, Thomas Aichner, Journal of Brand Management (2014) 21, 81–93

- Stock, J. H. & W. W. Watson, Introduction to Econometrics (3rd ed.), Boston: Addison-Wesley, 2011

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009

- Frankel, E. N.; Mailer, R. J.; Wang, S. C.; Shoemaker, C. F.; Guinard, J.AX.; Flynn, J  D.; Sturzenberger, N. D Evaluation of Extra Virgin Olive Oil Sold in California, UC Davis Olive Center Publication, 2011

- *Hedonic Prices and Implicit Markets: Product Differentiation in Pure Competition.* Rosen, Sherwin, The Journal of Political Economy, Vol. 82, No. 1. (Jan. - Feb., 1974)

- *The Expanding Role of Hedonic Methods in the Official Statistics of the United States,* Moulton, Brent R., Bureau of Economic Analysis, U.S. Department of Commerce, June 2001

- *The Use of Hedonic Analysis for Certification and Damage Calculations in Class Action Complaints*, Doane, Michael (Analysis Group) and Hartman, Raymond, Journal of Law, Economics, & Organization, Vol. 3, No. 2 (Autumn, 1987), pp. 351-372

- *See, e.g.*, *In re: Scotts EZ Seed Litigation,* Case No. 12-cv-4727-VB, Dkt No. 127 (S.D.N.Y. January 26, 2015)

- *In re: ConAgra Foods Inc.*, Case No. 11-cv-05379-MMM, Dkt No 545 (C.D. Cal February 23, 2015)

- *Dei Rossi vs. Whirlpool*, Case No. 12-cv-00125-TLN, Dkt No. 160 (E.D. Cal April 28, 2015)

- *Developing a Hedonic Regression Model For Refrigerators in the U.S. CPI*, Shepler, Nicole, October 16, 2001, available at http://data.bls.gov/cgi-bin/print.pl/cpi/cpirfr.htm (last accessed February 24, 2015)

- *Organic and All Natural: Do Consumers Know the Difference?* Anstine, Jeffrey, Journal of Applied Economics and Policy 26.1 (2007):15-27

- *Hedonic Analysis of Retail Egg Prices*, Karipidis, Philippos I., *et al*, Journal of Food Distribution Research 36.3 (2005)

- *The Value to Consumers of Health Labeling Statements on Breakfast Foods and Cereals,* Muth, Mary K., *et al* Contributed Paper prepared for presentation at the International Associate of Agricultural Economists Conference, Beijing, China, August 2009, on behalf of RTI International and Food and Drug Administration, Center for Food Safety and Applied Nutrition. 10 March 2014

- Defendant's Response to Interrogatory No. 9

- Baker, Jonathan B. and Timothy F. Bresnahan, *Economic Evidence in Antitrust: Defining Markets and Measuring Market Power*, Chapter 1 of Handbook of Antitrust Economics 2007, Cambridge: MIT Press, at 9

- Wang, S; Moscatello, B; and Flynn, D.; Survey : Consumer Attitudes on Olive Oil, UC Davis Olive Oil Center, May 2013

- www.stata.com

- *In re: Cellphone Termination Fee Cases*, Ramzy Ayyad, et al, Plaintiff, v. Sprint Spectrum, L.P., Defendant, JCCP No. 4332, Case No. RG03-121510

- Product labels

**Exhibit 2**

**Regression Results**

**Deoleo Updated Regression Results:  2nd Quarter 2010 - 2nd Quarter 2014**

| Independent Variables | Coefficients | T-Statistics | Exponentiated Coefficients |
|---|---|---|---|
| California | -0.0579*** | (-2.65) | -0.0563 |
| Italy | 0.190*** | (5.48) | 0.2092 |
| Imported | -0.0221 | (-0.45) | 0.6210 |
| Mediterranean | -0.00512 | (-0.11) | 0.0134 |
| Spain | -0.0560** | (-2.08) | 0.2183 |
| Extra Virgin | 0.155*** | (8.46) | 0.1677 |
| Extra Light | 0.0124 | (0.48) | 0.0125 |
| Italy x Extra Virgin | -0.152*** | (-7.09) | -0.1410 |
| Italy x Extra Light | -0.0461 | (-1.57) | -0.0451 |
| Imported x Extra Virgin | 0.0664 | (1.52) | 0.0687 |
| Imported x Extra Light | 0.0609 | (1.23) | 0.0628 |
| Promo | -0.197*** | (-29.69) | -0.1788 |
| Total Ounces | -0.0184*** | (-22.49) | -0.0182 |
| Total Ounces Squared | 0.0000626*** | (9.68) | 0.0001 |
| Glass Bottle | 0.0108 | (0.73) | 0.0109 |
| Plastic Jug | 0.200*** | (9.97) | 0.2214 |
| Tin | 0.246*** | (9.66) | 0.2789 |
| Natural/All Natural | 0.0873*** | (4.70) | 0.0912 |
| Organic | 0.0922** | (2.56) | 0.0966 |
| Butter | -0.176*** | (-2.76) | -0.1614 |
| Fruity | -0.121*** | (-4.11) | -0.1140 |
| Garlic | -0.0148 | (-0.51) | -0.0147 |
| No Cholesterol | -0.184*** | (-10.61) | -0.1681 |
| Cholesterol Free | -0.0415* | (-1.78) | -0.0407 |
| California Olive Ranch | 0.143*** | (4.09) | 0.1537 |
| Carapelli | 0.00485 | (0.19) | 0.0049 |
| Colavita | 0.447*** | (35.73) | 0.5636 |
| Crisco | -0.342*** | (-7.03) | -0.2897 |
| Filippo Berio | -0.310*** | (-14.13) | -0.2666 |
| Lucini Italia | 0.787*** | (55.85) | 1.1968 |
| Mazola | -0.405*** | (-8.41) | -0.3330 |
| Omaggio | -0.558*** | (-14.09) | -0.4276 |
| Pompeian | -0.205*** | (-4.52) | -0.1854 |
| Star | 0.0649** | (2.13) | 0.0671 |
| Quarter: 2010q3 | -0.0232 | (-1.33) | -0.0229 |
| Quarter: 2010q4 | -0.00602 | (-0.36) | -0.0060 |
| Quarter: 2011q1 | -0.0124 | (-0.64) | -0.0123 |
| Quarter: 2011q2 | 0.00843 | (0.46) | 0.0085 |
| Quarter: 2011q3 | -0.00695 | (-0.36) | -0.0069 |
| Quarter: 2011q4 | -0.00161 | (-0.09) | -0.0016 |
| Quarter: 2012q1 | -0.0129 | (-0.71) | -0.0128 |
| Quarter: 2012q2 | -0.0395** | (-2.08) | -0.0387 |
| Quarter: 2012q3 | -0.0551*** | (-2.78) | -0.0536 |
| Quarter: 2012q4 | -0.0728*** | (-3.89) | -0.0702 |
| Quarter: 2013q1 | -0.0449** | (-2.15) | -0.0439 |
| Quarter: 2013q2 | -0.0250 | (-1.26) | -0.0247 |
| Quarter: 2013q3 | -0.00410 | (-0.21) | -0.0041 |
| Quarter: 2013q4 | 0.00318 | (0.16) | 0.0032 |
| Quarter: 2014q1 | -0.0101 | (-0.50) | -0.0100 |
| Quarter: 2014q2 | -0.0198 | (-0.99) | -0.0196 |
| Constant | -0.664*** | (-18.28) | -0.4852 |

| | |
|---|---|
| Observations | 2,930 |
| Number of Units | 24,746,989 |
| Adjusted R-squared | 0.805 |
| F-Statistic | 440.07 |
| RMSE | 0.133 |

| | |
|---|---|
| F-Test of Italy/Category of Olive Oil Coefficients | 21.26 |
| F-Test p-value | 0.000 |
| Extra Virgin/None (vs. Olive Oil/None) | 0.1551 |
| Extra Virgin/Italy (vs. Extra Virgin/None) | 0.0383 |
| Extra Light/Italy (vs. Extra Light/None) | 0.1444 |
| Olive Oil/Italy (vs. Olive Oil/None) | 0.1905 |

Note (1):  Significance levels:  * p<0.10; ** p<0.05; *** p<0.01
Note (2):  T-Statistics displayed in parenthesis are calculated using robust standard errors.
Note (3):  Regression model is weighted by number of units sold.
Source:  IRI Scanner Data.