**TUCKER | POLLARD**
Attorneys at Law
Caroline V. Tucker, Esq. (State Bar No. 261377)
556 N. Diamond Bar Blvd., Ste. 213
Diamond Bar, CA 91765
(909) 396-1800 phone
(949) 269-6401 facsimile
ctucker@tuckerpollard.com

*Attorneys for Objector*
JUSTIN FERENCE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| SCOTT KOLLER, on behalf of himself, the general public and those similarly situated, | Case No. 14-cv-2400 (RS) |
| Plaintiff, | **NOTICE OF OBJECTION** |
| v. | |
| MED FOODS, INC., AND DEOLEO USA, INC. | |
| Defendants. | |

## OBJECTION

Class member and objector, Justin Ference, ("hereinafter Objector") objects to the class action settlement. He submitted a claim form on July 11, 2018 with a claim number of 1165616. See attached Claim Form.

The district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and ... the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *In re Bank of Am. Corp. Securities,*

*Derivative, and Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 134 (2d Cir. 2014) citing *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 419 (2d Cir. 2010).

"Class-action settlements are different from other settlements. The parties to an ordinary settlement bargain away only their own rights—which is why ordinary settlements do not require court approval." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013). Unlike ordinary settlements, "class-action settlements affect not only the interests of the parties and counsel who negotiate them, but also the interests of unnamed class members who by definition are not present during the negotiations. *Id.* "[T]hus, there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own." *Id.*

As a preliminary matter, the Court must ensure that the class certification criteria have been met. This case is a nationwide class action and the Court must consider the varying state laws that may apply and ensure that predominance is not defeated.

> Rule 23 "does not set forth a mere pleading standard." *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The plaintiff seeking class certification bears the burden of demonstrating that all the requirements of Rule 23 have been met. *See Zinser*, 253 F.3d at 1188. This requirement means that the plaintiff must first demonstrate through evidentiary proof that the class meets the prerequisites of Rule 23(a), which provides that class certification is proper only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The Rule 23(a) prerequisites "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349, 131 S.Ct. 2541 (internal quotation marks omitted). To meet the commonality requirement of Rule 23(a)(2), the plaintiffs' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350, 131 S.Ct. 2541.
> After carrying its burden of satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Fed. R. Civ. P. 23(b); *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. Here, the district court certified the class under Rule 23(b)(3), which provides that a class action may be maintained only if "the court finds that

2

the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," and which lists a number of matters "pertinent to these findings." Fed. R. Civ. P. 23(b)(3).[2]

The Rule 23(b)(3) predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The "presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Rather, a court has a "duty to take a close look at whether common questions predominate over individual ones," and ensure that individual questions do not "overwhelm questions common to the class." *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (internal quotation marks omitted). In short, "[t]he main concern of the predominance inquiry under Rule 23(b)(3) is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545–46 (9th Cir. 2013) (internal quotation marks omitted).

Where plaintiffs bring a nationwide class action under CAFA and invoke Rule 23(b)(3), a court must consider the impact of potentially varying state laws, because "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996). "Variations in state law do not necessarily preclude a 23(b)(3) action." *Hanlon*, 150 F.3d at 1022. For instance, even when some class members "possess slightly differing remedies based on state statute or common law," there may still be "sufficient common issues to warrant a class action." *Id.* at 1022–23; *see also Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301–02 (3d Cir. 2011) (discussing the "pragmatic response to certifications of common claims arising under varying state laws," and citing a case that affirmed "the district court's decision to subsume the relatively minor differences in state law within a single class" as illustrative) (citing *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)); *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001) (noting that even though "state laws may differ in ways that could prevent class treatment if they supplied the principal theories of recovery," class representatives in that case met the predominance requirement in part by limiting "their theories to federal law plus aspects of state law that are uniform"). On the other hand, where "the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving [a] dispute." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011).

In determining whether predominance is defeated by variations in state law, we proceed through several steps. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). First, the class action proponent must establish that the forum state's substantive law may be constitutionally applied to the claims of a nationwide class. *Id.* at 589–90.[3] If the forum state's law meets this requirement, the district court must use the forum state's choice of law rules to determine whether the forum state's law or the law of multiple states apply to the claims. *Id.* at 590. "[I]f the forum state's choice-of-law rules require the application of only one state's laws to the entire class, then the representation of multiple states within the class does not

3

---

> pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). But if class claims "will require adjudication under the laws of multiple states," *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 922, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001), then the court must determine whether common questions will predominate over individual issues and whether litigation of a nationwide class may be managed fairly and efficiently. *Id.* As with any other requirement of Rule 23, plaintiffs seeking class certification bear the burden of demonstrating through evidentiary proof that the laws of the affected states do not vary in material ways that preclude a finding that common legal issues predominate. *See Castano*, 84 F.3d at 741 (indicating that class action proponents must show that variations in state laws will not affect predominance; "[a] court cannot accept such an assertion on faith.") (quoting *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1016 (D.C. Cir. 1986) (Ruth Bader Ginsburg, J.)).
>
> *In re Hyundai and Kia Fuel Econ. Litig.*, 881 F.3d 679, 690-691 (9th Cir. 2018).

One major issue with the settlement is that the settlement funds belong to class members and should be delivered to them to the extent possible. *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015). The settlement is unfair and unreasonable for class members because funds may go to a *cy pres* recipient, Consumers Union, Yonkers, NY and Center for Food Safety, Washington, DC, instead of class members. "Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible '*only* when it is not feasible to make further distributions to class members' .... except where an additional distribution would provide a windfall to class members with *liquidated*-damages claims that were 100 percent satisfied by the initial distribution." *In re BankAmerica Corp. Securities Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015). The Court should order the parties to further distribute the funds to the class before sending any money to a cy pres recipient.

If the Court must designate a cy pres recipient, the Court must ensure that the recipient is appropriate. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the "next best" class of beneficiaries. See *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir.1990). Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying

4

statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). If the court determines that any portion of the class fund should go to third parties, the court should order that it goes to non-profit organization that more closely aligns with the underlying claims of the class action. This class action is about deceptive advertising. The cy pres beneficiaries should be devoted to eradicating deceptive advertising in consumer products. The proposed cy pres beneficiaries are not aligned with the underlying claims of the class action.

When awarding attorneys' fees in a class action, the district court has "an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The Court should not award the requested amount of 30 percent of the entire settlement for the attorney's fees. This circuit has established 25% of the common fund as a benchmark award for attorney fees. A district court must provide adequate justification for the use of a multiplier, which is appropriate in only "rare" or "exceptional" cases. See *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Here, there has been no rare and exceptional circumstances that would award an attorney fee amount of 30% of the entire settlement. The Court should lower the attorney fee award.

The Court should also closely analyze the potential duplicate efforts of counsel and the level of detail provided in the fee motion and adjust the award accordingly. The Court should request attorney fee records that, at a minimum, show how much time was spent in the various aspects of litigation. The records submitted only tell the Court the total amount of time spent on the case multiplied by the person's rate. The Court must know the breakdown of the hours to determine if this amount is reasonable. The Court should also ensure that the rates requested are reasonable within this District.

5

---

**OBJECTION;** Case No. 14-cv-2400 (RS)

Costs related to administration of the settlement should not be included in calculating the fee award. If the Court were to include these costs, it would have "eliminated the incentive of class counsel to economize on that expense—and indeed may have created a perverse incentive; for higher administrative expenses make class counsel's proposed fee appear smaller in relation to the total settlement than if those costs were lower." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

The Court should also evaluate the settlement for any potential collusion between class counsel and defendant. The Court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self interests … to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Rather than explicit collusion, there need only be acquiescence for such self-dealing to occur: "a defendant is interested only in disposing of the total claim asserted against it" and "the allocation between the class payment and the attorneys' fees is of little or no interest to the defense." *Id.* at 949 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) and *In re Gen. Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 819-20 (3d Cir. 1995).

Finally, the settling parties have artificially burdened the right of objection. "One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012). The hurdles imposed on objectors in this Settlement do not appropriately respect class members' Fed. R. Civ. P. 23 rights. Moreover, the Court loses the benefit of valuable adversarial perspectives that objectors can bring to the evaluation of a settlement's fairness. Not only do the hurdles constitute a reason to reject the settlement in this case, they provide an added reason to discredit any argument that the

lack of objectors signals the class members' approval of the settlement. The settling parties have added many unnecessary burdens to potential objectors.

There is no justification for requiring objectors to list information about past objections. This information is not helpful for the Court to determine the fairness of the current settlement. Class members should be encouraged to participate in the process, not forced to fill out unnecessary paperwork to have their voices heard. Even more appalling is the amount of information required about the objector's attorney. In literally no other type of case does an attorney have to report its past work as a requirement to participate in the legal process. The task of listing out prior cases in which the attorney has objected implies that objecting to class actions is somehow a bad thing. Seeking to improve class action settlements should be applauded, not demonized. In every other area of law, having experience in a particular area of law is rewarded, not penalized. Whether an attorney has previously represented an objector is irrelevant to the merit of the objection.

For the foregoing reasons, the Court should deny final approval of the settlement. Neither Objector nor I intend to appear at the Fairness Hearing. Both class counsel and objector have filed previous objections, but it is impractical to list and irrelevant, arbitrary and burdensome as these are all available on public records.

## Conclusion

In conclusion, this Objector respectfully asks this Court to reject this settlement based upon the above objections.

_[signature]_  July 12, 2018

Justin Ference, Objector
8424 N. Foothills HWY
Boulder CO 80302
937-509-4740

**OBJECTION**; Case No. 14-cv-2400 (RS)

|   |   |   |
|---|---|---|
| | | Tucker \| Pollard |
| | | By: _C Tucker_ _____ |
| | | Caroline Tucker |
| | | *Attorney for Objector* |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on July 12 2018, and served by the same means on all counsel of record.

/s/ Caroline Tucker
_____
Caroline Tucker

**OBJECTION**; Case No. 14-cv-2400 (RS)

**From:** Donotreply@oliveoilsettlement.com
**Date:** July 11, 2018 at 7:32:20 AM MDT
**To:** infinite1s@icloud.com
**Subject: Claim Completed**

Dear JUSTIN FERENCE,

You have successfully completed the claim filing for the Olive Oil Claim Settlement. Your details are given below.

Claim Number: **1165616**

Confirmation Code: **6891699**

First Name: **JUSTIN**

Last Name: **FERENCE**

Street Address: **64 FELDSPAR ROAD**

City: **BLACK HAWK**

State: **CO**

Zip: **80422**

Email: **Infinite1s@Icloud.com**

Payment Type: **CHECK**

Payment Email:

Signature: **JUSTIN DAVID FERENCE**

Signature Date: **07-11-2018**

**Purchase Details**

| Bertolli Product | Approximate Month & Year of Purchase | Place of Purchase | Number of Bottles Purchased | Proof of Purchase |
|---|---|---|---|---|
| EXTRA VIRGIN | 02-2018 | SAFEWAY | 4 | |