1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     NORTHERN DISTRICT OF CALIFORNIA

10

11                                SAN FRANCISCO

12   SCOTT KOLLER, CAROLYN                    CASE NO. 3:14-CV-2400-RS
     BISSONETTE, CECE CASTORO,
13   STEPHEN FREIMAN, DIANE GIBBS,            ORDER GRANTING FINAL APPROVAL
     DARLENE WILLIAMS, and ROBERT            OF CLASS ACTION SETTLEMENT AND
14   GLIDEWELL, on behalf of themselves, the  JUDGMENT
     general public and those similarly situated,
15
      Plaintiffs,                             Hon. Judge Richard Seeborg
16
     v.
17
     MED FOODS, INC., and DEOLEO USA,
18   INC.

19    Defendants.

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARDING FEES AND
COSTS; AND ENTERING JUDGMENT

In this case, Plaintiffs alleged that Defendant had marketed and sold its Bertolli brand of olive oil with the representation "Imported from Italy," although most of the oil was extracted from olives grown in countries other than Italy. Plaintiffs also alleged that Defendant had marketed and sold a subset of the Bertolli brand olive oil with the representation "Extra Virgin," even though Defendant's procurement, bottling, and distribution practices did not adequately ensure that the oil would meet the "extra virgin" standard through the date of retail sale or the "best by" date on the bottles. Plaintiffs alleged that Defendant's labeling and marketing of the oil violated the Tariff Act of 1930, as amended, 19 U.S.C. § 1304, and its implementing regulations, 19 C.F.R. § 134.46; the Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and its implementing regulations, 21 C.F.R. § 101.18 *et seq.*; the U.S. Department of Agriculture regulations regarding Olive Oil and Olive-Pomace Oil, 75 Fed. Red. 22363 (Apr. 28, 2010). Plaintiffs, who are residents of Arkansas, California, Florida, New Jersey, New York, and North Carolina, alleged that these federal violations also violated various state laws, including health and safety codes and consumer laws, and constituted false advertising, unfair business practices, breach of contract, breach of the covenant of good faith and fair dealing, and fraud, deceit, and/or misrepresentation. The allegations in this paragraph are referred to as the "Allegations."

Defendant denies that there is any factual or legal basis for Plaintiffs' Allegations. It contends that the labeling of the Products was truthful and non-misleading, and that purchasers did not pay a "premium" for the Products as the result of any misrepresentations. Defendant therefore denies any liability. It also denies that Plaintiffs or any other members of the settlement class have suffered injury or are entitled to monetary or other relief. Defendant finally denies that this case should have been certified as a nationwide class action, except for purposes of settlement.

On April 16, 2018 (Dkt. 152) (as further set forth in an additional order on April 24, 2018 (Dkt. 155)), this Court granted preliminary approval of a proposed class action settlement between the parties. In the Preliminary Approval Order, the Court provisionally certified a Settlement Class of all persons, other than Excluded Persons, who, (i) between May 23, 2010 and April 16, 2018, purchased, in the United States, any of the Extra Virgin Olive Oil Products and/or

ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARDING FEES AND COSTS; AND ENTERING JUDGMENT

(ii) between May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive Oil Products. The Court also approved the procedures for giving notice and the forms of notice. Additionally, in the Preliminary Approval Order, the Court concluded that the parties' proposed settlement, as set forth in the Stipulation of Settlement, was within the range of possible final approval.

Now pending before the Court is the parties' Motion for Final Approval of Class Action Settlement, and Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Incentive Awards. In accordance with the Preliminary Approval Order and the Settlement Agreement, on August 9, 2018, the Court held a duly noticed Fairness Hearing for purposes of: (a) determining the fairness, adequacy, and reasonableness of the settlement; and (b) ruling upon an application by Class Counsel for a Fee and Expense Award and Plaintiffs' Incentive Awards.

The parties and the claim administrator have submitted evidence, which the Court accepts, showing the following. Over 58 million advertisement impressions were displayed on a variety of websites (both mobile and desktop) targeted at likely members of the Settlement Class. Notice also was published once a week for four successive weeks in the San Francisco Chronicle and was published once in People Magazine. These print publications have a combined circulation of over 3.6 million, and because of the high reader-per-copy ratio of People Magazine, over 7.3 million members of the Target Audience were exposed to the publication notice in People Magazine. A press release was issued through the PR News Wire's network, which is distributed to more than 10,000 media outlets, and articles about the settlement appeared in at least 228 publications. All of the online notices linked to, and the printed notices referred to, the Settlement Website, which contains a detailed class notice, including the procedures for class members to exclude themselves or object to the settlement, as well as a copy of the Settlement Agreement and motion papers filed in connection with the settlement.

A total of 60 persons filed timely requests to opt out of the Settlement Class.

In addition, two persons filed objections to the settlement.

Having considered all matters submitted to the Court at the hearing on the motion and otherwise, including the complete record of this action, and good cause appearing therefore, the

3

Court hereby grants Plaintiffs' Motion for Final Approval and Motion for an Award of Attorney's Fees, Costs, and Incentive Awards, and finds and concludes as follows:

1.      The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

2.      The Court has jurisdiction over this case and over all claims raised therein and all Parties thereto.

3.      The Court finds that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure have been satisfied for certification of the Settlement Class for settlement purposes because: Settlement Class Members are ascertainable and are so numerous that joinder of all members is impracticable; there are questions of law and fact common to the Settlement Class; the claims and defenses of the Class Representatives are typical of the claims and defenses of the Settlement Class they represent; the Class Representatives have fairly and adequately protected the interests of the Settlement Class with regard to the claims of the Settlement Class they represent; common questions of law and fact predominate over questions affecting only individual Settlement Class Members, rendering the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the Settlement Class is superior to individual litigation and/or settlement as a method for the fair and efficient resolution of this matter. The Court additionally finds, for the reasons set forth in the parties' motions for preliminary and final approval, that despite any differences among the laws of the various states, common issues of law and fact predominate, making certification of a nationwide class appropriate. In particular, the identical challenged marketing and labelling was provided to all class members; the various states require similar elements of proof with respect to the asserted claims in the Second Amended Complaint and common issues under those laws predominate; to the extent there are differences among the states, plaintiffs have demonstrated that similarly situated states can be combined into subclasses and there exist named plaintiffs in the Second Amended Complaint who can represent each such subclass.

4.      For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All persons who (i) between May 23, 2010

4

and April 16, 2018, purchased, in the United States, any of the Extra Virgin Olive Oil Products and/or (ii) between May 23, 2010 and December 31, 2015, purchased, in the United States, any of the Other Olive Oil Products. Purchases for purposes of resale are excluded. "Extra Virgin Olive Oil Product" means bottles of Bertolli Extra Virgin olive oil, except for those bearing labels "Organic," "Robusto," "Gentile," or "Fragrante." "Other Olive Oil Product" means the liquid Bertolli Extra Light or Classico olive oil products.

5. Excluded from the class are (1) the Honorable Richard Seeborg; the Honorable Joseph C. Spero; the Honorable Edward Infante (ret.); (2) any member of their immediate families; (3) any government entity, (4) Defendant; (5) any entity in which Defendant has a controlling interest; (6) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (7) counsel for the Parties. The persons listed in Exhibit A to this Order timely submitted requests to exclude themselves and shall be excluded from the settlement class.

6. For the purpose of this settlement, the Court hereby finally certifies Plaintiffs Scott Koller, Carolyn Bissonnette, Cece Castoro, Diane Gibbs, Darlene Williams, Robert Glidewell, and Stephen Freiman as Class Representatives, and Gutride Safier LLP and Tycko & Zavareei LLP as Settlement Class Counsel.

7. The Parties complied in all material respects with the Notice Plan set forth in the Settlement Agreement. The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class of the pendency of the Litigation; the existence and terms of the Settlement Agreement; their rights to make claims, exclude themselves, or object; and the matters to be decided at the Final Approval Hearing. Further, the Notice Plan satisfied the requirements of the United States and California Constitutions, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law.

8. The Court has determined that full opportunity has been given to the members of the Settlement Class to exclude themselves from the settlement, object to the terms of the settlement

5

1    or to Class Counsel's request for attorneys' fees and expenses and the Class Representatives'

2    incentive payments, and/or otherwise participate in the Final Approval Hearing held on August 9,

3    2018.

4        9.   The Court finds that the settlement is in all respects fair, reasonable, and adequate.

5    The Court therefore finally approves the settlement for all the reasons set forth in the Motion for

6    Final Approval including, but not limited to, the fact that the Settlement Agreement was the

7    product of informed, arms-length negotiations between competent, able counsel and conducted

8    with the oversight and involvement of an independent, well respected, and experienced mediator;

9    the record was sufficiently developed and complete through meaningful discovery and motion

10   proceedings to have enabled counsel for the Parties to have adequately evaluated and considered

11   the strengths and weaknesses of their respective positions; the Litigation involved disputed

12   claims, and this dispute underscores the uncertainty and risks of the outcome in this matter; the

13   settlement provides meaningful remedial and monetary benefits for the disputed claims; and the

14   Parties were represented by highly qualified counsel who, throughout this case, vigorously and

15   adequately represented their respective parties' interests.

16       10.  The Settlement is in the best interests of the Settlement Class in light of the degree of

17   recovery obtained in relation to the risks faced by the Settlement Class in litigating the class

18   claims. The relief provided to the Settlement Class Members under the Settlement Agreement is

19   appropriate as to the individual members of the Settlement Class and to the Settlement Class as a

20   whole. All requirements of statute, rule, and Constitution necessary to effectuate the settlement

21   have been met and satisfied. The Parties shall continue to effectuate the Settlement Agreement in

22   accordance with its terms.

23       11.  For a period beginning on the Effective Date and continuing for three years thereafter,

24   Deoleo USA, Inc. is enjoined as follows:

25       a.   Not to use the phrases "Imported from Italy," "Made in Italy," "Product of

26            Italy," or a phrase suggesting that olive oil in a bottle originates exclusively

27            from olives grown in Italy on the labeling of any olive oil product sold in the

28

6

United States, unless the product so labeled is composed entirely of oil from olives grown and pressed in Italy.

b. If Defendant uses the phrase "Extra Virgin" or the term "EVOO" on the product label of any olive oil, it must do all of the following: (i) package the olive oil in a non-transparent (UV filtering) container, e.g., a green or brown glass container; (ii) include a "best by" or "use by" date not later than sixteen months after the date of bottling; (iii) include the date(s) of harvest of the olives used to manufacture the olive oil in proximity to the "best by" date; and (iv) implement the following chemical parameter testing requirements set forth under "Target Limit" at the time of bottling (which are stricter than the current limits set forth in the preceding column under "IOC Limit"):

| Parameter | IOC Limit | Target Limit |
|---|---|---|
| Acidity (%) | ≤ 0.8 | ≤ 0.5 |
| Peroxide value (mEq )2/kg) | ≤ 20 | ≤ 10 |
| K270 | ≤ 0.22 | ≤ 0.15 |
| K232 | ≤ 2.50 | ≤ 2.1 |
| Delta-K | ≤ 0.01 | ≤ 0.005 |

12.   By operation of this Final Approval Order and Judgment, Plaintiffs on the one hand, and the Released Parties on the other hand, shall have unconditionally, completely, and irrevocably released and forever discharged each other from and shall be forever barred from instituting, maintaining, or prosecuting (1) any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that actually were, or could have been, asserted in the Litigation, whether based upon any violation of any state or federal statute or common law or regulation or otherwise, or arise directly or indirectly out of, or in any way relate to, the allegations, claims, or contentions that Plaintiffs, on the one hand, and Defendant, on the other hand, have had in the past, or now have, related in any manner to the Defendant's products, services or business affairs; and (2) any and all other claims, liens, demands, actions, causes of

ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARDING FEES AND COSTS; AND ENTERING JUDGMENT

action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, that Plaintiffs, on the one hand, and Defendant, on the other hand, have had in the past or now have, related in any manner to any and all Released Parties' products, services or business affairs, or otherwise.

13.   By operation of this Final Approval Order and Judgment, Settlement Class Members shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims, including any and all claims, liens, demands, actions, causes of action, rights, duties, obligations, damages or liabilities of any nature whatsoever, whether legal or equitable or otherwise, known or unknown, whether arising under any international, federal, state or local statute, ordinance, common law, regulation, principle of equity or otherwise, that that were, or could have been, asserted in the Litigation and that arise out of or relate to the allegations or claims that the Products were marketed or labeled as "Imported From Italy" and/or "Extra Virgin," except that there shall be no release of (1) claims for personal injury allegedly arising out of use of the Products or (2) any defense, cross-claim or counter-claim in any action initiated by any of the Released Parties against any Settlement Class Member.

14.   Plaintiffs and Defendant shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law. In addition, Settlement Class Members shall, by operation of this Final Approval Order and Judgment, be deemed to have waived the provisions, rights, and benefits of California Civil Code § 1542, and any similar law of any state or territory of the United States or principle of common law, but only with respect to the matters released as set forth in paragraph 13 of this Order. Section 1542 provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

15.   Nothing herein shall bar any action or claim to enforce the terms of the Settlement Agreement.

8

16.     No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability, or wrongdoing of any kind whatsoever to any other Party. Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class Members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Final Approval Order and Judgment and the Settlement Agreement, in any proceeding in any court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of this Final Approval Order and Judgment shall not be construed as an admission or concession by Defendant that class certification was appropriate in the Litigation or would be appropriate in any other action.

17.     The Claim Administrator has submitted a declaration with its expenses incurred as of July 26, 2018, in the amount of $432,700, subject to supplementation of any expenses incurred through the completion of its work. The Court finds that such amounts are reasonable and authorizes payment, in full, from the Settlement Fund.

18.     For the reasons stated herein, the following amounts shall also be paid by from the Settlement Fund, subject to additional supplementation and approval by this Court of any expenses incurred by Class Counsel not included in declarations filed with the Court to date:

a.   Fees and expenses to Class Counsel: $2,100,000

b.   Expenses to Class Counsel: $150,319.73

c.   Class representative payments

i.   to Plaintiff Scott Koller: $5,000

ii.   to Plaintiff Carolyn Bissonnette: $1,000

iii.   to Plaintiff Cece Castoro: $1,000

9

1          iv.   to Plaintiff Diane Gibbs: $1,000

2          v.   to Plaintiff Darlene Williams: $1,000

3          vi.   to Plaintiff Robert Glidewell: $1,000

4          vii.   to Plaintiff Stephen Freiman: $1,000.

5   Such amounts shall be paid according to the terms of the Settlement Agreement. Except as

6   provided in this Order, Plaintiffs shall take nothing against Defendant by their Complaint.

7          19.   If after payment of the amounts set forth in paragraphs 17 and 18, as well as the

8   payment of Valid Claims (including pro-rata increase of such payment) as set forth in Part III of

9   the Settlement Agreement, money remains in the Settlement Fund, that remainder shall be paid,

10   pursuant to the *cy pres* doctrine, in equal shares to Consumers Union, Yonkers, NY; and Center

11   for Food Safety, Washington, DC. The *cy pres* doctrine is appropriate for a case like this one,

12   where class members who did not make claims cannot be easily located or identified, in order to

13   "put the unclaimed fund to its next best compensation use, *e.g.,* for the aggregate, indirect,

14   prospective benefit of the class." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)

15   (citing *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir.2007)). A *cy pres*

16   remedy must "bear[] a substantial nexus to the interests of class members." *Lane v. Facebook*,

17   696 F.3d 811, 821 (9th Cir. 2012) *cert. denied,* 134 S. Ct. 8 (U.S. 2013. In evaluating a *cy pres*

18   component of a class action settlement, courts look to factors set forth in *Six (6) Mexican Workers*

19   *v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Specifically, the *cy pres* remedy

20   "must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes,

21   and the interests of the silent class members." 663 F.3d at 1036 (citing *Six Mexican Workers,* 904

22   F.2d at 1307). The parties have submitted evidence, which the Court accepts, showing the *cy pres*

23   recipients to be appropriate for the following reasons:

24          a.   Consumers Union is a non-profit organization with a mission "to work for

25   a fair, just and safe marketplace for all consumers and to empower consumers to protect

26   themselves." It publishes Consumer Reports magazine and website (www.consumerreports.org),

27   as well as The Consumerist Blog (www.consumerist.com), both of which provide information of

28   interest to consumers, such as product reviews and information about false advertising scams.

10

1   Consumers Union is also active in educating consumers about food labeling. It operates the

2   website Not In My Food (www.notinmyfood.org), which provides information to consumers

3   about the presence of genetically modified organisms (GMOs) and other controversial ingredients

4   in food, and it lobbies for better food labeling laws. In addition, in September 2012, Consumer

5   Union published an article in Consumer Reports entitled "How to Find the Best Extra-Virgin

6   Olive Oil." (*See* https://www.consumerreports.org/cro/magazine/2012/09/how-to-find-the-best-

7   extra-virgin-olive-oil/index.htm, last accessed March 5, 2018.) Consumers Union has also been

8   approved as a *cy pres* recipient in numerous false advertising lawsuits.

9           b.      The Center for Food Safety is a non-profit organization that states it "is a

10  national non-profit public interest and environmental advocacy organization working to protect

11  human health and the environment by curbing the use of harmful food production technologies

12  and by promoting organic and other forms of sustainable agriculture. CFS also educates

13  consumers concerning the definition of organic food and products.

14          20.     The Court has considered the objections of Justin Ference and Wanda Cochran to the

15  Settlement, and finds that neither objection is well taken, nor does either objection affect the

16  Court's analysis or alter the Court's final approval determination.

17          21.     Ference references the class certification analysis in *In re Hyundai and Kia Fuel*

18  *Econ. Litig*., 881 F.3d 679, 690-691 (9th Cir. 2018), but this Court previously addressed the

19  impact of that case in its order granting preliminary approval (Dkt. 155 at 3), and Ference offers

20  no explanation for why that decision was incorrect. Moreover, as Ference asserts that a

21  nationwide class cannot be certified, it is his burden to identify the material variations in state

22  laws that "make a difference in this litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

23  591 (9th Cir. 2012). Ference has not done so. Thus, final certification of the Settlement Classes

24  remains appropriate, and his objection on those grounds is overruled.

25          22.     The Court additionally rejects Ference's arguments regarding the propriety of

26  distributing funds via *cy pres*. As discussed above, the proposed *cy pres* recipients are

27  appropriate, and a *cy pres* distribution consisting of funds from uncashed checks is proper. *See*

28  *Zepeda*, 2015 WL 6746913, at *3 (approving *cy pres* distribution of leftover funds from uncashed

11

checks); *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 679 (N.D. Cal. 2016) (same); *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818-NC, 2016 WL 491332, at *3 (N.D. Cal. Feb. 8, 2016) (same). Ference offers no evidence to support his assertion that the "proposed cy pres beneficiaries are not aligned with the underlying claims of the class action."

23.     Ference and Cochran's objections to the fee request are rejected.  Upward adjustment to the 25% "benchmark" is fully warranted here, where plaintiffs' obtained class certification and where there is injunctive relief that provides substantial benefits to the class, even though the monetary value of that relief may not be easily quantified. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (noting that plaintiffs' attorneys should be compensated for having obtained a "judicially-enforceable agreement" requiring the defendant to change its practices). Additionally, review of plaintiffs' claimed lodestar as a "cross-check" on the reasonableness of the percentage-based fee award supports the 30% figure.

24.     In addition, the Court rejects Ference's argument that Class Counsel has not provided sufficient information regarding its billing records. The level of information provided by Class Counsel with respect to their work performed in this case and commensurate hourly rates is sufficiently detailed in order for the Court to evaluate their reasonableness for purposes of performing the "cross-check." In sum, the fee request is reasonable under all the circumstances, including the contingent nature of this case, the risks taken by Class Counsel, and the results obtained.

25.     Ference's objection that the value of notice and settlement administration costs should not be included in the value of relief to the class is overruled. While the Court likely has discretion to exclude those costs, it is not obliged to do so. *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 953 (9th Cir. 2015).  Here, the fee award is reasonable without excluding those costs from the percentage of recovery calculation.

26.     Finally, Ference's claim of collusion between Class Counsel and counsel for Defendant is supported by no facts that even suggest the appearance of collusion. The record supports the opposite conclusion.

ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AWARDING FEES AND COSTS; AND ENTERING JUDGMENT

27.   This order shall constitute a final judgment binding the parties with respect to this Litigation.

28.   Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction over the interpretation, implementation, and enforcement of the Settlement Agreement. In the event the Effective Date does not occur in accordance with the terms of the Settlement Agreement, then this Order and any judgment entered thereon shall be rendered null and void and shall be vacated, and in such event, all orders and judgments entered and releases delivered in connection herewith shall be null and void and the Parties shall be returned to their respective positions *ex ante*.

29.   Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

There is no just reason for delay in the entry of this Judgment, and immediate entry by the Clerk of the Court is expressly directed.

**IT IS SO ORDERED** this 29th day of August, 2018.

_____
Honorable Richard Seeborg
United States District Court Judge